UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| GERKARRAH JONES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> FORD MOTOR COMPANY, <br><br> Defendant. | Case No.:  2:24-cv-10721 <br><br> COMPLAINT AND JURY DEMAND |

## COMPLAINT AND JURY DEMAND

Plaintiffs hereby file their Complaint against Ford Motor Company and allege as follows:

### PRELIMINARY STATEMENT

1.     Broadly stated, this lawsuit is a breach of warranty/fraud case based on defective transmissions that Defendant Ford Motor Company ("Ford") installed in Fusion vehicles with model years between 2010 and 2020, inclusive, and Escape vehicles with model years between 2009 and 2021, inclusive. These transmissions were defectively designed and/or defectively manufactured, forced into a manufacturing effort to provide more options than transmission design constraints permitted, and they failed to operate as Ford represented to consumers relying upon said representations. Ford, however, continued to install these defective transmissions in Fusion and Escape vehicles, even though Ford knew of their defects

1

undisclosed to owners, lessees, and prospective purchasers and lessees. Even worse, Ford repeatedly lied to consumers as to the reasons for the problems consumers experienced. As a result, consumers were and are stuck in unsafe Fusion and Escape autos that have costly repairs and minimal resale value due to the widely discussed transmission defects, with used Fusion and Escape sticker prices indicating the market's awareness of the transmission defects alleged herein. Due to the defects in the transmissions, Ford's failure to remedy these problems, and Ford's fraud on consumers, Plaintiffs have been forced to join the ranks of tens of thousands of consumers who have sued Ford in courts nationwide for several years.

2.     The causes of action to this complaint ("Complaint") arise out of the warranty obligations of Ford for Fusions and Escapes purchased or leased by Plaintiffs and for which Ford issued a written warranty. Plaintiffs also allege that Ford concealed from Plaintiffs known defects in the transmissions integrated into Plaintiffs' Fusions and Escapes.

## PARTIES

3.     Defendant Ford Motor Company ("Ford") is a corporation organized and in existence under the laws of the State of Delaware with its principal offices located in the City of Dearborn, Wayne County, Michigan, and registered with the Department of Licensing and Regulatory Affairs to conduct business in Michigan. At all times relevant herein, Ford was engaged in the business of designing,

2

manufacturing, constructing, assembling, marketing, distributing, selling, and/or importing automobiles and other motor vehicles and motor vehicle components in Michigan.

4.      All acts of Ford corporate employees as alleged were authorized or ratified by an officer, director, or managing agent of Ford. All acts of Ford dealers as alleged were undertaken by Ford dealers in their capacity as agents of Ford.

5.      As used in this Complaint, the word "Plaintiffs" shall refer to those individuals identified in the attached Plaintiff Appendices who purchased or leased 2010-2020 Ford Fusions and 2009-2021 Escapes equipped with defective 6F35 transmissions. The word "Vehicle" (plural "Vehicles") shall refer to the 3,038 Fusions and 959 Escapes purchased or leased by Plaintiffs as identified in the attached Plaintiff Appendices, which Vehicles were designed, manufactured, constructed, assembled, marketed, distributed, sold, and/or imported by Ford.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because it arises under federal law, to wit, the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.

7.      Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the state-law causes of action pled herein because they are so closely related to Plaintiffs' federal cause of action that they form part of the same

case or controversy.  Furthermore, the state-law causes of action do not raise novel or complex issues of state law, nor do they substantially predominate over Plaintiffs' federal claim, and no exceptional circumstances exist that present compelling reasons for declining jurisdiction.  *See id.*, at § 1367(c).

8.     This Court also has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), for the following reasons: there are more than 100 Plaintiffs joined in this mass action; minimal diversity exists in that at least one Plaintiff is a citizen of a different state than Defendant; and the amount in controversy in this action, when aggregated across the 3,997 Subject Vehicles listed in the Plaintiff Appendices, total more than $5 million in controversy.  Furthermore, less than one-third of the Plaintiffs are citizens of the state of Michigan, where this action is filed, *see id.*, at § 1332(d)(3) and (4).

9.     This Court has personal jurisdiction over this Defendant because its principal place of business is located in this District, to wit, in the City of Dearborn, County of Wayne, State of Michigan.

10.     Because Ford is subject to the Court's personal jurisdiction in this District, it is deemed to reside in this District, 28 U.S.C. § 1391(c)(2), and thus, venue is proper in this District, *id.*, at § 1391(b)(1).

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

11.     Upon information and belief, Ford has superior access to each Vehicle's in-service date, applicable warranties, service contract information, and warranty or service contract repair history, as herein described.

12.     Plaintiffs bring this action as a consolidated action on the grounds that each of their allegations against Ford are the same or substantially similar; as discussed, *infra*, each of Plaintiffs' Vehicles are equipped with one of Ford's defective transmissions. Vehicles equipped with defective transmissions pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to manifestations of transmission problems while in operation.

13.     Each Plaintiff purchased or leased his or her Vehicle primarily for personal, family, or household purposes. Each Vehicle was manufactured and/or distributed by Ford. Express warranties accompanied the sale of the Vehicles to Plaintiffs, by which Ford undertook to preserve or maintain the utility or performance of the Vehicles or provide compensation in case of failure in such utility or performance. In deciding to purchase or lease the Vehicles, Plaintiffs reasonably relied on Ford's warranty protection and the express and implied promises contained therein. The Vehicles were delivered to Plaintiffs with serious defects and nonconformities to warranty, and each developed other serious defects and nonconformities to warranty including, but not limited to, a defective transmission.

5

Plaintiffs experienced the Transmission Defects within the warranty period as extended by Ford and/or the discovery rule.

14.     The transmissions in Plaintiffs' Fusions and Escapes are defective in design, materials, and/or manufacture and workmanship. Ford knew of this defective condition prior to selling the Subject Vehicles, and further knew that this defective condition can, did, and would continue to manifest in the following ways:

    a.  sudden and unexpected shaking,

    b.  violent jerking,

    c.  bucking and kicking on acceleration (commonly referred to as "shuddering" or "juddering"),

    d.  delayed acceleration (especially from a complete stop),

    e.  gears slipping,

    f.  hesitation on acceleration,

    g.  difficulty stopping the vehicle,

    h.  lack or loss of motive power,

    i.  delayed downshifts,

    j.  hard decelerations or 'clunks' when slowing down or accelerating at low speeds,

    k.  premature wear of the internal components,

l.  transmission failures in the middle of roadways creating an unreasonably dangerous situation that increases the risk of an accident,

m. catastrophic failures necessitating replacement,

n.  shift flares,

o.  clunking and other objectionable noises, and/or

p.  lurching, surging, or revving.

15.    The defect manifestations described above are attributable to one or more of the following:

a.  Failing fluid seal integrity,

b.  Throttle body deficiencies,

c.  Failed torque converter welds,

d.  Driveshaft failure,

e.  Failed Transmission Control Module ("TCM") or Powertrain Control Module ("PCM") updates to limit problems associated with transmission design and/or manufacture,

f.  Deficient software logic and architecture,

g.  Deficient calibration values,

h.  Deficient solenoids,

i.  Deficient clutch friction materials,

j.  Deficient rocker one-way clutch,

k.  Deficient torque converter,

l.  Automatic transmission fluid ("ATF") that is not properly suited for use in the 6F35 transmission,

m.  An undersized fuel pump,

n.  The vehicle's design and architecture issues, and/or

o.  The fundamental inability of the transmission's software and hardware to work together to effectuate proper gear shifts owing to an overall design that was not sufficiently robust,

(collectively, the "Transmission Defects").

16.   The Transmission Defects and their manifestations will be addressed in further detail below.

17.   The existence of the Transmission Defects is a material fact that each Plaintiff, and any reasonable consumer, would have considered when deciding whether to purchase or lease the Vehicle. Had Plaintiffs known that their respective Vehicle was equipped with a defective transmission exhibiting the Transmission Defects and subject to premature failure, Plaintiffs would not have purchased/leased it at all.

18.   As a result of Plaintiffs' reasonable reliance on Ford and its agents' omissions and/or representations, including the express and implied promises included in Ford's warranty protection, each Plaintiff suffered an ascertainable loss

8

of money, property, and value to the Vehicle, including but not limited to, the purchase price of the Vehicle, interest and finance charges, taxes, registration fees, out-of-pocket costs related to repairs to the transmission, the cost and inconvenience of obtaining alternative transportation, diminution in the value of the Vehicle, and loss of use of the Vehicle. Some Plaintiffs also suffered traffic accidents caused by the Transmission Defects, along with the associated costs and inconveniences. Additionally, as a result of the Transmission Defects, each Plaintiff was harmed and suffered actual damages in that the Vehicle's transmission and related components are substantially certain to fail before their expected useful life has run.

19.    Finally, those Plaintiffs forced to sell or trade-in their Vehicle due to expenses related to the Transmission Defects have suffered additional damages due to harm related to their credit report in the event of forfeiture and/or additional financial strain or loans entered into in order to take possession of an alternate, reliable vehicle.

20.    All of the Plaintiffs' Fusions and Escapes were backed by a New Vehicle Limited Warranty ("Warranty"). Ford's Warranty covers any repairs needed to correct defects in materials or workmanship of covered parts. The basic coverage period lasts 36 months or 36,000 miles, whichever comes first, and the powertrain coverage lasts 60 months or 60,000 miles, whichever comes first. The powertrain coverage specifically applies to the engine, transmission and transaxle, drivetrain,

and restraint system. Ford explicitly provided the Warranty to all purchasers, lessees, and subsequent purchasers and lessees of Fusions and Escapes throughout the United States. The Warranty assured consumers that Ford would repair any defects in materials or workmanship under normal use.

21.    Plaintiffs are the intended third-party beneficiaries of contracts between Ford and its dealers. The dealers are retailers and are not intended to be the ultimate consumers of the Vehicles, and they have no rights under the express warranty agreements provided with the Vehicles nor under implied warranties; the warranty agreements were designed for and intended to benefit the consumers (including Plaintiffs herein) only.

22.    The Warranty purports to cover the transmission. However, consumers have complained that their transmissions failed and required replacement both within and just outside the warranty period. Fusion owners and lessees have reported to the National Highway Traffic Safety Administration ("NHTSA") that Ford's authorized dealerships are replacing transmissions both within, and just outside, the 60,000-mile warranty period. When such replacements are not being provided under warranty, Plaintiffs have paid significant costs to Ford dealerships for new transmissions out of necessity.

23.    These defects and nonconformities substantially impaired the value of the Vehicles to Plaintiffs. This impairment stems from two basic sources. First, the

Vehicles fail in their essential purpose because they present an unreasonably high risk of sudden transmission problems, rendering them unsafe in a very material way. Second, the repair warranty has failed its essential purpose because Ford cannot repair the vehicles.

24.     Some of the causes of action to this Complaint arise out of the warranty obligations of Ford for a Vehicle purchased/leased by Plaintiffs and for which Ford issued a written warranty. Plaintiffs also allege that Ford concealed the transmissions' known defects from Plaintiffs. As detailed, *infra*, Ford also misrepresented to Plaintiffs the workings, performance, and reliability of said transmissions.

25.     Plaintiffs' Vehicles are all Ford Fusions from model years ("MY") 2010 to 2020, inclusive, or Escapes from MY 2009 to 2021, inclusive, equipped with a 6F35 or very similar transmission:

      a.  Most common among Plaintiffs' Vehicles is the 6F35 transmission, touted by Ford as offering more efficient power delivery, better fuel economy and smoother, quieter and more precise shifts than that of options provided by the competition. Plaintiffs who own/lease either a Fusion Sport or a Fusion with a 3.0 liter V-6 engine possess a model which includes as standard equipment the SelectShift control option for the 6F35 transmission. SelectShift allows the driver to shift gears using

hand controls without a clutch; upon information and belief, the transmission itself is the same 6F35 present in those without SelectShift with minimal custom alteration to achieve the results described. All automatic, non-hybrid Fusion MYs 2013 through 2020, and many from MYs 2010 to 2012, contain the 6F35 transmission (with or without a SelectShift).  The Escape MYs 2009 to 2019 also contain the 6F35 transmission;

b. A subset of the Escape vehicles in this case (MY 2020-2021) were equipped with an 8-speed transmission closely related to the 6F35: the 8F35. The 8F35 shares the same fundamental architecture and key component parts as the 6F35—and, as a result, shares the same fundamental Defects, which manifest in the same problems that plague Vehicles with the 6F35 transmission. As a result, vehicles with the 8F35 transmission are substantially similar to those with the 6F35 transmission and are properly included in this mass action.

c. Hybrids, decidedly far fewer if any exist among Plaintiffs' Vehicles, have an automatic transmission known as a continuously variable transmission, or "CVT"; and

d. Some Vehicles (MYs 2010 to 2012 Fusions, inclusive) may contain a different type of six-speed automatic transmission known as an Aisin

or Aisin Warner transmission. Upon information and belief, none of the

Plaintiffs' Vehicles appear to involve this transmission type.

26.     Purchasers and lessees of Vehicles equipped with manual transmissions

(i.e., "stick shifts") are not part of this litigation.

27.     Notwithstanding the various transmission types possibly used in

Plaintiffs' Vehicles, commonality exists in the Transmission Defects and the

manifestations thereof. Consistent, endemic problems in Fusions and Escapes

utilizing the 6F35 transmission have made them subject to countless lemon law

claims nationwide; Plaintiffs are informed, believe, and thereon allege that Ford has

unique knowledge and information of the extent to which 6F35 transmissions have

failed owners and lessees dating back at least as far as 2009. Owners and lessees of

Fusions and Escapes without 6F35 transmissions also report and present defects in

their Vehicles that mirror those of 6F35 failures. This refers to a core problem in

design and architecture wherein the unique body, engine, performance goals, and

overall mechanical demand of the vehicle place improper and damaging forces upon

the transmission, resulting in its failure. Plaintiffs believe that the complaints of

those owners and lessees of 6F35 Vehicles demonstrate clear, continued evidence of

the Transmission Defects; Plaintiffs also contend that failures in non-6F35 Vehicles have merit and are appropriately joined in these consolidated proceedings.[1]

28.   Many owners and lessees of automatic Fusion and Escape transmissions, including Plaintiffs herein, frequently complain their Vehicles take an inordinately long time to accelerate from a stop or low speed, exhibit a hard deceleration or "clunk" when drivers either slow down or accelerate at low speeds, shudder and shake or make a loud clunking or knocking sound when the transmission finally selects the appropriate gear ratio, and often fail to accelerate when needed. Finally, in addition to hesitations, slow response, and jerky/shuddering/bucking behavior, the lifespan of the transmission in Plaintiffs' Vehicles is unreasonably short.

29.   Despite variation in transmission type of their respective Vehicles, the transmission defects are inherent in and the same for each of the Plaintiffs' Vehicles, and were present, although potentially not symptomatic, at the time of sale.

---

[1] Should the Court fail to find sufficient commonality exists with respect to the 6F35, 8F35, CVT/Hybrid, and Aisin transmissions, Plaintiffs request an opportunity to dismiss any 8F35, CVT/Hybrid, and/or Aisin owners/lessees without prejudice and separately re-file their claims.

30.     Ford sold and leased Fusions and Escapes with defective 6F35 transmissions despite knowing of the defects and the danger they pose to consumers and other drivers, including Plaintiffs.

31.     Because Ford will not notify the public that the 6F35 transmissions are defective, Plaintiffs (as well as members of the public) are subjected to dangerous driving conditions that often occur without warning.

32.     Accordingly, Ford has chosen financial gain at the expense of consumer safety by failing to disclose its knowledge of these critical safety defects to consumers, including Plaintiffs.

33.     As early as 2009, if not before, Ford was aware of material facts as to the defective condition of the 6F35 transmission but failed to disclose the defect to consumers. As a result of this failure, Plaintiffs have been damaged.

34.     Moreover, as early as 2009, if not before, Ford knew or should have known about the safety hazard posed by the defective transmissions before the sale/lease of Plaintiffs' Vehicles based on pre-market testing, warranty claims, consumer complaints to NHTSA, consumer complaints made directly to Ford and its dealers, and other sources which drove Ford to issue Technical Service Bulletins ("TSBs") acknowledging the Fusion Transmission Defects. Ford should not have sold, leased, or marketed the Fusion and Escape, including Plaintiffs' Vehicles,

without a full and complete disclosure of the defective nature of the transmissions, and Ford should have voluntarily recalled the Fusions and Escapes long ago.

35. Each of the Plaintiffs in this Complaint requested or desired that Ford fix the defective transmission in their Vehicle, but Ford could not or would not permanently repair it. Because Ford has not devised a comprehensive and effective solution for the Transmission Defects, any repairs Ford attempted are merely temporary stop-gap measures destined to fail in the future.

## Design and Development of the Transmissions

36. The predecessor of the 6F35 transmission was the general 6F transmission architecture, which Ford developed with General Motors for production in calendar year 2006 for MY 2007 vehicles. Exhibit A at 1, General Motors Hydra-Matic & Ford New FWD Six-Speed Automatic Transmission Family; Charles Lewis, General Motors Powertrain; Bryce Bollwahn, Ford Motor Company; SAE 2007 World Congress, Detroit, Michigan; April 16-19, 2007.

37. The transaxle was developed jointly, with approximately 85 percent of the hardware shared or common. Id. The result was described as "a common approach to design and manufacturing engineering. Despite using common suppliers for a majority of parts to leverage economies of scale, both companies are utilizing unique controls and calibrations to tailor the shift feel of the transaxle to fit their brand characteristics." Exhibit B, New Fuel-Saving 6-Speed Transaxle To Propel

16

Ford Edge To Head Of Crossover Utility Class; Ford Motor Company; November 9, 2005. Ford's version of this front wheel drive six-speed automatic transmission was the 6F50, and the higher capacity variant, the 6F55. Its initial application was to be the MY 2007 Lincoln MKX and Ford Edge. Exhibit A, at 1.

38.    According to a press release introducing the 6F, the new transmission promised better fuel economy and better shifting performance. Ford touted a number of features that purported to make its version of the 6F transmission unique from the competition, representing the transmission as follows:

a.    "a wide span of 6.04 between the transaxle's lowest and highest gear ratio" to deliver "improved fuel economy and improved acceleration";

b.    "a low 4.48 gear for satisfying acceleration at launch and a tall, 0.74 overdrive for exceptional fuel economy";

c.    Smaller ratio step sizes to enable smoother shifts and reduce noise, vibration, and harshness;

d.    Extensive use of CAE modeling on the transaxle case, resulting in a solid housing for the transaxle components that included added strengthening ribs to "minimize radiated noise and vibration" and additional thickness in some areas of the case for added strength;

e.    "three simple planetary gear sets are designed for robustness and use low-pinion pitch line velocities to reduce noise";

17

f. "All gears are cut using high-precision CNC hobbing, grinding, and honing machines. The transfer and final drive gears are hard-treated for strength, and subsequently ground and honed to provide a more precise fit, thus reducing gear whine";

g. First use of an off-axis pump, which takes up much less space in the transaxle;

h. Use of "only plate clutches for each shift to deliver quiet, smooth shifts throughout the entire ratio span"; and

i. Ford proprietary control strategies that use "powerful adaptive algorithms" for "fast, responsive shifts throughout the operating range that are smooth yet crisp, which delivers an invigorating driving experience to the customer."

**Exhibit B.**

39.     The following year, Ford installed the 6F50 on the 2008 models of the Ford Taurus, Taurus X, Edge, Mercury Sable, and Lincoln MKX and 2009 Ford Flex and Lincoln MKS.

40.     In 2008, Ford announced that it was introducing a new variant, the 6F35, to be initially applied to the 2009 Model Year Ford Escape, Mercury Mariner, and Mazda Tribute vehicles. It was also slated to be applied to 2010 Model Year Ford Fusion and Mercury Milan. **Exhibit C,** *Ford Begins Production of New Mid-*

*Range Six Speed Automatic*; Auto Blog; Sam Abuelsamid; May 8, 2008. Ford touted this new 6F35 variant, like the original 6F transmissions, as a boon to fuel economy, while providing smooth, efficient shifting: "The new 6F35 front-wheel-drive transmission offers a 4 to 6 percent improvement in fuel economy versus conventional 4- and 5-speed automatics, in addition to improved acceleration." **Exhibit D**, *Ford's New 6-Speed Automatic Transmission Offers 4-6 Percent Fuel Economy Improvement;* press release; Ford Motor Company; May 7, 2008, PDF pg. 3.

41.     Again with the 6F35 transmission, similar to the 6F, Ford boasted a host of improvements:

   a.   A greater gear span, that allows the engine to operate at more optimum combinations of speed and load;

   b.   Patented one-way rocker clutches allow for smoother, quieter, more precise shifts. Working like a socket wrench, the rocker clutches spin freely one way, but securely lock in the other direction. As result, gears are engaged and disengaged more quickly;

   c.   A chain-driven secondary gear set, with specifically designed with random-size links that reduces noise, vibration, and harshness;

   d.   Unique pump-filter interface that eliminates pump whine; and

e. Fluid fill for life – a special blend of transmission fluid is maintenance free for the life of the gearbox.

**Exhibit D**, at 3.

42.     The news coverage of this transmission consistently shows that most, if not all, of the 6F variants were produced at the Van Dyke Transmission Plant, including the 6F35 and the CVT.

43.     In 2012, Ford also produced a continuously variable transmission ("CVT") for its hybrid vehicles, the Hybrid HF35. The HF35 was introduced in the 2013 C-MAX Hybrid, Plug-In Ford C-MAX Energi, Fusion Hybrid, Ford Fusion Energi, and the Lincoln MKZ. **Exhibit E**, *Ford Says Homegrown CVT Key to Speed, Fuel Economy of New Hybrids*; Ward's Auto; August 17, 2012.

44.     The Transmission Defects are, upon information and belief, part of an aggressive effort by the manufacturer to provide variety to vehicle builds, which has occurred at the expense of reliability. The transmissions used in Plaintiffs' Vehicles failed to provide that reliability due in part to their need to be interchangeable at the build stage. Ford produced multiple, inadequate transmission solutions that have consistently failed owners and lessees. The effort to build "both HF35 [the hybrid CVT], and 6F35, a conventional six-speed automatic transmission, simultaneously" while using a variety of transmission systems in one common body/unit has been one of several factors resulting in a flawed transmission design. **Exhibit F,** *Ford*

20

*Celebrates Production of First North American FWD Hybrid Transmission*, Torque News press release; Don Bain; Aug. 2, 2012. These failures manifest in the Transmission Defects, including failing fluid seal integrity, throttle body deficiencies, driveshaft failure and the need for repeat PCM updates to try to limit the problems caused by overall design and architecture issues.

**Ford Aggressively Marketed the Fusion, the Escape, and Their Transmissions**

45.   Ford aggressively marketed the Fusion, particularly its much-touted transmissions, and continued to do so long after discovering, or having sufficient notice to discover, the Transmission Defects.

46.   In touting the 2010 Fusion, Ford further pushed the narrative that customization was critical to its marketing effort on the vehicle: "Manual or automatic – it's time to shift your state of mind. Take the new 6-speed manual for a spirited drive. Pair the smooth-shifting 6-speed automatic with the 2.5L I-4 engine for max mileage. Or let the new 6-speed SelectShift Automatic$^{TM}$ choose the optimal gear for any situation – while giving you the power to shift for yourself whenever you want. It's the best of both worlds." **Exhibit G**, 2010 Marketing Brochure, at 3.

47.   Ford emphasized the new 2010 Fusion transmissions, and variations available, to dealers as a selling point: "New 6-speed automatic transmission includes Grade Assist Mode, is available on the 2.5L Duratec I-4 engine and is standard with the 3.0L V6 engine. All-new 6-speed SelectShift Automatic

21

transmission is standard on Fusion SPORT and standard with the 3.0L V6, allowing the driver the choice of a clutchless manual shifting mode." **Exhibit H**, 2010 Tech Info, at 8.

48.     Despite being aware of the Transmission Defects, Ford continued to tout the transmissions in marketing materials for the 2011 Fusion: "Get up to 33 mpg hwy with the I-4 and a smooth-shifting 6-speed automatic transmission. . . . The V6 is mated to a 6-speed SelectShift Automatic<sup>TM</sup> that chooses the optimal gear for any situation, while giving you the power to shift for yourself whenever you want. It's the best of both worlds." **Exhibit I**, Ford 2011 marketing brochure, at 3 (footnote omitted).

49.     Tech info on the 2011 Fusion also explicitly highlighted the defective six-speed automatic transmission, misrepresenting it as follows:

- Wide 6.04:1 gear ratio delivers good fuel economy and performance;

- Includes Grade Assist Mode;

- Short first and second gears provide impressive launch and acceleration;

- Tall overdrive gear is designed to provide better fuel economy;

- Short steps between intermediate gears enhance performance and feel by finding the right gear for the most-efficient operating conditions;

- Every part of the transmission is designed to provide smooth, quiet operation;

- Transmission fluid is "filled for life" to help lower cost of ownership.

**Exhibit J**, 2011 Fusion tech info, at 10.

50.   Ford's 2011 Fleet Guide, which discusses multiple models, also specifically highlights the new six-speed transmissions found in the Ford Fusion. Under the heading, "Interior Quietness," Ford states that its "new 6-speed automatic transmissions are subjected to hundreds of hours of durability and noise, vibration and harshness (NVH) testing." **Exhibit K**, 2011 Fleet Guide, at 4. Ford also claims that it is "boosting transmission efficiency by shifting to advanced 6-speed gearboxes. With more gears, Ford powertrains have a broader range from which to select the optimum mix of engine torque and horsepower for different driving situations. Bottom line: better acceleration, better mileage." *Id.*, at 5. Ford emphasizes that the 2011 Fusion contains Ford's new "6-speed SelectShift Automatic™ transmission." *Id.*, at 14.

23

51.    Ford's 2012 Fusion marketing brochure touts the six-speed automatic transmission's contribution to "fuel economy a similarly equipped Camry and Altima can't beat," and describes the SelectShift automatic transmission as "the best of both worlds. Shift whenever you want, or let it choose the best gear for you." **Exhibit L**, 2012 Marketing Brochure, at 4, 10.

52.    The tech info for the 2012 Fusion describes the following "key features" of the six-speed automatic transmission: "Engineered for quiet and high quality; Hard-finish gears for precise fit and reduced gear whine; Die-cast aluminum housing helps reduce noise; Optimized pump porting helps reduce transmission fluid pressure "ripple" and noise; SelectShift Manual Mode allows driver to change gears, up or down, without using a clutch and automatically protects against damaging shift scenarios." **Exhibit M**, 2012 Fusion Tech Info, at 10.

53.    Ford continued to tout the Fusion and its transmissions year after year, despite the known-but-concealed Transmission Defects. Ford marketed the 2013 Fusion as possessing "instantaneous low-end torque responsiveness and virtually no turbo lag," and able to "squeeze maximum power and efficiency from each drop of fuel." Ford described the six-speed SelectShift Automatic as an "advanced technolog[y]" that would "help Fusion achieve 37 mpg hwy. A 175-hp 2.5L iVCT I-4 engine with 6-speed SelectShift Automatic is standard, rounding out an

impressive gasoline engine lineup." **Exhibit N**, 2013 Fusion Marketing Brochure, at 4 (footnotes omitted).

54.     Again in 2014, Ford pushed the defective transmissions as providing benefits for consumers: "Bridges the gap between power and efficiency. Fusion supplies both.  With robust low-end torque and virtually no turbo lag, EcoBoost technology squeezes maximum power from each drop of fuel. Along with impressive efficiency. Equipped with a new 1.5L EcoBoost that's mated to a 6-speed SelectShift® automatic transmission, Fusion has an EPA estimated rating of 36 hwy mpg. . . . For performance-minded drivers, a 240-hp, 2.0L EcoBoost teams with a SelectShift automatic, whose 6 speeds can be paddle shifted from the steering wheel." **Exhibit O**, 2014 Fusion Marketing Brochure, at 4 (footnotes omitted).

55.     Ford made similarly misleading claims in the marketing brochures for the 2015, 2016, and 2017 Fusions. *See*, *e.g.*, **Exhibit P**, 2015 Fusion Marketing Brochure, at 4 (claiming that the SelectShift transmission would please "performance-minded drivers"); **Exhibit Q**, 2016 Fusion Marketing Brochure, at 3 and 6 (in addition to boosting power and efficiency, SelectShift transmission would "[u]p the fun-to-drive factor even more"); and **Exhibit R**, 2017 Fusion Marketing Brochure, at 5 (listing the "thoughtfully redesigned" SelectShift transmissions as one reason why the "Fusion engine lineup has never been stronger").

56.     Ford made the same or substantially similar representations about the Escape as those made about the Fusion, summarized above.

57.     The difference between Ford's representations about the Fusion and Escape transmissions and Plaintiffs' actual customer experience is breathtaking.

## The 6F35 Transmission Defect

58.     Modern automatic transmissions are comprised of complex, interconnected arrays of software and hardware systems which must operate together to ensure proper gear shifts. The Transmission Defects plaguing the Plaintiffs' Vehicles reflect a fundamental design failure with respect to the software, hardware, and how they work together. To understand why, it is first necessary to provide a brief background of the software and hardware systems comprising modern automatic transmissions, along with the consequences of their failure to operate as intended.

### *The software and command-and-control system.*

59.     At its core, the primary function of an automatic transmission is to select the appropriate gear ratio that optimizes the vehicle's performance and efficiency based on various parameters such as vehicle speed, engine load, and driver input. Achieving this requires the transmission's control software to continuously monitor and analyze data from multiple sensors throughout the vehicle, including those measuring engine speed ("RPM"), throttle position, vehicle speed, and more.

60.    The command-and-control system operating the transmission is comprised of the Engine Control Module/Unit ("ECM"/"ECU"), Transmission Control Module/Unit ("TCM"/"TCU"), and Powertrain Control Module/Unit ("PCM"/"PCU"), which host the software and calibration values.

61.    The software is the framework providing for the gear shift sequences, logic, and timing. The software also gathers data, including feedback from an issued command.

62.    The calibration, in turn, refers to the individual values that are input into that software to adjust for variations in the build of the vehicle, component aging, and other factors requiring tuning of the software over time.

63.    The command-and-control system must be sufficiently robust to accommodate the way vehicles are driven in the real world and must account for, among other things:

> a.  Multiple Gear Ratios: Modern transmissions, with their increased number of gears, offer a wider range of gear ratios. This breadth enables better fuel efficiency and improved performance but also requires the software to make more decisions about when and how to shift gears. The software must determine the optimal timing for gear changes to ensure smooth transitions, all while minimizing fuel consumption and maximizing performance.

27

b. Adaptive Shift Strategies (a/k/a Adaptive Learning or Learning Algorithms): The software must account for various driving styles and conditions, adjusting its shift strategy accordingly. For instance, it might choose a different shift pattern for aggressive driving compared to economical driving. This adaptability requires sophisticated algorithms capable of learning and predicting the best shift points based on real-time data.

c. Hardware Limitations and Sequences: The physical design of the transmission hardware imposes certain constraints on how and when gear shifts can occur. For example, shifting from one gear to another might necessitate passing through intermediate gears or require specific timing to ensure the gears engage smoothly without causing wear or damage. The software must navigate these hardware-imposed sequences, managing the actuation of clutches, valves, and other components to execute gear changes smoothly.

d. Fault Management and Diagnostics: Beyond managing gear shifts, the software also plays a crucial role in monitoring the health of the transmission. It must detect and diagnose faults, sometimes adjusting the transmission's operation to prevent damage while alerting the driver to maintenance needs. This adds another layer of complexity, as the

28

software must integrate robust fault detection and management routines.

64.    In essence, the software's complexity is a direct response to the demands of managing an advanced mechanical system under a wide range of operating conditions and constraints. It must not only ensure that gear shifts occur at the optimal times but also adapt to the limitations and requirements of the transmission's hardware, all while prioritizing efficiency, performance, and reliability.

65.    The command-and-control system can be defective for a variety of reasons, including errors in the software coding and insufficiencies in the computer chips (e.g., deficient memory, deficient processing speed, etc.).

66.    Another potential failure in the command-and-control scheme is a divergent learning algorithm, in which the learning algorithm produces results that are inconsistent with the software's decision logic.

67.    An insufficiently robust command-and-control system (*i.e.*, a defective command-and-control system) impairs the ability of the transmission to properly shift gears with the right timing and in the right sequences.

68.    The problems affecting Plaintiffs' vehicles—including delayed acceleration, harsh acceleration, shuddering, juddering, lurching, surging, and the other common complaints discussed throughout this Complaint and cited in the

consumer complaints to NHTSA summarized below—are consistent with improperly designed and executed software code, insufficient computer chips, deficient calibration values, divergent learning algorithms, and other characteristics of a defective command-and-control system.

### *The transmission hardware.*

69.    Modern automatic transmissions are complex electrohydraulic systems comprised of thousands of hardware components. Those components include the clutches, friction plates, reaction discs, solenoids/valves, sensors, automatic transmission fluid ("ATF"), and other parts.

70.    The ATF is the lifeblood of the transmission. It is pushed and allowed to flow throughout the system at the appropriate times in order to effectuate gear shifts by clamping the pertinent clutches together at the pertinent times.

71.    The ATF, in turn, is channeled throughout the transmission via the opening and closing of electronic solenoids (a/k/a valves) which allow the ATF to flow and clamp the pertinent clutches at the desired timing.

72.    The clutches include friction plates and reaction discs which are pressed together when the clutch is applied. The friction plates contain groove patterns to allow the two to remain clamped together.

73.    Other key components include: the torque converter, which connects the primary power source to the automatic transmission; the oil pump, which

pressurizes the ATF; and the one-way rocker clutch, which rotates in just one direction and locks in another direction, which helps to mitigate shift shock and slipping as a result of low oil pressure when the vehicle starts.

74.    An insufficiently robust hardware system (*i.e.*, a defective hardware system) impairs the ability of the transmission to properly and reliable change gears. For instance, a solenoid which fails to actuate at the correct time can cause a delayed gear shift because it does not release ATF when needed to clamp the pertinent gears.

75.    Moreover, the hardware components must be sufficient not only in isolation, but also compatible with one another. For instance, the ATF and the clutch plates must have frictional characteristics compatible with one another, with those characteristics including the chemical composition of each and the viscosity of the ATF. If the clutch plates and ATF are mismatched, the clutch may not engage smoothly, which can manifest as shuddering or juddering during gear shifts, slipping (where the engine revs but the increase in vehicle speed is delayed), or even failure to engage gears.

76.    The problems affecting Plaintiffs' vehicles—including delayed acceleration, harsh acceleration, shuddering, juddering, lurching, surging, and the other common complaints discussed throughout this Complaint and cited in the consumer complaints to NHTSA summarized below—are consistent with deficient solenoids which do not actuate at the correct times, friction and groove plates that

31

are unable to properly clamp together as required, ATF that is not properly matched to the system's needs, undersized oil pumps that cannot pressurize the ATF to the extent required, and other characteristics of a defective hardware system.

### *System failure: software and hardware unable to work together.*

77.    Transmissions can fail because a single component is defective, several components are defective, or because the design as a whole is insufficiently robust such that its individual components simply are not able to operate together as needed to effectuate proper shifts.

78.    In other words, sometimes a shift problem can be isolated to a single part that can be swapped out with another (e.g., a sticky solenoid that fails to actuate at the right time could be remedied by replacing it with another solenoid).

79.    But other problems are the result of multiple deficient components or fundamental mismatches between the software and hardware. For instance, a software architecture that would allow for proper control over one transmission might be completely unable to provide reliable control over one with different hardware which requires different timing and parameters for gear shifts. In that latter scenario, neither the hardware nor the software would necessarily be defective standing alone. However, their implementation together would nonetheless result in a defective design because the software and hardware would be unable to operate properly with one another.

80.     In other words, modern automatic transmission engineering embodies a balancing act, trading off between hardware quality and software sophistication to ensure an overall cohesive, robust design. This balancing act is pivotal because it acknowledges that the performance and reliability of the transmission is contingent not merely on the individual sufficiency of its software or hardware components but on their harmonious integration and mutual support.

81.     In this context, and as described above, the hardware refers to the physical components of the transmission system—gears, valves, and sensors, among others—whose quality and design precision directly impact the system's efficiency and durability. On the other hand, the software is responsible for controlling these components, making real-time decisions to adjust gear ratios, manage power distribution, and optimize overall vehicle performance based on a multitude of sensors and inputs.

82.     The engineering challenge lies in ensuring that the software is adept enough to compensate for any hardware limitations without overcomplicating the system or introducing new points of failure. Similarly, high-quality hardware can reduce the burden on software, allowing for simpler, more reliable control strategies. Even with no single component (software or hardware) being defective in isolation, a mismatch between the two—such as overly ambitious software algorithms attempting to control underperforming hardware, or superior hardware being

33

underutilized by simplistic software—can lead to a transmission system that is fundamentally defective.

83.    This type of defect arises from the system's inability to perform its intended function reliably under all expected conditions. It is a systemic failure, rooted in the interdependence of software and hardware. Such a failure highlights the necessity of viewing the transmission not as a collection of discrete parts but as an integrated whole. The ultimate goal is to engineer a system where hardware and software are not just compatible, but synergistic, enhancing each other's strengths and compensating for weaknesses. This systems-level approach is critical for avoiding the pitfalls of focusing too narrowly on component-level performance, ensuring instead that the transmission reliably and properly operates as a unified, cohesive system.

84.    As detailed below, Ford issued a litany of technical service bulletins in hopes of correcting various problems with the 6F35 transmission.

85.    The number of TSBs is consistent with an inability of the software and calibration team to implement code and calibration values sufficient to ensure reliable and proper control over the transmission.

86.    The inability of the engineers to develop a reliable command-and-control system indicates that the problem with the 6F35 transmission is not isolated to a single hardware component or single aspect of the software operation.

87.     For instance, if the problem was solely due to a bad solenoid design, Ford could have issued a service bulletin to simply swap out those solenoids with properly functioning ones in order to completely eliminate the problem.

88.     Similarly, if the problem were simply isolated to a bad calibration value, a single calibration update would solve the issue. But that's not the case given the extensive history of service bulletin recalibration efforts summarized below.

89.     By way of analogy, the technical history of the 6F35 transmission is similar to that of a classic Whac-A-Mole game; *i.e.*, each time Ford implemented a proposed fix via a bulletin, a new issue emerged and/or that same issue was not completely resolved.

90.     Additionally, if the defect were confined to a single component or calibration value, then a discrete symptom list would be expected.

91.     Here, however, the Plaintiffs' Vehicles have exhibited a wide array of symptoms which are consistent with the wide array of symptoms contained in complaints submitted to NHTSA, as stated below (e.g., delayed acceleration, shudder, judder, harsh engagement, clunking, violent jerking, flaring, lurching, surging, etc.). Moreover, the defects manifest under varying circumstances, including on the first shift of the day, after a cold start, during the reverse-to-drive maneuver, between 1-2 shifts, 2-3 shifts, 5-6 shifts, etc., as seen in the attached NHTSA complaints (**Exhibits S** and **T**) and in the bulletins attached at **Exhibit U**.

92.   The wide-ranging defect manifestations point towards fundamental flaws in the design that are not isolated to a single part or calibration value, and as a result manifest in varying ways and under varying circumstances.

93.   In short: the defects plaguing the 6F35 transmissions are fundamental in nature. The design and execution of the software and hardware simply did not produce a cohesive system that was capable of reliable and proper control. These fundamental flaws would be uniquely known to the engineers working within Ford, who are technical subject matter experts with experience, education, and access to data and documents not available to the public, including Plaintiffs.

**The Transmission Defects Pose an Unreasonable Safety Hazard**

94.   The Transmission Defects pose an unreasonable safety hazard. Hesitations, slow/no responses, hard braking, or catastrophic transmission failure impair drivers' control over their vehicles, which significantly increases the risk of accidents. For example, turning left across traffic in a vehicle with delayed and unpredictable acceleration is unsafe. In addition, these conditions can make it difficult to safely change lanes, merge into traffic, turn, brake slowly, accelerate from a stop light/sign, and accelerate onto highways or freeways.

**Complaints Lodged with NHTSA**

95.   Federal law requires automakers like Ford to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement

(backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

96.   Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including and especially those that are safety-related. *Id.* Thus, Ford knew, or should have known, of the many complaints about the Transmission Defects logged by NHTSA's Office of Defects Investigation ("ODI"), and the content, consistency, and large number of those complaints alerted, or should have alerted, Ford to the Transmission Defects.

97.   For years, owners and lessees of Fusions have publicly complained to the United States government about the Transmission Defects. The ODI is an office within NHTSA. ODI conducts defect investigations and administers safety recalls to support NHTSA's mission to improve safety on the Nation's highways. All automobile manufacturers routinely monitor and analyze NHTSA complaints because this information is used in determining if a safety issue exists or, at minimum, if a recall is warranted due to product issues. Indeed, automobile

manufacturers are required by law to report any potential safety defects to the United States government and its consumer-protection entities.

98. Numerous complaints made to NHTSA and elsewhere online demonstrate that the Transmission Defects in the Fusion are widespread and dangerous, and that they manifest without warning. The complaints also indicate Ford's awareness of the problems with the transmissions and the Transmission Defects, including how dangerous they are for drivers. Numerous complaints to NHTSA about the Transmission Defects are attached: 423 complaints relating to the 6F35 transmission in **Exhibit S**, and 150 complaints relating to the CVT in **Exhibit T.** These safety complaints detail the same Transmission Defects Plaintiffs complain of. Spelling and grammar mistakes remain as found in the originals.

99. Plaintiffs point to the numerous reports of similar Transmission Defects contained in the attached NHTSA complaints as evidence of the wide-spread nature of the Transmission Defects and Ford's notice and knowledge regarding same.

**Ford Had Superior and Exclusive Knowledge of the Transmission Defects**

100. Ford had superior and exclusive knowledge of the Transmission Defects and knew or should have known that the defects were not known or reasonably discoverable by Plaintiffs before they purchased or leased their Vehicles.

101. Plaintiffs are informed and believe and based thereon allege that before Plaintiffs purchased/leased their Vehicles, and since at least 2009, Ford knew about

the Transmission Defects, through access to pre-release testing data, early consumer complaints to Ford and its dealerships serving as its representatives for warranty-covered repairs, testing conducted in response to those complaints, high failure rates and replacement part sales data, consumer complaints to NHTSA (which Ford routinely monitors), by developing Technical Service Bulletins in an effort to address the Transmission Defects, from consumer complaints and discussion data collected and analyzed by Ford at significant cost by the company, and through other aggregate data collected from Ford dealerships.

102.   Ford is uniquely knowledgeable in the design and manufacture of consumer vehicles. As an experienced manufacturer, Ford conducts tests, including pre-sale durability testing, on incoming components, including transmissions, to verify the parts are free from defect and align with Ford's specifications. Thus, Ford knew or should have known the transmissions were defective and prone to placing drivers in dangerous positions due to the inherent risk of the defects.

103.   Additionally, on information and belief, Ford knew of the impact of these defects from the sheer number of reports received from its dealerships. Ford interacts with individual dealerships to identify potential common defects and has received numerous reports regarding the Transmission Defects, which led Ford to develop and release (to dealerships—not the public) the related TSBs. Ford also collects and analyzes field data including, but not limited to, repair requests made at

dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

104.   Ford maintains a customer service hotline, with dedicated call centers located in Melbourne, FL, and elsewhere to receive and address consumer concerns regarding its products. These calls can result in repair escalations, warranty extensions, buyback reviews, etc. Data collected regarding the nature of calls, the products causing concern, and more would be in the exclusive possession of Ford Motor Company, providing the company with notice of the Transmission Defects and the impact thereof on owners and lessees.

105.   Finally, on information and belief, Ford knew of the public's concerns regarding concerns regarding defects from the sheer number of online postings made about the topic on social media platforms, including forums, blogs, social platforms and more, on which data was collected on behalf of the company by a third-party vendor. Ford regularly interacts with individual posters on these digital landscapes to identify potential common defects and regularly receives reports regarding consumer concerns via the social media customer service programs it actively maintains. On information and belief, Plaintiffs allege Ford also collects and analyzes data from online postings including, but not limited to, product failure rates,

concerns regarding failed repair efforts, repair requests made at dealerships, consumer experiences shared with online customer service agents, and more.

106.   Ford's warranty department similarly analyzes and collects data submitted by its dealerships in order to identify repair trends in its vehicles. Upon information and belief, to secure reimbursement for warranty covered repairs, Ford's dealerships must provide the manufacturer with detailed documentation of the problem or condition and the fix employed to correct same.

107.   Indeed, shortly after the Fusion and Escape were introduced to consumers, including Plaintiffs, Ford began rolling out a continuous series of TSBs in respect of the Transmission Defects and/or powertrains. *See* **Exhibit U**, Compilation of Fusion Transmission TSBs.

108.   The TSBs detail the same Transmission Defects that Plaintiffs complain of here, proving that Ford knew well that its Fusion transmissions were not functioning as marketed or expected, and that they were defective and not fit for their intended use. They also suggest that Ford was aware of some potential causes of the Transmission Defects.

109.   To the extent a given transmission model is similar from year to year, and relies on similar components, the TSBs from previous model years did or should have alerted Ford that similar Transmission Defects would manifest in current and future model years using the same transmissions or transmission components. Ford

41

had the superior and exclusive knowledge of the degree to which Fusion transmissions were similar from model year to model year.

110.   One of the earliest TSBs relating to the Transmission Defects was TSB 9-18-13, issued by Ford on September 21, 2009, and entitled, "6F35- Harsh 3-1 or 2-1 Rolling Stop Downshift- Hesitation During Low Speed Maneuvers - 2-3 or 3-4 Upshift Flare Cold Starts -No DTCs."[2] **Exhibit U**, TSB Compilation, at 1. This TSB shows Ford's knowledge that some 2009 Escapes and 2010 Fusions "exhibit harsh 3-1 or 2-1 rolling stop downshift or downshift hesitation during throttle tip-in/tip-out 3-4-2 downshift maneuver at vehicle speeds between 20-40 MPH (32-64 Km/h). Also may have 2-3 or 3-4 upshift flare during cold starts (engine off for 2 or more hours)." Ford suggests reprogramming the powertrain control module ("PCM") to address the problem. *Id.*

111.   Multiple other TSBs were released relating to Transmission Defects in just the 2009-10 Escapes and 2010 Fusions equipped with 6F35 transmissions:

a. TSB 10-1-7, released on February 1, 2010, relating to "Harsh Engagements/Shifts";

---

[2] DTC stands for Diagnostic Trouble Codes.

b. TSB 10-12-12, released on July 5, 2010, relating to "malfunction indicator light on 5th gear drive away (Transmission Failsafe) after using the Grade Assist option on a steep downgrade";

c. TSB 10-21-9, released on November 8, 2010, relating to "6F35 Transmission - Harsh 2-3 Upshift - 3-4 Upshift Flare – Harsh Rolling Engagement"; and

d. TSB 11-12-8, released on December 22, 2011, relating to "Harsh 1-2 Shift, 2-3 Shift Flare or Intermittent Delayed or Harsh First Engagement with No DTCs."

**Exhibit U**.

112.   Other TSBs relate to similar Transmission Defects in other Fusion and Escape model years, each showing that Ford knew, from before the TSB's issue date, of the Transmission Defects but did not share that knowledge with Plaintiffs or other prospective consumers. The TSBs in **Exhibit U** describe Ford's knowledge of the following manifestations of the Transmission Defects:

a. "2-3 Shift Flare Occurs When Vehicle is Cold or an Intermittent Delayed/Harsh First Engagement," TSB 11-9-9 regarding the 6F35 in 2011 Escapes and Fusions, issued on Sept. 20, 2011, *Id.*;

b. "Intermittent Harsh 1-2 or Harsh 5-6 Shift, Late 4-5 (2.5L) or 4-5 Shift Flare Cold," TSB 12-6-12 regarding the 2011-2012 Escape and Fusion's 6F35, issued on June 30, 2012, *Id.*;

c. "6F35 Transmission - Fluid Leak at Left Side Halfshaft Seal" "due to wear on the transmission case bushing," TSB 16-0043 regarding the 2009-2014 Escapes and 2010-2014 Fusions, issued on March 15, 2016, *Id.*;

d. "6F35 - Harsh Transmission Engagement During Active Start/Stop Event and DTC P0C27," which "may be caused by air entering the transmission fluid auxiliary pump supply tube," TSB 16-0111, regarding the 2014-2016 Fusions, issued on September 1, 2016, *Id.*;

e. "Rolling Reverse to Drive Engagement Shudder" on 2015-16 Escapes and 2016 Fusions with a 2.0L gasoline turbocharged direct injection engine, TSB 16-2037, issued on September 14, 2016, *Id.*;

f. "2.5L- Drive to Reverse Delayed Engagement/Shudder" on 2016 Escapes and Fusions with a 2.5L engine "when the throttle is applied during reverse engagement," TSB 16-0125, issued on September 21, 2016, *Id.*; and

g. "the studs that retain the torque converter to the engine flexplate may have been improperly welded . . . [and] may detach from the torque

44

converter leading to loss of motive power," TSB 17S16 – Supp 2, issued on June 12, 2018, *Id.*

113. On information and belief, each TSB issued by Ford was approved by managers, directors, and/or other executives at Ford. Therefore, on information and belief, Ford's managers, directors, and/or executives knew, or should have known, about the Transmission Defects, but they refused to disclose the Transmission Defects to prospective purchasers and owners/lessees, and/or otherwise actively concealed the Transmission Defects.

114. Reasonable consumers, like Plaintiffs, expect that a vehicle's transmission is safe, will function in a manner that will not pose a safety risk, and is free from defects. Plaintiffs further reasonably expect that Ford will not sell or lease vehicles with known safety defects, such as the Transmission Defects, and will disclose any such defects to its consumers when it learns of them. Plaintiffs did not expect Ford to fail to disclose the Transmission Defects to them and to continually deny their existence.

## **Ford's Concealment of the Transmission Defects**

115. Ford never disclosed the notice and knowledge reflected in its TSBs cited herein to any Plaintiff or other prospective purchaser/lessee of a Fusion or Escape.

45

116.   Ford never disclosed the Transmission Defects to Plaintiffs prior to or at any point during the ownership/lease of their Vehicles, and Ford has never instructed its dealerships to disclose the Transmission Defects to drivers or potential purchasers or lessees of Fusions and Escapes. With respect to those Plaintiffs that purchased a previously owned Fusion with Transmission Defects, which had been repaired for same by a Ford authorized dealership, the existence of said repairs was not disclosed as required to said Plaintiffs.

117.   The Transmission Defects were not known or reasonably discoverable by the Plaintiffs before purchase or lease of their Vehicles; or without experiencing the defects first-hand and exposing themselves to an unreasonable safety risk.

118.   Ford has remained silent even as it issued service bulletins, conducted internal investigations, and witnessed the failure of the transmissions via its dealership service records and documented customer complaints.

119.   Ford's refusal to publicly acknowledge the Transmission Defects created widespread misinformation and confusion. Ford's failure to notify consumers, dealerships, or auto-technicians of known defects in the Fusion transmissions prevented early and effective diagnosis and repair of the Transmission Defects.

120.   As a result of Ford's inaction and silence, Plaintiffs were entirely unaware that they had purchased/leased and continued to drive an unsafe and

unreliable vehicle. As Ford knows, a reasonable person would consider the existence of the Transmission Defects to be a material and important fact to be disclosed at the time of purchase/lease; had the Transmission Defects been disclosed prior to the time of purchase/lease, Plaintiffs would not have purchased/leased their Vehicle, or would have paid substantially less for it.

## Ford Has Actively Concealed the Transmission Defects

121.   Despite its knowledge of the Transmission Defects in the Fusions and Escapes, Ford actively concealed the existence and nature of the Defects from Plaintiffs and instructed its dealer-agents to do likewise. Specifically, Ford failed to disclose and actively concealed the following at and after the time of purchase, lease, or repair:

   a.  all known material defects or material nonconformities of the Vehicles, including the defects pertaining to their transmissions;

   b.  that the Vehicles, including their transmissions, were not in good working order, were defective, and were not fit for their intended purpose in that the Transmission Defects seriously compromise the Vehicles' safety, can render the Vehicles inoperable, and/or dramatically reduce the life and range of the Vehicles;

   c.  that the Vehicles and their transmissions were defective, despite the fact that Ford learned of such defects as early as 2009, if not before; and

47

d. that consumers had expressed directly to Ford, or indirectly through channels monitored by Ford, their concerns about Transmission Defects in their Fusions.

122. When consumers present their Fusions and Escapes to an authorized Ford dealer for transmission repairs, rather than repair the problem under warranty, Ford dealers either inform consumers that their vehicles are functioning properly or conduct repairs that merely mask the Transmission Defects and fail to provide a permanent fix to the issue.

123. Ford has caused Plaintiffs to expend money and/or time at its dealerships to diagnose, repair, or replace the Vehicles' transmissions and/or related components, despite Ford's knowledge of the Transmission Defects. When the Vehicles are outside of Ford's warranty coverage, significant additional expense is incurred by Plaintiffs.  Furthermore, many consumers who have their Vehicle's transmission replaced with another 6F35 soon experience manifestations of the Transmission Defects from the replacement transmission.

### Ford's Dealers Are Ford's Agents, and All Warranties Were Intended To Benefit Plaintiffs—Not the Dealers

124. The vehicles in this case were sold by Ford through its nationwide network of authorized dealers, franchisees, representatives, and other agents.

125. Ford maintains extensive control over its authorized dealers, franchisees, representatives, and other agents which operate within its authorized network, as evidenced by the fact that:

a. The warranties provided by Ford for the defective vehicles direct consumers to take their vehicles to Ford authorized dealerships for repairs and services;

b. Ford dictates the nature and terms of the purchase contracts entered into between consumers and Ford's authorized dealers, franchisees, representatives, and other agents;

c. Ford directs its authorized dealers, franchisees, representatives, and other agents as to the manner in which they can respond to complaints and inquiries concerning defective vehicles; and

d. Ford has entered into agreements and understandings with its authorized dealers pursuant to which it authorizes and exercises substantial control over the operations of its dealers and its dealers' interactions with the public.

126. An example of Ford's dealer agreements which provide for the control described above is attached as **Exhibit KK**. A few example provisions dictating Ford's control over its agents include:

2. (g) OWNER LITERATURE. The Dealer shall, in accordance with the Company's instructions, complete, execute and deliver to each retail purchaser of a VEHICLE from him the Company's then current publications for owners with respect to the operation, maintenance and warranty of that VEHICLE (hereinafter called "Owner's Literature"). The Dealer shall fulfill promptly all dealer responsibilities under each piece of the Owner's Literature delivered by him. The Company may specify in the Owner's Literature that the Dealer will perform certain inspections of the VEHICLE. The Dealer authorizes the Company to charge his account for work done by another Company authorized CAR or TRUCK dealer under the Owner's Literature delivered by the Dealer, and to credit his account for work done by him under Owner's Literature delivered by another Company authorized CAR or TRUCK dealer. The charge or credit shall be in the amount specified by the Company from time to time.

**Exhibit KK**, at 19.

2. (i) WARRANTY. The Company shall from time to time establish, by notice to the Dealer, the warranty to the owner applicable to each VEHICLE. ***There shall be NO OTHER WARRANTY, express or implied, including any warranty of MERCHANTABILITY OR FITNESS, or any other obligation of the Company to the Dealer or the owner with respect to the VEHICLE or any part thereof except the warranty established pursuant to this subparagraph.*** The Dealer shall expressly incorporate such warranty as a part of each buyer's order form or other contract for the sale of a VEHICLE and shall deliver a copy of the warranty, in the form furnished by the Company, to the owner at the time the VEHICLE is delivered to the owner, all in accordance with instructions set forth in the Company's then current Warranty and Policy Manual and supplements thereto (hereinafter called "Warranty Manual").

*Id.* (emphasis added).

(a) SALES. The Dealer shall promote vigorously and aggressively the sale of GENUINE PARTS to service, wholesale and other customers within the DEALER'S LOCALITY, and shall develop energetically and satisfactorily the potentials for such sale and obtain a reasonable share thereof; but the Dealer shall not be limited to the DEALER'S LOCALITY in making sales. To this end, the Dealer shall develop, maintain and direct a trained quality parts sales organization and shall conduct aggressive advertising and sales promotion activities, making use to the greatest feasible extent of the Company's advertising and sales promotion programs relating to GENUINE PARTS. The Dealer shall not sell or offer for sale or use in the repair of any COMPANY PRODUCT, as a GENUINE PART, any part or accessory that is not in fact a GENUINE PART.

*Id.* at 20.

The Dealer shall develop, maintain and direct a trained, quality service organization and render at the DEALERSHIP FACILITIES prompt, workmanlike, courteous and willing service to owners and users of COMPANY PRODUCTS, in accordance with the standards and procedures set forth in the applicable CUSTOMER SERVICE BULLETIN, including without limitation all service to which a purchaser of a COMPANY PRODUCT from any authorized Ford dealer may be entitled.

*Id.* at 21.

(b) WARRANTY AND POLICY AND CAMPAIGN SERVICE. (1) The Dealer shall perform all warranty and policy service on each COMPANY PRODUCT it is certified to sell and service, presented by owners, in accordance with the warranty and policy applicable thereto and the applicable provisions of the Warranty Manual and CUSTOMER SERVICE BULLETIN.

(2) The Dealer shall perform campaign inspections and/or corrections for owners and users of all VEHICLES, subject to the campaign instructions issued by the Company from time to

51

time and the applicable provisions of the Warranty Manual. The Company may ship parts in quantity to the Dealer to effect such campaign work and if such parts are in excess of the Dealer's requirements, the Dealer may return unused parts to the Company for credit after completion of the campaign.

(3) The Dealer shall use only GENUINE PARTS in performing warranty, policy and campaign work, except as otherwise provided in the Warranty Manual, CUSTOMER SERVICE BULLETIN or campaign instructions, and shall give precedence to all such work over other service work if the use of the vehicle is impaired. The Dealer shall promptly report to the Company, and seek the Company's assistance with respect to, any warranty or policy or campaign work which cannot be performed to the owner's or the Dealer's satisfaction. The Company shall give precedence to such requests over other service assistance. The Dealer shall provide the owner with a copy of the repair order for such work itemizing the work performed. The Dealer shall have such repair order signed by the owner except in unusual circumstances where it is not feasible to obtain such signature.

(4) The Dealer shall submit claims to the Company for reimbursement for the parts and labor used in performing warranty, policy and campaign work and the Company shall reimburse the Dealer therefor, in accordance with the provisions of the Warranty Manual or campaign instructions and the Dealer's approved warranty labor rate. The Dealer shall maintain adequate records and documents supporting such claims in accordance with the provisions of the Warranty Manual.

4. (c) MAINTENANCE AND REPAIR SERVICE. The Dealer shall perform all other maintenance and repair services, including, where feasible, body repair services, reasonably required by owners and users of VEHICLES and shall provide each customer a copy of the repair order itemizing the work performed and the charges therefor. The Dealer shall have the customer sign such repair order except in unusual circumstances where it is not feasible to obtain such signature.

4. (d) SERVICE TOOLS AND EQUIPMENT. The Dealer shall acquire and maintain for use in DEALERSHIP OPERATIONS such diagnostic equipment and other tools, equipment and machinery, comparable to the type and quality recommended by the Company from time to time, as are necessary to meet the Dealer's service responsibilities hereunder and substantially in accordance with Company GUIDES therefor and the applicable CUSTOMER SERVICE BULLETIN.

*Id.* at 21-22.

5. (a) LOCATIONS AND FACILITIES. The Dealer shall establish and maintain at the DEALERSHIP LOCATION approved by the Company DEALERSHIP FACILITIES of satisfactory appearance and condition and adequate to meet the Dealer's responsibilities under this agreement. The DEALERSHIP FACILITIES shall be substantially in accordance with the GUIDES therefor established by the Company from time to time.

*Id.* at 22.

6. (h) CUSTOMER HANDLING. The Dealer shall cooperate with Company programs, and develop and maintain his own programs, designed to develop good relationships between the Dealer and the public. The Dealer shall promptly investigate and handle all matters brought to his attention by the Company or the public relating to the sale or servicing of COMPANY PRODUCTS in the DEALER'S LOCALITY, in accordance with procedures set forth in the applicable CUSTOMER SERVICE BULLETIN, so as to develop public confidence in the Dealer, the Company and COMPANY PRODUCTS. The Dealer shall report promptly to the Company the details of each inquiry or complaint received by the Dealer relating to any COMPANY PRODUCT which the Dealer cannot handle satisfactorily. The Dealer shall not make, directly or indirectly, any false or misleading statement or representation to any customer as to any VEHICLE, GENUINE PART or other COMPANY PRODUCT as to the source, condition or capabilities thereof, or the Dealer's

53

> or the Company's prices or charges therefor or for distribution,
> delivery, taxes or other items.

*Id.* at 24.

127.    Ford's control over the actions of its dealers, franchisees, representatives, and other agents is also evidenced by its implementation of the company's express and implied warranties as they relate to the transmission defect at issue in this case. Notably, Ford instructed its authorized dealers to address complaints as to transmission performance through the technical service bulletins pertaining to the Plaintiffs' vehicles, including those attached as Exhibit U.

128.    Ford's authorized dealers, franchisees, representatives, and other agents were not intended to be the ultimate consumers of the Plaintiffs' vehicles.

129.    Ford's authorized dealers, franchisees, representatives, and agents have no rights under the warranty agreements provided by the Plaintiffs' vehicles.

130.    The warranties for Plaintiffs' vehicles were designed for and intended to benefit only the ultimate purchasers and lessees of the vehicles, i.e., Plaintiffs in this action.

131.    Privity is not required to assert Plaintiffs' claims below because Plaintiffs are intended third-party beneficiaries of contracts between Ford and its dealers, franchisees, representatives, and agents.

132.   By extending express warranties to end-user purchasers and lessees, Ford brought itself into privity with Plaintiffs.

## **Ford's History of Failing to Act Promptly to Remedy Serious Defects**

133.   Ford's failure to act promptly to disclose the Fusion and Escape Transmission Defects, recall affected vehicles, and remedy the problem through a permanent repair or complete resolution for owners and lessees is not a unique situation. In fact, Ford's recent history is rife with examples wherein it was aware of serious defects in design and/or manufacturing, and yet failed to timely act in the best interest of its customers by repairing or buying back the subject vehicles. In many instances, the only means by which owners and lessees became aware of the defect and the extent of Ford's notice and knowledge regarding same were major news stories or governmental investigations.

134.   Despite a class action settlement that left the vast majority of owners without any financial benefit, the public only became aware of the serious defects in Ford's DPS6 transmission utilized in the Focus and Fiesta vehicles after discovery materials from the individual DPS6 lawsuits became part of the public record. **Exhibit V,** *Ford knew Focus, Fiesta models had flawed transmission, sold them anyway*; Detroit Free Press, Sept. 10, 2019. In fact, Ford's corporate pattern of concealing defects was, upon information and belief, the basis for a whistleblower disclosure of serious discrepancies in how the manufacturer calculated fuel economy

and emissions in their vehicles. *Id.* Through discovery, Plaintiffs will, upon information and belief, identify additional evidence of the manufacturer's concealment and fraud, which was first identified for Plaintiffs after retaining undersigned counsel, who conducted an investigation into customer complaints.

135.  Calls for Fusion and/or Escape recalls and/or investigations once again have shown Ford to be merely reactive rather than proactive, despite the safety risks to customers and the public. The MY 2013 - 2016 Fusions were subject to a recall due to a transmission defect which permitted vehicles to roll away/shift gears due to a "glitch." **Exhibit W**, *Ford recalls 270,000 Fusion cars to fix glitch that can cause vehicles to shift gears and roll away*; CNBC, May 15, 2019**.** Serious brake failures in the Fusion triggered a NHTSA investigation due to dozens of accidents and several injuries. **Exhibit X**, Article: *Feds Investigate Whether Ford Should Recall A Million Sedans Over Break Failures;* Forbes, Apr. 24, 2019; **Exhibit Y**, *NHTSA ODI Resume.* Airbag failures, while unrelated to the transmission, sparked important and wide-reaching safety concerns. As usual, Ford was slow to react. **Exhibit Z**, Article: *Ford Recalls Fusion and Lincoln MKZ Vehicles*, carcomplaints.com, Nov. 5, 2018; **Exhibit AA**, *Ford Expands Takata Airbag Recalls By 953,000 Vehicles*; carcomplaints.com, Jan. 4, 2019.  Even loose steering wheels required a recall due to safety concerns. **Exhibit BB**, Article: *Loose steering wheels trigger Ford recall of 1.4M Fusion, Lincoln MKZ cars*;  USA Today, Mar. 14, 2018.  And stud fractures

resulting in wheel separation and significant safety concerns prompted a recall nearly two years after the vehicles' manufacture date. **Exhibit CC**, Summary: *Ford Recall 11S23: Fracture Wheel Studs*; carcomplaints.com, Dec. 7, 2011. The 6F35 transmission was once subject to a multi-model year recall because improper welding could result in loss of motive power and safety concerns for Fusion, Edge, and Lincoln MKX and MKZ owners/lessees. **Exhibit DD**, *Ford recalls Edge, Fusion, Lincoln MKZ for transmission gremlins*; Road Show, July 11, 2017; **Exhibit EE**, *Ford Recalls Edge, Fusion, Lincoln MKX and Lincoln MKZ*; carcomplaints.com, Aug. 31, 2019.

136.   Industry media outlets have widely reported on Transmission Defects in Fusions:

> a. The automatic transmission may develop shifting concerns. On lower mileage vehicles, upgrading the software in the powertrain control module (PCM) and the transmission control module (TCM) may correct the problem. As the mileage increases, internal transmission damage can occur. Repairs could involve replacement of the valve body or a complete transmission rebuild. Whenever major transmission repairs are made, it is important to be sure the PCM and the TCM have the latest software updates to help prevent these issues from reoccurring. (1063 people reported this problem)

> https://repairpal.com/harsh-or-dalayed-shifting-of-automatic-transmission-727 (last accessed Mar. 20, 2024).

> b. Recall of 2017 Fusion for loss of motive power due to  poor manufacturing at the site of the torque converter:

https://www.cnet.com/roadshow/news/ford-recalls-edge-fusion-lincoln-mkz-for-transmission-gremlins/?ftag=COS-05-10-aaa0a (last accessed Mar. 20, 2024).

c. Here are Ford Fusion transmission problems, by model year. The most common Fusion transmission problems cost $2,700 to fix & occur at 43,000 miles. The worst model years for transmission problems are the 2010 Fusion, 2013 Fusion, and the 2012 Fusion.

https://www.carcomplaints.com/Ford/Fusion/transmission/  (last accessed Mar. 20, 2024).

d. Over the years, Ford has officially recalled certain transmission components for upgrade or repair at dealerships. In 2007, service bulletins were issued to correct PCM calibration devices in the Ford Fusion transmission system. The crankshaft pulleys have also been recalled for malfunctioning transmissions…. While the scope of transmission problems are usually more than individuals can repair on their own, dealerships also have poor track record in resolving Ford Fusion transmission malfunctions. When interacting with a Ford dealer, urge them to research all TSB bulletins on the Fusion as they investigate the problems. TSB 07-26-9, for example, is a notice that may get a dealership working directly with the issue rather than dismissing the symptoms as "normal" behavior.

https://web.archive.org/web/20221206145512/https://itstillruns.com/mercedes-transmission-shift-problems-5561448.html (last accessed Mar. 20, 2024).

137.   The common theme across all these issues affecting the Fusion, Escape, and other Ford vehicles is that Ford, upon information and belief, only recalls vehicles when forced to or when it has an inexpensive 'fix' for a problem. Plaintiffs believe Ford's inaction in recalling Fusions and Escapes for systemic transmission

problems indicates, as it did in Ford's DPS6 transmission fiasco, the absence of a permanent and inexpensive resolution to design and/or manufacturing defects. Plaintiffs believe that, through discovery, Ford's internal documents will demonstrate notice of multiple defects affecting the Fusion and Escape transmissions that the manufacturer attempted to resolve quietly and inexpensively, while concealing the scope of the issues from current and prospective owners/lessees. The trail of Fusion- and Escape-related TSBs for module reprogramming, widely reported breakdowns involving a diverse range of transmission-related parts, and the overwhelming amount of transmission-related complaints submitted to NHTSA all show that Ford disingenuously represented a level of innovation, quality, reliability, and efficiency that Fusion and Escape transmissions simply could not live up to.

138. Plaintiffs believe Ford may have quietly acknowledged the Fusion Transmission Defects by issuing "Customer Satisfaction Programs" to provide repairs outside of traditional warranty coverage. To avoid a recall, Ford issued Customer Satisfaction Programs to address the following: PCM defects in 2017 Fusion models, **Exhibit FF**, CSP 17B38; corruption of the Electronic Throttle Body in 2016 Fusions, **Exhibit GG**, CSP 16B32; excessive wear of the transmission solenoid regulator valve on 6F35 2010 Fusions, **Exhibit HH**, CSP 10B15; PCM reprogramming to combat fuel tank issues in 2011-12 Fusions, **Exhibit II**, CSP 16B38; transmission inspection and repairs for 2013-14 Hybrids **Exhibit JJ**, CSP

14B07; and others. Each of these Customer Satisfaction Programs enabled Ford to avoid the costly repair mandate associated with a recall. The issuance of a Customer Satisfaction Program for the Fusion transmissions reflects Ford's knowledge of the Fusion transmissions' inherent defects and systemic component failures.

139.   Finally, upon information and belief, Ford has significant data in its possession revealing its notice of transmission defects in the Fusions and Escapes, due in part to Ford's extensive Customer Satisfaction Programs. Beyond the warranty and repair history of each Plaintiff, Defendant has superior control and possession of data from consumer complaints, lodged through Ford's call center, in addition to postings collected from Defendant's online sources. Plaintiffs believe thousands of complaints have been collected by Ford Motor Company, detailing the extensive transmission defects that have plagued the Fusion and Escape lineups and Plaintiffs' Vehicles.

## Ford Has Unjustly Retained a Substantial Benefit

140.   On information and belief, Plaintiffs allege that Ford unlawfully failed to disclose the Transmission Defects to induce them to purchase or lease their Vehicles.

141.   Plaintiffs allege further that Ford engaged in deceptive acts and/or practices pertaining to all transactions involving Plaintiffs' Vehicles.

142.   For all the reasons detailed herein, Plaintiffs further allege that Ford unlawfully induced them to purchase or lease their respective Vehicles by concealing a material fact (the defective transmission) and that they would have paid substantially less for their Vehicles, or not purchased or leased them at all, had they known of the Transmission Defects.

143.   Ford controls dealership conduct through its Franchise Agreements. Ford does not require that its dealerships permanently retain repair records, and Ford's dealerships frequently refuse to provide repair records requested by owners and lessees upon learning that Plaintiffs are in litigation against Ford. This refusal further impedes efforts to fully document repair histories and details specific to the transmissions in Plaintiffs' Vehicles. **Exhibit KK**, Ford Franchise Agreement, at 27, ¶ 12(a). This causes many Plaintiffs ultimately to have to rely upon the information preserved on the aforementioned information-sharing platforms uniquely accessible to Ford. These platforms are readily searchable using the VIN provided by each Plaintiff herein, and they minimally contain and will reflect the precise subject matter of any and every warranty covered repair; the date of same and mileage accumulated at said time; and any specifics related to the transmission in question and any variations thereof. Plaintiffs also will be serving discovery requests upon Ford to recover this information already in Ford's possession and searchable by VIN. Ford's responses will enable Plaintiffs to even more specifically identify the details

pertaining to each warranty-covered transmission repair at a Ford-authorized dealership and any information relating to transmission types and variations therein.

144.   Given their relationship with authorized dealerships, Ford has received additional financial benefit from the out-of-warranty repair of Vehicles with the Transmission Defects, as well as value received from any trade-in or resale when owners choose to purchase another vehicle from a Ford dealership, prejudicing any future legal claim due to lost evidence and/or causing Plaintiffs to incur additional financial liability (or "double negative equity" in separate vehicles) to Ford through its credit division, Ford Motor Credit.

145.   Accordingly, Ford's ill-gotten gains, benefits accrued in the form of increased sales and profits resulting from the material omissions that did—and likely will continue to—deceive consumers should be disgorged.

**All Statute of Limitations Periods Are Tolled by the Discovery Rule and the Doctrine of Fraudulent Concealment**

146.   Ford misrepresented the qualities of the transmission in Plaintiffs' Vehicles at the time of the sale of the Vehicles. Ford also concealed the fact that the transmission was defective.

147.   Ford continued to misrepresent its ability to repair Plaintiffs' Vehicles in conformity with the warranty throughout the warranty period.

148.   At all relevant times, Ford was aware of the defects in the transmissions.

149.   More specifically, Ford knew that the 6F35 transmission lacked a sufficiently robust design, which resulted in the Transmission Defects plaguing Plaintiffs' Vehicles and for which Ford's engineers could never develop a comprehensive solution.

150.   As described in more detail, *supra*, as early as 2009, if not before, Ford knew or should have known about the safety hazard posed by the defective transmissions, and as early as 2009, Ford began issuing significant TSBs to its authorized dealers explaining the widespread issues with the transmission.

151.   At no point prior to the sale or lease of Plaintiffs' Vehicles or during Plaintiffs' ownership or lease of their Vehicles did Ford or an authorized dealer ever inform Plaintiffs of the ongoing Transmission Defects. Instead, Ford instructed its dealers and technicians to tell consumers that there is no design flaw with the Plaintiffs' Vehicles, and instead to attribute the shift-related concerns to anything other than a fundamental defect. Ford made this false representation for the purpose of leaving customers with the impression that there was no problem and that the issue was solely attributed to the customer's individual sensitivities rather than a fundamental design flaw.

152. Ford had a duty to disclose the concealed facts alleged above because Ford made misrepresentations in its marketing materials and window stickers and through its authorized sales representatives about the quality, characteristics, and safety of the transmission.

153. Ford had a duty to disclose the concealed facts alleged above because Ford actively concealed material facts in order to induce a false belief.

154. For example, Ford drafted, produced, and distributed marketing brochures to the public containing representations about the transmission. Ford's marketing brochure for the Fusion represented that the non-hybrid transmission was a "smooth-shifting 6-speed automatic." (2010 & 2011 Ford Fusion Brochure).

155. Such marketing efforts are considered to be transcendent into the purchasing or leasing process of those who purchased or leased Fusions and Escapes secondhand or outside of the Model Year sales cycle.

156. Unfortunately, Plaintiffs' Vehicles became unresponsive and not "smooth-shifting," as Plaintiffs' drive was repeatedly interrupted by jerky shifts and dangerous hesitations due to Transmission Defects, as well as other manifestations of the Transmission Defects. Plaintiffs did not experience gear changes that were smooth, linear, or responsive – they experienced jerky gear changes and hesitation between shifts, which necessitated multiple attempts at repairs and repeated

reprogramming of the PCM and/or TCM – none of which were sufficient to resolve the Transmission Defects.

157.   Ford made such representations (and continues to do so) regarding the transmissions in Plaintiffs' Vehicles despite its extensive and exclusive internal knowledge of the Transmission Defects and other problems.

158.   Ford intended for Plaintiffs to rely on those misrepresentations to conceal the fact that the defective transmission could not be inexpensively repaired.

159.   Prior to the sale or lease of Plaintiffs' Vehicles, and at all times thereafter, Ford therefore failed to disclose to Plaintiffs the existence of the inherent defects in their Vehicles, and Ford failed to disclose its inability to repair these inherent defects, which prevented Plaintiffs' Vehicles from conforming to their applicable warranties. Further, Ford failed to disclose that symptoms of Transmission Defects do not necessarily present every time the Vehicle is driven. As a result, requirements that the symptoms be present when inspected prevented under-warranty repairs due to the inability of dealers to "replicate the issue" during the visit. In effect, Ford fraudulently concealed from purchasers and lessees, including Plaintiffs, the fact that the dealers were not properly repairing the defects to the transmissions, and knew that the limited work that Ford had authorized its dealerships to perform on those Fusions would not properly repair them.

160.    Similarly, Ford instructed dealers, customer care representatives, technical and service advisors, and others via service bulletins and other means (see **Exhibit U**) that simply updating the calibration or replacing one or more pieces of hardware would correct shift-related concerns. Ford knew, however, that this affirmative representation was false because it never developed a calibration or comprehensive hardware combination that could make the 6F35 properly and reliably operate. Ford made this false representation for the purpose of causing the service personnel and consumers to think that the problem was minor, discrete, and correctable.

161.    Ford also instructed dealers, customer care representatives, technical and service advisors, and others via service bulletins and other means (*see, e.g.*, bulletin SB-10058625-9390, available on the NHTSA website), that vehicles with 6F35 transmissions could exhibit a 2-3 shift hesitation after a cold soak and that this was a "normal characteristic and do[es] not cause any abnormal wear or durability concern." Ford knew that this statement was false because such hesitations are the result of Ford's faulty design for the 6F35 transmission—but Ford nonetheless made this statement in the hopes of causing service personnel and consumers to falsely believe that there was no defect in the transmissions since Ford was unable to provide a repair for this fundamental design flaw.

162.   Ford has never acknowledged publicly that the defects in the Fusion and Escape transmissions even exist.

163.   Because Ford failed to disclose the foregoing facts to Plaintiffs, all statute of limitations periods with respect to the sale of Plaintiffs' Vehicles were tolled by the doctrines of fraudulent concealment, the delayed discovery rule, and/or equitable tolling. As alleged herein, Ford wrongfully concealed these facts:

a.   Plaintiffs' Vehicles are equipped with defective transmissions;

b.   Ford's dealerships often were making inadequate repairs that were incapable of addressing the root causes of the Transmission Defects; and

c.   Ford dealerships frequently reported to owners and lessees, acting on information supplied by Ford, that any issues they had with their vehicle were "normal," not "replicable," or insufficient for repair, ostensibly making a fix for the Transmission Defects unnecessary and preventing the creation of a permanent record of the concerns expressed and symptoms experienced.

164.   Plaintiffs did not discover, and should not have discovered, the operative facts that are the bases of their claims alleged herein because Ford concealed the facts in confidential and privileged documents that a consumer would not know about and could not obtain.

67

165.    Average, everyday consumers are not sophisticated transmission engineers and do not have access to Ford's internal documents and databases. Moreover, Ford has specialized tools, including the PICO analyzer to assess and measure vibrations in the powertrain and the Ford VCM3, which extracts data from the powertrain's computers to provide technical diagnostics as to transmission performance.

166.    Through the use of specialized tools, along with the monitoring of warranty claims, vehicle fleet testing conducted as part of pre-production and post-production troubleshooting, collection and review of aggregate warranty and service data from dealers and repair facilities, and other engineering investigatory efforts, Ford was uniquely knowledgeable about the Transmission Defects.

167.    Plaintiffs, on the other hand—lacking specialized training, knowledge, Ford's proprietary documents and data, and technical tools—had no reasonable means by which they could determine that Ford was concealing the existence and fundamental nature of the defect.

168.    Plaintiffs did not discover, and should not have discovered, that the symptoms they were experiencing with their Vehicles' transmissions were not "normal" or "normal driving characteristics" as represented by Ford but, rather, indicia of defects entitling Plaintiffs to bring claims for relief; Plaintiffs have filed

this Complaint within two years of when they discovered or should have discovered the existence of their claims.

169.   Without the benefit of counsel, no amount of diligence by Plaintiffs could have led to the discovery of these facts because they were kept secret by Ford; therefore, Plaintiffs were not at fault for failing to discover these facts sooner.

170.   Plaintiffs did not have actual knowledge of facts sufficient to put them on notice. Plaintiffs did not know, and could not have known, about Ford's inability to repair the defects in its transmissions because, as alleged above, Ford kept this information highly confidential. Moreover, Ford, and its dealership agents relying upon information supplied by Ford, falsely and fraudulently assured Plaintiffs that its repairs were effective.

171.   Further, the running of the statute of limitations period applicable to Plaintiffs' fraudulent concealment/omission claim continues to be tolled because Ford continues to deny the existence of the Transmission Defects and its duty to disclose them to consumers, including Plaintiffs.

172.   Ford is also equitably estopped from relying on any statute of limitation because of its concealment of the defective nature of Plaintiffs' Vehicles and their transmissions, and because Ford has had notice of the Transmission Defects for years through nationwide litigation regarding same.

**Ford's Actions Have Damaged Plaintiffs, Who Are Entitled to Redress**

173.   Plaintiffs are entitled to be put into the position they would have been had they not been subjected to Ford's fraud and wrongdoing. At the very least, this would involve repurchase by Ford of the Vehicles still owned or leased by Plaintiffs, and reimbursement or adequate alternative compensation to those who were forced into voluntary repossession and/or replacement vehicles.

174.   Plaintiffs are also entitled to recover non-economic damages for Ford's fraud and violation of the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws §§ 445.901-445.922, and of similar consumer statutes in Plaintiffs' respective states.  In addition to Plaintiffs' economic and non-economic damages, Plaintiffs are entitled to recover statutory costs and attorney fees pursuant to the MCPA, Mich. Comp. Laws § 445.911, and the corresponding cost- and fee-shifting provisions of similar consumer statutes in Plaintiffs' respective states.

175.   Ford's conduct is sufficiently reprehensible to allow an award for punitive damages for those Plaintiffs who leased or purchased in states that allow them. The issue of punitive damages is considered to be a substantive issue of law, and thus, under the applicable choice-of-law rules, the availability of punitive damages is governed by the law of the state in which Plaintiffs purchased or leased their Vehicles.

176.   Economic loss doctrine does not apply to Plaintiffs' claims because Plaintiffs purchased or leased their Vehicles primarily for personal and household

use. Consumers cannot logically be expected to assume that motor vehicles commonly come with defects known to the manufacturer but fraudulently concealed from consumers despite the serious safety risks posed by said concealed defects.

177. Ford has been aware for several years of the breaches of warranty alleged by those who purchased or leased defective Vehicles with 6F35 transmissions, including through numerous individual communications from consumers, including Plaintiffs, to Ford via Ford's agent-dealerships and the litigation of an earlier lawsuit. Nevertheless, Ford has never insisted upon or even mentioned in writing any required third-party or informal dispute resolution process as contemplated by various warranty laws. As such, even if any such process exists, Plaintiffs have not received, and could not now receive, timely notice in writing of such a procedure. At this point, Ford has waived its right to insist on any such process, and Plaintiffs have no obligation to submit to such a procedure before bringing their warranty claims alleged below.

178. Requiring an informal dispute settlement procedure or affording Ford further opportunity to cure its breach of written warranties would be unnecessary and futile. At the time of sale or lease of each Vehicle, Ford knew, should have known, or was reckless in not knowing of its misrepresentations concerning the Vehicles' inability to perform as warranted, but nonetheless failed to cure the situation and/or disclose the Transmission Defects. Under the circumstances, the

71

remedies available under any informal settlement procedure would be inadequate and any requirement – whether under the Magnuson-Moss Warranty Act or otherwise – that Plaintiffs resort to an informal dispute resolution procedure and/or afford Ford further opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

179.   Ford has long been on actual and written notice of the nature of the warranty and consumer protection violations alleged by Plaintiffs who purchased or leased defective Vehicles.   Nevertheless, Ford has never attempted to cure its violations.

### **Plaintiffs Are Entitled to the Remedy of Revocation of Acceptance**

180.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

181.   Plaintiffs had no knowledge of their Vehicles' Transmission Defects and nonconformities, were unaware of these defects and nonconformities, and reasonably could not have discovered them when they purchased or leased their Vehicles from Ford.   On the other hand, Ford was aware of the defects and nonconformities at the time of sale and thereafter.

182.   Acceptance was reasonably induced by the difficulty of discovering the defects and nonconformities before acceptance.

183.   Changes in the condition of Plaintiffs' Vehicles were caused by the defects and nonconformities.

184.   Due to Ford's breach of warranties as set forth herein, Plaintiffs are entitled to assert as an additional and/or alternative remedy, as set forth in common law and/or applicable statute in Plaintiffs' respective states, revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all Vehicles Plaintiffs currently own or lease.

185.   Plaintiffs notified Ford of their intent to seek revocation of acceptance and have requested that Ford accept return of their vehicles and return all payments made.  Plaintiffs hereby demand revocation and tender their Vehicles.

186.   Ford refuses to accept return of the Vehicles and to refund to Plaintiffs seeking revocation the purchase price and all monies paid.

187.   Plaintiffs would suffer economic hardship if they returned their Vehicles but did not receive the return of all payments made by them.  Because Ford refuses to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

188.   Consequently, Plaintiffs are entitled to revoke their acceptances, receive a refund of all payments made to Ford and all incidental and consequential

damages, including the costs associated with purchasing or leasing safer vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

## **PLAINTIFF-SPECIFIC ALLEGATIONS**

189. The attached Plaintiff Appendices (Appendix A, Fusion Plaintiffs; and Appendix B, Escape Plaintiffs) provide the pertinent factual allegations for each Plaintiff, including:

    a. The name of each Plaintiff,

    b. The state in which each Plaintiff resides,

    c. The model year of each Plaintiff's Vehicle,

    d. The Vehicle Identification Numbers ("VIN") for each Plaintiff's Vehicle,

    e. Whether the Plaintiff purchased or leased the Vehicle,

    f. The date on which each Plaintiff purchased or leased the Vehicle, and

    g. The State in which the Plaintiff purchased or leased the Vehicle.

190. The attached Plaintiff Appendices are incorporated by reference into this Complaint. The facts contained in the Plaintiff Appendices encompass those that would be ordinarily pled in narrative fashion, including those sufficient to identify the Plaintiffs and the States in which they reside and purchased/leased their vehicles. They are pled in this manner rather than narrative fashion for the sake of efficiency and judicial economy.

191.   The allegations contained in the Plaintiff Appendices are based on the facts as known to Plaintiffs or available through reasonable efforts and without the benefit of formal discovery. Ford however, has superior access to Ford dealerships' detailed warranty-covered repair records for Plaintiffs, and additional information unknown to some Plaintiffs herein regarding transmission type or variations thereto, if any, through one or more of Ford's three electronically accessible information-sharing platforms: Oasis, FMC360, and CuDL. These databases are commonly used by Ford's Customer Service and/or authorized dealership employees to, *inter alia*, document consumer complaints for the ultimate purpose of providing Ford clear details as to public concerns regarding product issues.

## **FEDERAL CLAIM**

**BY ALL PLAINTIFFS**
**COUNT I**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. § 2301, *et seq*.)**

192.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

193.   This claim arises from Ford's violation of the Magnuson-Moss Warranty Act ("MMWA").

194.   Plaintiffs are consumers as defined in 15 U.S.C. § 2301(3).

195.   Ford is a supplier and warrantor as defined in 15 U.S.C. § 2301(4)(5).

196.   The Vehicles are consumer products as defined in 15 U.S.C. § 2301(6).

197.   Ford delivered the Vehicles subject to a written warranty and/or a service contract as those terms are defined in 15 U.S.C. § 2301(6) and 2301(8), respectively.

198.   15 U.S.C. § 2301(a)(1) requires Ford, as warrantor, to remedy any defect, malfunction or nonconformance of the Vehicles within a reasonable time and without charge to Plaintiffs.

199.   The amount in controversy of this action exceeds the sum of $75,000.00, exclusive of interest, costs and attorney fees, computed based on all claims to be determined in this lawsuit.

200.   The Transmission Defects occurred within the temporal scope and mileage parameters set forth in Ford's written express warranty, yet Ford failed to adequately repair the Vehicle's Transmission Defects under the warranty within a reasonable time.

201.   15 U.S.C. §2310(d)(1) permits Plaintiffs to bring an action against Ford for any breach of express or implied warranty arising under state law, as well as any violation of the MMWA.

202.   15 U.S.C. § 2308(a) prohibits Ford from disclaiming the implied warranty of merchantability, and 15 U.S.C. §2308(c) renders any attempted disclaimer invalid.

203.   Plaintiffs have had direct dealings with either Ford or Ford's agents to establish privity of contract with Ford.

204.   Ford authorized dealerships and technical support organizations operating under contract with Ford are agents of Ford.

205.   Notwithstanding the foregoing allegations, privity is not required because Plaintiffs are intended third-party beneficiaries of contracts between Ford and its dealers. The dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Vehicles; the warranty agreements were designed for and intended to benefit the consumers (including Plaintiffs herein) only.

206.   Even though Plaintiffs have complied with all conditions precedent, Ford has failed and/or refused to remedy within a reasonable time and without charge, the Transmission Defects.

207.   Plaintiffs have each given Ford a reasonable opportunity to cure its breach.

208.   Giving Ford additional opportunity to cure its breach of its written warranties would be unnecessary and futile here. Plaintiffs have already done so, and Ford has failed, after numerous attempts, to cure the defects.

209.   At the time of the sale or lease of each of the Vehicles, Ford knew, should have known, or was reckless in not knowing, of its omissions and/or

misrepresentations concerning the 6F35 Transmission's inability to perform as warranted, but it nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure or give Ford additional opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

210.   Further, for the Vehicles, Ford's warranty books state that resort to its informal settlement dispute procedure administered by the Better Business Bureau is optional, to-wit:

## 2. Important information you should know

**IF YOU NEED CUSTOMER ASSISTANCE**

Your Ford Motor Company dealer is available to assist you with all your automotive needs. Please follow the procedures outlined on the front page of this booklet.

In addition, if you are an eligible U.S. owner, you may use - at no cost - the services of the BBB AUTO LINE program. For details, see Better Business Bureau (BBB) AUTO LINE program, page 33 or call 1-800-955-5100.

*See* Ford Warranty Book Excerpts. Therefore, pre-suit resort to the BBB Auto Line program is not required. *See* 16 C.F.R. § 703(b)(3) and 16 C.F.R. § 701.01(j)(2).

211.   As a result of Ford's breaches of express and implied warranties, Ford's failure to remedy the Transmission Defects within a reasonable time and without

charge to Plaintiffs, and Ford's other violations of the MMWA, as set forth *supra*, Plaintiffs have suffered the damages set forth herein.

212. Plaintiffs would suffer economic hardship if they returned their Vehicles but did not receive the return of all payments made by them. Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs have not re-accepted their Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

213. For Vehicles covered by a lease or finance contract, Ford has a duty to indemnify and hold Plaintiffs harmless should Plaintiffs prevail on their claims for violation of the MMWA.

214. For Ford's violation of the MMWA, Plaintiffs seek all damages permitted by law, including diminution in value of the Vehicles and/or loss of the benefit of the bargain, in an amount to be proven at trial. Plaintiffs seek an Order requiring Ford to accept return of the Vehicles and refund Plaintiffs' purchase or lease price, together with taxes, insurance premiums, interest, costs and actual attorney fees as provided by 15 U.S.C. § 2310(d)(2), or in the alternative and at Plaintiffs election prior to entry of the Court's final judgement, that Plaintiffs be awarded damages in the amount Plaintiffs are found to be entitled, plus interest, costs and attorney fees.

**STATE LAW CLAIMS**

215.   The state-law claims below are each brought by the individual Plaintiffs who purchased or leased their Vehicles in that state, as set forth in the attached **Appendices A and B**.

**ALABAMA**
**COUNT I**
**VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES ACT**
**(Ala. Code § 8-19-1, *et seq.*)**

216.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

217.   The conduct of Ford, as set forth herein, constitutes unfair or deceptive acts or practices, including but not limited to, Ford's manufacture and sale of vehicles with defective transmissions, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles.

218.   Ford's actions, as set forth above, occurred in the conduct of trade or commerce.

219.   Ford's actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Ford vehicles as a result of Ford's generalized course of deception.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business.

220.   Plaintiffs were injured as a result of Defendant's conduct.   Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

221.   Ford's conduct proximately caused the injuries to Plaintiffs.

222.   Ford is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

223.   Pursuant to ALA. CODE § 8-19-8, Plaintiffs will serve the Alabama Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

### COUNT II
### BREACH OF EXPRESS WARRANTY
### (Ala. Code § 7-2-313)

224.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

225.   Ford is and was at all relevant times a merchant with respect to motor vehicles.

226.   In the course of selling its vehicles, Ford expressly warranted in writing that the vehicles were covered by a Warranty.

227.   Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.   Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

228.   In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

229.   These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.   Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.   These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.   These affirmations and promises were part of the basis of the bargain between the parties.

230.   These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

231.   Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

232.   Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

233.   Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.  Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

234.   Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. Due to Ford's failure to provide such limited remedy within a reasonable time, placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

235.   Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in ALA. CODE § 7-2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

236.   As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Ala. Code § 7-2-314)

237.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

238.   Ford is and was at all relevant times a merchant with respect to motor vehicles.

239.   A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions, pursuant to Ala. Code § 7-2-314.

240.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

241.   Plaintiffs have had sufficient dealings with either the Ford or their agents (dealerships) to establish privity of contract between Plaintiffs. Notwithstanding this, privity is not required in this case because Plaintiffs are intended third-party beneficiaries of contracts between Ford and its dealers; specifically, they are the intended beneficiaries of Ford's implied warranties.  The dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

Finally, privity is also not required because Plaintiffs' Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

242.   As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Alabama Law)

243.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

244.   To the extent Ford's repair commitment is deemed not to be a warranty under Alabama's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

245.   Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

246.   As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT V
## FRAUD BY CONCEALMENT
### (Based on Alabama Law)

247.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

248.   As set forth above, Ford concealed and/or suppressed material facts concerning the safety of the subject Fusions and their transmissions.

249.   Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.   Once Defendant made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.   One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

250.   In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.   These omitted facts were material because they directly impact the safety of the Vehicles. Defendant possessed exclusive knowledge of the defects rendering the Vehicles inherently more dangerous and unreliable than similar vehicles.

86

251.   Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease the Vehicles at a higher price that did not match the Vehicles' true value.

252.   Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

253.   Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified.  Ford was in exclusive control of the material facts and such facts were not known to the public or Plaintiffs.

254.   As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.  For those Plaintiffs who elect to affirm the sale, these damages, include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits.  For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages.

255.   Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Defendant.  Ford's conduct warrants an assessment of punitive damages in

an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT VI
## UNJUST ENRICHMENT
## (Based on Alabama Law)

256.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

257.   Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

258.   As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

259.   Ford appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values.  It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

260.   Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## ALASKA

## COUNT I
## BREACH OF EXPRESS WARRANTY
### (based on Alaska Law)

261.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

262.   Plaintiffs' Vehicles constitute goods under the Uniform Commercial Code ("UCC"), Sections 2-105(1) and 2A-103(h).

263.   Each Plaintiff's purchase or lease of their vehicle was accompanied by an express warranty as defined in UCC Sections 2-313 and 2A-210, written and otherwise offered by Ford, whereby said warranty was part of the basis of the bargain upon which each Plaintiff relied.

264.   Plaintiffs' Vehicles were not as warranted and represented in that they have the Transmission Defects and exhibit the conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents, and consumer complaints in Ford's possession.

265.   Due to the Transmission Defects in Plaintiffs' Vehicles, Plaintiffs' Vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of providing safe, reliable, and efficient transportation.

266.   The value of Plaintiffs' Vehicles has significantly diminished.

267.    Plaintiffs have provided Ford with sufficient opportunities to repair or replace their Vehicles.

268.    Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty accompanying their Vehicles.

269.    Ford has breached its express warranties by failing to repair the Vehicles adequately and to repair the Vehicles in a timely fashion, and the Vehicles remain in a defective condition.

270.    Even though the express warranty provided to Plaintiffs limited Plaintiffs' remedy to repair and adjust defective parts, the Vehicles' defects have rendered the limited warranty ineffective to the extent that the limited repair and adjustment of defective parts failed of its essential purpose, under UCC Section 2-719(2) and the above remedy is not the exclusive remedy under UCC Section 2-719(1)(b).

271.    The Vehicles continue to contain defects that substantially impair their use and value to the Plaintiffs.

272.    Plaintiffs could not have reasonably discovered the Transmission Defects before they accepted the Vehicles.

273.    Ford induced Plaintiffs' acceptance of the Vehicles by agreeing, by means of the express warranty, to remedy, within a reasonable time, those defects which had not been or could not have been discovered before acceptance and,

further, by Ford's failure to disclose the Transmission Defects and Ford's active concealment of same.

274.   Due to the Transmission Defects, the Plaintiffs have lost faith and confidence in the Vehicles. They cannot reasonably rely upon them for the ordinary purpose of safe, reliable, and efficient transportation.

275.   Plaintiffs have suffered the damages above due to Ford's breach of express warranties.

276.   To the extent that Plaintiffs' Vehicles are subject to a lease or finance contract, Ford must indemnify Plaintiffs and hold Plaintiffs harmless should Plaintiffs prevail on their claims for breach of express warranty.

277.   As a direct and proximate result of Ford's breach, Plaintiffs seek all damages they are found to be entitled, including, *inter alia*, a refund of the purchase or lease price paid by Plaintiffs for their respective vehicle, incidental, consequential, and actual damages; an order requiring Ford to indemnify and hold Plaintiffs harmless for any lease or finance contract covering the Vehicles, costs, interest, and actual attorney fees; and all other relief this Court deems equitable.

## COUNT II
## Breach of Implied Warranty of Merchantability
## (based on Alaska Law)

278.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

279.   Defendant is a merchant concerning motor vehicles under the Uniform Commercial Code Section 2-104(1).

280.   The Vehicles were subject to implied warranties of merchantability under UCC Sections 2-314 and Section 2A-212.

281.   The Vehicles were not fit for the ordinary purpose for which such goods are used, and the Vehicles would not pass without objection in the trade for the product description.

282.   The Transmission Defects and problems hereinbefore described rendered the Vehicles unmerchantable.

283.   Ford failed to adequately remedy the transmission defects in the Vehicles within a reasonable time, and the Vehicles continued to be in unmerchantable condition at the time of filing this Complaint.

284.   Due to Ford's breaches of implied warranties, Plaintiffs have suffered damages.

285.   To the extent that Plaintiffs' Vehicles are covered by a lease or finance contract, Ford must indemnify Plaintiffs and hold Plaintiffs harmless should Plaintiffs prevail on their claims for breach of implied warranty.

286.   As a direct and proximate result of Ford's breach, Plaintiffs seek all damages they are found to be entitled to, including, *inter alia*, a refund of the purchase or lease price paid by Plaintiffs for their respective Vehicle, incidental,

consequential, and actual damages; an order requiring Ford to indemnify and hold Plaintiffs harmless for any lease or finance contract covering the Vehicles, costs, interest, and actual attorney fees; and all other relief this Court deems equitable.

## COUNT III
### Fraud by Misrepresentation and Concealment
### (based on Alaska Law)

287.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

288.   Ford committed fraud by selling or leasing the Vehicles to Plaintiffs without disclosing that the Vehicles and their Transmissions were defective and susceptible to sudden and premature failure.

289.   In particular, Plaintiffs are informed, believe, and allege that before acquiring their Vehicles, Ford was well aware and knew that the 6F35 Transmission installed on the Vehicles was defective. Still, Ford concealed this fact from the Plaintiffs at the time of the sale and thereafter.

290.   Ford knew or should have known that the 6F35 Transmission had a Transmission Defect. This defect presents a safety hazard and is unreasonably dangerous to consumers because it can suddenly and unexpectedly affect the driver's ability to control the vehicle's speed, acceleration, and deceleration.

291.   Plaintiffs are informed, believe, and thereon allege that Ford acquired its knowledge of the Transmission Defects before Plaintiffs acquired their Vehicles

through sources not available to consumers such as Plaintiffs, including but not limited to pre-production and post-production testing data, early consumer complaints about the Transmission Defects made directly to Ford and its network of dealers, aggregate warranty data compiled from Ford's network of dealers, testing conducted by Ford in response to these complaints, as well as warranty repair and part replacements data received by Ford from Ford's network of dealers, amongst other sources of internal information.

292.   Plaintiffs are informed, believe, and thereon allege that while Ford knew about the Transmission Defects and its safety risks since 2009, if not before, Ford concealed and failed to disclose the defective nature of Plaintiffs' Vehicles and their 6F35 Transmissions to Plaintiffs at the time of sale or lease and thereafter.

293.   Had Plaintiffs known that their Vehicles suffered from the Transmission Defect, they would not have purchased or leased their Vehicles.

294.   Indeed, Plaintiffs allege that Ford knew that their Vehicles' 6F35 Transmissions suffered from an inherent defect, were defective, would fail prematurely, and were not suitable for their intended use.

295.   Ford was under a duty to Plaintiffs to disclose the defective nature of their vehicles and their 6F35 Transmissions, its safety consequences, and the associated repair costs because:

a. Ford acquired its knowledge of the Transmission Defects and its potential consequences before Plaintiffs acquired their Vehicles, though sources not available to consumers such as Plaintiffs, including but not limited to pre-production testing data, early consumer complaints about the Transmission Defects made directly to Ford and its network of dealers, aggregate warranty data compiled from Ford's network of dealers, testing conducted by Ford in response to these complaints, as well as warranty repair and part replacements data received by Ford from Ford's network of dealers, amongst other sources of internal information;

b. Ford was in a superior position from various internal sources to know (or should have known) the actual state of facts about the material defects contained in vehicles equipped with 6F35 Transmission and

c. Plaintiffs could not reasonably have been expected to discover the Vehicles' Transmission Defects and their potential consequences until after the Plaintiffs purchased their Vehicles.

296. By failing to disclose the Transmission Defects to Plaintiffs, Ford has knowingly and intentionally concealed material facts and breached its duty not to do so.

297.   The facts concealed by Ford are material in that a reasonable person would have considered them important in deciding whether to purchase or lease the Vehicles.

298.   Had Plaintiffs known that the Vehicles' transmissions were defective at the time of sale, they would not have purchased or leased their Vehicles.

299.   Plaintiffs are reasonable consumers who do not expect their transmissions to fail or not work properly.

300.   Plaintiffs expected and assumed that Ford would not sell or lease vehicles with known material defects, including but not limited to those involving the vehicles' transmissions.

301.   Plaintiffs expected and assumed Ford would disclose any defect, including the Transmission Defects, to consumers before selling affected vehicles.

302.   Due to Ford's misconduct, Plaintiffs have suffered and will continue to suffer actual damages.

303.   Ford's representations were expected and intended to induce Plaintiffs to purchase the Vehicles equipped with 6F35 Transmissions.

304.   Ford further withheld and continues to withhold information concerning the Transmission Defects set forth herein and affirmatively misrepresented and misrepresented the above-described symptoms as being "normal" when Ford knew and continues to know that its representations and

omissions are misleading. Ford intended its representations and omissions to mislead Plaintiffs concerning the nature and existence of the above-described Transmission Defects.

305.   Plaintiffs, reasonably relying on Ford's representations and omissions, were deceived into purchasing the Vehicles at prices far above the values that would have been assigned to them had these Transmission Defects and dangers been disclosed; further, Ford's representations and omissions deceived Plaintiffs concerning the existence of the defects and Plaintiffs' rights and remedies with respect to the Transmission Defects.

306.   Had Plaintiffs known of the true nature of the Transmission Defects, Plaintiffs would not have purchased or leased the Vehicles or would not have paid the contract or lease price.

307.   Ford's representations and omissions, as herein alleged, were undertaken as an affirmative scheme designed to prevent Plaintiffs from obtaining information about the nature and existence of their claims involving their Vehicles' defective 6F35 Transmissions. In furtherance of this scheme, Ford also represented to Plaintiffs that the symptoms described above were "normal," or were somehow the Plaintiffs' fault, or that the problems had been repaired. All of these statements were false and made with the intent to deceive and mislead Plaintiffs who relied on the statements to their detriment by failing to secure multiple repairs often required

to substantiate claims and submit said claims earlier. Furthermore, Ford actively discouraged Plaintiffs from discovering the nature and existence of and thereby eliminated or restricted their ability to substantiate their claims, which require documentary evidence of multiple repairs or repair attempts by (a) charging "inspection fees" for warranty work to deter Plaintiffs from seeking repairs and submitting claims timely; (b) refusing to service vehicles because Plaintiffs have commenced litigation against Ford, to limit the number of repairs or repair attempts; and (c) failing to provide service records upon request by Plaintiffs, to further limit Plaintiff's ability to corroborate the existence of multiple repairs or repair attempts.

308.   As a direct and proximate result of Ford's breach, Plaintiffs seek all damages they are found to be entitled, including, *inter alia*, a refund of the purchase or lease price paid by Plaintiffs for their respective vehicle, incidental, consequential, and actual damages; an order requiring Ford to indemnify and hold Plaintiffs harmless for any lease or finance contract covering the Vehicles, costs, interest, and actual attorney fees; and all other relief this Court deems equitable.

309.   As a direct and proximate result of Ford's fraud and concealment, Plaintiffs seek their compensatory and punitive damages, in whatever amount above $75,000.00 Plaintiffs are found to be entitled, together with interest, costs, and attorney fees, plus such other and further relief as this Court deems appropriate.

**COUNT IV**

## UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT
### (Alaska Stat. § 45.50.471, *et seq.*)

310. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

311. The Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, et seq. ("UTPA"), prohibits unfair or deceptive acts or practices in the conduct of trade or commerce.

312. Ford's conduct, as set forth herein, constitutes unfair or deceptive acts or practices, including, *inter alia*, its manufacture and sale of vehicles with Transmission Defects, which Ford failed to investigate, disclose, and remedy adequately, and its misrepresentations and omissions regarding the safety and reliability of its vehicles, which misrepresentations and omissions possessed the tendency or capacity to mislead.

313. Ford engaged in the following violative acts or practices in the conduct of trade or commerce:

    a. Representing through its advertising, warranties, and other express representations that the Vehicles' transmissions had benefits or characteristics that they did not have;

    b. Representing that the vehicles' transmissions were of a particular standard or quality when they were not;

99

c.  Advertising the vehicles and, in particular, the vehicles' transmissions with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards, and qualities of the vehicles and transmissions;

d.  At the time of the sales and leases, Ford knew or had reason to know that the Vehicles had Transmission Defects, as described supra, but Ford failed to disclose this material information to Plaintiffs;

e.  Failing to reveal material facts which tended to mislead Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f.  Failing to adequately and appropriately inform Plaintiffs of their rights and remedies concerning the transactions which are the subject of this Complaint;

g.  Misrepresenting Plaintiffs' rights and/or failing to advise Plaintiffs of remedies with respect to the transactions which are the subject of this Complaint, as hereinbefore alleged;

h.  Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

i.  Failing to provide promised benefits, both as hereinbefore set forth and as promised or implied by operation of law;

j.  Causing a probability of confusion or misunderstanding as to Plaintiffs' legal rights, obligations, and remedies concerning the subject transaction; and

k.  Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining Plaintiffs' specific consent to the waiver.

314.  Ford's deceptive practices were designed to induce Plaintiffs to purchase or lease their vehicles with the subject 6F35 Transmission.

315.  Ford's violations above create a distinct claim under UTPA.

316.  Upon information and belief, the violations described above were not due to a bona fide error since Ford failed to have any procedures in place designed to prevent them and, further, engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous other vehicles. Additionally, to this day, Ford continues to engage in the unlawful practices set forth above.

317.  As a proximate result of Ford's violations, Plaintiffs have suffered a loss within the meaning of the UTPA and are entitled to recover treble actual damages and punitive damages for each violation of the UTPA, as provided under § 45.50.531.

**ARIZONA**
**COUNT I**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(Arizona Common Law)**

318.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments. Only Plaintiffs with physical injury to their vehicles assert this claim.

319.   Ford is and was at all relevant times a merchant with respect to motor vehicles.

320.   A warranty that the Vehicles were in merchantable condition is implied by common law in the instant transactions.

321.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

322.   As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have suffered damage to the property of their Vehicles, in an amount to be proven at trial.  Alternatively, Plaintiffs seek rescission.

**COUNT II**
**IN THE ALTERNATIVE, UNJUST ENRICHMENT**
**(Based on Arizona Law)**

102

323.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

324.   Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

325.   As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their Vehicles than the Vehicles' true value and Ford thereby obtained monies which rightfully belong to Plaintiffs.

326.   Ford appreciated, accepted and retained the benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values.  It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.  There is no justification for Plaintiffs' impoverishment and Ford's related enrichment.

327.   Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

**ARKANSAS**
**COUNT I**
**ARKANSAS PRODUCTS LIABILITY ACT**
**(Ark. Code Ann. § 16-116-101, *et seq.*)**

328.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

329.   Plaintiffs allege Ford vehicles were defectively designed, manufactured, sold or otherwise placed in the stream of commerce.

330.   Ford is strictly liable in tort for Plaintiffs' injuries and damages and Plaintiffs respectfully rely upon the Doctrine as set forth in Restatement, Second, Torts § 402(a).

331.   Because of the negligence of the design and manufacture of the Vehicles, by which Plaintiffs were injured and the failure of Ford to warn Plaintiffs of the certain dangers concerning the operation of the Vehicles which were known to Ford but were unknown to Plaintiffs, Ford has committed a tort.

332.   The Vehicles which caused Plaintiffs' injuries were manufactured by Ford.

333.   At all times herein material, Defendant negligently and carelessly did certain acts and failed to do other things, including, but not limited to, inventing, developing, designing, researching, guarding, manufacturing, building, inspecting, investigating, testing, labeling, instructing, and negligently and carelessly failing to provide adequate and fair warning of the characteristics, angers and hazards associated with the operation of the vehicles in question to users of the Vehicles, including, but not limited to, Plaintiffs, and willfully failing to recall or otherwise

cure one or more of the defects in the products involved thereby directly and proximately causing the hereinafter described injury.

334.    The Vehicles were unsafe for use by reason of the fact that they were defective.    For example, the Vehicles were defective in their design, guarding, development, manufacture, and lack of permanent, accurate, adequate and fair warning of the characteristics, danger and hazard to the user, prospective user and members of the general public, including, but not limited to, Plaintiffs, and because Defendant failed to recall or otherwise cure one or more defects in the vehicles involved thereby directly and proximately causing the described injuries.

335.    Defendant, and each of them, knew or reasonably should have known that the Vehicles would be purchased or leased and used without all necessary testing or inspection for defects by Plaintiffs.

336.    Plaintiffs were not aware of those defects at any time before the incident and occurrence mentioned in this complaint, or else Plaintiffs were unable, as a practical matter, to cure that defective condition.

337.    Plaintiffs used the products in a foreseeable manner.

338.    As a proximate result of the negligence of Defendant, Plaintiffs suffered injuries and damages.

**COUNT II**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Ark. Code Ann. §§ 4-2-314)**

339.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

340.   In its manufacture and sale of the Vehicles, Ford impliedly warranted to Plaintiffs that its vehicles were in merchantable condition and fit for their ordinary purpose.

341.   The Vehicles were defective and unfit for their ordinary use due to the Transmission Defects.

342.   Under the Uniform Commercial Code there exists an implied warranty of merchantability.

343.   Ford has breached the warranty of merchantability by having sold its automobiles with defects such that the vehicles were not fit for their ordinary purpose and Plaintiffs suffered damages as a result.

## COUNT III
## NEGLIGENCE
### (Under Arkansas Law)

344.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

345.   Plaintiffs are the owners of Ford vehicles that were manufactured, assembled, designed, assembled, distributed and otherwise placed in the stream of commerce by Defendant.

346.   Ford had a duty to manufacture a product which would be safe for its intended and foreseeable uses and users, including the use to which it was put by Plaintiffs.  Ford breached its duty to Plaintiffs because it was negligent in the design, development, manufacture, and testing of the Vehicles.

347.   Ford was negligent in its design, development, manufacture, and testing of the Vehicles because it knew, or in the exercise of reasonable care should have known, that they were prone to sudden and dangerous manifestations of the Transmission Defects.

348.   Ford negligently failed to adequately warn and instruct Plaintiffs of the defective nature of the Vehicles, of the high degree of risk attendant to using them, given that Plaintiffs would be ignorant of the said defects.

349.   Whereupon, the Plaintiffs respectfully rely upon the Restatement, Second, Torts 395.

350.   Ford further breached its duties to Plaintiffs by supplying Vehicles directly and/or through a third person to be used by such foreseeable persons such as Plaintiffs when:

     a.   Ford knew or had reason to know, that the Vehicles were dangerous or were likely to be dangerous for the use for which they were supplied; and

b. Ford failed to exercise reasonable care to inform customers of the dangerous condition, or of the facts under which the Vehicles are likely to be dangerous.

351.   As a result of Ford's negligence, Plaintiffs suffered damages.

### COUNT IV
### NEGLIGENT MISREPRESENTATION/FRAUD
### (Ark. Code Ann. § 4-2-721)

352.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

353.   As set forth above, Ford concealed and/or suppressed material facts concerning the safety of the subject Fusions and their transmissions.

354.   Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.  Once Defendant made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.  One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

355.   In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or

reasonably discoverable by Plaintiffs. These omitted facts were material because they directly impact the safety of the Vehicles. Defendant possessed exclusive knowledge of the defects rendering the Vehicles inherently more dangerous and unreliable than similar vehicles.

356. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease the Vehicles at a higher price that did not match the Vehicles' true value.

357. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified. Ford was in exclusive control of the material facts and such facts were not known to the public including Plaintiffs.

358. As a result of the misrepresentation concealment and/or suppression of the facts, Plaintiffs sustained damage. For those Plaintiffs who elect to affirm the sale, these damages, pursuant to A.C.A. § 4-2-721, include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages pursuant to A.C.A. § 4-2-721.

359. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Defendant. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
## UNJUST ENRICHMENT
### (Based on Arkansas Law)

360. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

361. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

362. Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendant to retain these wrongfully obtained profits.

363. Plaintiffs, therefore, seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## CALIFORNIA

110

**COUNT I**
**VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**
**FOR BREACH OF EXPRESS WARRANTIES**
**(Cal. Civ. Code §§ 1793.2(d) & 1791.2)**

364. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

365. Plaintiffs who purchased or leased the Ford vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791.

366. The Ford vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

367. Ford is a "manufacturer" of the Ford vehicles within the meaning of Cal. Civ. Code § 1791(j).

368. Plaintiffs bought/leased new motor vehicles manufactured by Ford.

369. Ford made express warranties to Plaintiffs within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2, both in its warranty manual and advertising, as described above.

370. Fusions had and continue to have transmission defects that were and continue to be covered by Ford's express warranties, and these defects substantially impair the use, value, and safety of Ford's vehicles to reasonable consumers like Plaintiffs.

111

371.   Ford and its authorized repair facilities failed and continue to fail to repair the Vehicles to match Ford's written warranties after a reasonable number of opportunities to do so.

372.   Plaintiffs gave Ford or its authorized repair facilities at least two opportunities to fix the defects unless only one repair attempt was possible because the Vehicle was later destroyed or because Ford or its authorized repair facility refused to attempt the repair.

373.   Ford did not promptly replace or buy back the Vehicles of Plaintiffs.

374.   As a result of Ford's breach of its express warranties, Plaintiffs received goods whose dangerous condition substantially impairs their value to Plaintiffs. Plaintiffs have been damaged as a result of the diminished value of Ford's products, the products' malfunctioning, and the nonuse of their Vehicles.

375.   Pursuant to Cal. Civ. Code §§ 1793.2 & 1794, Plaintiffs are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Vehicles, or the overpayment or diminution in value of their Vehicles.

376.   Pursuant to Cal. Civ. Code § 1794, Plaintiffs are entitled to costs and attorneys' fees.

## COUNT II
## VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT
## FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Cal. Civ. Code §§ 1792 & 1791.1)

112

377.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

378.   Plaintiffs who purchased or leased the Ford vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791.

379.   The Ford vehicles are "consumer goods" within the meaning of Civ. Code § 1791(a).

380.   Ford is a "manufacturer" of the Ford vehicles within the meaning of Cal. Civ. Code § 1791(j).

381.   Ford impliedly warranted to Plaintiffs that its vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792, however, the Vehicles do not have the quality that a buyer would reasonably expect.

382.   Cal.   Civ.   Code   § 1791.1(a)   states:   "Implied   warranty   of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

    a.  Pass without objection in the trade under the contract description.

    b.  Are fit for the ordinary purposes for which such goods are used.

    c.  Are adequately contained, packaged, and labeled.

    d.  Conform to the promises or affirmations of fact made on the container or label.

383.    The Vehicles would not pass without objection in the automotive trade because of the Transmission Defects and their attendant safety risks.

384.    Because of the Vehicles' Transmission Defects and their attendant safety risks, they are not safe to drive and thus not fit for ordinary purposes.

385.    The Vehicles are not adequately labeled because the labeling fails to disclose the Transmission Defects and their attendant safety risks

386.    Ford breached the implied warranty of merchantability by manufacturing and selling vehicles containing defective transmissions that manifest the Transmission Defects.  Furthermore, these defects have caused Plaintiffs to not receive the benefit of their bargain and have caused vehicles to depreciate in value.

387.    As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs received goods whose dangerous condition substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of the diminished value of Ford's products, the products' malfunctioning, and the nonuse of their vehicles.

388.    Pursuant to Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their vehicles, or the overpayment or diminution in value of their vehicles.

114

389.   Pursuant to Cal. Civ. Code § 1794, Plaintiffs are entitled to costs and attorneys' fees.

## COUNT III
## VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT
### (CAL. CIV. CODE § 1750, *et seq.*)

390.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

391.   Ford is a "person" under Cal. Civ. Code § 1761(c).

392.   Plaintiffs are "consumers," as defined by Cal. Civ. Code § 1761(d), who purchased or leased one or more Ford Vehicles.

393.   Plaintiffs have previously filed an affidavit that shows venue in this District is proper, to the extent such an affidavit is required by Cal. Civ. Code § 1780(d).

394.   Ford participated in unfair or deceptive acts or practices that violated the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq., as described above and below.  Ford is directly liable for these violations of law, and Ford also is liable for Ford dealerships' violations because Ford dealerships act as Ford's agents in the United States for purposes of sales and marketing.

395.   By failing to disclose and actively concealing the Transmission Defects and attendant safety risks, and by misrepresenting its vehicles as "safe," "reliable," "dependable," and of high quality and by selling vehicles while

115

violating the TREAD Act, Ford engaged in deceptive business practices prohibited by the CLRA, Cal. Civ. Code § 1750, et seq., including the following:

    a.  representing that Ford Vehicles have characteristics, uses, benefits, and qualities which they do not have;

    b.  representing that Ford Vehicles are of a particular standard, quality, and grade when they are not;

    c.  advertising Ford Vehicles with the intent not to sell them as advertised;

    d.  representing that a transaction involving Ford Vehicles confers or involves rights, remedies, and obligations which it does not;

    e.  representing that the subject of a transaction involving Ford Vehicles has been supplied in accordance with a previous representation when it has not; and

    f.  selling vehicles in violation of the TREAD Act.

396.　As alleged above, Ford made numerous material statements about the quality, safety and reliability of Ford Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Ford's unlawful advertising and representations as a whole.

397.　Ford knew that the subject Vehicles could manifest the Transmission Defects without warning and were not suitable for their intended use.　Ford nevertheless failed to warn Plaintiffs about these inherent dangers despite having

116

a duty to do so.

398.   A reasonable consumer would not have purchased or leased, or would not have paid as much as he or she did for his or her Vehicle if Ford had disclosed:

    a.   that its Fusions suffered from the Transmission Defects,

    b.   that Ford was unaware of the cause of Transmission Defects in its vehicles and was not adequately investigating same;

    c.   that Ford's software did not comply with safety-related coding standards and contained "major bugs" which are unacceptable in a safety critical environment, and

    d.   that Ford's software was such that Transmission Defects could occur that went undetected by Ford's fail-safe systems.

399.   Ford owed Plaintiffs a duty to disclose the defective nature of Fusion vehicles, including the Transmission Defects, attendant safety risks, and facts relating to the quality of the vehicles being manufactured because Ford:

    a.   Possessed exclusive knowledge of the Transmission Defects rendering Vehicles inherently more dangerous and unreliable than similar vehicles;

    b.   Intentionally concealed the hazardous situation with Fusion transmissions through their deceptive marketing campaign and recall

program that they designed to hide the Transmission Defects and attendant safety risks from Plaintiffs; and/or

c. Made incomplete representations about the quality, safety and reliability of Ford Vehicles generally, and Fusion transmissions in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

400. Ford Fusions equipped with defective transmissions pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to manifestations of the Transmission Defects.

401. Each of the Plaintiffs who still own or lease their Vehicles face an increased risk of future harm that would not be present if Ford had not designed, manufactured and sold vehicles that had an unacceptable increased propensity for transmission failure and Transmission Defects.

402. Ford's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Vehicles.

403. As a result of its violations of the CLRA detailed above, Ford caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs. Plaintiffs currently own or lease, or within the relevant time period have owned or

leased, Vehicles that are defective and inherently unsafe. The Transmission Defects and the resulting safety risks have impaired the value of Plaintiffs' Vehicles.

404.  Plaintiffs risk irreparable injury as a result of Ford's acts and omissions in violation of the CLRA, and these violations present a continuing risk to Plaintiffs as well as to the general public.

405.  Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs seek monetary relief against Ford for (a) actual damages in an amount to be determined at trial and (b) punitive damages.

406.  Pursuant to Cal. Civ. Code § 1780(b), Plaintiffs seek an additional award against Ford of up to $5,000 for each Plaintiff who qualifies as a "senior citizen" or "disabled person" under the CLRA. Ford knew or should have known that its conduct was directed to one or more of the Plaintiffs who are senior citizens or disabled persons. Ford's conduct caused senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person. One or more of the Plaintiffs who are senior citizens or disabled persons are substantially more vulnerable to Ford's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them actually suffered substantial physical, emotional, or economic damage resulting from Ford's conduct.

407.   Plaintiffs also seek punitive damages against Ford because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs to cruel and unjust hardship as a result.   Ford intentionally and willfully misrepresented the safety and reliability of Ford Fusions, deceived Plaintiffs on life-or-death matters, and concealed material facts that only it knew, all to avoid the expense and public relations nightmare of correcting a potentially deadly flaw in the Vehicles it repeatedly promised Plaintiffs were safe. Ford's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

408.   The recalls and repairs instituted by Ford have not been adequate.  Ford Vehicles still are defective and dangerous.

409.   Repairs have also been incomplete.  Transmission Defects continue to manifest after cars have been "repaired."

410.   Plaintiffs further seek an order enjoining Ford's unfair or deceptive acts or practices and awarding restitution, punitive damages, costs of Court, attorney's fees under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

## COUNT IV
## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

411.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

412.   California Business and Professions Code section 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices."   Ford has engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL.

413.   Ford has violated the unlawful prong of section 17200 by its violations of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq., as set forth in Count I by the acts and practices set forth in this Complaint.

414.   Ford has also violated the unlawful prong because Ford has engaged in business acts or practices that are unlawful because they violate the National Traffic and Motor Vehicle Safety Act of 1996 (the "Safety Act"), codified at 49 U.S.C. § 30101, et seq., and its regulations.

415.   Ford violated 49 U.S.C. § 30112(a)(1) by manufacturing for sale, selling, offering for introduction in interstate commerce, or importing into the United States, Fusions equipped with transmissions that failed to comply with applicable Federal Motor Vehicle Safety Standards ("FMVSS").

416.   Ford violated 49 U.S.C. § 30115(a) by certifying that Vehicles equipped with defective transmissions complied with applicable FMVSS when, in the exercise of reasonable care, Ford had reason to know that the certification was false or misleading because the defective Fusion transmissions led to manifestations

of the Transmission Defects and created attendant safety risks when the Vehicles were in operation.

417.  Ford also violated the "TREAD Act," 49 U.S.C. §§ 30101-30170, when it failed to timely inform NHTSA of the defective Fusion transmissions and allowed cars to be sold with these defects.

418.  Ford has violated the fraudulent prong of section 17200 because the misrepresentations and omissions regarding the safety and reliability of Plaintiff's Vehicles as set forth in this Complaint were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

419.  Ford has violated the unfair prong of section 17200 because the acts and practices set forth in the Complaint, including the manufacture and sale of Fusions with defective transmissions, and Ford's failure to adequately investigate, disclose, and remedy same, offend established public policy, and because the harm they cause to consumers greatly outweighs any benefits associated with those practices.  Ford's conduct has also impaired competition within the automotive vehicles market by preventing Plaintiffs from making fully informed decisions about whether to purchase or lease their Vehicles and/or the price to be paid to purchase or lease Vehicles.

420.  Plaintiffs have suffered an injury in fact, including the loss of money or property, as a result of Ford's unfair, unlawful and/or deceptive practices.  As set

forth in the allegations concerning each plaintiff, in purchasing or leasing their vehicles, Plaintiffs relied on the misrepresentations and/or omissions of Ford with respect of the quality, safety and reliability of the vehicles.  Ford's representations turned out not to be true because the Vehicles manifest the Transmission Defects. Had Plaintiffs known this they would not have purchased or leased their Vehicles and/or paid as much for them.

421.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business.  Ford's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

422.   Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Ford from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs any money Ford acquired by unfair competition, including through restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief set forth below.

## COUNT V
## VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW
### (Cal. Bus. & Prof. Code § 17500, *et seq.*)

423.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

424. California Business and Professions Code § 17500 states: "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

425. Ford caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known, to Ford to be untrue and misleading to consumers and Plaintiffs.

426. Ford has violated section 17500 because the misrepresentations and omissions regarding the safety and reliability of their vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

427. Plaintiffs have suffered an injury in fact, including the loss of money or property, as a result of Ford's unfair, unlawful and/or deceptive practices. In purchasing or leasing their vehicles, Plaintiffs relied on the misrepresentations

and/or omissions of Ford with respect to the safety and reliability of the vehicles. Ford's representations turned out not to be true because the vehicles can unexpectedly and dangerously manifest the Transmission Defects. Had Plaintiffs known this, they would not have purchased or leased their Ford Vehicles and/or paid as much for them.

428. Accordingly, Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain.

429. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business. Ford's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

430. Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs any money Ford acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## COUNT VI
## BREACH OF EXPRESS WARRANTY
### (Cal. Com. Code § 2313)

431. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

432. This Count is asserted on behalf of those Plaintiffs who sought repairs pursuant to the recalls or who sought repairs for transmission-related issues.

433. Ford is and was at all relevant times a merchant with respect to motor vehicles under CAL. COM. CODE § 2104.

434. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by warranty.

435. Ford breached the express warranty to repair defects. Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

436. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, including the warranties detailed *supra*, Sections IV.A.

437. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Sections IV.A. and I., *supra*. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, and performance standards, and promote the benefits of the Fusion transmissions. These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

126

438. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees. Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

439. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time. Further, the repairs Ford offers do not fix the defective transmissions or prevent manifestations of the Transmission Defects and are not adequate, hence bringing a vehicle in for repair is a futile act.

440. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

441. Also, as alleged in more detail herein, at the time that Ford warranted and sold the vehicles, it knew that the vehicles did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Fusions. In particular, Ford failed to assemble and manufacture the Fusion transmissions in such a way as to prevent manifestations of Transmission Defects. Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses. Under these

circumstances, any limitations whatsoever precluding the recovery of incidental and/or consequential damages are unenforceable under CAL. CIV. CODE § 1670.5 and/or § 1668.

442.   Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to its failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

443.   For Plaintiffs who brought their Vehicles in for repair, Ford has not repaired their Vehicles and addressed all transmission defects.  Plaintiffs who could have but did not bring their Vehicles in for repair should be excused as Ford does not yet have a complete repair solution for the defective transmissions.

444.   As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

**COUNT VII**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(Cal. Com. Code § 2314)**

445.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

446. Ford is and was at all relevant times a merchant with respect to motor vehicles under CAL. COM. CODE § 2104.

447. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to CAL. COM. CODE § 2314.

448. These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic, and the transmissions were not adequately designed, manufactured, and tested.

449. Plaintiffs have had sufficient direct dealings with either Ford or its agents (dealerships) to establish privity of contract. Notwithstanding this, privity is not required in this case because Plaintiffs are intended third-party beneficiaries of contracts between Ford and its dealers; specifically, they are the intended beneficiaries of Ford's implied warranties. The dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiffs' Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

450.   As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**COUNT VIII**
**BREACH OF CONTRACT/COMMON LAW WARRANTY**

451.   The California Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

452.   To the extent Ford's repair commitment is deemed not to be a warranty under California's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.   Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford and/or warranted the quality or nature of those services to Plaintiffs.

453.   Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

454.   As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT IX**
**FRAUD BY CONCEALMENT**
**(Based on California Law)**

455.   The California Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

456.   As set forth above, Ford concealed and/or suppressed material facts concerning the safety, quality, dependability and reliability of their vehicles.

457.   Ford had a duty to disclose these safety, quality, dependability and reliability issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.  Once Ford made representations to the public about safety, quality, dependability and reliability Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.  One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

458.   In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.  These omitted facts were material because they directly impact the safety, quality and reliability of the Vehicles.  Whether a vehicle is a quality and reliable product and has been manufactured and designed according to industry standards are material facts for a reasonable consumer.  Ford

possessed exclusive knowledge of the defects and quality control issues rendering Ford Vehicles inherently more dangerous and unreliable than similar vehicles.

459.   Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase Ford Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

460.   Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

461.   Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified.  Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

462.   As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.  For those Plaintiffs who elect to affirm the sale, these damages, pursuant to CAL. CIV. CODE § 3343, include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits.  For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages pursuant to CAL. CIV. CODE § 1692.

463.  Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COLORADO
### COUNT I
### VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT
### (Col. Rev. Stat. § 6-1-101. et seq.)

464.  Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

465.  Ford is a "person" under § 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), COL. REV. STAT. § 6-1-101 *et seq*.

466.  Plaintiffs are "consumers" for purposes of § 6-1-113(1)(a) of the Colorado CPA who purchased or leased one or more Vehicles.

467.  In the course of its business, Ford participated in deceptive trade practices that violated the Colorado CPA, as described above and below.  Ford is directly liable for these violations of law, and Ford also is liable for Ford dealerships' violations because Ford dealerships act as Ford's agents in the United States for purposes of sales and marketing.

133

468. As alleged above, Ford made numerous material statements about the safety and reliability of the Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Ford's unlawful advertising and representations as a whole. Ford also failed to disclose and actively concealed the dangerous risk of Transmission Defects.

469. Ford engaged in deceptive trade practices prohibited by the Colorado CPA, including (1) knowingly making a false representation as to the characteristics, uses, and benefits of the Vehicles that had the capacity or tendency to deceive Plaintiffs; (2) representing that the Vehicles are of a particular standard, quality, and grade even though Ford knew or should have known they are not; (3) advertising the Vehicles with the intent not to sell them as advertised; and (4) failing to disclose material information concerning the Vehicles that was known to Ford at the time of advertisement or sale with the intent to induce Plaintiffs to purchase or lease the Vehicles.

470. Defendant knew that the transmissions in the Vehicles were defectively designed or manufactured, would fail without warning, and were not suitable for their intended use. Ford nevertheless failed to warn Plaintiffs about these inherent dangers despite having a duty to do so.

471. Ford's practices pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large,

because the Vehicles are susceptible to sudden manifestations of the Transmission Defects.

472.   Whether or not a vehicle's transmission is designed and manufactured properly and functions safely as intended are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.  When Plaintiffs bought a Fusion for personal, family, or household purposes, they reasonably expected its transmission was designed and manufactured properly and would function safely as intended.

473.   Ford's deceptive practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of the Vehicles.

474.   Plaintiffs suffered injury-in-fact to their legally protected property interests as a result of Ford's violations of the Colorado CPA detailed above. Plaintiffs currently own or lease, or within the relevant time period have owned or leased, the Vehicles that are defective and inherently unsafe.  The Transmission Defects and the attendant safety risks have impaired the value of the Vehicles.

475.   Pursuant to § 6-1-113(2) of the Colorado CPA, Plaintiffs seek monetary relief against Ford measured as the greater of (a) the amount of actual damages sustained, (b) statutory damages in the amount of $500 for each Plaintiff, or (c) three

times the amount of actual damages if Plaintiffs establish that Ford engaged in bad faith conduct, plus interest as allowed by law.

## COUNT II
## BREACH OF EXPRESS WARRANTY
## (Col. Rev. Stat. § 4-2-313)

476.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

477.   Ford is and was at all relevant times a merchant with respect to motor vehicles under Col. Rev. Stat. § 4-2-104.

478.   In the course of selling its vehicles, Ford expressly warranted in writing that the vehicles were covered by a Warranty.

479.   Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.  Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

480.   In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

481.   These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., supra.  Generally, these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.  These warranties were made, inter alia, in

136

advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.  These affirmations and promises were part of the basis of the bargain between the parties.

482.   These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

483.   Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

484.   Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

485.   Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.  Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.  Under

these circumstances, any limitations whatsoever precluding the recovery of incidental and/or consequential damages are unenforceable.

486.   Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. Due to Ford's failure to provide such limited remedy within a reasonable time, placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

487.   Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in Col. Rev. Stat. § 4-2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned and for such other incidental and consequential damages as allowed under Col. Rev. Stat. §§ 4-2-711 and 4-2-608.

488.   As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Col. Rev. Stat. § 4-2-314)

489.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

138

490. Ford is and was at all relevant times a merchant with respect to motor vehicles under Col. Rev. Stat. § 4-2-104.

491. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Col. Rev. Stat. § 4-2-314.

492. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

493. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## BREACH OF COMMON LAW WARRANTY
### (Based on Colorado Law)

494. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

495. To the extent Ford's repair commitment is deemed not to be a warranty under the Uniform Commercial Code as adopted by Colorado, Plaintiffs plead in the alternative under common law warranty and contract law. Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

496.   Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

497.   As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT V
## FRAUD BY CONCEALMENT
### (Based on Colorado Law)

498.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

499.   As set forth above, Ford concealed and/or suppressed material facts concerning the safety of its vehicles that in equity and good conscience should be disclosed.

500.   Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.   Once Defendant made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.   One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

140

501.   In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.  These omitted facts were material because they directly impact the safety of the Vehicles.  Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

502.   Ford actively and knowingly concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase the Vehicles at a higher price for the vehicles, which did not match the Vehicles' true value.

503.   Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

504.   Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified.  Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

505.   As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.  Plaintiffs reserve their right to elect either to (a) rescind their

purchase or lease of the Vehicles and obtain restitution or (b) affirm their purchase or lease of the Vehicles and recover damages.

506. Ford's acts were done fraudulently, maliciously, or willfully for purposes of COL. REV. STAT. § 13-21-102. Ford's conduct warrants an assessment of exemplary damages in an amount which is equal to the amount of the actual damages awarded to Plaintiffs.

## COUNT VI
## UNJUST ENRICHMENT
### (Based on Colorado Law)

507. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

508. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

509. Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for Vehicles which actually had lower values. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

510. Plaintiffs, therefore, seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

142

## CONNECTICUT
### COUNT I
### BREACH OF EXPRESS WARRANTY
### (Based on Connecticut Law)

511.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

512.   Plaintiffs' Vehicles constitute goods under the Uniform Commercial Code ("UCC"), Sections 2-105(1) and 2A-103(h).

513.   An express warranty accompanied each Plaintiff's purchase or lease of their vehicle under Gen. Stat § 2-313 and/or Conn. Gen. Stat. § 42a-2A-503, written and otherwise offered by Ford, whereby said warranty was part of the basis of the bargain upon which each Plaintiff relied.

514.   Plaintiffs' Vehicles were not as warranted and represented in that the vehicles have the Transmission Defects and exhibit the conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in Ford's possession.

515.   Due to the Transmission Defects in Plaintiffs' Vehicles, Plaintiffs' Vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of providing safe, reliable, and efficient transportation.

516.   As a result of the Transmission Defects in Plaintiffs' Vehicles, Plaintiffs have suffered significant diminution in the value of their Vehicles.

517.   Plaintiffs have provided Ford with sufficient opportunities to repair or replace their Vehicles.

518.   Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty accompanying their Vehicles.

519.   Ford has breached its express warranties by failing to adequately and/or timely repair the Vehicles, which remain in a defective condition.

520.   Even though the express warranty provided to Plaintiffs limited Plaintiffs' remedy to repair and/or adjust defective parts, the Vehicles' defects have rendered the limited warranty ineffective to the extent that the limited repair and/or adjustment of defective parts failed of its essential purpose, pursuant to Conn. Gen. Stat. § 42a-2-719(2) and/or the above remedy is not the exclusive remedy under Conn. Gen. Stat. § 42a-2-719(1)(b).

521.   The Vehicles continue to contain defects that substantially impair their use and value to the Plaintiffs.

522.   The plaintiffs could not reasonably have discovered these Defects and non-conformities prior to their acceptance of the Vehicles.

523.   Ford induced the Plaintiffs' acceptance of the Vehicles by agreeing, by means of the express warranty, to remedy, within a reasonable time, those defects

144

that had not been or could not have been discovered prior to acceptance and, further, by failing to disclose the aforesaid Transmission Defects and/or actively concealing them.

524. Because of the Transmission Defects, the Plaintiffs have lost faith and confidence in the Vehicles and cannot reasonably rely upon them for the ordinary purpose of safe, reliable, and efficient transportation.

525. As a result of Ford's breaches of express warranties, Plaintiffs have suffered the damages set forth above.

526. To the extent that Plaintiffs' Vehicles are subject to a lease or finance contract, Ford has a duty to indemnify Plaintiffs and hold Plaintiffs harmless should Plaintiffs prevail on their claims for breach of express warranty.

527. As a direct and proximate result of Ford's breach, Plaintiffs seek all damages they are found to be entitled, including, *inter alia,* a refund of the purchase or lease price paid by Plaintiffs for their respective vehicle, incidental, consequential, and actual damages; an order requiring Ford to indemnify and hold Plaintiffs harmless for any lease or finance contract covering the Vehicles, costs, interest, and actual attorney fees; and all other relief this Court deems equitable.

**COUNT II**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Conn. Gen. Stat. § 42a-2-314 and/or § 42a-2A-504)**

528.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

529.   Defendant is a merchant with respect to motor vehicles under the Uniform Commercial Code Section 2-104(1).

530.   The Vehicles were subject to implied warranties of merchantability under Conn. Gen. Stat. § 42a-2-314 and/or Conn. Gen. Stat. § 42a-2A-504.

531.   The Vehicles were not fit for the ordinary purpose for which such goods are used and/or the vehicles would not pass without objection in the trade for the product description.

532.   The Transmission Defects and problems hereinbefore described rendered the Vehicles unmerchantable.

533.   Ford failed to adequately remedy the transmission defects in the Vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

534.   As a result of Ford's breaches of implied warranties, Plaintiffs have suffered damages.

535.   To the extent that Plaintiffs' Vehicles are covered by a lease or finance contract, Ford has a duty to indemnify Plaintiffs and hold Plaintiffs harmless should Plaintiffs prevail on their claims for breach of implied warranty.

536.  As a direct and proximate result of Ford's breach, Plaintiffs seek all damages they are found to be entitled, including, *inter alia,* a refund of the purchase or lease price paid by Plaintiffs for their respective vehicle, incidental, consequential, and actual damages; an order requiring Ford to indemnify and hold Plaintiffs harmless for any lease or finance contract covering the Vehicles, costs, interest, and actual attorney fees; and all other relief this Court deems equitable.

## COUNT III
## FRAUD BY MISREPRESENTATION AND CONCEALMENT
### (Based on Connecticut Law)

537.  Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

538.  Ford committed fraud by selling or leasing the Vehicles to Plaintiffs without disclosing that the Vehicles and their 6F35 Transmissions were defective and susceptible to sudden and premature failure.

539.  In particular, Plaintiffs are informed, believe, and thereon allege that prior to acquiring their Vehicles, Ford was well aware and knew that the 6F35 Transmission installed on the Vehicles were defective, but Ford concealed this fact from Plaintiffs at the time of sale and thereafter.

540.  Ford knew or should have known that the 6F35 Transmission had the Transmission Defect, which presents a safety hazard and is unreasonably dangerous

147

to consumers because it can suddenly and unexpectedly affect the driver's ability to control the vehicle's speed, acceleration, and deceleration.

541. Plaintiffs are informed, believe and thereon allege that Ford acquired its knowledge of the Transmission Defects prior to Plaintiffs acquiring their Vehicles, through sources not available to consumers such as Plaintiffs, including but not limited to pre-production and post-production testing data, early consumer complaints about the Transmission Defects made directly to Ford and its network of dealers, aggregate warranty data compiled from Ford's network of dealers, testing conducted by Ford in response to these complaints, as well as warranty repair and part replacements data received by Ford from Ford's network of dealers, amongst other sources of internal information.

542. Plaintiffs are informed, believe, and thereon allege that while Ford knew about the Transmission Defect, and its safety risks since 2009, if not before, Ford concealed and failed to disclose the defective nature of Plaintiffs' Vehicles and their 6F35 Transmissions to Plaintiffs at the time of sale or lease and thereafter.

543. Had Plaintiffs known that their Vehicles suffered from the Transmission Defect, Plaintiffs would not have purchased or leased their Vehicles.

544. Indeed, Plaintiffs allege that Ford knew that their Vehicles and their 6F35 Transmissions suffered from an inherent defect, was defective, would fail prematurely, and was not suitable for its intended use.

148

545.    Ford was under a duty to Plaintiffs to disclose the defective nature of their vehicles and their 6F35 Transmissions, its safety consequences and/or the associated repair costs because:

a.  Ford acquired its knowledge of the Transmission Defects and its potential consequences prior to Plaintiffs acquiring their Vehicles, though sources not available to consumers such as Plaintiffs, including but not limited to pre-production testing data, early consumer complaints about the Transmission Defects made directly to Ford and its network of dealers, aggregate warranty data compiled from Ford's network of dealers, testing conducted by Ford in response to these complaints, as well as warranty repair and part replacements data received by Ford from Ford's network of dealers, amongst other sources of internal information;

b.  Ford was in a superior position from various internal sources to know (or should have known) the true state of facts about the material defects contained in vehicles equipped with 6F35 Transmission; and

c.  Plaintiffs could not reasonably have been expected to learn or discover of the Vehicle's Transmission Defects and its potential consequences until well after Plaintiffs purchased their Vehicles.

546.   In failing to disclose the Transmission Defects to Plaintiffs, Ford has knowingly and intentionally concealed material facts and breached its duty not to do so.

547.   The facts concealed or not disclosed by Ford to Plaintiffs are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease the Vehicles. Had Plaintiffs known that their vehicles and their transmissions were defective at the time of sale, they would not have purchased or leased their Vehicles.

548.   Plaintiffs are reasonable consumers who do not expect their transmissions to fail and not work properly. Plaintiffs further expect and assume that Ford will not sell or lease vehicles with known material defects, including but not limited to those involving the vehicles' transmissions and will disclose any such defect to its consumers before selling such vehicles.

549.   As a result of Ford's misconduct, Plaintiffs have suffered and will continue to suffer actual damages.

550.   Ford's representations were expected and intended to induce Plaintiffs to purchase the Vehicles equipped with 6F35 Transmissions and to pay the increased price for same.

551.   Ford further withheld and continues to withhold information concerning the Transmission Defects set forth herein, and affirmatively

misrepresented and continues to misrepresent the above-described symptoms as being "normal," when Ford knew and continue to know that its representations and omissions are misleading and, in fact, Ford intended its representations and omissions to mislead Plaintiffs concerning the nature and existence of the above-described Transmission Defects.

552.   Plaintiffs, reasonably relying on Ford's representations and omissions were deceived into purchasing the Vehicles at prices far in excess of the values which would have been assigned to the Vehicles had these Transmission Defects and dangers been disclosed; further, Ford's representations and omissions deceived Plaintiffs concerning the existence of the defects and Plaintiffs' rights and remedies with respect to the Transmission Defects.

553.   Had Plaintiffs known of the true nature of the Transmission Defects, Plaintiffs would not have purchased or leased the Vehicles or, alternatively, would not have paid the contract or lease price.

554.   Ford's representations and omissions as herein alleged were undertaken as an affirmative scheme designed to prevent Plaintiffs from obtaining information about the nature and existence of their claims involving their Vehicles' defective 6F35 Transmissions. In furtherance of this scheme, Ford also represented to Plaintiffs that the symptoms described above were "normal," or were somehow the fault of the Plaintiffs, or that the problems had been repaired. All of these statements

were false and made with the intent to deceive and mislead Plaintiffs who relied on the statements to their detriment by failing to secure multiple repairs often required to substantiate claims and submit said claims earlier. Furthermore, Ford actively discouraged Plaintiffs from discovering the nature and existence of and thereby eliminate or restrict their ability to substantiate their claims which require documentary evidence of multiple repairs or repair attempts by:

    a.  charging "inspection fees" for warranty work in order to deter Plaintiffs from seeking repairs and submitting claims timely;

    b.  refusing to service vehicles because Plaintiffs have commenced litigation against Ford, to limit the number of repairs or repair attempts; and

    c.  failing to provide service records upon request by Plaintiffs, to further limit Plaintiff's ability to corroborate the existence of multiple repairs or repair attempts.

555. As a direct and proximate result of Ford's fraud and concealment, Plaintiffs seek their compensatory and punitive damages, in whatever amount above $75,000.00 Plaintiffs are found to be entitled, together with interest, costs, and attorney fees, plus such other and further relief as this Court deems appropriate.

**COUNT IV**
**VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT**
**(Conn. Gen. Stat. §§ 42-110a *et seq.*)**

556.

557.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

558.    The Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a *et seq*. ("CUTPA"), prohibits unfair or deceptive acts or practices."

559.    The conduct of Ford, as set forth herein, constitutes unfair trade practices, including, *inter alia*, Ford's manufacture and sale of vehicles with Transmission Defects, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles, which misrepresentations and omissions possessed the tendency or capacity to mislead.

560.    Ford engaged in the following unfair acts and or practices in the conduct of trade or commerce:

    a.  Representing through its advertising, warranties, and other express representations that the Vehicles' transmissions had benefits or characteristics that they did not actually have;

    b.  Representing that the vehicles' transmissions were of a particular standard or quality when they were not;

    c.  Advertising the vehicles and in particular the vehicles' transmissions with the intent not to sell them as advertised and, when so doing,

concealing, and suppressing facts material to the true characteristics, standards and qualities of the vehicles and transmissions;

d.  At the time of the aforesaid sales and leases, Ford knew or had reason to know that the Vehicles had Transmission Defects, as described *supra*, but Ford failed to disclose this material information to Plaintiffs;

e.  Failing to reveal material facts which tended to mislead Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f.  Failing to adequately and properly inform Plaintiffs of their rights and remedies with respect to the transactions which are the subject of this Complaint;

g.  Misrepresenting Plaintiffs' rights and/or failing to advise Plaintiffs of remedies with respect to the transactions which are the subject of this Complaint, as hereinbefore alleged;

h.  Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

i.  Failing to provide promised benefits, both as hereinbefore set forth and as promised or implied by operation of law;

j.  Causing a probability of confusion or of misunderstanding as to Plaintiffs' legal rights, obligations, and/or remedies with respect to the subject transaction; and

k. Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining Plaintiffs' specific consent to the waiver.

561. Ford's deceptive practices were specifically designed to induce Plaintiffs to purchase or lease their vehicles with the "upgraded" 6F35 transmission.

562. The above-described conduct violated the CUPTA.

563. Upon information and belief, the aforesaid violations were not due to a bona fide error, inasmuch as Ford failed to have any procedures in place designed to prevent the aforesaid violations and, further, engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous other vehicles. Further, to this day, Ford continues to engage in the unlawful practices set forth above.

564. As a proximate result of Ford's violations as set forth above, Plaintiffs have suffered ascertainable losses within the meaning of CUPTA, and seek actual and/or statutory damages, interest, costs, reasonable attorney fees and punitive damages pursuant to CUTPA.

## DELAWARE
### COUNT I
## VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT
### (6 Del. Code § 2513, et seq.)

565. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

566. The Delaware Consumer Fraud Act ("CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." 6 DEL. CODE § 2513(a).

567. Ford is a person with the meaning of 6 DEL. CODE § 2511(7).

568. As described herein Ford made false representations regarding the safety and reliability of its vehicles and concealed important facts regarding the tendency of its Fusion transmissions to exhibit the Transmission Defects. Ford intended that others rely on these misrepresentations and omissions in connection with the sale and lease of its vehicles.

569. Ford's actions as set forth above occurred in the conduct of trade or commerce.

570. Ford's conduct proximately caused injuries to Plaintiffs.

571.   Plaintiffs were injured as a result of Ford's conduct in that Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

572.   Plaintiffs are entitled to recover damages, as well as punitive damages for Ford's gross and aggravated misconduct.

## COUNT II
## VIOLATION OF DELAWARE DECEPTIVE TRADE PRACTICES ACT
### (6 Del. Code § 2532, *et seq.*)

573.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

574.   Delaware's Deceptive Trade Practices Act ("DTPA") prohibits a person from engaging in a "deceptive trade practice," which includes:

a. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

b. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

    c. Advertising goods or services with intent not to sell them as advertised; or

    d. Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

575. Ford is a person with the meaning of 6 Del. Code § 2531(5).

576. In the course of Ford's business, it willfully failed to disclose and actively concealed the dangerous risk of transmission failure in the subject Fusions. Accordingly, Ford engaged in unlawful trade practices, including representing that Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Vehicles are of a particular standard and quality when they are not; advertising Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

577. Ford's actions as set forth above occurred in the conduct of trade or commerce.

578. Ford's conduct proximately caused injuries to Plaintiffs.

579. Plaintiffs were injured as a result of Ford's conduct in that Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

158

580.   Plaintiffs seek injunctive relief and, if awarded damages under Delaware common law or Delaware Consumer Fraud Act, treble damages pursuant to 6 Del. Code § 2533(c).

581.   Plaintiffs also seek punitive damages based on the outrageousness and recklessness of Ford's conduct and its high net worth.

**COUNT III**
**BREACH OF EXPRESS WARRANTY**
**(6 Del. Code § 2-313)**

582.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

583.   Ford is and was at all relevant times a merchant with respect to motor vehicles.

584.   In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

585.   Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.  Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

586.   In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities.

587.   These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined

in Section IV.A., *supra*.   Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.   These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.   These affirmations and promises were part of the basis of the bargain between the parties.

588.   These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

589.   Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

590.   Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

591.   Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or

concealed material facts regarding the Vehicles.  Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

592.    Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. Due to Ford's failure to provide such limited remedy within a reasonable time, placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

593.    Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in 6 DEL. CODE. § 2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

594.    As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT IV
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (6 Del. Code § 2-314)

595.    Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

596.    Ford is and was at all relevant times a merchant with respect to motor vehicles.

597.   A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

598.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

599.   As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**COUNT V**
**BREACH OF CONTRACT/COMMON LAW WARRANTY**
**(Based on Delaware Law)**

600.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

601.   To the extent Ford's repair commitment is deemed not to be a warranty under Delaware's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

602.   Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

603. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT VI
## IN THE ALTERNATIVE, UNJUST ENRICHMENT
### (Based on Delaware Law)

604. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

605. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

606. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

607. Ford appreciated, accepted and retained the benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits. There is no justification for Plaintiffs' impoverishment and Ford's resulting enrichment.

608.   Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## FLORIDA
### COUNT I
## VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE TRADE PRACTICES ACT
### (Fla. Stat. § 501.201, *et seq.*)

609.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

610.   This Count and all Counts asserted Florida law are associated on behalf of Plaintiffs who experienced the Transmission Defects.

611.   The conduct of Ford as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to Ford's manufacture and sale of vehicles with defective transmissions, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles.

612.   Ford's actions as set forth above occurred in the conduct of trade or commerce.

613.   Ford's actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Ford vehicles

as a result of Ford's generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business.

614.   Plaintiffs were injured as a result of Ford's conduct.  Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

615.   Ford's conduct proximately caused the injuries to Plaintiffs.

616.   Ford is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

617.   Pursuant to FLA. STAT. § 501.201, Plaintiffs will serve the Florida Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Fla. Stat. § 672.313)

618.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

619.   This Count is asserted on behalf of Plaintiffs who experienced the Transmission Defects and who presented their Vehicle for repair.

620.   Ford is and was at all relevant times a merchant with respect to motor vehicles.

621.   In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

165

622.   Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.  Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

623.   In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

624.   These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.  Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.  These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.  These affirmations and promises were part of the basis of the bargain between the parties.

625.   These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

626.   Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because

Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

627.   Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

628.   Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.  Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

629.   Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. Due to Ford's failure to provide such limited remedy within a reasonable time, placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

630.   As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

**COUNT III**
**BREACH OF CONTRACT/COMMON LAW WARRANTY**
**(Based on Florida Law)**

167

631.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

632.   To the extent Ford's repair commitment is deemed not to be a warranty under Florida's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

633.   Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

634.   As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT IV
## FRAUD BY CONCEALMENT
### (Based on Florida Law)

635.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

636. Ford had a duty to disclose the safety, quality and reliability issues because they consistently marketed their vehicles as safe, reliable and of high quality and proclaimed that safety is one of Ford's highest corporate priorities. Once Defendant made representations to the public about safety, reliability and quality, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

637. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs. These omitted facts were material because they directly impact the safety, quality and reliability of the Vehicles. Defendant possessed exclusive knowledge of the facts rendering Ford Vehicles inherently more dangerous and unreliable than similar vehicles.

638. Defendant actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

639. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

640.   Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified.  Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

641.   As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.  For those Plaintiffs who elect to affirm the sale, these damages, include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits.  For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages.

642.   Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Defendant. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## GEORGIA
### COUNT I
### VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (Ga. Code Ann. § 10-1-370, *et seq.*)

170

643. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

644. The conduct of Ford as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to Ford's manufacture and sale of vehicles with defective transmissions, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles.

645. Ford's actions as set forth above occurred in the conduct of trade or commerce.

646. Ford's actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Ford vehicles as a result of Ford's generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business.

647. Plaintiffs were injured as a result of Defendant's conduct. Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

648. Ford's conduct proximately caused the injuries to Plaintiffs.

649. Ford is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

650.   Pursuant to GA. CODE ANN. § 10-1-370, Plaintiffs will serve the Georgia Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

## COUNT II
## VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT
### (Ga. Code Ann. § 10-1-390, *et seq.*)

651.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

652.   The conduct of Ford as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Ford's manufacture and sale of vehicles with defective transmissions, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles.

653.   Ford's actions as set forth above occurred in the conduct of trade or commerce.

654.   Ford's actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Ford vehicles as a result of Ford's generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business.

655. Plaintiffs were injured as a result of Defendant's conduct. Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

656. Ford's conduct proximately caused the injuries to Plaintiffs.

657. Ford is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

658. Pursuant to GA. CODE ANN. § 10-1-390, Plaintiffs will serve the Georgia Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

## COUNT III
## BREACH OF EXPRESS WARRANTY
### (Ga. Code Ann. § 11-2-313)

659. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

660. Ford is and was at all relevant times a merchant with respect to motor vehicles.

661. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

662. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford. Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

173

663.  In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

664.  These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.  Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.  These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

665.  These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

666.  Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

667.   Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

668.   Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.  Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

669.   Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. Due to Ford's failure to provide such limited remedy within a reasonable time, placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

670.   Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in GA. CODE ANN. § 11-2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

671.   As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

175

## COUNT IV
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Ga. Code Ann. § 11-2-314)

672.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

673.   Ford is and was at all relevant times a merchant with respect to motor vehicles.

674.   A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions, pursuant to GA. CODE ANN. § 11-2-314.

675.   These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

676.   Plaintiffs have had sufficient dealings with either the Defendant or their agents (dealerships) to establish privity of contract between Plaintiffs. Notwithstanding this, privity is not required in this case because Plaintiffs are intended third-party beneficiaries of contracts between Ford and its dealers; specifically, they are the intended beneficiaries of Ford's implied warranties.  The dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

Finally, privity is also not required because Plaintiffs' Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

677.   As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Georgia Law)

678.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

679.   To the extent Ford's repair commitment is deemed not to be a warranty under Georgia's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

680.   Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

681.   As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

177

## COUNT VI
## FRAUD BY CONCEALMENT
### (Ga. Code Ann. § 51-6-2)

682.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

683.   As set forth above, Ford concealed and/or suppressed material facts concerning the safety of the subject Fusions and their transmissions.

684.   Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.   Once Defendant made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.   One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

685.   In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.   These omitted facts were material because they directly impact the safety of the Vehicles.   Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

178

686.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

687.   Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

688.   Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified.  Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

689.   As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.  For those Plaintiffs who elect to affirm the sale, these damages, include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits.  For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages.

690.   Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Defendant.  Ford's conduct warrants an assessment of punitive damages in

an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT vIII
## UNJUST ENRICHMENT
### (Based on Georgia Law)

691.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

692.   Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

693.   As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

694.   Ford appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values.  It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

695.   Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## HAWAII

## COUNT I
## BREACH OF EXPRESS WARRANTY
### (Based on Hawaii Law)

696.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

697.   Plaintiffs' Vehicles constitute goods under the Uniform Commercial Code ("UCC"), Sections 2-105(1) and 2A-103(h).

698.   Each Plaintiff's purchase or lease of their vehicle was accompanied by an express warranty as defined in UCC Sections 2-313 and/or 2A-210, written and otherwise offered by Ford, whereby said warranty was part of the basis of the bargain of upon which each Plaintiff relied.

699.   Plaintiffs' Vehicles were not as warranted and represented in that the vehicles have the Transmission Defects and exhibit the conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in Ford's possession.

700.   As a result of the Transmission Defects in Plaintiffs' Vehicles, Plaintiffs' Vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of providing safe, reliable, and efficient transportation.

701.   As a result of the Transmission Defects in Plaintiffs' Vehicles, Plaintiffs have suffered significant diminution in the value of their Vehicles.

181

702.   Plaintiffs have provided Ford with sufficient opportunities to repair or replace their Vehicles.

703.   Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty that accompanied their Vehicles.

704.   Ford has breached its express warranties by failing to adequately repair the Vehicles and/or to repair the Vehicles in a timely fashion, and the Vehicles remain in a defective condition.

705.   Even though the express warranty provided to Plaintiffs limited Plaintiffs' remedy to repair and/or adjust defective parts, the Vehicles' defects have rendered the limited warranty ineffective to the extent that the limited repair and/or adjustment of defective parts failed of its essential purpose, pursuant to UCC Section 2-719(2) and/or the above remedy is not the exclusive remedy under UCC Section 2-719(1)(b).

706.   The Vehicles continue to contain defects which substantially impair the use and value of the Vehicles to Plaintiffs.

707.   These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to their acceptance of the Vehicles.

708.   Ford induced Plaintiffs' acceptance of the Vehicles by agreeing, by means of the express warranty, to remedy, within a reasonable time, those defects which had not been or could not have been discovered prior to acceptance and,

182

further, by Ford's failure to disclose the aforesaid Transmission Defects and/or Ford's active concealment of same.

709.  As a result of the transmission defects, the Plaintiffs have lost faith and confidence in the Vehicles and the Plaintiffs cannot reasonably rely upon the Vehicles for the ordinary purpose of safe, reliable and efficient transportation.

710.  As a result of Ford's breaches of express warranties, Plaintiffs have suffered the damages set forth above.

711.  To the extent that Plaintiffs' Vehicles are subject to a lease or finance contract, Ford has a duty to indemnify Plaintiffs and hold Plaintiffs harmless should Plaintiffs prevail on their claims for breach of express warranty.

712.  As a direct and proximate result of Ford's breach, Plaintiffs seek all damages they are found to be entitled, including, *inter alia,* a refund of the purchase or lease price paid by Plaintiffs for their respective vehicle, incidental, consequential, and actual damages; an order requiring Ford to indemnify and hold Plaintiffs harmless for any lease or finance contract covering the Vehicles, costs, interest, and actual attorney fees; and all other relief this Court deems equitable.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Based on Hawaii Law)

713.  Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

714.   Defendant is a merchant with respect to motor vehicles under the Uniform Commercial Code Section 2-104(1).

715.   The Vehicles were subject to implied warranties of merchantability under UCC Sections 2-314 and/or Section 2A-212.

716.   The Vehicles were not fit for the ordinary purpose for which such goods are used and/or the vehicles would not pass without objection in the trade for the product description.

717.   The Transmission Defects and problems hereinbefore described rendered the Vehicles unmerchantable.

718.   Ford failed to adequately remedy the transmission defects in the Vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

719.   As a result of Ford's breaches of implied warranties, Plaintiffs have suffered damages.

720.   To the extent that Plaintiffs' Vehicles are covered by a lease or finance contract, Ford has a duty to indemnify Plaintiffs and hold Plaintiffs harmless should Plaintiffs prevail on their claims for breach of implied warranty.

721.   As a direct and proximate result of Ford's breach, Plaintiffs seek all damages they are found to be entitled, including, *inter alia,* a refund of the purchase or lease price paid by Plaintiffs for their respective vehicle, incidental, consequential,

and actual damages; an order requiring Ford to indemnify and hold Plaintiffs harmless for any lease or finance contract covering the Vehicles, costs, interest, and actual attorney fees; and all other relief this Court deems equitable.

**COUNT III**
**FRAUD BY MISREPRESENTATION AND CONCEALMENT**
**(Based on Hawaii Law)**

722.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

723.   Ford committed fraud by selling or leasing the Vehicles to Plaintiffs without disclosing that the Vehicles and their 6F35 Transmissions were defective and susceptible to sudden and premature failure.

724.   In particular, Plaintiffs are informed, believe, and thereon allege that prior to acquiring their Vehicles, Ford was well aware and knew that the 6F35 Transmission installed on the Vehicles were defective, but Ford concealed this fact from Plaintiffs at the time of sale and thereafter.

725.   Ford knew or should have known that the 6F35 Transmission had the Transmission Defect, which presents a safety hazard and is unreasonably dangerous to consumers because it can suddenly and unexpectedly affect the driver's ability to control the vehicle's speed, acceleration, and deceleration.

726.   Plaintiffs are informed, believe and thereon allege that Ford acquired its knowledge of the Transmission Defects prior to Plaintiffs acquiring their

Vehicles, through sources not available to consumers such as Plaintiffs, including but not limited to pre-production and post-production testing data, early consumer complaints about the Transmission Defects made directly to Ford and its network of dealers, aggregate warranty data compiled from Ford's network of dealers, testing conducted by Ford in response to these complaints, as well as warranty repair and part replacements data received by Ford from Ford's network of dealers, amongst other sources of internal information.

727. Plaintiffs are informed, believe, and thereon allege that while Ford knew about the Transmission Defect, and its safety risks since 2009, if not before, Ford concealed and failed to disclose the defective nature of Plaintiffs' Vehicles and their 6F35 Transmissions to Plaintiffs at the time of sale or lease and thereafter.

728. Had Plaintiffs known that their Vehicles suffered from the Transmission Defect, Plaintiffs would not have purchased or leased their Vehicles.

729. Indeed, Plaintiffs allege that Ford knew that their Vehicles and their 6F35 Transmissions suffered from an inherent defect, was defective, would fail prematurely, and was not suitable for its intended use.

730. Ford was under a duty to Plaintiffs to disclose the defective nature of their vehicles and their 6F35 Transmissions, its safety consequences and/or the associated repair costs because:

a. Ford acquired its knowledge of the Transmission Defects and its potential consequences prior to Plaintiffs acquiring their Vehicles, though sources not available to consumers such as Plaintiffs, including but not limited to pre-production testing data, early consumer complaints about the Transmission Defects made directly to Ford and its network of dealers, aggregate warranty data compiled from Ford's network of dealers, testing conducted by Ford in response to these complaints, as well as warranty repair and part replacements data received by Ford from Ford's network of dealers, amongst other sources of internal information;

b. Ford was in a superior position from various internal sources to know (or should have known) the true state of facts about the material defects contained in vehicles equipped with 6F35 Transmission; and

c. Plaintiffs could not reasonably have been expected to learn or discover of the Vehicle's Transmission Defects and its potential consequences until well after Plaintiffs purchased their Vehicles.

731.   In failing to disclose the Transmission Defects to Plaintiffs, Ford has knowingly and intentionally concealed material facts and breached its duty not to do so.

732. The facts concealed or not disclosed by Ford to Plaintiffs are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease the Vehicles. Had Plaintiffs known that their vehicles and their transmissions were defective at the time of sale, they would not have purchased or leased their Vehicles.

733. Plaintiffs are reasonable consumers who do not expect their transmissions to fail and not work properly. Plaintiffs further expect and assume that Ford will not sell or lease vehicles with known material defects, including but not limited to those involving the vehicles' transmissions and will disclose any such defect to its consumers before selling such vehicles.

734. As a result of Ford's misconduct, Plaintiffs have suffered and will continue to suffer actual damages.

735. Ford's representations were expected and intended to induce Plaintiffs to purchase the Vehicles equipped with 6F35 Transmissions and to pay the increased price for same.

736. Ford further withheld and continues to withhold information concerning the Transmission Defects set forth herein, and affirmatively misrepresented and continues to misrepresent the above-described symptoms as being "normal," when Ford knew and continue to know that its representations and omissions are misleading and, in fact, Ford intended its representations and

omissions to mislead Plaintiffs concerning the nature and existence of the above-described Transmission Defects.

737.   Plaintiffs, reasonably relying on Ford's representations and omissions were deceived into purchasing the Vehicles at prices far in excess of the values which would have been assigned to the Vehicles had these Transmission Defects and dangers been disclosed; further, Ford's representations and omissions deceived Plaintiffs concerning the existence of the defects and Plaintiffs' rights and remedies with respect to the Transmission Defects.

738.   Had Plaintiffs known of the true nature of the Transmission Defects, Plaintiffs would not have purchased or leased the Vehicles or, alternatively, would not have paid the contract or lease price.

739.   Ford's representations and omissions as herein alleged were undertaken as an affirmative scheme designed to prevent Plaintiffs from obtaining information about the nature and existence of their claims involving their Vehicles' defective 6F35 Transmissions. In furtherance of this scheme, Ford also represented to Plaintiffs that the symptoms described above were "normal," or were somehow the fault of the Plaintiffs, or that the problems had been repaired. All of these statements were false and made with the intent to deceive and mislead Plaintiffs who relied on the statements to their detriment by failing to secure multiple repairs often required to substantiate claims and submit said claims earlier. Furthermore, Ford actively

discouraged Plaintiffs from discovering the nature and existence of and thereby eliminate or restrict their ability to substantiate their claims which require documentary evidence of multiple repairs or repair attempts by:

    a.  charging "inspection fees" for warranty work in order to deter Plaintiffs from seeking repairs and submitting claims timely;

    b.  Refusing to service vehicles because Plaintiffs have commenced litigation against Ford, to limit the number of repairs or repair attempts; and

    c.  failing to provide service records upon request by Plaintiffs, to further limit Plaintiff's ability to corroborate the existence of multiple repairs or repair attempts.

740.   As a direct and proximate result of Ford's fraud and concealment, Plaintiffs seek their compensatory and punitive damages, in whatever amount above $75,000.00 Plaintiffs are found to be entitled, together with interest, costs, and attorney fees, plus such other and further relief as this Court deems appropriate.

**COUNT IV**
**VIOLATION OF HAWAII UNFAIR AND DECEPTIVE ACTS AND PRACTICES STATUTE,**
**(Haw. Rev. Stat. § 480-1, *et seq.*)**

741.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

742.    The Hawaii Unfair and Deceptive Acts and Practices Statute, Haw. Rev. Stat. § 480-1, *et seq.* ("UDAP") prohibits "unfair or deceptive acts or practices declared unlawful by this section."

743.    Plaintiffs are each "consumers" as defined by UDAP § 480-1.

744.    The Vehicles are "commodities" as defined by UDAP § 480-1.

745.    Ford is a "seller" as defined by UDAP § 480-1.

746.    The conduct of Ford, as set forth herein, constitutes unfair or deceptive acts or practices, including, *inter alia*, Ford's manufacture and sale of vehicles with Transmission Defects, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles, which misrepresentations and omissions possessed the tendency or capacity to mislead.

747.    Ford engaged in the following violative acts, or practices in the conduct of trade or commerce:

   a.   Representing through its advertising, warranties, and other express representations that the Vehicles' transmissions had benefits or characteristics that they did not actually have;

   b.   Representing that the vehicles' transmissions were of a particular standard or quality when they were not;

191

c. Advertising the vehicles and in particular the vehicles' transmissions with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material tot he true characteristics, standards and qualities of the vehicles and transmissions;

d. At the time of the aforesaid sales and leases, Ford knew or had reason to know that the Vehicles had Transmission Defects, as described *supra*, but Ford failed to disclose this material information to Plaintiffs;

e. Failing to reveal material facts which tended to mislead Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f. Failing to adequately and properly inform Plaintiffs of their rights and remedies with respect to the transactions which are the subject of this Complaint;

g. Misrepresenting Plaintiffs' rights and/or failing to advise Plaintiffs of remedies with respect to the transactions which are the subject of this Complaint, as hereinbefore alleged;

h. Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

i. Failing to provide promised benefits, both as hereinbefore set forth and as promised or implied by operation of law;

j.  Causing a probability of confusion or of misunderstanding as to Plaintiffs' legal rights, obligations, and/or remedies with respect to the subject transaction; and

k.  Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining Plaintiffs' specific consent to the waiver.

748.  Ford's deceptive practices were specifically designed to induce Plaintiffs to purchase or lease their vehicles with the "upgraded" 6F35 transmission.

749.  Ford's conduct violated the UDAP statute and injured Plaintiffs herein.

750.  Upon information and belief, the aforesaid violations were not due to a bona fide error, inasmuch as Ford failed to have any procedures in place designed to prevent the aforesaid violations and, further, engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous other vehicles. Further, to this day, Ford continues to engage in the unlawful practices set forth above.

751.  As a proximate result of Ford's violations as set forth above, Plaintiffs have suffered a loss within the meaning of the UDAP statute, and seek to recover trebled actual damages, statutory damages, interest, costs, and attorney fees and costs pursuant to the UDAP statute.

**IDAHO**
**COUNT I**
**BREACH OF EXPRESS WARRANTY**
**(Idaho Code 282-313 and/or 28-12-210)**

752.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

753.   Plaintiffs' Vehicles constitute goods under the Uniform Commercial Code ("UCC"), Idaho Code 28-2-105(1) and 28-12-103(h).

754.   Each Plaintiff's purchase or lease of their vehicle was accompanied by an express warranty as defined in Idaho Code 282-313 and/or 28-12-210, written and otherwise offered by Ford, whereby said warranty was part of the basis of the bargain of upon which each Plaintiff relied.

755.   Plaintiffs' Vehicles were not as warranted and represented in that the vehicles have the Transmission Defects and exhibit the conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in Ford's possession.

756.   As a result of the Transmission Defects in Plaintiffs' Vehicles, Plaintiffs' Vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of providing safe, reliable, and efficient transportation.

757. As a result of the Transmission Defects in Plaintiffs' Vehicles, Plaintiffs have suffered significant diminution in the value of their Vehicles.

758. Plaintiffs have provided Ford with sufficient opportunities to repair or replace their Vehicles.

759. Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty that accompanied their Vehicles.

760. Ford has breached its express warranties by failing to adequately repair the Vehicles and/or to repair the Vehicles in a timely fashion, and the Vehicles remain in a defective condition.

761. Even though the express warranty provided to Plaintiffs limited Plaintiffs' remedy to repair and/or adjust defective parts, the Vehicles' defects have rendered the limited warranty ineffective to the extent that the limited repair and/or adjustment of defective parts failed of its essential purpose, pursuant to Idaho Code 28-2-719(2) and/or the above remedy is not the exclusive remedy under Idaho Code 282-719(1)(b).

762. The Vehicles continue to contain defects which substantially impair the use and value of the Vehicles to Plaintiffs.

763. These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to their acceptance of the Vehicles.

764.   Ford induced Plaintiffs' acceptance of the Vehicles by agreeing, by means of the express warranty, to remedy, within a reasonable time, those defects which had not been or could not have been discovered prior to acceptance and, further, by Ford's failure to disclose the aforesaid Transmission Defects and/or Ford's active concealment of same.

765.   As a result of the transmission defects, the Plaintiffs have lost faith and confidence in the Vehicles and the Plaintiffs cannot reasonably rely upon the Vehicles for the ordinary purpose of safe, reliable and efficient transportation.

766.   As a result of Ford's breaches of express warranties, Plaintiffs have suffered the damages set forth above.

767.   To the extent that Plaintiffs' Vehicles are subject to a lease or finance contract, Ford has a duty to indemnify Plaintiffs and hold Plaintiffs harmless should Plaintiffs prevail on their claims for breach of express warranty.

768.   As a direct and proximate result of Ford's breach, Plaintiffs seek all damages they are found to be entitled, including, inter alia, a refund of the purchase or lease price paid by Plaintiffs for their respective vehicle, incidental, consequential, and actual damages; an order requiring Ford to indemnify and hold Plaintiffs harmless for any lease or finance contract covering the Vehicles, costs, interest, and actual attorney fees; and all other relief this Court deems equitable.

## COUNT II

196

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Idaho Code 28-2-314 and/or 28-12-212)

769.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

770.   Ford is a merchant with respect to motor vehicles under the Idaho Code 28-2-104(1).

771.   The Vehicles were subject to implied warranties of merchantability under Idaho Code 28-2-314 and/or 28-12-212.

772.   The Vehicles were not fit for the ordinary purpose for which such goods are used and/or the vehicles would not pass without objection in the trade for the product description.

773.   The Transmission Defects and problems hereinbefore described rendered the Vehicles unmerchantable.

774.   Ford failed to adequately remedy the transmission defects in the Vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

775.   As a result of Ford's breaches of implied warranties, Plaintiffs have suffered damages.

776. To the extent that Plaintiffs' Vehicles are covered by a lease or finance contract, Ford has a duty to indemnify Plaintiffs and hold Plaintiffs harmless should Plaintiffs prevail on their claims for breach of implied warranty.

777. As a direct and proximate result of Ford's breach, Plaintiffs seek all damages they are found to be entitled, including, inter alia, a refund of the purchase or lease price paid by Plaintiffs for their respective vehicle, incidental, consequential, and actual damages; an order requiring Ford to indemnify and hold Plaintiffs harmless for any lease or finance contract covering the Vehicles, costs, interest, and actual attorney fees; and all other relief this Court deems equitable.

## COUNT III
## FRAUD BY MISREPRESENTATION AND CONCEALMENT
### (Based on Idaho Law)

778. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

779. Ford committed fraud by selling or leasing the Vehicles to Plaintiffs without disclosing that the Vehicles and their 6F35 Transmissions were defective and susceptible to sudden and premature failure.

780. Plaintiffs are informed, believe, and thereon allege that prior to acquiring their Vehicles, Ford was aware and knew that the 6F35 Transmission installed on the Vehicles were defective, but Ford concealed this fact from Plaintiffs at the time of sale and thereafter.

198

781.   Ford knew or should have known that the 6F35 Transmission had the Transmission Defects, which presents a safety hazard and is unreasonably dangerous to consumers because it can suddenly and unexpectedly affect the driver's ability to control the vehicle's speed, acceleration, and deceleration.

782.   Plaintiffs are informed, believe and thereon allege that Ford acquired its knowledge of the Transmission Defects prior to Plaintiffs acquiring their Vehicles, through sources not available to consumers such as Plaintiffs, including but not limited to pre-production and post-production testing data, early consumer complaints about the Transmission Defects made directly to Ford and its network of dealers, aggregate warranty data compiled from Ford's network of dealers, testing conducted by Ford in response to these complaints, as well as warranty repair and part replacements data received by Ford from Ford's network of dealers, amongst other sources of internal information.

783.   Plaintiffs are informed, believe, and thereon allege that while Ford knew about the Transmission Defect, and its safety risks since 2009, if not before, Ford concealed and failed to disclose the defective nature of Plaintiffs' Vehicles and their 6F35 Transmissions to Plaintiffs at the time of sale or lease and thereafter.

784.   Had Plaintiffs known that their Vehicles suffered from the Transmission Defect, Plaintiffs would not have purchased or leased their Vehicles.

785.   Indeed, Plaintiffs allege that Ford knew that their Vehicles and their 6F35 Transmissions suffered from an inherent defect, was defective, would fail prematurely, and was not suitable for its intended use.

786.   Ford was under a duty to Plaintiffs to disclose the defective nature of their vehicles and their 6F35 Transmissions, its safety consequences and/or the associated repair costs because:

a.   Ford acquired its knowledge of the Transmission Defects and its potential consequences prior to Plaintiffs acquiring their Vehicles, though sources not available to consumers such as Plaintiffs, including but not limited to pre-production testing data, early consumer complaints about the Transmission Defects made directly to Ford and its network of dealers, aggregate warranty data compiled from Ford's network of dealers, testing conducted by Ford in response to these complaints, as well as warranty repair and part replacements data received by Ford from Ford's network of dealers, amongst other sources of internal information;

b.   Ford was in a superior position from various internal sources to know (or should have known) the true state of facts about the material defects contained in vehicles equipped with 6F35 Transmission; and

     c.  Plaintiffs could not reasonably have been expected to learn or discover of the Vehicle's Transmission Defects and its potential consequences until well after Plaintiffs purchased their Vehicles.

787.  In failing to disclose the Transmission Defects to Plaintiffs, Ford has knowingly and intentionally concealed material facts and breached its duty not to do so.

788.  The facts concealed or not disclosed by Ford to Plaintiffs are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease the Vehicles. Had Plaintiffs known that their vehicles and their transmissions were defective at the time of sale, they would not have purchased or leased their Vehicles.

789.  Plaintiffs are reasonable consumers who do not expect their transmissions to fail and not work properly. Plaintiffs further expect and assume that Ford will not sell or lease vehicles with known material defects, including but not limited to those involving the vehicles' transmissions and will disclose any such defect to its consumers before selling such vehicles.

790.  As a result of Ford's misconduct, Plaintiffs have suffered and will continue to suffer actual damages.

791.   Ford's representations were expected and intended to induce Plaintiffs to purchase the Vehicles equipped with 6F35 Transmissions and to pay the increased price for same.

792.   Ford further withheld and continues to withhold information concerning the Transmission Defects set forth herein, and affirmatively misrepresented and continues to misrepresent the above-described symptoms as being "normal," when Ford knew and continue to know that its representations and omissions are misleading and, in fact, Ford intended its representations and omissions to mislead Plaintiffs concerning the nature and existence of the above-described Transmission Defects.

793.   Plaintiffs, reasonably relying on Ford's representations and omissions were deceived into purchasing the Vehicles at prices far in excess of the values which would have been assigned to the Vehicles had these Transmission Defects and dangers been disclosed; further, Ford's representations and omissions deceived Plaintiffs concerning the existence of the defects and Plaintiffs' rights and remedies with respect to the Transmission Defects.

794.   Had Plaintiffs known of the true nature of the Transmission Defects, Plaintiffs would not have purchased or leased the Vehicles or, alternatively, would not have paid the contract or lease price.

795.   Ford's representations and omissions as herein alleged were undertaken as an affirmative scheme designed to prevent Plaintiffs from obtaining information about the nature and existence of their claims involving their Vehicles' defective 6F35 Transmissions. In furtherance of this scheme, Ford also represented to Plaintiffs that the symptoms described above were "normal," or were somehow the fault of the Plaintiffs, or that the problems had been repaired. All of these statements were false and made with the intent to deceive and mislead Plaintiffs who relied on the statements to their detriment by failing to secure multiple repairs often required to substantiate claims and submit said claims earlier. Furthermore, Ford actively discouraged Plaintiffs from discovering the nature and existence of and thereby eliminate or restrict their ability to substantiate their claims which require documentary evidence of multiple repairs or repair attempts by:

a.  charging "inspection fees" for warranty work in order to deter Plaintiffs from seeking repairs and submitting claims timely;

b.  refusing to service vehicles because Plaintiffs have commenced litigation against Ford, to limit the number of repairs or repair attempts; and

c.  failing to provide service records upon request by Plaintiffs, to further limit Plaintiff's ability to corroborate the existence of multiple repairs or repair attempts.

796.   As a direct and proximate result of Ford's fraud and concealment, Plaintiffs seek their compensatory and punitive damages, in whatever amount above $75,000.00 Plaintiffs are found to be entitled, together with interest, costs, and attorney fees, plus such other and further relief as this Court deems appropriate.

## COUNT IV
## VIOLATION OF IDAHO CONSUMER PROTECTION ACT
### (Idaho Code Title 48 Chapter 6)

797.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

798.   The Idaho Consumer Protection Act, Idaho Code Title 48 Chapter 6 ("ICPA") prohibits unfair or deceptive acts or practices, including prohibiting misleading consumer practices and unconscionable practices.

799.   Ford is a "person" as defined by the ICPA 48-602.

800.   The conduct of Ford, as set forth herein, constitutes unfair or deceptive acts or practices, including, inter alia, Ford's manufacture and sale of vehicles with Transmission Defects, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles, which misrepresentations and omissions possessed the tendency or capacity to mislead.

801.   Ford engaged in the following violative acts, or practices in the conduct of trade or commerce:

204

a.  Representing through its advertising, warranties, and other express representations that the Vehicles' transmissions had benefits or characteristics that they did not actually have;

b.  Representing that the vehicles' transmissions were of a particular standard or quality when they were not;

c.  Advertising the vehicles and in particular the vehicles' transmissions with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the vehicles and transmissions;

d.  Failing to comply with any statute or rule that identifies conduct in trade and commerce as unfair or deceptive or a violation of the ICPA;

e.  At the time of the aforesaid sales and leases, Ford knew or had reason to know that the Vehicles had Transmission Defects, as described *supra*, but Ford failed to disclose this material information to Plaintiffs;

f.  Failing to reveal material facts which tended to mislead Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

g.  Failing to adequately and properly inform Plaintiffs of their rights and remedies with respect to the transactions which are the subject of this Complaint;

205

h. Misrepresenting Plaintiffs' rights and/or failing to advise Plaintiffs of remedies with respect to the transactions which are the subject of this Complaint, as hereinbefore alleged;

i. Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

j. Failing to provide promised benefits, both as hereinbefore set forth and as promised or implied by operation of law;

k. Causing a probability of confusion or of misunderstanding as to Plaintiffs' legal rights, obligations, and/or remedies with respect to the subject transaction;

l. Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining Plaintiffs' specific consent to the waiver.

802. Ford's deceptive practices were specifically designed to induce Plaintiffs to purchase or lease their vehicles with the "upgraded" 6F35 transmission.

803. The above-described conduct violated the ICPA.

804. Upon information and belief, the aforesaid violations were not due to a bona fide error, inasmuch as Ford failed to have any procedures in place designed to prevent the aforesaid violations and, further, engaged in the same unfair and

deceptive acts or practices in connection with the sale or lease of numerous other vehicles. Further, to this day, Ford continues to engage in the unlawful practices set forth above.

805.   As a proximate result of Ford's violations as set forth above, Plaintiffs have suffered ascertainable loss within the meaning of the Act.

806.   Pursuant to ICPA 48-608(1), Plaintiffs seek to treat any agreement incident thereto as voidable.

807.   As a proximate result of Ford's violations as set forth above, Plaintiffs have suffered ascertainable losses within the meaning of ICPA, and they are entitled to an order enjoining Ford from the employment of similar conduct, as well as being entitled to actual, statutory, and/or punitive damages, interest, costs, reasonable attorney fees, and to any other relief as the court deems just and necessary.

## ILLINOIS
### COUNT I
### VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### (815 Ill. Comp. Stat. 505/1, *et seq.*)

808.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

809.   The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILL. COMP. STAT. 505/2 prohibits unfair or deceptive acts or practices in

connection with any trade or commerce.  Specifically, the Act prohibits suppliers from representing that their goods are of a particular quality or grade they are not.

810.   Ford is a "person" as that term is defined in the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILL. COMP. STAT. 505/1(c).

811.   Plaintiffs are "consumers" as that term is defined in the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILL. COMP. STAT. 505/1(e).

812.   Ford's conduct caused Plaintiffs' damages as alleged.

813.   As a result of the foregoing wrongful conduct of Defendant, Plaintiffs have been damaged in an amount to be proven at trial, including, but not limited to, actual damages, court costs, and reasonable attorneys' fees pursuant to 815 ILL. COMP. STAT. 505/1, *et seq.*

## COUNT II
## VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 Ill. Comp. Stat. 510/1, *et. seq.*)

814.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

815.   815 ILL. COMP. STAT. 510/2 provides that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following:   "(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or

certification of goods or services; … (5) represents that goods or services have sponsorship, approval, characteristics ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have; … (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; … (9) advertises goods or services with intent not to sell them as advertised; … [and] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

816.   Ford is a "person" within the meaning of 815 ILL. COMP. STAT. 510/1(5).

817.   The vehicles sold to Plaintiffs were not of the particular sponsorship, approval, characteristics, ingredients, uses benefits, or qualities represented by Defendant.

818.   The vehicles sold to Plaintiffs were not of the particular standard, quality, and/or grade represented by Defendant.

819.   Defendant's conduct was knowing and/or intentional and/or with malice and/or demonstrated a complete lack of care and/or reckless and/or was in conscious disregard for the rights of Plaintiffs.

209

820.   As a result of the foregoing wrongful conduct of Ford, Plaintiffs have been damaged in an amount to proven at trial, including, but not limited to, actual and punitive damages, equitable relief and reasonable attorneys' fees.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (810 Ill. Comp. Stat. 5/2-314 & 5/2A-212)

821.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

822.   Ford impliedly warranted that their vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

823.   Ford breached the implied warranty that the vehicle was merchantable and safe for use as public transportation by marketing, advertising, distributing and selling vehicles with the common design and manufacturing defect, without incorporating adequate electronic or mechanical fail-safes, and while misrepresenting the dangers of such vehicles to the public.

824.   These dangerous defects existed at the time the vehicles left Ford's manufacturing facilities and at the time they were sold to Plaintiffs.

825.   These dangerous defects were the direct and proximate cause of damages to Plaintiffs.

**COUNT IV**
**BREACH OF EXPRESS WARRANTIES**
**(810 Ill. Comp. Stat. 5/2-313)**

826.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

827.   Ford expressly warranted – through statements and advertisements – that the vehicles were of high quality, and at a minimum, would actually work properly and safely.

828.   Ford breached this warranty by knowingly selling to Plaintiffs vehicles with dangerous defects, and which were not of high quality.

829.   Plaintiffs have been damaged as a direct and proximate result of the breaches by Ford in that the Vehicles purchased or leased by Plaintiffs were and are worth far less than what Plaintiffs paid to purchase, which was reasonably foreseeable to Ford.

**COUNT V**
**NEGLIGENCE**
**(Based on Illinois Law)**

830.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

831.   Ford is a manufacturer and supplier of automobiles.

832.   Ford owed Plaintiffs a non-delegable duty to exercise ordinary and reasonable care to properly design, engineer, and manufacture the Vehicles against

foreseeable hazard and malfunctions including uncontrollable Transmission Defects.

833.   Ford owed Plaintiffs a non-delegable duty to exercise ordinary and reasonable care in designing, engineering, and manufacturing the Vehicles so that they would function normally, including their transmissions.

834.   Ford also owed – and owe – a continuing duty to notify Plaintiffs of the problem at issue and to repair the dangerous defects.

835.   Ford breached these duties of reasonable care by designing, engineering and manufacturing vehicles that exhibits the Transmission Defects, and breached their continuing duty to notify Plaintiffs of these defects.

836.   Plaintiffs did not and could not know of the intricacies of these defects and their latent and dangerous manifestations, or the likelihood of harm there from arising in the normal use of their vehicles.

837.   At all relevant times, there existed alternative designs and engineering which were both technically and economically feasible.   Further, any alleged benefits associated with the defective designs are vastly outweighed by the real risks associated with sudden Transmission Defects.

838.   The Vehicles were defective as herein alleged at the time they left Ford's factories, and the Vehicles reached Plaintiffs without substantial change in the condition in which they were sold.

212

839.   As a direct and proximate result of Ford's breaches, Plaintiffs have suffered damages and are entitled to remedies, including, but not limited to, diminution in value, return of lease payments and penalties, and injunctive relief related to future lease payments or penalties.

## COUNT VI
## STRICT PRODUCT LIABILITY (DEFECTIVE DESIGN)
### (Based on Illinois Law)

840.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

841.   Ford is and have been at all times pertinent to this Complaint, engaged in the business of designing, manufacturing, assembling, promoting, advertising, distributing and selling Vehicles in the United States, including those owned or leased by Plaintiffs.

842.   Ford knew and anticipated that the vehicles owned or leased by Plaintiffs would be sold to and operated by purchasers and/or eventual owners or lessees of Ford's vehicles, including Plaintiffs. Ford also knew that these Vehicles would reach Plaintiffs without substantial change in their condition from the time the vehicles departed Ford's assembly lines.

843.   Ford designed the Vehicles defectively, causing them to fail to perform as safely as an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

844.   Ford had the capability to use a feasible, alternative, safer design, and failed to correct the design defects.

845.   The risks inherent in the design of Vehicles outweigh significantly any benefits of such design.

846.   Plaintiffs could not have anticipated and did not know of the aforementioned defects at any time prior to recent revelations regarding the problems of the Vehicles.

847.   As a direct and proximate result of Ford's wrongful conduct, Plaintiffs have suffered damages, including, but not limited to, diminution in value, return of lease payments and penalties, and injunctive relief related to future lease payments or penalties.

848.   Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT VII
## STRICT PRODUCT LIABILITY (Failure to warn)
### (Based on Illinois Law)

849.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

850.   Ford is and have been at all times pertinent to this Complaint, engaged in the business of designing, manufacturing, assembling, promoting, advertising,

distributing and selling Vehicles in the United States, including those owned or leased by Plaintiffs.

851.   Ford, at all times pertinent to this Complaint, knew and anticipated that the Vehicles and their component parts would be purchased, leased and operated by consumers, including Plaintiffs.

852.   Ford also knew that these Vehicles would reach Plaintiffs without substantial change in their conditions from the time that the vehicles departed Ford's assembly lines.

853.   Ford knew or should have known of the substantial dangers involved in the reasonably foreseeable use of the Vehicles, defective design, manufacturing and lack of sufficient warnings which caused them to have an unreasonably dangerous propensity to sudden and unintended manifestation of Transmission Defects.

854.   Ford failed to adequately warn Plaintiffs when they became aware of the defect that caused Plaintiffs' Vehicles to be prone to exhibiting the Transmission Defects.

855.   Ford also failed to timely recall the vehicles or take any action to timely warn Plaintiffs of these problems and instead continues to subject Plaintiffs to harm.

856.   Ford knew, or should have known, that these defects were not readily recognizable to an ordinary consumer and that consumers would lease, purchase and use these products without inspection.

857.   Ford should have reasonably foreseen that the sudden and unintended defect in the Vehicles would subject Plaintiffs to harm resulting from the defect.

858.   Plaintiffs have used the Vehicles for their intended purpose and in a reasonable and foreseeable manner.

859.   As a direct and proximate result of Ford's wrongful conduct, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT VIII
## UNJUST ENRICHMENT
### (Based on Illinois Law)

860.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

861.   Plaintiffs paid Ford the value of vehicles that are non-defective, and in exchange, Ford provided Plaintiffs vehicles that are, in fact, defective.

862.   Further, Plaintiffs paid Ford the value for vehicles that would not be compromised by substantial, invasive repairs, and in return received vehicles that require such repairs.

863.   Further, Plaintiffs paid Ford for vehicles they could operate, and in exchange, Ford provided Plaintiffs vehicles that could not be normally operated because their defects posed the possibility of life-threatening injuries or death.

216

864.   As such, Plaintiffs conferred a windfall upon Ford, which knows of the windfall and has retained such benefits, which would be unjust for Ford to retain.

865.   As a direct and proximate result of Ford's unjust enrichment, Plaintiffs have suffered and continue to suffer various damages and are entitled to remedies, including, but not limited to, restitution of all amounts by which Ford was enriched through its misconduct.

## COUNT IX
## FRAUDULENT CONCEALMENT / FRAUD BY OMISSION
### (Based on Illinois Law)

866.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

867.   Ford intentionally concealed the above-described material safety information, or acted with reckless disregard for the truth, and denied Plaintiffs information that is highly relevant to their purchasing decision.

868.   Ford further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car that the vehicles they were selling were new, had no significant defects and would perform and operate properly when driven in normal usage.

869.   Ford knew these representations were false when made.

870.  Plaintiffs' Vehicles were, in fact, defective, unsafe, and unreliable, because they were subject to sudden manifestations of the Transmission Defects.

871.  Ford had a duty to disclose that these Vehicles were defective, unsafe and unreliable because Plaintiffs relied on Ford's material representations that the Vehicles they were purchasing were safe and free from defects.

872.  The aforementioned concealment was material because if it had been disclosed Plaintiffs would not have bought or leased the vehicles.

873.  The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle.  Ford knew or recklessly disregarded that its representations were false. Ford intentionally made the false statements in order to sell vehicles.

874.  Plaintiffs relied on Ford's reputation – along with Ford's failure to disclose the transmission problems and Ford's affirmative assurance that its vehicles were safe and reliable and other similar false statements – in purchasing or leasing Ford's vehicles.

875.  As a result of their reliance, Plaintiffs have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

876. Ford's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs. Plaintiffs are therefore entitled to an award of punitive damages.

## COUNT X
## BREACH OF LEASE / CONTRACT
### (Based on Illinois Law)

877. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

878. Plaintiffs entered into lease agreements with Ford. Plaintiffs entered into agreements to purchase Ford vehicles which also directly or indirectly benefited Ford.

879. The leases and purchase agreements provided that Plaintiffs would make payments and in return would receive a new vehicle that would operate properly.

880. Ford breached their agreements with Plaintiffs, because the vehicles sold or leased to Plaintiffs were defective and not of a quality that reasonably would be expected of a new automobile.

881. Plaintiffs have fully performed their duties under the purchase and lease agreements.

882. Ford is liable for all damages suffered by Plaintiffs caused by such breaches of contract.

# INDIANA
## COUNT I
## VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
### (Ind. Code § 24-5-0.5-3*)*

883.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

884.   Indiana's Deceptive Consumer Sales Act prohibits a person from engaging in a "deceptive trade practice," which includes representing:   "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; … (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; … (c) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that

such representation is true if such other supplier shall know or have reason to know that such representation was false."

885.   Ford is a person with the meaning of IND. CODE § 24-5-0.5-2(2).

886.   In the course of Ford's business, it willfully failed to disclose and actively concealed the dangerous risk of the Transmission Defects.  Accordingly, Ford engaged in unlawful trade practices, including representing that Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Vehicles are of a particular standard and quality when they are not; advertising Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

887.   Ford's actions as set forth above occurred in the conduct of trade or commerce.

888.   Ford's conduct proximately caused injuries to Plaintiffs.

889.   Plaintiffs were injured as a result of Ford's conduct in that Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

890.   Plaintiffs seek injunctive relief and, if awarded damages under Indiana Deceptive Consumer Protection Act, treble damages pursuant to IND. CODE § 24-5-0.5-4(a)(1).

891.   Plaintiffs also seek punitive damages based on the outrageousness and recklessness of Ford's conduct and its high net worth.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Ind. Code § 26-1-2-313)

892.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

893.   Ford is and was at all relevant times a merchant with respect to motor vehicles.

894.   In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

895.   Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.  Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

896.   In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities.

897.   These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation.  Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.  These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials,

222

and in uniform statements provided by Ford to be made by salespeople.   These affirmations and promises were part of the basis of the bargain between the parties.

898.   These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.   Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

899.   Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

900.   Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

901.   Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.   Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

902.   Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential

damages have already been suffered due to Ford's fraudulent conduct as alleged herein. Due to Ford's failure to provide such limited remedy within a reasonable time, placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

903.   Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in IND. CODE § 26-1-2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

904.   As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Ind. Code § 26-1-2-314)

905.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

906.   Ford is and was at all relevant times a merchant with respect to motor vehicles.

907.   A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

908.   These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are

used.  Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

909.   As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Indiana Law)

910.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

911.   To the extent Ford's repair commitment is deemed not to be a warranty under Indiana's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

912.   Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

913.   As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

225

## COUNT V
## IN THE ALTERNATIVE, UNJUST ENRICHMENT
### (Based on Indiana Law)

914.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

915.   Ford had knowledge of the safety defects in its vehicles, which it failed to, disclose to Plaintiffs.

916.   As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

917.   Ford appreciated, accepted and retained the benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values.  It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.  There is no justification for Plaintiffs' impoverishment and Ford's related enrichment.

918.   Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## COUNT VII
## FRAUDULENT CONCEALMENT
### (Based on Indiana Law)

226

919.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

920.   Ford intentionally concealed the above-described material safety information, or acted with reckless disregard for the truth, and denied Plaintiffs information that is highly relevant to their purchasing decision.

921.   Defendant further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car that the vehicles they were selling were new, had no significant defects and would perform and operate properly when driven in normal usage.

922.   Defendant knew these representations were false when made.

923.   Plaintiffs' Vehicles were, in fact, defective, unsafe, and unreliable, because they were subject to sudden manifestations of the Transmission Defects.

924.   Ford had a duty to disclose that these vehicles were defective, unsafe and unreliable because Plaintiffs relied on Ford's material representations that the vehicles they were purchasing were safe and free from defects.

925.   The aforementioned concealment was material because if it had been disclosed Plaintiffs would not have bought or leased the vehicles.

926.   The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle.  Ford knew or recklessly disregarded that its representations were false, and Ford intentionally made the false statements in order to sell vehicles.

927.   Plaintiffs relied on Ford's reputation – along with Ford's failure to disclose the transmission problems and Ford's affirmative assurance that its vehicles were safe and reliable and other similar false statements – in purchasing or leasing Ford's vehicles.

928.   As a result of their reliance, Plaintiffs have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

929.   Ford's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs. Plaintiffs are therefore entitled to an award of punitive damages.

## IOWA
### COUNT I
### VIOLATION OF THE PRIVATE RIGHT OF ACTION FOR
### CONSUMER FRAUDS ACT
### (Iowa Code § 714h.1, *et seq.*)

930.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

931. Ford is a "person" under IOWA CODE § 714H.2(7).

932. Plaintiffs are "consumers," as defined by IOWA CODE § 714H.2(3), who purchased or leased one or more Vehicles.

933. Ford participated in unfair or deceptive acts or practices that violated Iowa's Private Right of Action for Consumer Frauds Act ("Iowa CFA"), IOWA CODE § 714H.1, *et seq.*, as described herein. Ford is directly liable for these violations of law, and Ford also is liable for Ford dealerships' violations because Ford dealerships act as Ford's agents in the United States for purposes of sales and marketing.

934. By failing to disclose and actively concealing the dangerous defective transmissions, Ford engaged in deceptive business practices prohibited by the Iowa CFA, IOWA CODE § 714H.1, *et seq.*, including:

    a. representing that Vehicles have characteristics, uses, benefits, and qualities which they do not have,

    b. representing that Vehicles are of a particular standard, quality, and grade when they are not,

    c. advertising Vehicles with the intent not to sell them as advertised, and

    d. engaging in acts or practices which are otherwise unfair, misleading, false or deceptive to the consumer.

935. As alleged above, Ford made numerous material statements about the safety and reliability of Vehicles that were either false or misleading. Each of these

statements contributed to the deceptive context of Ford's unlawful advertising and representations as a whole.

936.   Ford knew that the Fusion transmissions were defectively designed or manufactured, would fail without warning, and were not suitable for their intended use. Ford nevertheless failed to warn Plaintiffs about these inherent dangers despite having a duty to do so.

937.   Ford owed Plaintiffs a duty to disclose the defective nature of Vehicles, including the dangerous risk of Transmission Defects suddenly manifesting while in operation, because it:

a. Possessed exclusive knowledge of the Transmission Defects rendering Vehicles inherently more dangerous and unreliable than similar vehicles;

b. Intentionally concealed the hazardous situation with Vehicles through their deceptive marketing campaign and recall program that they designed to hide the potentially life-threatening problems from Plaintiffs; and/or

c. Made incomplete representations about the safety and reliability of Vehicles generally, and the Vehicles' transmissions in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

230

938. Vehicles equipped with the defective transmissions pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to manifestations of the Transmission Defects.

939. Ford's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Vehicles.

940. As a result of its violations of the Iowa CFA detailed above, Ford caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs. Plaintiffs currently own or lease, or within the relevant time period have owned or leased, Vehicles that are defective and inherently unsafe. The Transmission Defects have impaired the value of Plaintiffs' Vehicles.

941. Plaintiffs risk irreparable injury as a result of Ford's acts and omissions in violation of the Iowa CFA, and these violations present a continuing risk to Plaintiffs as well as to the general public.

942. Plaintiffs sustained damaged as a result of Ford's unlawful acts and are, therefore, entitled to damages and other relief as provided under Chapter 714H of the Iowa CFA. Because Ford's conduct was committed willfully, Plaintiffs seek treble damages as provided in Iowa Code § 714H.5(4).

943.   Plaintiffs also seek court costs and attorneys' fees as a result of Defendant's violation of Chapter 714H as provided in IOWA CODE § 714H.5(2).

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Iowa Code § 554.2313)

944.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

945.   Ford is and was at all relevant times a merchant with respect to motor vehicles under IOWA CODE § 544.2104.

946.   In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

947.   Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.  Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

948.   These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.  Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.  These warranties were made, *inter alia*, in advertisements of all types and in uniform statements provided by Ford to be made

by dealership salespeople.  These affirmations and promises were part of the basis of the bargain between the parties.

949.   These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

950.   Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

951.   Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

952.   Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.  Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.  Under these circumstances, any limitations whatsoever precluding the recovery of incidental and/or consequential damages are unenforceable.

953. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. Due to Ford's failure to provide such limited remedy within a reasonable time, placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

954. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in Iowa Code § 554.2711, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned and for such other incidental and consequential damages as allowed under Iowa Code §§ 544.2711 and 544.2608.

955. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

### COUNT III
### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Iowa Code § 544.2314)

956. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

957. Ford is and was at all relevant times a merchant with respect to motor vehicles under Iowa Com. Code § 544.2104.

234

958. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to IOWA CODE § 544.2314.

959. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

960. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## Breach of Contract/Common Law Warranty
### (Based on Iowa Law)

961. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

962. To the extent Ford's repair commitment is deemed not to be a warranty under the Uniform Commercial Code as adopted in Iowa, Plaintiffs plead in the alternative under common law warranty and contract law. Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

963. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

235

964.   As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT V
## FRAUD BY CONCEALMENT
### (Based on Iowa Law)

965.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

966.   Ford had a duty to disclose the above-described safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.  Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.  One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

967.   In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.  These omitted facts were material because they directly impact the safety of the Vehicles.  Ford possessed exclusive knowledge

of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

968. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

969. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

970. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified. Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

971. As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.

972. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT VII**
**UNJUST ENRICHMENT**
**(Based on Iowa Law)**

973.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

974.   As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

975.   Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

976.   Plaintiffs, therefore, seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

### KANSAS
### COUNT I
### VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT
#### (Kan. Stat. Ann. § 50-623, *et seq.*)

977.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

978.   Ford is a "supplier" under § 50-624(*l*) of the Kansas Consumer Protection Act ("Kansas CPA")

979.   Plaintiffs are "consumers," as defined by § 50-624(b) of the Kansas CPA, who purchased or leased one or more Vehicles.

980.   Ford participated in deceptive acts or practices that violated the Kansas CPA, as described above and below.  Ford is directly liable for these violations of law, and Ford also is liable for Ford dealerships' violations because Ford dealerships act as Ford's agents in the United States for purposes of sales and marketing.

981.   Ford engaged in deceptive acts or practices prohibited by the Kansas CPA, including (1) representing that Vehicles have characteristics, uses, and benefits that they do not have and (2) representing that Vehicles are of a particular standard, quality, and grade when they are of another which differs materially from the representation.  Specifically, as alleged above, Ford made numerous material statements about the safety and reliability of Vehicles that were either false or misleading.  Each of these statements contributed to the deceptive context of Ford's unlawful advertising and representations as a whole.

982.   Ford knew or had reason to know that its representations were false. Ford knew that the Fusion transmissions were defectively designed or manufactured, would fail without warning, and were not suitable for their intended use. Ford nevertheless failed to warn Plaintiffs about these inherent dangers despite having a duty to do so.

983.   Ford engaged in further deceptive acts or practices prohibited by the Kansas CPA by willfully failing to disclose or willfully concealing, suppressing, or omitting material facts about Vehicles.   Specifically, Ford failed to disclose and actively concealed the dangerous risk of transmission failure in Fusions equipped with 6F35 and CVT transmissions.   Ford knew that the Fusion transmissions were defectively designed or manufactured, would fail without warning, and were not suitable for their intended use.   Ford nevertheless failed to warn Plaintiffs about these inherent dangers despite having a duty to do so.

984.   Ford's acts or practices alleged above are unconscionable because, among other reasons, Ford knew or had reason to know they had had made misleading statements of opinion on which Plaintiffs were likely to rely to their detriment.

985.   Ford's deceptive and unconscionable acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Vehicles as a result of Ford's violations of the Kansas CPA.

986.   Plaintiffs suffered loss as a result of Ford's violations of the Kansas CPA detailed above.   Plaintiffs currently own or lease, or within the relevant time period have owned or leased, Vehicles that are defective and inherently unsafe.   The Transmission Defects and the attendant safety risks have impaired the value of the Vehicles.

240

987.   Pursuant to § 50-634(b) of the Kansas CPA, Plaintiffs seek monetary relief against Ford measured as the greater of (a) actual damages in an amount to be determined at trial and (b) civil penalties provided for by § 50-636 of the Kansas CPA.

988.   Plaintiffs also seek punitive damages against Ford because they acted willfully, wantonly, fraudulently, or maliciously.   Ford intentionally and willfully misrepresented the safety and reliability of Vehicles, deceived Plaintiffs on life-or-death matters, and concealed material facts that only it knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Vehicles it repeatedly promised Plaintiffs were safe.   Ford's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

989.   Plaintiffs risk irreparable injury as a result of Ford's deceptive and unconscionable acts or practices in violation of the Kansas CPA, and these violations present a continuing risk to Plaintiffs as well as to the general public.

990.   The recalls and repairs instituted by Ford have not been adequate.  Ford Vehicles still are defective and dangerous.

991.  Plaintiffs further seek an order enjoining Ford's deceptive and unconscionable acts or practices, restitution, punitive damages, costs of Court, attorney's fees, and any other just and proper relief available under the Kansas CPA.

## COUNT II

## BREACH OF EXPRESS WARRANTY
### (Kan. Stat. Ann. § 84-2-313)

992.   Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

993.   Ford is and was at all relevant times a merchant with respect to motor vehicles under KAN. STAT. ANN. § 84-2-104.

994.   In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

995.   Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.  Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

996.   In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities as set forth above.

997.   These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.  Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.  These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided

by Ford to be made by salespeople.  These affirmations and promises were part of the basis of the bargain between the parties.

998.   These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

999.   Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1000. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1001. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.  Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.  Under these circumstances, any limitations whatsoever precluding the recovery of incidental and/or consequential damages are unenforceable.

243

1002. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. Due to Ford's failure to provide such limited remedy within a reasonable time, placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

1003. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in KAN. STAT. ANN. § 84-2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned and for such other incidental and consequential damages as allowed under KAN. STAT. ANN. §§ 84-2-711 and 84-2-608.

1004. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Kan. Stat. Ann. § 84-2-314)

1005. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1006. Plaintiffs are "natural persons" within the meaning of KAN. STAT. ANN. § 84-2-318.

1007. Ford is and was at all relevant times a merchant with respect to motor vehicles under KAN. STAT. ANN. § 84-2-104.

1008. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to KAN. STAT. ANN. § 84-2-314.

1009. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1010. Privity is not required because the Vehicles are inherently dangerous.

1011. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Kansas Law)

1012. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1013. To the extent Ford's repair commitment is deemed not to be a warranty under the Uniform Commercial Code as adopted in Kansas, Plaintiffs plead in the alternative under common law warranty and contract law. Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or

workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1014. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1015. To the extent such allegations are necessary, Plaintiffs allege that they relied on Ford's common law warranties.

1016. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### COUNT V
### FRAUD BY CONCEALMENT
### (Based on Kansas Law)

1017. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1018. As set forth above, Ford concealed and/or suppressed material facts concerning the safety of the subject Fusions and their transmissions.

1019. Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.  Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one

246

must speak the whole truth and not conceal any facts which materially qualify those facts stated.  One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

1020. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.  These omitted facts were material because they directly impact the safety of the Vehicles.  Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

1021. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

1022. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

1023. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified.  Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

1024.  As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.  Plaintiffs reserve their right to elect either to (a) rescind their purchase or lease of Vehicles and obtain restitution (b) affirm their purchase or lease of Vehicles and recover damages.

1025.  Ford's acts were done willfully, wantonly, fraudulently, or maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT VI
### UNJUST ENRICHMENT
### (Based on Kansas Law)

1026.  Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1027.  As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

1028.  Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values.

It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

1029. Plaintiffs, therefore, seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## **KENTUCKY**
### **COUNT I**
### **VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT**
### **(Ky. Rev. Stat. § 367.110, *et seq*.)**

1030. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1031. Ford misrepresented the safety of the Vehicles after learning of their defects with the intent that Plaintiffs relied on such representations in their decision regarding the purchase, lease and/or use of the Vehicles.

1032. Plaintiffs did, in fact, rely on such representations in their decision regarding the purchase, lease and/or use of the Vehicles.

1033. Through those misleading and deceptive statements and false promises, Ford violated the Kentucky Consumer Protection Act ("KCPA").

1034. The KCPA applies to Ford's transactions with Plaintiffs because Ford's deceptive scheme was carried out in Kentucky and affected Plaintiffs.

1035. Ford also failed to advise NHSTA and the public about what they knew about the Transmission Defects in the Vehicles.

249

1036. Plaintiffs relied on Ford's silence as to known defects in connection with their decision regarding the purchase, lease and/or use of the Vehicles.

1037. As a direct and proximate result of Ford's deceptive conduct and violation of the KCPA, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Ky. Rev. Stat. § 355.2-313)

1038. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1039. Ford expressly warranted – through statements and advertisements described above – that the vehicles were of high quality, and at a minimum, would actually work properly and safely.

1040. Ford breached this warranty by knowingly selling to Plaintiffs vehicles with dangerous defects, and which were not of high quality.

1041. Plaintiffs have been damaged as a direct and proximate result of the breaches by Ford in that the Vehicles purchased or leased by Plaintiffs were and are worth far less than what Plaintiffs paid to purchase, which was reasonably foreseeable to Ford.

## COUNT III

**BREACH OF IMPLIED WARRANTIES OF MERCHANTABILITY**
**(Ky. Rev. Stat. § 335.2-314)**

1042. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1043. Ford impliedly warranted that their vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

1044. As described above, there were dangerous defects in the vehicles manufactured, distributed, and/or sold by Ford, which Plaintiffs purchased or leased.

1045. These dangerous defects existed at the time the vehicles left Ford's manufacturing facilities and at the time they were sold to Plaintiffs. Furthermore, because of these dangerous defects, Plaintiffs did not receive the benefit of their bargain and the Vehicles have suffered a diminution in value.

1046. These dangerous defects were the direct and proximate cause of damages to Plaintiffs.

**COUNT IV**
**FRAUDULENT CONCEALMENT**
**(Based on Kentucky Law)**

1047. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1048. Ford intentionally concealed the above-described material safety information, or acted with reckless disregard for the truth, and denied Plaintiffs information that is highly relevant to their purchasing decision.

1049. Ford further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car that the vehicles they were selling were new, had no significant defects and would perform and operate properly when driven in normal usage.

1050. Ford knew these representations were false when made.

1051. Plaintiffs' Vehicles were, in fact, defective, unsafe, and unreliable, because they were subject to sudden manifestations of the Transmission Defects.

1052. Ford had a duty to disclose that these vehicles were defective, unsafe and unreliable because Plaintiffs relied on Ford's material representations that the vehicles they were purchasing were safe and free from defects.

1053. The aforementioned concealment was material because if it had been disclosed Plaintiffs would not have bought or leased the vehicles.

1054. Plaintiffs relied on Ford's reputation – along with Ford's failure to disclose the transmission problems and Ford's affirmative assurance that its vehicles were safe and reliable and other similar false statements – in purchasing or leasing Ford's vehicles.

1055. As a result of their reliance, Plaintiffs have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

1056. Ford's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs. Plaintiffs are therefore entitled to an award of punitive damages.

## COUNT V
## UNJUST ENRICHMENT
## (Based on Kentucky Law)

1057. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1058. Plaintiffs paid Ford the value of vehicles that are non-defective, and in exchange, Ford provided Plaintiffs vehicles that are, in fact, defective.

1059. Further, Plaintiffs paid Ford the value for vehicles that would not be compromised by substantial, invasive repairs, and in return received vehicles that require such repairs.

1060. Further, Plaintiffs paid Ford for vehicles they could operate, and in exchange, Ford provided Plaintiffs vehicles that could not be normally operated because their defects posed the possibility of life-threatening injuries or death.

1061. As such, Plaintiffs conferred a windfall upon Ford, which knows of the windfall and has retained such benefits, which would be unjust for Ford to retain such benefits

1062. As a direct and proximate result of Ford's unjust enrichment, Plaintiffs have suffered and continue to suffer various damages and are entitled to remedies, including, but not limited to, restitution of all amounts by which Ford was enriched through its misconduct.

## LOUISIANA
### COUNT I
### LOUISIANA PRODUCTS LIABILITY ACT
### (La. Rev. Stat. § 9:2800.51, *et seq.*)

1063. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1064. Plaintiffs allege that Ford has defectively designed, manufactured, sold or otherwise placed in the stream of commerce Vehicles as set forth above.

1065. The product in question is unreasonably dangerous for the following reasons:

a. It is unreasonably dangerous in construction or composition as provided in LA. REV. STAT. § 9:2800.55;

b. It is unreasonably dangerous in design as provided in LA. REV. STAT. § 9:2800.56;

    c. It is unreasonably dangerous because an adequate warning about the product was not provided as required by LA. REV. STAT. § 9:2800.57; and

    d. It is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product that render it unreasonably dangerous under LA. REV. STAT. § 9:2800.55, *et seq.*, that existed at the time the product left the control of the manufacturer.

1066. Ford knew and expected the Vehicles eventually would be sold to and operated by purchasers and/or eventual owners of the Vehicles, including Plaintiffs; consequently, Plaintiffs were an expected user of the product which Ford manufactured.

1067. The Vehicles reached Plaintiffs without substantial changes in their condition from time of completion of manufacture by Ford.

1068. The defects in the Vehicles could not have been contemplated by any reasonable person expected to operate the Vehicles, and, therefore, presented an unreasonably dangerous situation for expected users of the Vehicles even though the Vehicles were operated by expected users in a reasonable manner.

1069. As a direct and proximate cause of Ford's design, manufacture, assembly, marketing, and sales of the Vehicles, Plaintiffs have sustained and will continue to sustain the loss of use of his/her vehicle, economic losses and

consequential damages, and are therefore entitled to compensatory relief according to proof, and entitled to a declaratory judgment that Ford is liable to Plaintiffs for breach of its duty to design, manufacture, assemble, market, and sell a safe product, fit for its reasonably intended use.  Plaintiffs allege that the Transmission Defects events are the type of occurrences which would not happen in the absence of a defective product.  Plaintiffs allege the application of *res ipsa loquitur* under Louisiana Products Liability Law.

## COUNT II
## REDHIBITION
## (La. Civ. Code Art. 2520, *et seq*. and 2545)

1070. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1071. Plaintiffs allege that Ford defectively designed, manufactured, sold or otherwise placed in the stream of commerce vehicles that are defective.

1072. Plaintiffs allege that the Transmission Defects are the type of occurrences which would not happen in the absence of a defective product.  Plaintiffs allege the application of *res ipsa loquitur* under Louisiana Products Liability Law.

1073. Plaintiffs allege that Ford has known about safety hazards that result from unexpected Transmission Defects for a number of years and has failed to adequately address those safety concerns.

1074. Ford, as manufacturer of the Vehicles, are responsible for damages caused by the failure of its product to conform to well-defined standards.   In particular, the vehicles contain vices or defects which rendered them useless or their use so inconvenient and unsafe that a reasonable buyer would not have purchased or leased them.   Ford manufactured, sold and promoted the vehicles and placed the vehicles into the stream of commerce.   Under Louisiana Law, the seller and manufacturer warrants the buyer against redhibitory defects or vices in the things sold.   LA. CODE CIV. P. Art. 2520.   The vehicles as sold and promoted by Ford possessed redhibitory defects because they were not manufactured and marketed in accordance with industry standards and/or were unreasonably dangerous as described above, which rendered the vehicles useless or their use so inconvenient and unsafe that it must be presumed that a buyer would not have bought the vehicles had he/she known of the defect.   Pursuant to LA. CODE CIV. P. Art. 2520, Plaintiffs are entitled to obtain a rescission of the sale of the subject product.

1075. The vehicles alternatively possess redhibitory defects because the vehicles were not manufactured and marketed in accordance with industry standards and/or were unreasonably dangerous as described above, which diminished the value of the vehicles so that it must be presumed that a reasonable buyer would still have bought the vehicles, but for a lesser price, had the redhibitory defects been disclosed. In this instance, Plaintiffs are entitled to a reduction of the purchase price.

257

1076. As the manufacturer of the vehicle, under Louisiana Law, Ford is deemed to know that the vehicle contained redhibitory defects pursuant to LA. CODE CIV. P. Art. 2545.  Ford is liable as a bad faith seller for selling a defective product with knowledge of defects and thus is liable to Plaintiffs for the price of the subject product, with interest from the purchase date, as well as reasonable expenses occasioned by the sale of the subject product, and attorney's fees.

1077. Due to the defects and redhibitory vices in the Fords sold to Plaintiffs, they have suffered damages under Louisiana Law.

**COUNT III**
**BREACH OF IMPLIED WARRANTY OF FITNESS FOR ORDINARY USE**
**(La. Civ. Code Art. 2524)**

1078. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1079. At all relevant times, Ford marketed, sold and distributed the automobile for use by Plaintiffs, knew of the use for which the Vehicles were intended, and impliedly warranted them to be fit for ordinary use.

1080. The Vehicles, when sold, were defective, unmerchantable, and unfit for ordinary use.

1081. The Vehicles contain vices or defects which render them either absolutely useless or render their use inconvenient, imperfect, and unsafe such that

258

Plaintiffs would not have purchased or leased the Vehicles had they known of the vices or defects.

1082. The damages in question arose from the reasonably anticipated use of the product in question.

1083. Ford breached the implied warranties of merchantability and fitness for ordinary use when the Vehicles were sold to Plaintiffs because they have a tendency to exhibit the Transmission Defects.

1084. As a direct and proximate cause of Ford's breach of the implied warranties of merchantability and fitness for ordinary use, Plaintiffs have suffered injuries and damages.

**COUNT IV**
**NEGLIGENCE**
**(La. Civ. Code Art. 2315)**

1085. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1086. Ford had a duty to Plaintiffs to provide a safe product in design and manufacture, to notify NHTSA, and to warn NHTSA of the defective nature of the Vehicles.

1087. Ford breached its duty of reasonable care to Plaintiffs by designing the Vehicles in such a manner that they are prone to exhibit the Transmission Defects.

1088. Ford breached its duty of reasonable care to Plaintiffs by manufacturing and/or assembling the Vehicles in such a manner that they are prone exhibit the Transmission Defects.

1089. Ford breached its duty of reasonable care to Plaintiffs by failing to recall the Vehicles at the earliest possible date.

1090. Ford breached its duty of reasonable care to Plaintiffs by failing to exercise due care under the circumstances.

1091. As a direct and proximate result of Ford's negligence as set forth in the preceding paragraphs, Plaintiffs have sustained and will continue to sustain the loss of use of their vehicles, economic losses, consequential damages and other damages and are entitled to compensatory damages, and equitable and declaratory relief according to proof.

1092. Ford's egregious misconduct alleged above warrants the imposition of punitive damages against Ford to prevent such future behavior.

### MAINE
### COUNT I
### VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT
### (Me. Rev. Stat. Ann. tit. 5 § 205-A, *et seq.*)

1093. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1094. The Maine Unfair Trade Practices Act ("UTPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." per ME. REV. STAT. ANN. TIT. 5 § 207.

1095. The advertising and sale of motor vehicles by Ford constitutes "trade or commerce" within the meaning of UTPA per ME. REV. STAT. ANN. TIT. 5 § 206(3).

1096. In the course of Ford's business, it willfully failed to disclose and actively concealed the dangerous risk of transmission failure in the subject Fusions. This was a deceptive act in that Ford represented that Vehicles have characteristics, uses, benefits, and qualities which they do not have; represented that Vehicles are of a particular standard and quality when they are not; and advertised Vehicles with the intent not to sell them as advertised.  Ford knew or should have known that its conduct violated the UTPA.

1097. Ford engaged in a deceptive trade practice when it failed to disclose material information concerning the Ford vehicles which was known to Ford at the time of the sale. Ford deliberately withheld the information about the Transmission Defects in order to ensure that consumers would purchase its vehicles and to induce the consumer to enter into a transaction.

1098. Ford's conduct has caused or is to cause a substantial injury that is not reasonably avoided by consumers, and the harm is not outweighed by a countervailing benefit to consumers or competition.

1099. As a result of Ford's deceptive and unfair practices, Plaintiffs have suffered loss of money or property. Plaintiffs overpaid for their vehicles and did not receive the benefit of their bargain. The value of their Fords have diminished now that the safety issues have come to light, and Plaintiffs own vehicles that are not safe.

1100. Plaintiffs are entitled to actual damages, restitution and such other equitable relief, including an injunction, as the Court determines to be necessary and proper.

1101. Pursuant to ME. REV. STAT. ANN. TIT. 5 § 213(3), Plaintiffs will mail a copy of the complaint to Maine's Attorney General.

**COUNT II**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Me. Rev. Stat. Ann. tit. 11 § 2-314)**

1102. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1103. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1104. A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

1105. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1106. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**COUNT III**
**BREACH OF CONTRACT**
**(Based on Maine Law)**

1107. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1108. To the extent Ford's repair commitment is deemed not to be a warranty under Maine's Commercial Code, Plaintiffs plead in the alternative under common law contract law.  Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1109. Ford breached this contractual obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1110. As a direct and proximate result of Ford's breach of contract warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include,

but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT IV
## UNJUST ENRICHMENT
### (Based on Maine Law)

1111. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1112. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

1113. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

1114. Ford appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values.  It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

1115. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## <u>MARYLAND</u>

264

**COUNT I**
**VIOLATIONS OF MARYLAND CONSUMER PROTECTION ACT**
**(Md. Code Com. Law § 13-101, *et seq.*)**

1116. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1117. Plaintiffs are persons within the meaning of the Maryland Consumer Protection Act (the "Act") for all purposes therein.

1118. Ford is a person within the meaning of the Act for all purposes therein.

1119. The false, deceptive and misleading statements and representations made by Ford alleged above and below are Unfair, Abusive, and Deceptive Trade Practices within the meaning of the Act.

1120. Ford participated in unfair or deceptive acts or practices that violated the Act, as described above and below, and those unfair and deceptive trade practices occurred or were committed in the course, vocation or occupation of Ford's businesses.  Ford engaged in the unfair and deceptive trade practices and is directly liable for these violations of law. Ford also is liable for Ford dealerships' violations because Ford dealerships act as Ford's agents in the United States for purposes of sales and marketing.

1121. The Unfair and Deceptive Trade Practices as alleged above and below significantly impact the public as actual or potential customers of Ford.

1122. By failing to disclose and actively concealing the dangerous risk of the Transmission Defects, Ford engaged in deceptive business practices prohibited by the Act, including, but not limited to, (1) representing that Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Vehicles with the intent not to sell them as advertised; (4) representing that a transaction involving Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Vehicles has been supplied in accordance with a previous representation when it has not.

1123. As alleged above, Ford made numerous material statements about the safety and reliability of Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Ford's unlawful advertising and representations as a whole.

1124. Ford's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Vehicles.

1125. As a direct and proximate result of their unfair and deceptive business practices, and violations of the Act detailed above, Ford caused actual damages, injuries, and losses to Plaintiffs and, if not stopped, will continue to harm Plaintiffs.

Plaintiffs currently own or lease, or within the relevant time period have owned or leased, Vehicles that are defective and inherently unsafe. The Transmission Defects and the attendant safety risks have impaired the value of the Vehicles.

1126. Plaintiffs are entitled to all damages permitted by M.R.S § 13-101, *et seq.*, including actual damages sustained, civil penalties, attorneys' fees, and costs of this action.  Also, the State of Maryland is entitled to statutory penalties from defendants for each violation of the Act.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Md. Code Com. Law § 2-313)

1127. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1128. Ford is and was at all relevant times a merchant as defined by the Uniform Commercial Code.

1129. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

1130. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.  Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

1131. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

1132. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.  Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions. These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

1133. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

1134. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1135. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1136. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.  Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

1137. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

1138. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in MD. CODE COM. LAW § 2-608 for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of their Vehicles.

1139. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Md. Code Com. Law § 2-314)

1140. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1141. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1142. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transactions.

1143. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1144. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Maryland Law)

1145. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1146. To the extent Ford's repair commitment is deemed not to be a warranty under the Maryland Code, Plaintiffs plead in the alternative under common law warranty and contract law. Ford limited the remedies available to Plaintiffs to just

repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1147. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1148. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT V
## FRAUD BY CONCEALMENT
### (Based on Maryland Law)

1149. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1150. As set forth above, Ford concealed and/or suppressed material facts concerning the safety of their vehicles.

1151. Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities. Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those

facts stated.  One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

1152.  In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.  These omitted facts were material because they directly impact the safety of the Vehicles.  Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

1153.  Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease their Vehicles at a higher price, which did not match the Vehicles' true value.

1154.  Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

1155.  Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' actions were justified.  Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

1156.  As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.  For those Plaintiffs who elect to affirm the sale, these damages,

272

include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits.  For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages.

1157. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT VI
## NEGLIGENCE
### (Based on Maryland Law)

1158. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1159. Ford had a duty to Plaintiffs to provide a safe product in design and manufacture, to notify NHTSA, and to warn NHTSA of the heightened propensity of the Vehicles to unexpectedly exhibit the Transmission Defects.

1160. Ford breached its duty of reasonable care to Plaintiffs by designing the Vehicles in such a manner that they have a heightened propensity to exhibit Transmission Defects.

1161. Ford breached its duty of reasonable care to Plaintiffs by manufacturing and/or assembling the Vehicles in such a manner that they were prone to the Transmission Defects.

1162. Ford breached its duty of reasonable care to Plaintiffs by failing to recall the Vehicles at the earliest possible date when they knew that the Fusion transmissions were defective.

1163. Ford breached its duty of reasonable care to Plaintiffs by failing to exercise due care under the circumstances.

1164. As a direct and proximate result of Ford's negligence as set forth in the preceding paragraphs, Plaintiffs have sustained and will continue to sustain the loss of use of their vehicles, economic losses, consequential damages and other damages and are entitled to compensatory damages and equitable and declaratory relief according to proof.

1165. Plaintiffs demand judgment against Ford for negligence as prayed below.

**COUNT VII**
**STRICT PRODUCTS LIABILITY – DESIGN DEFECT**
**(Based on Maryland Law)**

274

1166. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1167. At all times relevant hereto, Ford was engaged in the business of designing, manufacturing, assembling, promoting, advertising, selling, and distributing Ford vehicles in the United States, including, but not limited to, the Vehicles.

1168. Ford knew and expected for the Vehicles to eventually be sold to and operated by consumers and/or eventual owners of the Vehicles, including Plaintiffs. Consequently, Plaintiffs were foreseeable users of the products which Ford manufactured.

1169. The Vehicles reached Plaintiffs without substantial change in condition from the time they were manufactured by Ford.

1170. The propensity of the Vehicles to suddenly and unexpectedly experience the Transmission Defects could not have been contemplated by any reasonable person expected to operate the Vehicles, and for that reason, presented an unreasonably dangerous situation for foreseeable users of the Vehicles even though the Vehicles were operated by foreseeable users in a reasonable manner.

1171. Ford should have reasonably foreseen that the dangerous conditions of the Vehicles' defective transmissions would subject Plaintiffs to harm.

1172. As a result of these defective designs, the Vehicles are unreasonably dangerous.

1173. Plaintiffs have used the Vehicles reasonably and as intended, to the fullest degree possible given their defective nature, and, nevertheless, have suffered damages through no fault of their own.

1174. Safer, alternative designs existed for the Vehicles.

1175. As a direct and proximate result of Ford's design, manufacture, assembly, marketing, and sales of the Vehicles, Plaintiffs have sustained and will continue to sustain the loss of the use of their vehicles, economic losses, and consequential damages, and are, therefore, entitled to compensatory relief according to proof, and entitled to a declaratory judgment that Ford is liable to Plaintiffs for breach of its duty to design, manufacture, assemble, market, and sell a safe product, fit for its reasonably intended use.  Plaintiffs are therefore entitled to equitable relief as described below.

1176. Plaintiffs demand judgment against Ford for design defects as prayed for below.

## COUNT VIII
## STRICT PRODUCTS LIABILITY – DEFECTIVE MANUFACTURING
### (Based on Maryland Law)

1177. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

276

1178. Ford is the manufacturer, designer, distributor, seller, or supplier of the Vehicles.

1179. The Vehicles manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Ford were defective in their manufacture and construction such that they were unreasonably dangerous, were not fit for the ordinary purposes for which they were intended, and/or did not meet the reasonable expectations of any consumer.

1180. The Vehicles manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Ford, were defective in their manufacture and construction as described at the time they left Ford's control.

1181. The Vehicles are unreasonably dangerous due to their defective manufacture.

1182. As a direct and proximate result of Plaintiffs' purchase and use of the Vehicles as manufactured, designed, sold, supplied and introduced into the stream of commerce by Ford, Plaintiffs suffered economic losses, and will continue to suffer such damages and economic losses in the future.

1183. Plaintiffs demand judgment against Ford for manufacturing defects as prayed for below.

**COUNT IX**
**STRICT PRODUCTS LIABILITY –**
**DEFECT DUE TO NONCONFORMANCE WITH REPRESENTATIONS**

**(Based on Maryland Law)**

1184. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1185. Ford is the manufacturer, designer, distributor, seller, or supplier of the Vehicles, and Ford made representations regarding the character or quality of the Vehicles.

1186. The Vehicles manufactured and supplied by Ford were defective in that, when they left the hands of Ford, they did not conform to the representations made by Ford concerning the Vehicles.

1187. Plaintiffs justifiably relied upon Ford's representations regarding the Vehicles when they purchased or leased and used the Vehicles.

1188. As a direct and proximate result of their reliance on Ford's representations regarding the character and quality of the Vehicles, Plaintiffs suffered damages and economic losses, and will continue to suffer such damages and economic losses in the future.

1189. Plaintiffs demand judgment against Ford for manufacturing defects as prayed for below.

**COUNT X**
**UNJUST ENRICHMENT**
**(Based on Maryland Law)**

278

1190. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1191. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

1192. Ford knowingly enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values.   It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

1193. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

**MASSACHUSETTS**
**COUNT I**
**VIOLATION OF MASSACHUSETTS CONSUMER PROTECTION ACT**
**(Mass. Gen. L. Chapter 93A)**

1194. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1195. The conduct of Ford as set forth herein constitutes unfair and deceptive acts or practices in violation of the Massachusetts Consumer Protection Act, Mass.

Gen. L. ch. 93A, including, but not limited to, Ford's manufacture and sale of vehicles with defective transmissions, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles, which misrepresentations and omissions possessed the tendency to deceive.

1196. Ford engages in the conduct of trade or commerce and the misconduct alleged herein occurred in trade or commerce.

1197. In satisfaction of MASS. GEN. LAWS CH. 93A, § 9(3), Plaintiffs have made demand on Ford more than 30 days prior to this filing by numerous letters sent by Plaintiffs.  These letters asserted that rights of consumers as claimants had been violated, described the unfair and deceptive acts committed by Ford, and specified the injuries that Plaintiffs have suffered and the relief they seek.  Thus, these letters satisfy section 9(3).

1198. As a result of Ford's unfair and deceptive acts or practices in violation of the Massachusetts Consumer Protection Act, MASS. GEN. L. CH. 93A, Plaintiffs suffered injury as described herein.  Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**(ALM GL ch. 106, § 2-313)**

280

1199. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1200. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1201. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

1202. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.  Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

1203. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

1204. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.  Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.  These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.  These affirmations and promises were part of the basis of the bargain between the parties.

1205. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

1206. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1207. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1208. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.  Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

1209. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable

282

time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

1210. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in ALM GL ch. 106, § 2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

1211. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (ALM GL ch. 106, § 2-314)

1212. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1213. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1214. A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

1215. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1216. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Massachusetts Law)

1217. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1218. To the extent Ford's repair commitment is deemed not to be a warranty under Massachusetts's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1219. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1220. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT V
## UNJUST ENRICHMENT
### (Based on Massachusetts Law)

284

1221. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1222. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

1223. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

1224. Ford appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

1225. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## MICHIGAN
### COUNT I
### VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT
#### (Mich. Comp. Laws § 445.901, *et seq.*)

1226. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

285

1227. Ford misrepresented the safety of the Vehicles after learning of their defects with the intent that Plaintiffs relied on such representations in their decision regarding the purchase, lease and/or use of the Vehicles.

1228. Plaintiffs did, in fact, rely on such representations in their decision regarding the purchase, lease and/or use of the Vehicles.

1229. Through those misleading and deceptive statements and false promises, Ford violated the Michigan Consumer Protection Act.

1230. The Michigan Consumer Protection Act applies to Ford's transactions with Plaintiffs because Ford's deceptive scheme was carried out in Michigan and affected Plaintiffs.

1231. Ford also failed to advise NHSTA and the public about what they knew about the Transmission Defects in the Vehicles.

1232. Plaintiffs relied on Ford's silence as to known defects in connection with their decision regarding the purchase, lease and/or use of the Vehicles.

1233. As a direct and proximate result of Ford's deceptive conduct and violation of the Michigan Consumer Protection Act, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

**COUNT II**

## BREACH OF EXPRESS WARRANTY
## (Mich. Comp. Laws § 440.2313)

1234. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1235. Ford expressly warranted – through statements and advertisements described above – that the vehicles were of high quality, and at a minimum, would actually work properly and safely.

1236. Ford breached this warranty by knowingly selling to Plaintiffs vehicles with dangerous defects, and which were not of high quality.

1237. Plaintiffs have been damaged as a direct and proximate result of the breaches by Ford in that the Vehicles purchased or leased by Plaintiffs were and are worth far less than what Plaintiffs paid to purchase, which was reasonably foreseeable to Ford.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (Mich. Comp. Laws § 440.2314)

1238. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1239. Ford impliedly warranted that their vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting

the driver and passengers in reasonably safety during normal operation, and without unduly endangering them or members of the public.

1240. These dangerous defects existed at the time the vehicles left Ford's manufacturing facilities and at the time they were sold to Plaintiffs. Furthermore, because of these dangerous defects, Plaintiffs did not receive the benefit of their bargain and the vehicles have suffered a diminution in value.

1241. These dangerous defects were the direct and proximate cause of damages to Plaintiffs.

## MINNESOTA
### COUNT I
### VIOLATION OF MINNESOTA FALSE STATEMENT IN ADVERTISING STATUTE
### (Minn. Stat. §§ 325F.67 et seq.)

1242. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1243. Ford produced and published advertisements and deceptive and misleading statements on the safety and reliability of the Vehicles, even after learning of their defects, with the intent to sell the Vehicles.

1244. Ford continue to represent or otherwise disseminate misleading information about the defect and cause of the defect with the intent to induce the public to by the Vehicles.

288

1245. Ford concealed their deceptive practices in order to increase the sale of and profit from the Vehicles.

1246. Ford violated the Minnesota False Statements in Advertising Act, MINN. STAT. § 325F.67, *et seq*., by publicly misrepresenting safety of the Vehicles, including the cause of the sudden transmission problems.

1247. Ford also failed to advise the NHTSA and the public about what it knew about the Transmission Defects.

1248. The Minnesota False Statements in Advertising Act applies to Plaintiffs' transactions with Defendant because Ford's deceptive scheme was carried out in Minnesota and affected Plaintiffs.

1249. As a direct and proximate result of Ford's deceptive, unfair, and fraudulent conduct and violations of MINN. STAT. § 325F.67, *et seq*., Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

**COUNT II**
**VIOLATION OF MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(Minn. Stat. § 325D.43-48, *et seq*.)**

1250. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1251. Ford engaged in – and continue to engage in – conduct that violates the Minnesota Deceptive Trade Practices Act, MINN. STAT. § 325D.44, *et seq*. The violations include the following:

    a. Ford violated MINN. STAT. § 325D.44(5) by representing the Vehicles as having characteristics, uses, and benefits of safe and mechanically sound vehicles while knowing that the statements were false and the Vehicles contained defects;

    b. Ford violated MINN. STAT. § 325D.44(7) by representing the Vehicles as a non-defective product of a particular standard, quality, or grade while knowing the statements were false and the Vehicles contained defects;

    c. Ford violated MINN. STAT. § 325D.44(9) by advertising, marketing, and selling the Vehicles as reliable and without a known defect while knowing those claims were false; and

    d. Ford violated MINN. STAT. § 325D.44(13) by creating a likelihood of confusion and/or misrepresenting the safety of the Vehicles.

1252. Ford's deceptive scheme was carried out in Minnesota and affected Plaintiffs.

1253. Ford also failed to advise the NHSTA and the public about what it knew about the Transmission Defects.

290

1254. As a direct and proximate result of Ford's deceptive conduct and violation of MINN. STAT. § 325D.44, *et seq.*, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

**COUNT III**
**VIOLATION OF MINNESOTA PREVENTION OF**
**CONSUMER FRAUD ACT**
**(Minn. Stat. § 325F.68, *et seq.*)**

1255. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1256. Ford misrepresented the safety of the Vehicles after learning of their defects with the intent that Plaintiffs relied on such representations in their decision regarding the purchase, lease and/or use of the Vehicles.

1257. Plaintiffs did, in fact, rely on such representations in their decision regarding the purchase, lease and/or use of the Vehicles.

1258. Through these misleading and deceptive statements and false promises, Ford violated MINN. STAT. § 325F.69.

1259. The Minnesota Prevention of Consumer Fraud Act applies to Ford's transactions with Plaintiffs because Ford's deceptive scheme was carried out in Minnesota and affected Plaintiffs.

1260. Ford also failed to advise the NHSTA and the public about what they knew about the Transmission Defects in the Vehicles.

1261. Plaintiffs relied on Ford's silence as to known defects in connection with their decision regarding the purchase, lease and/or use of the Vehicles.

1262. As a direct and proximate result of Ford's deceptive conduct and violation of MINN. STAT. § 325F.69, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

**COUNT IV**
**FRAUDULENT MISREPRESENTATION &**
**FRAUDULENT CONCEALMENT**
**(Based on Minnesota Law)**

1263. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1264. Ford intentionally concealed the above-described material safety information, or acted with reckless disregard for the truth, and denied Plaintiffs information that is highly relevant to their purchasing decision.

1265. Ford further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the vehicles they were selling were new, had no

292

significant defects and would perform and operate properly when driven in normal usage.

1266. The vehicles purchased or leased by Plaintiffs were, in fact, defective, unsafe and unreliable, because the vehicles were subject to sudden Transmission Defects.

1267. Ford had a duty to disclose that these vehicles were defective, unsafe and unreliable because Plaintiffs relied on Ford's material representations that the vehicles they were purchasing were safe and free from defects.

1268. The aforementioned concealment was material because if it had been disclosed Plaintiffs would not have bought or leased the vehicles.

1269. Plaintiffs relied on Ford's reputation – along with Ford's failure to disclose the transmission problems and Ford's affirmative assurance that its vehicles were safe and reliable and other similar false statements – in purchasing or leasing Ford's vehicles.

1270. As a result of their reliance, Plaintiffs have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

1271. Ford's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs. Plaintiffs are therefore entitled to an award of punitive damages.

## COUNT V
## BREACH OF EXPRESS WARRANTY
### (Minn. Stat. § 325G.19 Express Warranties)

1272. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1273. Ford is and at all relevant times was a merchant as defined by the Uniform Commercial Code ("UCC").

1274. Ford expressly warranted – through uniform statements, marketing materials, and advertisements described above – that the vehicles were of high quality, and, at a minimum, would actually work properly and safely. These warranties became part of the basis of the bargain.

1275. Ford breached this warranty by knowingly selling to Plaintiffs vehicles with dangerous defects, and which were not of high quality.

1276. Plaintiffs have been damaged as a direct and proximate result of the breaches by Ford in that the Vehicles purchased or leased by Plaintiffs were and are worth far less than what Plaintiffs paid to purchase, which was reasonably foreseeable to Ford.

1277. Plaintiffs were unaware of these defects and could not have reasonably discovered them when they purchased or leased their vehicles from Ford.

1278. Plaintiffs are entitled to damages, including the diminished value of their vehicles and the value of the non-use of the vehicles pending successful repair, in addition to any costs associated with purchasing or leasing safer vehicles, incidental an consequential damages, and all other damages allowable under the law, including such further relief as the Court deems just and proper.

## COUNT VI
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (STRICT LIABILITY)
## (Minn. Stat. § 336.2-314 Implied Warranty;
## Merchantability; Usage Of Trade)

1279. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1280. Ford impliedly warranted that their vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

1281. As described above, there were dangerous defects in the vehicles manufactured, distributed, and/or sold by Ford, which Plaintiffs purchased or leased, including, but not limited to, Transmission Defects.

295

1282. These dangerous defects existed at the time the vehicles left Ford's manufacturing facilities and at the time they were sold to Plaintiffs. Furthermore, because of these dangerous defects, Plaintiff did not receive the benefit of their bargain and the vehicles have suffered a diminution in value.

1283. These dangerous defects were the direct and proximate cause of damages to Plaintiffs.

**COUNT VII**
**UNJUST ENRICHMENT**
**(Based on Minnesota Law)**

1284. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1285. Plaintiffs paid Ford the value of vehicles that are non-defective, and in exchange, Ford provided Plaintiffs vehicles that are, in fact, defective.

1286. Further, Plaintiffs paid Ford the value for vehicles that would not be compromised by substantial, invasive repairs, and in return received vehicles that require such repairs.

1287. Further, Plaintiffs paid Ford for vehicles they could operate, and in exchange, Ford provided Plaintiffs vehicles that could not be normally operated because their defects posed the possibility of life-threatening injuries or death.

1288. As such, Plaintiffs conferred a windfall upon Ford., which knows of the windfall and has retained such benefits, which would be unjust for Ford to retain.

1289.  As a direct and proximate result of Ford's unjust enrichment, Plaintiffs have suffered and continue to suffer various damages and are entitled to remedies, including, but not limited to, restitution of all amounts by which Ford was enriched through its misconduct.

## COUNT VIII
## STRICT LIABILITY (DESIGN DEFECT)
### (Based on Minnesota Law)

1290. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1291.  Ford is and has been at all times pertinent to this Complaint, engaged in the business of designing, manufacturing, assembling, promoting, advertising, distributing and selling Vehicles in the United States, including those owned or leased by Plaintiffs.

1292.  Ford knew and anticipated that the vehicles owned or leased by Plaintiffs would be sold to and operated by purchasers and/or eventual owners or leasors of Ford's vehicles, including Plaintiffs.  Ford also knew that these Vehicles would reach Plaintiffs without substantial change in their condition from the time the vehicles departed Ford's assembly lines.

1293.  Ford designed the Vehicles defectively, causing them to fail to perform as safely as an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

1294. Ford had the capability to use a feasible, alternative, safer design, and failed to correct the design defects.

1295. The risks inherent in the design of the Vehicles outweigh significantly any benefits of such design.

1296. Plaintiffs could not have anticipated and did not know of the aforementioned defects at any time prior to recent revelations regarding the problems with the Vehicles.

1297. As a direct and proximate result of Ford's wrongful conduct, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT IX
## STRICT LIABILITY (FAILURE TO WARN)
### (Based on Minnesota Law)

1298. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1299. Ford is and has been at all times pertinent to this Complaint, engaged in the business of designing, manufacturing, assembling, promoting, advertising, distributing and selling Vehicles in the United States, including those owned or leased by Plaintiffs.

1300. Ford, at all times pertinent to this Complaint, knew and anticipated that the Vehicles and their component parts would be purchased, leased and operated by consumers, including Plaintiffs.

1301. Ford also knew that these Vehicles would reach Plaintiffs without substantial change in their conditions from the time that the vehicles departed Ford's assembly lines.

1302. Ford knew or should have known of the substantial dangers involved in the reasonably foreseeable use of the Vehicles, defective design, manufacturing and lack of sufficient warnings caused them to have an unreasonably dangerous propensity to exhibit the Transmission Defects.

1303. Ford failed to adequately warn Plaintiffs when they became aware of the defect that caused Plaintiffs vehicles to be prone to exhibiting the Transmission Defects.

1304. Ford also failed to timely recall the vehicles or take any action to timely warn Plaintiffs of these problems and instead continues to subject Plaintiffs to harm.

1305. Ford knew, or should have known, that these defects were not readily recognizable to an ordinary consumer and that consumers would lease, purchase and use these products without inspection.

1306. Ford should have reasonably foreseen that the sudden and unintended defect in the Vehicles would subject Plaintiffs to harm resulting from the defect.

299

1307. Plaintiffs have used the Vehicles for their intended purpose and in a reasonable and foreseeable manner.

1308. As a direct and proximate result of Ford's wrongful conduct, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## MISSISSIPPI
### COUNT I
### MISSISSIPPI PRODUCTS LIABILITY ACT
### (Miss. Code Ann. § 11-1-63, *et seq.*)

1309. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1310. Ford has defectively designed, manufactured, sold or otherwise placed in the stream of commerce Vehicles.

1311. Ford is strictly liable in tort for Plaintiffs' injuries and damages and Plaintiffs respectfully rely upon the Doctrine as set forth in RESTATEMENT, SECOND, TORTS § 402(a).

1312. Because of the negligence of the design and manufacture of the Defective Vehicle, by which Plaintiffs were injured and the failure of Ford to warn Plaintiffs of the certain dangers concerning the operation of the Vehicles which were known to Ford but were unknown to Plaintiffs, Ford has committed a tort.

300

1313. The Vehicles which caused Plaintiffs' injuries were manufactured by Ford.

1314. At all times herein material, Ford negligently and carelessly did certain acts and failed to do other things, including, but not limited to, inventing, developing, designing, researching, guarding, manufacturing, building, inspecting, investigating, testing, labeling, instructing, and negligently and carelessly failing to provide adequate and fair warning of the characteristics, angers and hazards associated with the operation of the vehicles in question to users of the Vehicles, including, but not limited to, Plaintiffs, and willfully failing to recall or otherwise cure one or more of the defects in the product involved thereby directly and proximately causing the hereinafter described injury.

1315. The Vehicles were unsafe for their use by reason of the fact that they were defective.  For example, the Vehicles were defective in their design, guarding, development, manufacture, and lack of permanent, accurate, adequate and fair warning of the characteristics, danger and hazard to the user, prospective user and members of the general public, including, but not limited to, Plaintiffs, and because Ford failed to recall or otherwise cure one or more defects in the vehicles involved thereby directly and proximately causing the described injuries.

1316. Ford knew or reasonably should have known that the above-mentioned product would be purchased or leased and used without all necessary testing or inspection for defects by Plaintiffs.

1317. Plaintiffs were not aware of those defects at any time before the incident and occurrence mentioned in this complaint, or else Plaintiff was unable, as a practical matter, to cure that defective condition.

1318. Plaintiffs used the product in a foreseeable manner.

1319. As a proximate result of the negligence of Ford, Plaintiffs suffered injuries and damages.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Miss. Code Ann. §§ 75-2-314)

1320. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1321. Ford has defectively designed, manufactured, sold or otherwise placed in the stream of commerce defective vehicles as set forth above.

1322. Ford impliedly warranted that the Vehicles were merchantable and for the ordinary purpose for which they were designed, manufactured, and sold.

1323. The Vehicles were not in merchantable condition or fit for ordinary use due to the defects described above and as a result of the breach of warranty of merchantability by Ford, Plaintiffs sustained injuries and damages.

## COUNT III
## NEGLIGENCE
### (Under Mississippi Law)

1324. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1325. Ford has defectively designed, manufactured, sold or otherwise placed in the stream of commerce defective vehicles as set forth above.

1326. Ford had a duty to manufacture a product which would be safe for its intended and foreseeable uses and users, including the use to which it was put by Plaintiff.  Ford breached its duty to Plaintiffs because it was negligent in the design, development, manufacture, and testing of the Vehicles.

1327. Ford was negligent in its design, development, manufacture, and testing of the Vehicles because it knew, or in the exercise of reasonable care should have known, that they were prone to sudden unintended and dangerous Transmission Defects.

1328. Ford negligently failed to adequately warn and instruct Plaintiffs of the defective nature of the Vehicles, of the high degree of risk attendant to the using them, given that the users of the Vehicles would be ignorant of the said defective.

1329. Whereupon, Plaintiffs respectfully rely upon the RESTATEMENT, SECOND, TORTS § 395.

1330. Ford further breached its duties to Plaintiffs by supplying directly and/or through a third person to be used by such foreseeable persons such as Plaintiffs when:

    a. Ford knew or had reason to know, that the Subject Vehicle was dangerous or was likely to be dangerous for the use for which it was supplied; and

    b. Ford failed to exercise reasonable care to inform customers of the dangerous condition, or of the facts under which the Subject Vehicle is likely to be dangerous.

1331. As a result of Ford's negligence, Plaintiffs suffered damages.

### COUNT IV
### NEGLIGENT MISREPRESENTATION/FRAUD
### (Based on Mississippi Law)

1332. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1333. As set forth above, Ford concealed and/or suppressed material facts concerning the safety of their vehicles.

1334. Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.  Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one

304

must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

1335. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs. These omitted facts were material because they directly impact the safety of the Vehicles. Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

1336. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease their Vehicles at a higher price, which did not match the Vehicles' true value.

1337. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

1338. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified. Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

1339. As a result of the misrepresentation concealment and/or suppression of the facts, Plaintiffs sustained damage. For those Plaintiffs who elect to affirm the sale, these damages, under Mississippi law, include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages under Mississippi law.

1340. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
## UNJUST ENRICHMENT
### (Based on Mississippi Law)

1341. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1342. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same,

Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

1343. Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

1344. Plaintiffs, therefore, seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## MISSOURI
### COUNT I
### VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT
### (Mo. Rev. Stat. § 407.010, *et seq.*)

1345. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1346. The conduct of Ford as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Ford's manufacture and sale of vehicles with defective transmissions, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles.

1347. Ford's actions as set forth above occurred in the conduct of trade or commerce.

307

1348. Ford's actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Ford vehicles as a result of Ford's generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business.

1349. Plaintiffs were injured as a result of Ford's conduct.  Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

1350. Ford's conduct proximately caused the injuries to Plaintiffs.

1351. Ford is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

1352. Pursuant to MO. REV. STAT. § 407.010, Plaintiffs will serve the Missouri Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Mo. Rev. Stat. § 400.2-313)

1353. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1354. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1355. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

1356. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.  Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

1357. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

1358. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.  Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions. These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

1359. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

1360. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1361. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1362. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles. Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

1363. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

1364. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in MO. REV. STAT.

§ 400.2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

1365.  As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Mo. Rev. Stat. § 400.2-314)

1366. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1367. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1368. A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions, pursuant to MO. REV. STAT. § 400.2-314.

1369. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1370. Plaintiffs have had sufficient dealings with either Ford or their agents (dealerships) to establish privity of contract between Plaintiffs.  Notwithstanding this, privity is not required in this case because Plaintiffs are intended third-party beneficiaries of contracts between Ford and its dealers; specifically, they are the

311

intended beneficiaries of Ford's implied warranties.  The dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.  Finally, privity is also not required because Plaintiffs' Fords are dangerous instrumentalities due to the aforementioned defects and nonconformities.

1371. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Missouri Law)

1372. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1373.  To the extent Ford's repair commitment is deemed not to be a warranty under Missouri's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1374. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1375. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT V
## FRAUD BY CONCEALMENT
### (Based on Missouri Law)

1376. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1377. As set forth above, Ford concealed and/or suppressed material facts concerning the safety of their vehicles.

1378. Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.  Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

1379. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or

reasonably discoverable by Plaintiffs.  These omitted facts were material because they directly impact the safety of the Vehicles.  Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

1380. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease their Vehicles at a higher price, which did not match the Vehicles' true value.

1381. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

1382. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified. Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

1383. As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.  For those Plaintiffs who elect to affirm the sale, these damages, include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits.  For

those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages.

1384. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT VI**
**UNJUST ENRICHMENT**
**(Based on Missouri Law)**

1385. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1386. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

1387. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

1388. Ford appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher

price for vehicles which actually had lower values. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

1389. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## **MONTANA**
### **COUNT I**
### **BREACH OF EXPRESS WARRANTY**
### **(Based on Montana Law)**

1390. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1391. Plaintiffs' Vehicles constitute goods under the Uniform Commercial Code ("UCC"), Sections 2-105(1) and 2A-103(h).

1392. Each Plaintiff's purchase or lease of their vehicle was accompanied by an express warranty as defined in UCC Sections 2-313 and/or 2A-210, written and otherwise offered by Ford, whereby said warranty was part of the basis of the bargain of upon which each Plaintiff relied.

1393. Plaintiffs' Vehicles were not as warranted and represented in that the vehicles have the Transmission Defects and exhibit the conditions described above, as well as defects or conditions as reflected in the various repair orders, technical

service bulletins, special service messages, recall documents and consumer complaints in Ford's possession.

1394. As a result of the Transmission Defects in Plaintiffs' Vehicles, Plaintiffs' Vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of providing safe, reliable, and efficient transportation.

1395. As a result of the Transmission Defects in Plaintiffs' Vehicles, Plaintiffs have suffered significant diminution in the value of their Vehicles.

1396. Plaintiffs have provided Ford with sufficient opportunities to repair or replace their Vehicles.

1397. Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty that accompanied their Vehicles.

1398. Ford has breached its express warranties by failing to adequately repair the Vehicles and/or to repair the Vehicles in a timely fashion, and the Vehicles remain in a defective condition.

1399. Even though the express warranty provided to Plaintiffs limited Plaintiffs' remedy to repair and/or adjust defective parts, the Vehicles' defects have rendered the limited warranty ineffective to the extent that the limited repair and/or adjustment of defective parts failed of its essential purpose, pursuant to UCC Section 2-719(2) and/or the above remedy is not the exclusive remedy under UCC Section 2-719(1)(b).

1400. The Vehicles continue to contain defects which substantially impair the use and value of the Vehicles to Plaintiffs.

1401. These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to their acceptance of the Vehicles.

1402. Ford induced Plaintiffs' acceptance of the Vehicles by agreeing, by means of the express warranty, to remedy, within a reasonable time, those defects which had not been or could not have been discovered prior to acceptance and, further, by Ford's failure to disclose the aforesaid Transmission Defects and/or Ford's active concealment of same.

1403. As a result of the transmission defects, the Plaintiffs have lost faith and confidence in the Vehicles and the Plaintiffs cannot reasonably rely upon the Vehicles for the ordinary purpose of safe, reliable and efficient transportation.

1404. As a result of Ford's breaches of express warranties, Plaintiffs have suffered the damages set forth above.

1405. To the extent that Plaintiffs' Vehicles are subject to a lease or finance contract, Ford has a duty to indemnify Plaintiffs and hold Plaintiffs harmless should Plaintiffs prevail on their claims for breach of express warranty.

1406. As a direct and proximate result of Ford's breach, Plaintiffs seek all damages they are found to be entitled, including, inter alia, a refund of the purchase or lease price paid by Plaintiffs for their respective vehicle, incidental, consequential,

318

and actual damages; an order requiring Ford to indemnify and hold Plaintiffs harmless for any lease or finance contract covering the Vehicles, costs, interest, and actual attorney fees; and all other relief this Court deems equitable.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Based on Montana Law)

1407. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1408. Defendant is a merchant with respect to motor vehicles under the Uniform Commercial Code Section 2-104(1).

1409. The Vehicles were subject to implied warranties of merchantability under UCC Sections 2-314 and/or Section 2A-212.

1410. The Vehicles were not fit for the ordinary purpose for which such goods are used and/or the vehicles would not pass without objection in the trade for the product description.

1411. The Transmission Defects and problems hereinbefore described rendered the Vehicles unmerchantable.

1412. Ford failed to adequately remedy the transmission defects in the Vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

319

1413. As a result of Ford's breaches of implied warranties, Plaintiffs have suffered damages.

1414. To the extent that the Plaintiffs' Vehicles are covered by a lease or finance contract, Ford has a duty to indemnify and hold the Plaintiffs harmless should the Plaintiffs prevail on their claims for breach of implied warranty.

1415. As a direct and proximate result of Ford's breach, Plaintiffs seek all damages they are found to be entitled, including, inter alia, a refund of the purchase or lease price paid by Plaintiffs for their respective vehicle, incidental, consequential, and actual damages; an order requiring Ford to indemnify and hold Plaintiffs harmless for any lease or finance contract covering the Vehicles, costs, interest, and actual attorney fees; and all other relief this Court deems equitable.

**COUNT III**
**FRAUD BY MISREPRESENTATION AND CONCEALMENT**
**(Based on Montana Law)**

1416. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1417. Ford committed fraud by selling or leasing the Vehicles to Plaintiffs without disclosing that the Vehicles and their 6F35 Transmissions were defective and susceptible to sudden and premature failure.

1418. In particular, Plaintiffs are informed, believe, and thereon allege that prior to acquiring their Vehicles, Ford was well aware and knew that the 6F35

Transmission installed on the Vehicles were defective, but Ford concealed this fact from Plaintiffs at the time of sale and thereafter.

1419. Ford knew or should have known that the 6F35 Transmission had the Transmission Defect, which presents a safety hazard and is unreasonably dangerous to consumers because it can suddenly and unexpectedly affect the driver's ability to control the vehicle's speed, acceleration, and deceleration.

1420. Plaintiffs are informed, believe and thereon allege that Ford acquired its knowledge of the Transmission Defects prior to Plaintiffs acquiring their Vehicles, through sources not available to consumers such as Plaintiffs, including but not limited to pre-production and post-production testing data, early consumer complaints about the Transmission Defects made directly to Ford and its network of dealers, aggregate warranty data compiled from Ford's network of dealers, testing conducted by Ford in response to these complaints, as well as warranty repair and part replacements data received by Ford from Ford's network of dealers, amongst other sources of internal information.

1421. Plaintiffs are informed, believe, and thereon allege that while Ford knew about the Transmission Defect, and its safety risks since 2009, if not before, Ford concealed and failed to disclose the defective nature of Plaintiffs' Vehicles and their 6F35 Transmissions to Plaintiffs at the time of sale or lease and thereafter.

1422. Had Plaintiffs known that their Vehicles suffered from the Transmission Defect, Plaintiffs would not have purchased or leased their Vehicles.

1423. Indeed, Plaintiffs allege that Ford knew that their Vehicles and their 6F35 Transmissions suffered from an inherent defect, was defective, would fail prematurely, and was not suitable for its intended use.

1424. Ford was under a duty to Plaintiffs to disclose the defective nature of their vehicles and their 6F35 Transmissions, its safety consequences and/or the associated repair costs because:

a. Ford acquired its knowledge of the Transmission Defects and its potential consequences prior to Plaintiffs acquiring their Vehicles, though sources not available to consumers such as Plaintiffs, including but not limited to pre-production testing data, early consumer complaints about the Transmission Defects made directly to Ford and its network of dealers, aggregate warranty data compiled from Ford's network of dealers, testing conducted by Ford in response to these complaints, as well as warranty repair and part replacements data received by Ford from Ford's network of dealers, amongst other sources of internal information;

b. Ford was in a superior position from various internal sources to know (or should have known) the true state of facts about the material defects contained in vehicles equipped with 6F35 Transmission; and

c. Plaintiffs could not reasonably have been expected to learn or discover of the Vehicle's Transmission Defects and its potential consequences until well after Plaintiffs purchased their Vehicles.

1425. In failing to disclose the Transmission Defects to Plaintiffs, Ford has knowingly and intentionally concealed material facts and breached its duty not to do so.

1426. The facts concealed or not disclosed by Ford to Plaintiffs are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease the Vehicles. Had Plaintiffs known that their vehicles and their transmissions were defective at the time of sale, they would not have purchased or leased their Vehicles.

1427. Plaintiffs are reasonable consumers who do not expect their transmissions to fail and not work properly. Plaintiffs further expect and assume that Ford will not sell or lease vehicles with known material defects, including but not limited to those involving the vehicles' transmissions and will disclose any such defect to its consumers before selling such vehicles.

1428. As a result of Ford's misconduct, Plaintiffs have suffered and will continue to suffer actual damages.

1429. Ford's representations were expected and intended to induce Plaintiffs to purchase the Vehicles equipped with 6F35 Transmissions and to pay the increased price for same.

1430. Ford further withheld and continues to withhold information concerning the Transmission Defects set forth herein, and affirmatively misrepresented and continues to misrepresent the above-described symptoms as being "normal," when Ford knew and continue to know that its representations and omissions are misleading and, in fact, Ford intended its representations and omissions to mislead Plaintiffs concerning the nature and existence of the above-described Transmission Defects.

1431. Plaintiffs, reasonably relying on Ford's representations and omissions were deceived into purchasing the Vehicles at prices far in excess of the values which would have been assigned to the Vehicles had these Transmission Defects and dangers been disclosed; further, Ford's representations and omissions deceived Plaintiffs concerning the existence of the defects and Plaintiffs' rights and remedies with respect to the Transmission Defects.

1432. Had Plaintiffs known of the true nature of the Transmission Defects, Plaintiffs would not have purchased or leased the Vehicles or, alternatively, would not have paid the contract or lease price.

1433. Ford's representations and omissions as herein alleged were undertaken as an affirmative scheme designed to prevent Plaintiffs from obtaining information about the nature and existence of their claims involving their Vehicles' defective 6F35 Transmissions. In furtherance of this scheme, Ford also represented to Plaintiffs that the symptoms described above were "normal," or were somehow the fault of the Plaintiffs, or that the problems had been repaired. All of these statements were false and made with the intent to deceive and mislead Plaintiffs who relied on the statements to their detriment by failing to secure multiple repairs often required to substantiate claims and submit said claims earlier. Furthermore, Ford actively discouraged Plaintiffs from discovering the nature and existence of and thereby eliminate or restrict their ability to substantiate their claims which require documentary evidence of multiple repairs or repair attempts by: (a) charging "inspection fees" for warranty work in order to deter Plaintiffs from seeking repairs and submitting claims timely; (b) refusing to service vehicles because Plaintiffs have commenced litigation against Ford, to limit the number of repairs or repair attempts; and (c) failing to provide service records upon request by Plaintiffs, to further limit Plaintiff's ability to corroborate the existence of multiple repairs or repair attempts.

1434. As a direct and proximate result of Ford's fraud and concealment, Plaintiffs seek their compensatory and punitive damages under § 27-1-221, MCA, in whatever amount above $75,000.00 Plaintiffs are found to be entitled, together with interest, costs, and attorney fees, plus such other and further relief as this Court deems appropriate.

## COUNT IV
## VIOLATION OF MONTANA CONSUMER PROTECTION ACT
### (Mont. Code Ann. § 30-14-101, *et seq.*)

1435. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1436. This claim arises under the Montana Consumer Protection Act, Mont. Code Ann. § 30-14-101, et seq. ("CPA"), prohibits unfair or deceptive acts or practices.

1437. Plaintiffs are each a "consumer" as defined by the CPA.

1438. The conduct of Ford, as set forth herein, constitutes unfair or deceptive acts or practices, including, inter alia, Ford's manufacture and sale of vehicles with Transmission Defects, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles, which misrepresentations and omissions possessed the tendency or capacity to mislead.

1439. Ford engaged in the following violative acts, or practices in the course of dealings with Plaintiffs:

a. Representing through its advertising, warranties, and other express representations that the Vehicles' transmissions had benefits or characteristics that they did not actually have;

b. Representing that the vehicles' transmissions were of a particular standard or quality when they were not;

c. Advertising the vehicles and in particular the vehicles' transmissions with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material to the true characteristics, standards and qualities of the vehicles and transmissions;

d. At the time of the aforesaid sales and leases, Ford knew or had reason to know that the Vehicles had Transmission Defects, as described *supra*, but Ford failed to disclose this material information to Plaintiffs;

e. Failing to reveal material facts which tended to mislead Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f. Failing to adequately and properly inform Plaintiffs of their rights and remedies with respect to the transactions which are the subject of this Complaint;

g.  Misrepresenting Plaintiffs' rights and/or failing to advise Plaintiffs of remedies with respect to the transactions which are the subject of this Complaint, as hereinbefore alleged;

h.  Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

i.  Failing to provide promised benefits, both as hereinbefore set forth and as promised or implied by operation of law;

j.  Causing a probability of confusion or of misunderstanding as to Plaintiffs' legal rights, obligations, and/or remedies with respect to the subject transaction;

k.  Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining Plaintiffs' specific consent to the waiver.

1440. Ford's deceptive practices were specifically designed to induce Plaintiffs to purchase or lease their vehicles with the "upgraded" 6F35 transmission.

1441. Ford's conduct as described herein violated the CPA.

1442. Upon information and belief, the aforesaid violations were not due to a bona fide error, inasmuch as Ford failed to have any procedures in place designed to prevent the aforesaid violations and, further, engaged in the same unfair and

deceptive acts or practices in connection with the sale or lease of numerous other vehicles. Further, to this day, Ford continues to engage in the unlawful practices set forth above.

1443. As a proximate result of Ford's violations as set forth above, Plaintiffs have suffered a loss within the meaning of the Act, and are entitled to recover actual damages, treble damages, and punitive damages.

1444. As a proximate result of Ford's violations, Plaintiffs seek actual and/or statutory damages, interest, costs, and reasonable attorney fees as provided by statute.

## NEBRASKA
### COUNT I
### VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT
#### (Neb. Rev. Stat. § 59-1601, *et seq.*)

1445. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1446. The Nebraska Consumer Protection Act ("NCPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."

1447. "Trade or commerce" means "the sale of assets or services and any commerce directly or indirectly affecting the people of the State of Nebraska."

1448. The conduct of Ford as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Ford's manufacture and sale of

vehicles with defective transmissions, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles, which misrepresentations and omissions possessed the tendency or capacity to mislead.

1449. Ford's actions as set forth above occurred in the conduct of trade or commerce.

1450. Ford's actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Ford vehicles as a result of Ford's generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business.

1451. Plaintiffs were injured as a result of Ford's conduct.  Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

1452. Ford's conduct proximately caused the injuries to Plaintiffs, who are entitled to recover actual damages, as well as enhanced damages pursuant to § 59-1609.

## COUNT II
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Neb. Rev. Stat. Neb. § 2-314)

1453. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1454. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1455. A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

1456. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1457. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

### COUNT III
### IN THE ALTERNATIVE, UNJUST ENRICHMENT
### (Based on Nebraska Law)

1458. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1459. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

1460. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

331

1461. Ford received and retained benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values. It would be inequitable and unconscionable for Ford to retain these wrongfully obtained profits.

1462. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

**NEVADA**
**COUNT I**
**VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT**
**(Nev. Rev. Stat. § 598.0903, *et seq.*)**

1463. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1464. Ford is a "person" as required under the statute.

1465. Ford's actions as set forth above occurred in the course of business.

1466. The Nevada Deceptive Trade Practices Act, NEV. REV. STAT. § 598.0903, *et seq.*, prohibits unfair or deceptive consumer sales practices.

1467. The NEV. REV. STAT. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of his or her business or occupation, he or she does any of the following, including: "5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or

332

quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; " 8 Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "10. Advertises goods or services with intent not to sell or lease them as advertised"; or "15. Knowingly makes any other false representation in a transaction."

1468. In the course of Ford's business, it willfully failed to disclose and actively concealed the dangerous risk of transmission failure in the subject Fusions. Accordingly, Ford engaged in deceptive trade practices, including making false representation as to the characteristics, uses, and benefits of the Vehicles; representing that Vehicles are of a particular standard and quality when they are not; advertising Vehicles with the intent not to sell them as advertised; and knowingly made numerous other false representations as further described during the fact section of this complaint.

1469. Ford knowingly made false representations to consumers with the intent to induce consumers into purchasing Ford vehicles.  Plaintiffs reasonably relied on false representations by Ford and were induced to each purchase a Ford vehicle, to his/her detriment.  As a result of these unlawful trade practices, Plaintiffs have suffered ascertainable loss.

1470. Plaintiffs suffered ascertainable loss caused by Ford's false representations and failure to disclose material information.  Plaintiffs overpaid for their vehicles and did not receive the benefit of their bargain.  The value of their Ford's has diminished now that the safety issues have come to light, and Plaintiffs own vehicles that are not safe.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Nev. Rev. Stat. § 104.2313)

1471. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1472. Ford is and was at all relevant times a merchant with respect to motor vehicles under the Uniform Commercial Code.

1473. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

1474. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.  Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

1475. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

1476. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined

334

in Section IV.A., *supra*.  Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.  These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.  These affirmations and promises were part of the basis of the bargain between the parties.

1477. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

1478. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1479. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1480. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or

concealed material facts regarding the Vehicles. Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

1481. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

1482. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Nev. Rev. Stat. § 104.2314)

1483. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1484. Ford is and was at all relevant times a merchant with respect to motor vehicles under the Uniform Commercial Code.

1485. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to the Uniform Commercial Code.

1486. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are

used.  Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1487. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Nevada Law)

1488. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1489. To the extent Ford's repair commitment is deemed not to be a warranty under Nevada's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law. Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1490. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1491. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

337

## COUNT V
## BREACH OF IMPLIED COVENANT OF GOOD FAITH
## AND FAIR DEALING
### (Based on Nevada Law)

1492. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1493. As set forth above, Plaintiffs have entered into individual sales transactions and agreements with Ford for the purchase Ford vehicles.

1494. Plaintiffs have fully performed their obligations with Ford under such transactions and agreements.

1495. At all times, Ford owed Plaintiffs a duty to exercise and act in good faith and deal fairly with them in the performance of repairs of Vehicles.

1496. Ford has breached these duties and obligations in the manner and particulars set forth above, including, but not limited to, failing to repair or replace the Vehicles evidencing the Transmission Defects.

1497. As a direct and proximate result of Ford's failure to abide and comply with their obligations and duties, Plaintiffs have suffered pecuniary damages in an amount that has not yet been determined.

## COUNT VI
## FRAUD BY CONCEALMENT
### (Based on Nevada Law)

338

1498. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1499. As set forth above, Ford concealed and/or suppressed material facts concerning the safety of the subject Fusions and their transmissions.

1500. Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.  Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.  One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

1501. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.  These omitted facts were material because they directly impact the safety of the Vehicles.  Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

1502. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease their Vehicles at a higher price, which did not match the Vehicles' true value.

1503. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

1504. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified. Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

1505. Plaintiffs would not have purchased or leased the vehicles sold by Ford or would have not paid as much for the vehicles had they known the full truth about the vehicles being sold by Ford.

1506. As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.

1507. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT VII**

340

## UNJUST ENRICHMENT
### (Based on Nevada Law)

1508. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1509. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

1510. Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

1511. Plaintiffs, therefore, seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

### NEW HAMPSHIRE
### COUNT I
### VIOLATION OF N.H. CONSUMER PROTECTION ACT
### (N.H. Rev. Stat. Ann. § 358A:1, *et seq.*)

1512. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1513. The New Hampshire Consumer Protection Act ("CPA") prohibits a person, in the conduct of any trade or commerce, from doing any of the following:

"(V) Representing that goods or services have … characteristics, … uses, benefits, or quantities that they do not have; … (VII) Representing that goods or services are of a particular standard, quality, or grade, … if they are of another; … and (IX) Advertising goods or services with intent not to sell them as advertised."  N.H. Rev. Stat. § 358-A:2.

1514. Ford is a person within the meaning of the CPA.  *See* N.H. Rev. Stat. § 358A:1(I).

1515. In the course of Ford's business, it willfully failed to disclose and actively concealed the dangerous risk of transmission failure in the subject Fusions. Accordingly, Ford engaged in unlawful trade practices, including representing that Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Vehicles are of a particular standard and quality when they are not; and advertising Vehicles with the intent not to sell them as advertised.  Ford knew or should have known that its conduct violated the OUTPA.

1516. Ford engaged in a deceptive trade practice when it failed to disclose material information concerning the Ford vehicles which was known to Ford at the time of the sale. Ford deliberately withheld the information about the Transmission Defects in order to ensure that consumers would purchase its vehicles and to induce the consumer to enter into a transaction.

1517. The propensity of the Fusions to manifest the Transmission Defects was material to Plaintiffs. Had Plaintiffs known that their Fords had these serious safety defects, they would not have purchased or leased their Fords.

1518. Ford's failure to disclose material information has injured Plaintiffs. Plaintiffs overpaid for their vehicles and did not receive the benefit of their bargain. The value of their Ford's has diminished now that the safety issues have come to light, and Plaintiffs own vehicles that are not safe.

1519. Plaintiffs are entitled to recover the greater of actual damages or $1,000 pursuant to N.H. REV. STAT. § 358-A:10. Plaintiffs are also entitled to treble damages because Ford acted willfully in its unfair and deceptive practices.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**(N.H. Rev. Stat. Ann. § 382-A:2-313)**

1520. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1521. Ford is and was at all relevant times a merchant with respect to motor vehicles under N.H. REV. STAT. § 382-A:2-313.

1522. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

343

1523. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.  Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

1524. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities.

1525. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions. These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

1526. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

1527. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because

Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1528. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1529. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.  Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.  Under these circumstances, any limitations whatsoever precluding the recovery of incidental and/or consequential damages are unenforceable.

1530. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. Due to Ford's failure to provide such limited remedy within a reasonable time, placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

1531. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in N.H. REV. STAT.

§§ 382-A:2-608 and 382-A:2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned and for such other incidental and consequential damages as allowed under N.H. REV. STAT. §§ 382-A:2-608 and 382-A:2-711.

1532. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

**COUNT III**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(N.H. Rev. Stat. Ann. § 382-A:2-314)**

1533. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1534. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1535. A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

1536. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1537. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

346

**COUNT IV**
**BREACH OF COMMON LAW WARRANTY**
**(Based on New Hampshire Law)**

1538. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1539. To the extent Ford's repair commitment is deemed not to be a warranty under New Hampshire's Commercial Code, Plaintiffs plead in the alternative under common law contract law. Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1540. Ford breached this contractual obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1541. As a direct and proximate result of Ford's breach of contract, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT V**
**UNJUST ENRICHMENT**
**(Based on New Hampshire Law)**

1542. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1543. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

1544. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

1545. Ford appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values. It would be unconscionable for Ford to retain these wrongfully obtained profits.

1546. To the extent that no contract applies between the parties, Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

**NEW JERSEY**
**COUNT I**
**VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT**
**(N.J. Stat. Ann. § 56:8-1, *et seq*.)**

1547. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1548. The New Jersey Consumer Fraud Act ("CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice,

deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…"  N.J. STAT. ANN. § 56:8-2.

1549. Ford is a person within the meaning of the CFA.  N.J. STAT. ANN. § 56:8-1(d).

1550. In the course of Ford's business, it knowingly failed to disclose and actively concealed the dangerous risk of transmission failure in the subject Fusions. This was an unlawful practice in that Ford represented that Vehicles have characteristics, uses, benefits, and qualities which they do not have; represented that Vehicles are of a particular standard and quality when they are not; and advertised Vehicles with the intent not to sell them as advertised.  Ford knew or should have known that its conduct violated the CFA.

1551. Ford engaged in an unlawful practice under the CFA when it failed to disclose material information concerning the Ford vehicles which was known to Ford at the time of the sale. Ford deliberately withheld the information about the Transmission Defects in order to ensure that consumers would purchase its vehicles and to induce the consumer to enter into a transaction.

349

1552. Ford's unlawful practices cause substantial injury to consumers.

1553. The propensity of the Fusions to manifest the Transmission Defects was material to Plaintiffs. Had Plaintiffs known that their Fords had these serious safety defects, they would not have purchased or leased their Fords.

1554. Plaintiffs suffered ascertainable loss of money or property caused by Ford's unlawful practices. Plaintiffs overpaid for their vehicles and did not receive the benefit of their bargain. The value of their Fords has diminished now that the safety issues have come to light, and Plaintiffs own vehicles that are not safe.

1555. Plaintiffs are entitled to recover legal and/or equitable relief, treble damages, and reasonable attorneys' fees pursuant to N.J. STAT. ANN. § 56:8-19.

1556. Pursuant to N.J. STAT. ANN. § 56:8-20, Plaintiffs will mail a copy of the complaint to New Jersey's Attorney General within ten (10) days of filing it with the Court.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (N.J. Stat. Ann. § 12A:2-313)

1557. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1558. Ford is and was at all relevant times a merchant with respect to motor vehicles.

350

1559. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

1560. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.  Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

1561. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

1562. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.  Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.  These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.  These affirmations and promises were part of the basis of the bargain between the parties.

1563. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

1564. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1565. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1566. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.  Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

1567. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

1568. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set for in N.J. STAT. ANN.

§ 12A:2-608, for revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

1569. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amounted to be determined at trial.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.J. Stat. Ann. § 12A:2-314)

1570. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1571. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1572. A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

1573. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1574. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## BREACH OF CONTRACT
### (Based On New Jersey Law)

353

1575. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1576. To the extent Ford's repair commitment is deemed not to be a warranty under New Jersey's Commercial Code, Plaintiffs plead in the alternative under common law contract law.  Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1577. Ford breached this contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1578. As a direct and proximate result of Ford's breach of contract, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### COUNT V
### IN THE ALTERNATIVE, Unjust Enrichment
### (Based on New Jersey Law)

1579. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1580. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

1581. As a result of its wrongful and fraudulent acts and omissions, as set forth above, pertaining to the design defect of their vehicles and the concealment of the defect, Ford charged a higher price for its vehicles than the vehicles' true value. Ford accordingly received a benefit from Plaintiffs to Plaintiffs' detriment.

1582. Ford appreciated, accepted and retained the benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

1583. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## NEW MEXICO
### COUNT I
### BREACH OF EXPRESS WARRANTY
### (N.M. Stat. Ann. § 55-2-313)

1584. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1585. Ford is and was at all relevant times a merchant with respect to motor vehicles under N.M. STAT. ANN. § 55-2-104.

1586. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

1587. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford. Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

1588. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

1589. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions. These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

1590. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees. Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

1591. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because

Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1592. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1593. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles. Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses. Under these circumstances, any limitations whatsoever precluding the recovery of incidental and/or consequential damages are unenforceable.

1594. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

1595. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in N.M. STAT. ANN.

§ 55-2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned and for such other incidental and consequential damages as allowed under N.M. STAT. ANN. §§ 55-2-711 and 55-2-608.

1596. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT II
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (N.M. Stat. Ann. § 55-2-314)

1597. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1598. Ford is and was at all relevant times a merchant with respect to motor vehicles under N.M. STAT. ANN. § 55-2-104.

1599. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to N.M. STAT. ANN. § 55-2-314.

1600. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1601. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

358

## COUNT III
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on New Mexico Laws)

1602. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1603. To the extent Ford's repair commitment is deemed not to be a warranty under the Uniform Commercial Code as adopted in New Mexico, Plaintiffs plead in the alternative under common law warranty and contract law. Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1604. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1605. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

1606. Ford's breaches were malicious, fraudulent, oppressive, or committed recklessly with wanton disregard for the rights of Plaintiffs. Accordingly, as Ford has acted with the requisite culpable state of mind, Plaintiffs seek exemplary damages against Ford in an amount to be determined at trial.

## COUNT IV
## FRAUD BY CONCEALMENT
### (Based on New Mexico Law)

1607. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1608. As set forth above, Ford concealed and/or suppressed material facts concerning the safety of the subject Fusions and their transmissions.

1609. Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities. Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

1610. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs. These omitted facts were material because they directly impact the safety of the Vehicles. Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

360

1611. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease their Vehicles at a higher price, which did not match the Vehicles' true value.

1612. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

1613. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified. Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

1614. As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage. For those Plaintiffs who elect to affirm the sale, these damages include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages.

1615. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an

amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
## UNJUST ENRICHMENT
### (Based on New Mexico Law)

1616. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1617. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

1618. Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values. Ford knowingly benefited at the expense of Plaintiffs. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

1619. Plaintiffs, therefore, seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## COUNT VI
## VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT
### (N.M. Stat. Ann. §§ 57-12-1, *et seq.*)

1620. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1621. Ford's above-described acts and omissions constitute unfair or deceptive acts or practices under the New Mexico Unfair Trade Practices Act, N.M. Stat. Ann. §§ 57-12-1, et seq. ("New Mexico UTPA").

1622. By failing to disclose and actively concealing the dangerous defective transmissions, Ford engaged in deceptive business practices prohibited by the New Mexico UTPA, including (1) representing that Vehicles have characteristics and benefits, which they do not have, (2) representing that Vehicles are of a particular standard, quality, and grade when they are not, (3) using exaggeration as to a material fact and by doing so deceiving or tending to deceive, (4) failing to state a material fact and by doing so deceiving or tending to deceive, and (5) representing that a transaction involving Vehicles confers or involves rights, remedies, and obligations which it does not.

1623. As alleged above, Ford made numerous material statements about the safety and reliability of Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Ford's unlawful advertising and representations as a whole.

1624. Ford took advantage of the lack of knowledge, ability, experience, and capacity of Plaintiffs to a grossly unfair degree. Ford's actions resulted in a gross

disparity between the value received and the price paid by Plaintiffs.  Ford's actions constitute unconscionable actions under § 57-12-2(E) of the New Mexico UTPA.

1625.  Plaintiffs sustained damages as a result of Ford's unlawful acts and are, therefore, entitled to damages and other relief provided for under § 57-12-10 of the New Mexico UTPA.  Because Ford's conduct was committed willfully, Plaintiffs seek treble damages.

1626.  Plaintiffs also seek court costs and attorneys' fees under § 57-12-10(C) of the New Mexico UTPA.

### COUNT VII
### VIOLATIONS OF THE NEW MEXICO
### MOTOR VEHICLE DEALERS FRANCHISING ACT
### (N.M. Stat. Ann. §§ 57-16-1, *et seq.*)

1627.  Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1628.  As alleged above, Ford used false, misleading, and deceptive advertising in connection with their business in violation of the New Mexico Motor Vehicle Dealers Franchising Act, N.M. STAT. ANN. §§ 57-16-1, *et seq.* ("New Mexico MVDFA").

1629.  Plaintiffs sustained damages as a result of Ford's unlawful acts and are, therefore, entitled to damages and other relief provided for under § 57-16-13 of the

New Mexico MVDFA.   Because Ford's conduct was committed maliciously, Plaintiffs seek treble damages.

1630. Plaintiffs also seek court costs and attorneys' fees under § 57-16-13 of the New Mexico MVDFA.

## **NEW YORK**
### COUNT I
### DECEPTIVE ACTS OR PRACTICES
### (N.Y. Gen. Bus. Law § 349)

1631. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1632. This Count is asserted by Plaintiffs who (a) suffered a Transmission Defects event or (b) sold their vehicle at a loss.

1633. New York General Business Law ("G.B.L.") § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

1634. In the course of Ford's business, it willfully failed to disclose and actively concealed the dangerous risk of transmission failure in the subject Fusions. Accordingly, Ford made untrue, deceptive or misleading representations of material facts to and omitted and/or concealed material facts.

1635. Ford engaged in a deceptive acts or practices when it failed to disclose material information concerning the subject Fusion which was known to Ford at the time of the sale.  Ford deliberately withheld the information about the Transmission

365

Defects, and the vehicle's quality, reliability and safety issues in order to ensure that consumers would purchase its vehicles and to induce the consumer to enter into a transaction.

1636. The propensity of the Vehicles to experience the Transmission Defects and the related issues regarding quality, reliability and safety were material to Plaintiffs. Had Plaintiffs known that their Vehicles had these serious safety, quality and reliability issues, they would not have purchased or leased them.

1637. Because Ford's deception takes place in the context of automobile safety, that deception affects the public interest.

1638. Ford's unlawful conduct constitutes unfair acts or practices that have the capacity to and that do deceive consumers and have a broad impact on consumers at large.

1639. Plaintiffs suffered injury caused by Ford's failure to disclose material information. Plaintiffs overpaid for their vehicles and did not receive the benefit of their bargain. The value of their Ford's has diminished now that the safety issues have come to light, and Plaintiffs own vehicles that are not safe.

1640. Pursuant to G.B.L. § 349, Plaintiffs are entitled to recover the greater of actual damages or $50. Because Ford acted willfully or knowingly, Plaintiffs are entitled to recover three times actual damages, up to $1,000.

## COUNT II

**FALSE ADVERTISING**
**(N.Y. Gen. Bus. Law § 350)**

1641. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1642. This Count is asserted by Plaintiffs who (a) suffered a Transmission Defect event or (b) sold their Vehicle at a loss.

1643. New York G.B.L. § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce...." False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of … representations [made] with respect to the commodity...." N.Y. G.B.L. § 350-a.

1644. Ford caused to be made or disseminated through New York, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known, to Ford to be untrue and misleading to consumers and Plaintiffs.

1645. Ford has violated § 350 because the misrepresentations and omissions regarding the safety, quality and reliability of their vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

367

1646. Plaintiffs have suffered an injury, including the loss of money or property, as a result of Ford's false advertising.  In purchasing or leasing their vehicles, Plaintiffs relied on the misrepresentations and/or omissions of Ford with respect to the safety, quality and reliability of the vehicles.  Ford's representations turned out not to be true because the vehicles can unexpectedly and dangerously exhibit the Transmission Defects.  Had Plaintiffs known this, they would not have purchased or leased their Vehicles and/or paid as much for them.

1647. Accordingly, Plaintiffs overpaid for their Vehicles and did not receive the benefit of the bargain for their Vehicles, which have also suffered a diminution in value.

1648. Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Ford from continuing their unfair, unlawful, and/or deceptive practices.  Plaintiffs are also entitled to recover their actual damages or $500, whichever is greater.  Because Ford acted willfully or knowingly, Plaintiffs are entitled to recover three times actual damages, up to $10,000.

## COUNT III
## BREACH OF EXPRESS WARRANTY
## (N.Y. U.C.C. § 2-313)

1649. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

368

1650. This Count is asserted by Plaintiffs who (a) experienced the Transmission Defect, or (b) sold at a loss, and (c) presented their Vehicle to a dealer for repair.

1651. Ford is and was at all relevant times a merchant with respect to motor vehicles under N.Y. U.C.C. § 2-313.

1652. The vehicles sold by Ford are "things of danger," in that they are of such a character that when used for the purpose for which they are made they are likely to be a source of danger to several or many people if not properly designed and fashioned.

1653. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by warranty.

1654. Ford breached the express warranty to repair and correct defects in materials and workmanship of any part supplied by Ford. Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

1655. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

1656. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote

the benefits of the Fusion transmissions.  These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.  These affirmations and promises were part of the basis of the bargain between the parties.

1657. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

1658. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1659. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1660. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.  Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.  Under

these circumstances, any limitations whatsoever precluding the recovery of incidental and/or consequential damages are unenforceable.

1661. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. Due to Ford's failure to provide such limited remedy within a reasonable time, placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

1662. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.Y. U.C.C. § 2-314)

1663. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1664. This Count is asserted on behalf of Plaintiffs who (a) suffered the Transmission Defects or (b) sold their vehicle at a loss, and (c) who presented their vehicle for repair.

1665. Ford is and was at all relevant times a merchant with respect to motor vehicles.

371

1666. The vehicles sold by Ford are "things of danger," in that they are of such a character that when used for the purpose for which they are made they are likely to be a source of danger to several or many people if not properly designed and fashioned.

1667. A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

1668. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1669. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
## (BASED ON NEW YORK LAW)

1670. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1671. This Count is asserted on behalf of Plaintiffs who (a) suffered the Transmission Defects or (b) sold their Vehicle at a loss, and (c) who presented their Vehicle for repair.

1672. To the extent Ford's repair commitment is deemed not to be a warranty under New York's Uniform Commercial Code, Plaintiffs plead in the alternative under common law contract law. Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1673. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1674. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT VI
## FRAUD BY CONCEALMENT
### (Based on New York Law)

1675.

1676. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1677. This Count is brought by Plaintiffs who experienced the Transmission Defects and/or who sold at a loss.

1678. Ford had a duty to disclose the quality, reliability and safety issues because they consistently marketed their vehicles as safe, reliable and of high quality and proclaimed that safety, reliability and quality were among Ford's highest corporate priorities.  Once Ford made representations to the public about safety, quality and reliability, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.  One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

1679. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.  These omitted facts were material because they directly impact the safety, quality and reliability of the Vehicles.  Whether or not a vehicle has been designed and manufactured according to safety and company standard is material to a reasonable consumer.  Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

1680. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase Fords at a higher price for the vehicles, which did not match the vehicles' true value.

374

1681. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

1682. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified. Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

1683. As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage. For those Plaintiffs who elect to affirm the sale, these damages, include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages.

1684. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## **NORTH CAROLINA**

375

## COUNT I
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (N.C. Gen. Stat. § 25-2-314)

1685. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1686. Ford is and was at all relevant times a merchant with respect to motor vehicles under N.C. GEN. STAT. § 25-2-314.

1687. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to N.C. GEN. STAT. § 25-2-314.

1688. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1689. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT II
## FRAUD BY CONCEALMENT
### (Based on North Carolina Law)

1690. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1691. As set forth above, Ford concealed and/or suppressed material facts concerning the safety of their vehicles, which they were legally obligated to disclose.

1692. Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities. Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

1693. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs. These omitted facts were material because they directly impact the safety of the Vehicles. Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

1694. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease their Vehicles at a higher price, which did not match the Vehicles' true value.

1695. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

1696. Plaintiffs were unaware of these omitted material facts and would not have acted as it did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified. Ford was in exclusive control of the material facts, and such facts were not known to the public or to Plaintiffs.

1697. As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage. For those Plaintiffs who elect to affirm the sale, these damages include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages.

1698. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

1699. COUNT                                                                III

UNJUST                                                          ENRICHMENT

(Based on North Carolina Law)

378

1700.

1701. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1702. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

1703. Ford knowingly enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

1704. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## COUNT IV
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on North Carolina Law)

1705. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1706. To the extent Ford's repair commitment is deemed not to be a warranty under North Carolina's Commercial Code, Plaintiffs plead in the alternative under

379

common law warranty and contract law. Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1707. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1708. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**NORTH DAKOTA
COUNT I
BREACH OF EXPRESS WARRANTY
(N.D. Cent. Code. § 41-02-30)**

1709. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1710. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1711. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

1712. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford. Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

1713. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

1714. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions. These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

1715. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees. Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

1716. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1717. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1718. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.  Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

1719. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

1720. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in N.D. CENT. CODE § 41-02-71 (2-608), for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

1721. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

**COUNT II**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(N.D. Cent. Code § 41-02-31)**

1722. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1723. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1724. A warranty that the Vehicles were merchantable is implied by law in the instant transactions.

1725. These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1726. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**COUNT III**
**UNJUST ENRICHMENT**
**(Based on North Dakota Law)**

1727. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1728. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

1729. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford was enriched.

1730. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Plaintiffs were impoverished.

1731. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford obtained monies which rightfully belong to Plaintiffs.

1732. No justification exists for Ford's enrichment at the expense of Plaintiffs' impoverishment.

1733. There is an absence of an equal or better remedy at law for Ford's actions.

**COUNT IV**
**VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT**
**(N.D. Cent. Code § 51-15-02)**

1734. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1735. The conduct of Ford as set forth herein constitutes deceptive acts or practices, fraud, and misrepresentation, including, but not limited to, Ford's manufacture and sale of vehicles with defective transmissions which Ford failed to adequately investigate, disclose and remedy, and Ford's misrepresentations and omissions regarding the safety and reliability of its vehicles.

1736. Plaintiffs were injured as a result of Defendant's conduct.  Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

1737. Ford's conduct proximately caused the injuries to Plaintiffs.

1738. Further, Ford knowingly committed the conduct described above, and thus, under N.D. CENT. CODE § 51-15-09, Ford is liable to Plaintiffs for treble damages in amounts to be proven at trial, as well as attorneys' fees, costs, and disbursements.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on North Dakota Law)

1739. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1740. To the extent Ford's repair commitment is deemed not to be a warranty under North Dakota's Century Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Ford limited the remedies available to

Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1741. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1742. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT VI
## FRAUD BY CONCEALMENT
### (Based on North Dakota Law)

1743. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1744. As set forth above, Ford concealed and/or suppressed material facts concerning the safety of the subject Fusions and their transmissions.

1745. Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.  Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those

facts stated.  One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

1746. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.  These omitted facts were material because they directly impact the safety of the Vehicles.  Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

1747. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease their Vehicles at a higher price, which did not match the Vehicles' true value.

1748. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

1749. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified. Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

1750. As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.  For those Plaintiffs who elect to affirm the sale, these damages,

include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages.

1751. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## OHIO
## COUNT I
## VIOLATION OF OHIO CONSUMER SALES PRACTICES ACT
### (Ohio Rev. Code Ann. § 1345.01, *et seq.*)

1752. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1753. The Ohio Consumer Protection Act, OHIO REV. CODE § 1345.02, prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Specifically, the Act prohibits suppliers from representing that goods have characteristics or uses or benefits which they do not have. The Act also

prohibits suppliers from representing that their goods are of a particular quality or grade they are not.

1754. Ford is a "supplier" as that term is defined in the Ohio Consumer Protection Act, OHIO REV. CODE § 1345.01(C).

1755. Plaintiffs are "consumers" as that term is defined in the Ohio Consumer Protection Act, OHIO REV. CODE § 1345.01(D).

1756. The conduct of Ford alleged above constitutes unfair and/or deceptive consumer sales practices in violation of OHIO REV. CODE § 1345.02 because Ford represented through advertising and other marketing communications that the vehicles were new and free from defects and could be driven safely in normal operation.  Instead, the vehicles were not of the standard, quality or grade of new vehicles.

1757. Ford's conduct caused Plaintiffs' damages as alleged.

1758. Plaintiff specifically does not allege herein a claim for violation of OHIO REV. CODE § 1345.72.

1759. As a result of the foregoing wrongful conduct of Ford, Plaintiffs have been damaged in an amount to be proven at trial, including, but not limited to, actual and statutory damages, treble damages, court costs and reasonable attorneys' fees, pursuant to OHIO REV. CODE § 1345.09, *et seq*.

## COUNT II

## VIOLATION OF OHIO DECEPTIVE TRADE PRACTICES ACT
### (Ohio Rev. Code Ann. § 4165.01, *et seq.*)

1760. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1761. OHIO REV. CODE § 4165.02(A) provides that a "person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation," the person does any of the following:  "(2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; … (7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; … (9) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; … [and] (11) Advertises goods or services with intent not to sell them as advertised."

1762. Ford is a "person" within the meaning of OHIO REV. CODE § 4165.01(D).

1763. The vehicles sold to Plaintiffs were not of the particular sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities represented by Ford.

1764. The vehicles sold to Plaintiffs were not of the particular standard, quality, and/or grade represented by Ford.

1765. Ford made false or misleading statements of fact concerning the vehicles Plaintiffs purchased or leased – *i.e.*, that such vehicles were suitable for ordinary use – when Ford, in fact, knew that they were defective and not suitable for ordinary use.

1766. These statements materially influenced Plaintiffs' decision to purchase or lease the Vehicles, in that Ford's statements caused Plaintiffs to purchase or lease vehicles that they otherwise would not have had they known of the dangerous defect.

1767. Ford's deceptive trade practices caused Plaintiffs' damages as alleged.

1768. Ford's conduct was knowing and/or intentional and/or with malice and/or demonstrated a complete lack of care and/or reckless and/or was in conscious disregard for the rights of Plaintiffs.

1769. As a result of the foregoing wrongful conduct of Ford, Plaintiffs have been damaged in an amount to be proven at trial, including, but not limited to, actual and punitive damages, equitable relief and reasonable attorneys' fees.

## COUNT III
### BREACH OF EXPRESS WARRANTY
### (OHIO REV. CODE ANN. § 1302.26, *ET SEQ.* (U.C.C. § 2-313))

1770. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1771. Ford expressly warranted – through statements and advertisements described above – that the vehicles were of high quality, and, at a minimum, would actually work properly and safely.

1772. Ford breached this warranty by knowingly selling to Plaintiffs vehicles with dangerous defects, and which were not of high quality.

1773. Plaintiffs have been damaged as a direct and proximate result of the breaches by Ford in that the Vehicles purchased or leased by Plaintiffs were and are worth far less than what Plaintiffs paid to purchase, which was reasonably foreseeable to Ford.

## COUNT IV
## OHIO BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## STRICT LIABILITY
## (OHIO REV. CODE ANN. § 1302.27 (U.C.C. § 2-314))

1774. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1775. Ford impliedly warranted that their vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

1776. As described above, there were dangerous defects in the vehicles manufactured, distributed, and/or sold by Ford, which Plaintiffs purchased or leased, including, but not limited to the Transmission Defects.

1777. These dangerous defects existed at the time the vehicles left Ford's manufacturing facilities and at the time they were sold to Plaintiffs.

1778. These dangerous defects were the direct and proximate cause of damages to Plaintiffs.

## COUNT V
## OHIO NEGLIGENT DESIGN, ENGINEERING & MANUFACTURE
## (BASED ON OHIO LAW)

1779. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1780. Ford is a manufacturer and supplier of automobiles.

1781. Ford owed Plaintiffs a non-delegable duty to exercise ordinary and reasonable care to properly design, engineer, and manufacture the vehicles against foreseeable hazards and malfunctions including Transmission Defects.

1782. Ford owed Plaintiffs a non-delegable duty to exercise ordinary and reasonable care in designing, engineering and manufacturing the vehicles so that they would function normally.

1783. Ford also owed – and owe – a continuing duty to notify Plaintiffs of the problem at issue and to repair the dangerous defects.

393

1784. Ford breached these duties of reasonable care by designing, engineering and manufacturing vehicles that contained the defective transmissions and breached their continuing duty to notify Plaintiffs of these defects.

1785. The foreseeable hazards and malfunctions include, but are not limited to, the sudden and unanticipated manifestations of the Transmission Defects.

1786. Plaintiffs did not and could not know of the intricacies of these defects and their latent and dangerous manifestations, or the likelihood of harm therefrom arising in the normal use of their vehicles.

1787. At all relevant times, there existed alternative designs and engineering which were both technically and economically feasible.  Further, any alleged benefits associated with the defective designs are vastly outweighed by the real risks associated with sudden manifestation of the Transmission Defects.

1788. The vehicles were defective as herein alleged at the time they left Ford's factories, and the vehicles reached Plaintiffs without substantial change in the condition in which they were sold.

1789. As a direct and proximate result of Ford's breaches, Plaintiffs have suffered damages.

1790. Accordingly, Plaintiffs are entitled to recover appropriate damages including, but not limited to, diminution of value, return of lease payments and penalties, and injunctive relief related to future lease payments or penalties.

## COUNT VI
## FRAUD & FRAUDULENT CONCEALMENT
## (BASED ON OHIO LAW)

1791. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1792. Ford intentionally concealed the above-described material safety information, or acted with reckless disregard for the truth, and denied Plaintiffs information that is highly relevant to their purchasing decision.

1793. Ford further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car, that the vehicles they were selling were new, had no significant defects and would perform and operate properly when driven in normal usage.

1794. The vehicles purchased or leased by Plaintiffs were, in fact, defective, unsafe and unreliable, because the vehicles exhibited the Transmission Defects.

1795. Ford had a duty to disclose this material safety information.

1796. The aforementioned concealment was material because if it had been disclosed Plaintiffs would not have bought or leased the vehicles.

1797. Plaintiffs relied on Ford's reputation – along with Ford's failure to disclose the transmission problems and Ford's affirmative assurance that its vehicles

were safe and reliable and other similar false statements – in purchasing or leasing Ford's vehicles.

1798. As a result of their reliance, Plaintiffs have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

1799. Ford's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs. Plaintiffs are therefore entitled to an award of punitive damages.

## COUNT VII
## UNJUST ENRICHMENT
## (BASED ON OHIO LAW)

1800. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1801. Plaintiffs paid Ford the value of vehicles that are non-defective, and in exchange, Ford provided Plaintiffs vehicles that are, in fact, defective.

1802. Further, Plaintiffs paid Ford the value for vehicles that would not be compromised by substantial, invasive repairs, and in return received vehicles that require such repairs.

1803. Further, Plaintiffs paid Ford for vehicles they could operate, and in exchange, Ford provided Plaintiffs vehicles that could not be normally operated because their defects posed the possibility of life-threatening injuries or death.

1804. As such, Plaintiffs conferred a windfall upon Ford, which knows of the windfall and has retained such benefits, which would be unjust for Ford to retain.

1805. As a direct and proximate result of Ford's unjust enrichment, Plaintiffs have suffered and continue to suffer various damages and are entitled to remedies, including, but not limited to, restitution of all amounts by which Ford was enriched through its misconduct.

## OKLAHOMA
### COUNT I
### VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT
#### (Okla. Stat. tit. 15 § 751, *et seq.*)

1806. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1807. The conduct of Ford as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Ford's manufacture and sale of vehicles with defective transmissions, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles.

1808. Ford's actions as set forth above occurred in the conduct of trade or commerce.

1809. Ford's actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Ford vehicles as a result of Ford's generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business.

1810. Plaintiffs were injured as a result of Defendant's conduct. Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

1811. Ford's conduct proximately caused the injuries to Plaintiffs.

1812. Ford is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

1813. Pursuant to OKLA. STAT. tit. 15 § 751, Plaintiffs will serve the Oklahoma Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

**COUNT II**
**VIOLATION OF OKLAHOMA DECEPTIVE TRADE PRACTICES ACT**
**(78 Okla. Stat. Ann. § 51, *et seq*.)**

1814. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1815. The conduct of Ford as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Ford's manufacture and sale of vehicles with defective transmissions, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles.

1816. Ford's actions as set forth above occurred in the conduct of trade or commerce.

1817. Ford's actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Ford vehicles as a result of Ford's generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business.

1818. Plaintiffs were injured as a result of Defendant's conduct.  Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

1819. Ford's conduct proximately caused the injuries to Plaintiffs.

1820. Ford is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

1821. Pursuant to OKLA. STAT. tit. 78 § 51, Plaintiffs will serve the Oklahoma Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

## COUNT III

## BREACH OF EXPRESS WARRANTY
### (12A Okla. Stat. Ann. § 2-313)

1822. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1823. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1824. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

1825. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.  Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

1826. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

1827. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.  Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.  These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided

400

by Ford to be made by salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

1828. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees. Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

1829. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1830. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1831. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles. Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

1832. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential

damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

1833. Finally, due to Ford's breach of warranties as set forth herein,

1834. Plaintiffs assert as an additional and/or alternative remedy, as set forth in 12A OKLA. STAT. ANN. § 2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

1835. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT IV
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (12A Okla. Stat. Ann. § 2-314)

1836. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1837. Ford is and was at all relevant times a merchant with respect to motor vehicles.

1838. A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions, pursuant to 12A OKLA. STAT. ANN. § 2-314.

1839. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are

used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1840. Plaintiffs have had sufficient dealings with either Ford or their agents (dealerships) to establish privity of contract between Plaintiffs. Notwithstanding this, privity is not required in this case because Plaintiffs are intended third-party beneficiaries of contracts between Ford and its dealers; specifically, they are the intended beneficiaries of Ford's implied warranties. The dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiffs' Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

1841. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Oklahoma Law)

1842. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1843. To the extent Ford's repair commitment is deemed not to be a warranty under Oklahoma's Commercial Code, Plaintiffs plead in the alternative under

common law warranty and contract law.  Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1844. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1845. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT VI
## FRAUD BY CONCEALMENT
### (Based on Oklahoma Law)

1846. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1847. As set forth above, Ford concealed and/or suppressed material facts concerning the safety of the subject Fusions and their transmissions.

1848. Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.  Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one

must speak the whole truth and not conceal any facts which materially qualify those facts stated.  One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

1849. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.  These omitted facts were material because they directly impact the safety of the Vehicles.  Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

1850. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease their Vehicles at a higher price, which did not match the Vehicles' true value.

1851. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

1852. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified.  Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

1853.  As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.  For those Plaintiffs who elect to affirm the sale, these damages, include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits.  For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages.

1854. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT VII
### UNJUST ENRICHMENT
### (Based on Oklahoma Law)

1855. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1856. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

1857. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

1858. Ford appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values.  It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

1859. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## OREGON
### COUNT I
### VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT
### (Or. Rev. Stat. §§ 646.605, *et seq.*)

1860. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1861. The Oregon Unfair Trade Practices Act ("OUTPA") prohibits a person from, in the course of the person's business, doing any of the following: "(e) Represent[ing] that … goods … have … characteristics … uses, benefits, … or qualities that they do not have; (g) Represent[ing] that … goods … are of a particular

407

standard [or] quality … if they are of another; and (i) Advertis[ing] … goods or services with intent not to provide them as advertised." OR. REV. STAT. § 646.608(1).

1862. Ford is a person within the meaning of OR. REV. STAT. § 646.605(4).

1863. The Vehicles at issue are "goods" obtained primarily for personal family or household purposes within the meaning of OR. REV. STAT. § 646.605(6).

1864. In the course of Ford's business, it willfully failed to disclose and actively concealed the dangerous risk of transmission failure in the subject Fusions. Accordingly, Ford engaged in unlawful trade practices, including representing that Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Vehicles are of a particular standard and quality when they are not; and advertising Vehicles with the intent not to sell them as advertised. Ford knew or should have known that its conduct violated the OUTPA.

1865. As a result of these unlawful trade practices, Plaintiffs have suffered ascertainable loss.

1866. Ford engaged in a deceptive trade practice when it failed to disclose material information concerning the Ford vehicles which was known to Ford at the time of the sale. Ford deliberately withheld the information about the Transmission Defects in order to ensure that consumers would purchase its vehicles and to induce the consumer to enter into a transaction.

408

1867.  The propensity of the Fusions to manifest the Transmission Defects was material to Plaintiffs.  Had Plaintiffs known that their Fords had these serious safety defects, they would not have purchased or leased their Fords.

1868.  Plaintiffs suffered ascertainable loss caused by Ford's failure to disclose material information.  Plaintiffs overpaid for their vehicles and did not receive the benefit of their bargain.  The value of their Ford's has diminished now that the safety issues have come to light, and Plaintiffs own vehicles that are not safe.

1869.  Plaintiffs are entitled to recover the greater of actual damages or $200 pursuant to OR. REV. STAT. § 646.638(1).  Plaintiffs are also entitled to punitive damages because Ford engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.

1870.  Pursuant to OR. REV. STAT. § 646.638(2), Plaintiffs will mail a copy of the complaint to Oregon's attorney general.

## COUNT II
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Or. Rev. Stat. § 72.3140)

1871.  Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1872.  Ford is and was at all relevant times a merchant with respect to motor vehicles.

1873. A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

1874. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1875. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT III
## FRAUD BY CONCEALMENT
### (Based on Oregon Law)

1876. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1877. As set forth above, Ford concealed and/or suppressed material facts concerning the safety of the subject Fusions and their transmissions.

1878. Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities. Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those

facts stated.  One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

1879. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs.  These omitted facts were material because they directly impact the safety of the Vehicles.  Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

1880. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease their Vehicles at a higher price, which did not match the Vehicles' true value.

1881. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

1882. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified.  Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

1883. As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.  For those Plaintiffs who elect to affirm the sale, these damages,

include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages.

1884. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT IV
## UNJUST ENRICHMENT
### (Based on Oregon Law)

1885. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1886. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

1887. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same,

Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

1888. Ford appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values.  It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

1889. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

<u>**PENNSYLVANIA**</u>
**COUNT I**
**VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**
**(73 P.S. § 201-1, *et seq*.)**

1890. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1891. The conduct of Ford as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Ford's manufacture and sale of vehicles with defective transmissions, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles.

1892. Ford's actions as set forth above occurred in the conduct of trade or commerce.

1893. Ford's actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Ford vehicles as a result of Ford's generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business.

1894. Plaintiffs suffered ascertainable loss as a result of Defendant's conduct. Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

1895. Ford's conduct proximately caused the injuries to Plaintiffs.

1896. Ford is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (13 Pa. Cons. Stat. Ann. § 2313)

1897. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1898. Ford is and was at all relevant times a seller with respect to motor vehicles.

1899. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

414

1900. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.  Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

1901. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

1902. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., of the MCC.   Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.  These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.  These affirmations and promises were part of the basis of the bargain between the parties.

1903. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

1904. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because

Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

1905. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

1906. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles. Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

1907. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

1908. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in 13 PA. CONS. STAT. § 2608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

1909.  As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (13 Pa. Cons. Stat. Ann. § 2314)

1910.  Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1911.  Ford is and was at all relevant times a merchant with respect to motor vehicles.

1912.  A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

1913.  These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1914.  As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## UNJUST ENRICHMENT
### (Based on Pennsylvania Law)

1915.  Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1916. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

1917. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

1918. Ford appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values.  It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

1919. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Pennsylvania Law)

1920. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1921. To the extent Ford's repair commitment is deemed not to be a warranty under Pennsylvania's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Ford limited the remedies available to

418

Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

1922. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

1923. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## RHODE ISLAND
## COUNT I
## BREACH OF EXPRESS WARRANTY
### (Based on Rhode Island Law)

1924. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1925. Plaintiffs' Vehicles constitute goods under the Uniform Commercial Code ("UCC"), Sections 2-105(1) and 2A-103(h).

1926. Each Plaintiff's purchase or lease of their vehicle was accompanied by an express warranty as defined in UCC Sections 2-313 and/or 2A-210, written and otherwise offered by Ford, whereby said warranty was part of the basis of the bargain of upon which each Plaintiff relied.

419

1927. Plaintiffs' Vehicles were not as warranted and represented in that the vehicles have the Transmission Defects and exhibit the conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in Ford's possession.

1928. As a result of the Transmission Defects in Plaintiffs' Vehicles, Plaintiffs' Vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of providing safe, reliable, and efficient transportation.

1929. As a result of the Transmission Defects in Plaintiffs' Vehicles, Plaintiffs have suffered significant diminution in the value of their Vehicles.

1930. Plaintiffs have provided Ford with sufficient opportunities to repair or replace their Vehicles.

1931. Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty that accompanied their Vehicles.

1932. Ford has breached its express warranties by failing to adequately repair the Vehicles and/or to repair the Vehicles in a timely fashion, and the Vehicles remain in a defective condition.

1933. Even though the express warranty provided to Plaintiffs limited Plaintiffs' remedy to repair and/or adjust defective parts, the Vehicles' defects have rendered the limited warranty ineffective to the extent that the limited repair and/or

adjustment of defective parts failed of its essential purpose, pursuant to UCC Section 2-719(2) and/or the above remedy is not the exclusive remedy under UCC Section 2-719(1)(b).

1934. The Vehicles continue to contain defects which substantially impair the use and value of the Vehicles to Plaintiffs.

1935. These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to their acceptance of the Vehicles.

1936. Ford induced Plaintiffs' acceptance of the Vehicles by agreeing, by means of the express warranty, to remedy, within a reasonable time, those defects which had not been or could not have been discovered prior to acceptance and, further, by Ford's failure to disclose the aforesaid Transmission Defects and/or Ford's active concealment of same.

1937. As a result of the transmission defects, the Plaintiffs have lost faith and confidence in the Vehicles and the Plaintiffs cannot reasonably rely upon the Vehicles for the ordinary purpose of safe, reliable, and efficient transportation.

1938. As a result of Ford's breaches of express warranties, Plaintiffs have suffered the damages set forth above.

1939. To the extent that Plaintiffs' Vehicles are subject to a lease or finance contract, Ford has a duty to indemnify Plaintiffs and hold Plaintiffs harmless should Plaintiffs prevail on their claims for breach of express warranty.

1940. As a direct and proximate result of Ford's breach, Plaintiffs seek all damages they are found to be entitled, including, inter alia, a refund of the purchase or lease price paid by Plaintiffs for their respective vehicle, incidental, consequential, and actual damages; an order requiring Ford to indemnify and hold Plaintiffs harmless for any lease or finance contract covering the Vehicles, costs, interest, and actual attorney fees; and all other relief this Court deems equitable.

**COUNT II**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Based on Rhode Island Law)**

1941. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1942. Defendant is a merchant with respect to motor vehicles under the Uniform Commercial Code Section 2-104(1).

1943. The Vehicles were subject to implied warranties of merchantability under UCC Sections 2-314 and/or Section 2A-212.

1944. The Vehicles were not fit for the ordinary purpose for which such goods are used and/or the vehicles would not pass without objection in the trade for the product description.

1945. The Transmission Defects and problems hereinbefore described rendered the Vehicles unmerchantable.

1946. Ford failed to adequately remedy the transmission defects in the Vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

1947. As a result of Ford's breaches of implied warranties, Plaintiffs have suffered damages.

1948. To the extent that Plaintiffs' Vehicles are covered by a lease or finance contract, Ford has a duty to indemnify Plaintiffs and hold Plaintiffs harmless should Plaintiffs prevail on their claims for breach of implied warranty.

1949. As a direct and proximate result of Ford's breach, Plaintiffs seek all damages they are found to be entitled, including, inter alia, a refund of the purchase or lease price paid by Plaintiffs for their respective vehicle, incidental, consequential, and actual damages; an order requiring Ford to indemnify and hold Plaintiffs harmless for any lease or finance contract covering the Vehicles, costs, interest, and actual attorney fees; and all other relief this Court deems equitable.

## COUNT III
## FRAUD BY MISREPRESENTATION AND CONCEALMENT
### (Based on Rhode Island Law)

1950. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1951. Ford committed fraud by selling or leasing the Vehicles to Plaintiffs without disclosing that the Vehicles and their 6F35 Transmissions were defective and susceptible to sudden and premature failure.

1952. In particular, Plaintiffs are informed, believe, and thereon allege that prior to acquiring their Vehicles, Ford was aware and knew that the 6F35 Transmission installed on the Vehicles were defective, but Ford concealed this fact from Plaintiffs at the time of sale and thereafter.

1953. Ford knew or should have known that the 6F35 Transmission had the Transmission Defect, which presents a safety hazard and is unreasonably dangerous to consumers because it can suddenly and unexpectedly affect the driver's ability to control the vehicle's speed, acceleration, and deceleration.

1954. Plaintiffs are informed, believe and thereon allege that Ford acquired its knowledge of the Transmission Defects prior to Plaintiffs acquiring their Vehicles, through sources not available to consumers such as Plaintiffs, including but not limited to pre-production and post-production testing data, early consumer complaints about the Transmission Defects made directly to Ford and its network of dealers, aggregate warranty data compiled from Ford's network of dealers, testing conducted by Ford in response to these complaints, as well as warranty repair and part replacements data received by Ford from Ford's network of dealers, amongst other sources of internal information.

1955. Plaintiffs are informed, believe, and thereon allege that while Ford knew about the Transmission Defect, and its safety risks since 2009, if not before, Ford concealed and failed to disclose the defective nature of Plaintiffs' Vehicles and their 6F35 Transmissions to Plaintiffs at the time of sale or lease and thereafter.

1956. Had Plaintiffs known that their Vehicles suffered from the Transmission Defect, Plaintiffs would not have purchased or leased their Vehicles.

1957. Indeed, Plaintiffs allege that Ford knew that their Vehicles and their 6F35 Transmissions suffered from an inherent defect, was defective, would fail prematurely, and was not suitable for its intended use.

1958. Ford was under a duty to Plaintiffs to disclose the defective nature of their vehicles and their 6F35 Transmissions, its safety consequences and/or the associated repair costs because:

a. Ford acquired its knowledge of the Transmission Defects and its potential consequences prior to Plaintiffs acquiring their Vehicles, though sources not available to consumers such as Plaintiffs, including but not limited to pre-production testing data, early consumer complaints about the Transmission Defects made directly to Ford and its network of dealers, aggregate warranty data compiled from Ford's network of dealers, testing conducted by Ford in response to these complaints, as well as warranty repair and part replacements data

425

received by Ford from Ford's network of dealers, amongst other sources of internal information;

b. Ford was in a superior position from various internal sources to know (or should have known) the true state of facts about the material defects contained in vehicles equipped with 6F35 Transmission; and

c. Plaintiffs could not reasonably have been expected to learn or discover of the Vehicle's Transmission Defects and its potential consequences until well after Plaintiffs purchased their Vehicles.

1959. In failing to disclose the Transmission Defects to Plaintiffs, Ford has knowingly and intentionally concealed material facts and breached its duty not to do so.

1960. The facts concealed or not disclosed by Ford to Plaintiffs are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease the Vehicles. Had Plaintiffs known that their vehicles and their transmissions were defective at the time of sale, they would not have purchased or leased their Vehicles.

1961. Plaintiffs are reasonable consumers who do not expect their transmissions to fail and not work properly. Plaintiffs further expect and assume that Ford will not sell or lease vehicles with known material defects, including but not

limited to those involving the vehicles' transmissions and will disclose any such defect to its consumers before selling such vehicles.

1962. As a result of Ford's misconduct, Plaintiffs have suffered and will continue to suffer actual damages.

1963. Ford's representations were expected and intended to induce Plaintiffs to purchase the Vehicles equipped with 6F35 Transmissions and to pay the increased price for same.

1964. Ford further withheld and continues to withhold information concerning the Transmission Defects set forth herein, and affirmatively misrepresented and continues to misrepresent the above-described symptoms as being "normal," when Ford knew and continue to know that its representations and omissions are misleading and, in fact, Ford intended its representations and omissions to mislead Plaintiffs concerning the nature and existence of the above-described Transmission Defects.

1965. Plaintiffs, reasonably relying on Ford's representations and omissions were deceived into purchasing the Vehicles at prices far in excess of the values which would have been assigned to the Vehicles had these Transmission Defects and dangers been disclosed; further, Ford's representations and omissions deceived Plaintiffs concerning the existence of the defects and Plaintiffs' rights and remedies with respect to the Transmission Defects.

1966. Had Plaintiffs known of the true nature of the Transmission Defects, Plaintiffs would not have purchased or leased the Vehicles or, alternatively, would not have paid the contract or lease price.

1967. Ford's representations and omissions as herein alleged were undertaken as an affirmative scheme designed to prevent Plaintiffs from obtaining information about the nature and existence of their claims involving their Vehicles' defective 6F35 Transmissions. In furtherance of this scheme, Ford also represented to Plaintiffs that the symptoms described above were "normal," or were somehow the fault of the Plaintiffs, or that the problems had been repaired. All of these statements were false and made with the intent to deceive and mislead Plaintiffs who relied on the statements to their detriment by failing to secure multiple repairs often required to substantiate claims and submit said claims earlier. Furthermore, Ford actively discouraged Plaintiffs from discovering the nature and existence of and thereby eliminate or restrict their ability to substantiate their claims which require documentary evidence of multiple repairs or repair attempts by: (a) charging "inspection fees" for warranty work in order to deter Plaintiffs from seeking repairs and submitting claims timely; (b) refusing to service vehicles because Plaintiffs have commenced litigation against Ford, to limit the number of repairs or repair attempts; and (c) failing to provide service records upon request by Plaintiffs, to further limit Plaintiff's ability to corroborate the existence of multiple repairs or repair attempts.

1968. As a direct and proximate result of Ford's fraud and concealment, Plaintiffs seek their compensatory and punitive damages in whatever amount above $75,000.00 Plaintiffs are found to be entitled, together with interest, costs, and attorney fees, plus such other and further relief as this Court deems appropriate.

**COUNT IV**
**VIOLATION OF RHODE ISLAND DECEPTIVE TRADE PRACTICES ACT**
**(R.I. Gen. Laws § 6-13.1-1, *et seq.*)**

1969. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1970. The Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, et seq. ("DTPA"), prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

1971. Ford is a "person" as defined by the DTPA § 6-13.1-1(3).

1972. The sale and lease of the Vehicles, as well as the repair attempts by the authorized Ford dealerships and repair facilities, constitutes "trade" and "commerce" within the meaning of the DTPA § 6-13.1-1(5).

1973. The conduct of Ford, as set forth herein, constitutes unfair or deceptive acts or practices, including, inter alia, Ford's manufacture and sale of vehicles with Transmission Defects, which Ford failed to adequately investigate, disclose, and remedy, and its misrepresentations and omissions regarding the safety and reliability

429

of its vehicles, which misrepresentations and omissions possessed the tendency or capacity to mislead.

1974. Ford engaged in the following violative acts, or practices in the conduct of trade or commerce:

    a. Representing through its advertising, warranties, and other express representations that the Vehicles' transmissions had benefits or characteristics that they did not actually have;

    b. Representing that the vehicles' transmissions were of a particular standard or quality when they were not;

    c. Advertising the vehicles and in particular the vehicles' transmissions with the intent not to sell them as advertised and, when so doing, concealing, and suppressing facts material to the true characteristics, standards and qualities of the vehicles and transmissions;

    d. At the time of the aforesaid sales and leases, Ford knew or had reason to know that the Vehicles had Transmission Defects, as described *supra*, but Ford failed to disclose this material information to Plaintiffs;

    e. Failing to reveal material facts which tended to mislead Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f.  Failing to adequately and properly inform Plaintiffs of their rights and remedies with respect to the transactions which are the subject of this Complaint;

g.  Misrepresenting Plaintiffs' rights and/or failing to advise Plaintiffs of remedies with respect to the transactions which are the subject of this Complaint, as hereinbefore alleged;

h.  Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

i.  Failing to provide promised benefits, both as hereinbefore set forth and as promised or implied by operation of law;

j.  Causing a probability of confusion or of misunderstanding as to Plaintiffs' legal rights, obligations, and/or remedies with respect to the subject transaction;

k.  Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining Plaintiffs' specific consent to the waiver.

1975. Ford's deceptive practices were specifically designed to induce Plaintiffs to purchase or lease their vehicles with the "upgraded" 6F35 transmission.

1976. The above-described conduct violated the DTPA.

431

1977. Upon information and belief, the aforesaid violations were not due to a bona fide error, inasmuch as Ford failed to have any procedures in place designed to prevent the aforesaid violations and, further, engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous other vehicles. Further, to this day, Ford continues to engage in the unlawful practices set forth above.

1978. As a proximate result of Ford's violations as set forth above, Plaintiffs have suffered a loss within the meaning of the Act, and are entitled to recover their actual damages, statutory damages, and punitive damages.

1979. As a proximate result of Ford's violations Plaintiffs have suffered ascertainable losses within the meaning of DTPA, and seek actual and/or statutory damages, interest, costs, reasonable attorney fees and punitive damages pursuant to DTPA.

1980. Plaintiffs seek their actual damages, statutory damages, punitive damages, interest, costs, and reasonable attorney fees as provided by statute.

## SOUTH CAROLINA
### COUNT I
### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (S.C. Code § 36-2-314)

1981. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1982. Ford is and was at all relevant times a merchant with respect to motor vehicles under S.C. CODE § 36-2-314 .

1983. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to S.C. CODE § 36-2-314.

1984. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.  Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

1985. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT II
## UNJUST ENRICHMENT
### (Based on South Carolina Law)

1986. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1987. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

1988. Ford knowingly enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower

values. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

1989. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

**COUNT III**
**VIOLATIONS OF THE SOUTH CAROLINA UNFAIR TRADE**
**PRACTICES ACT**
**(S.C. Code Ann. § 39-5-10, *et seq.*)**

1990. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

1991. Ford is a "person" under S.C. CODE ANN. § 39-5-10.

1992. Ford participated in unfair or deceptive acts or practices that violated the South Carolina Unfair Trade Practices Act (the "Act"), S.C. CODE ANN. § 39-5-10, *et seq.*, as described above and below. Ford is directly liable for these violations of law, and Ford also is liable for Ford dealerships' violations because Ford dealerships act as Ford's agents in the United States for purposes of sales and marketing.

1993. By failing to disclose and actively concealing the dangerous defective transmissions, Ford engaged in unfair or deceptive practices prohibited by the Act, S.C. CODE ANN. § 39-5-10, *et seq.*, including (1) representing that Vehicles have

434

characteristics, uses, benefits, and qualities which they do not have, (2) representing that Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Vehicles has been supplied in accordance with a previous representation when it has not.

1994. As alleged above, Ford made numerous material statements about the safety and reliability of Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Ford's unlawful advertising and representations as a whole.

1995. Ford knew that the Fusion transmissions were defectively designed or manufactured, would fail without warning, and were not suitable for their intended use. Ford nevertheless failed to warn Plaintiffs about these inherent dangers despite having a duty to do so.

1996. Ford owed Plaintiffs a duty to disclose the defective nature of Vehicles, including the dangerous risk of transmission failure, the Transmission Defects, and the lack of adequate fail-safe mechanisms, because Ford:

a. Possessed exclusive knowledge of the Transmission Defects rendering Vehicles inherently more dangerous and unreliable than similar vehicles;

b. Intentionally concealed the hazardous situation with Vehicles through their deceptive marketing campaign and recall program that they designed to hide the dangerous transmission problems from Plaintiffs; and/or

c. Made incomplete representations about the safety and reliability of Fusions generally, and their transmissions in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1997. Vehicles equipped with defective transmissions pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to manifestations of the Transmission Defects.

1998. Ford's unfair or deceptive trade practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Vehicles.

1999. As a result of its violations of the Act detailed above, Ford caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs.  Plaintiffs

currently own or lease, or within the relevant time period have owned or leased, Vehicles that are defective and inherently unsafe.  The Transmission Defects and the attendant safety risks have impaired the value of the Vehicles.

2000. Plaintiffs risk irreparable injury as a result of Ford's acts and omissions in violation of the Act, and these violations present a continuing risk to Plaintiffs as well as to the general public.

2001. Pursuant to S.C. CODE ANN. § 39-5-140, Plaintiffs seek monetary relief against Ford to recover for their sustained losses.

2002. Plaintiffs further allege that Ford's malicious and deliberate conduct warrants an assessment of punitive damages because Ford carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs to cruel and unjust hardship as a result. Ford's intentionally and willfully misrepresented the safety and reliability of Vehicles, deceived Plaintiffs on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Vehicles they repeatedly promised Plaintiffs were safe. Ford's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

2003. The recalls and repairs instituted by Ford have not been adequate.  Ford Vehicles still are defective and dangerous.

2004.  Plaintiffs further seek an order enjoining Ford's unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's fees, and any other just and proper relief available under the Act.

### COUNT IV
### VIOLATIONS OF THE SOUTH CAROLINA REGULATION OF MANUFACTURERS, DISTRIBUTORS, AND DEALERS ACT
### (S.C. Code Ann. § 56-15-10, *et seq.*)

2005.  Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2006.  Ford is a "manufacturer" as set forth in S.C. CODE ANN. § 56-15-10, as they are engaged in the business of manufacturing or assembling new and unused motor vehicles.

2007.  Ford participated in unfair or deceptive acts or practices that violated the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act ("Dealers Act"), S.C. CODE ANN. § 56-15-30.   Ford is directly liable for these violations of law, and Ford also is liable for Ford dealerships' violations because Ford dealerships act as Ford's agents in the United States for purposes of sales and marketing.

2008.  Ford has engaged in actions which were arbitrary, in bad faith, unconscionable, and which caused damage to Plaintiffs and to the public.  Ford has directly participated in the wrongful conduct.

438

2009. Ford's bad faith and unconscionable actions include, but are not limited to:  (1) representing that Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Vehicles has been supplied in accordance with a previous representation when it has not.

2010. Ford has resorted to and used false and misleading advertisement in connection with their business.  As alleged above, Ford made numerous material statements about the safety and reliability of Vehicles that were either false or misleading.  Each of these statements contributed to the deceptive context of Ford's unlawful advertising and representations as a whole.

2011. Plaintiffs are entitled to double the actual damages, the cost of the suit, attorney's fees pursuant to S.C. CODE ANN. § 56-15-110, and  Plaintiffs also seek injunctive relief under S.C. CODE ANN. § 56-15-110.  Plaintiffs also seek treble damages because Ford has acted maliciously.

**COUNT V**
**BREACH OF CONTRACT/COMMON LAW WARRANTY**
**(Based on South Carolina Law)**

2012. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2013. To the extent Ford's repair commitment is deemed not to be a warranty under South Carolina's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law. Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

2014. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

2015. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## SOUTH DAKOTA
### COUNT I
### BREACH OF EXPRESS WARRANTY
### (S.D. Codified Laws § 57A-2-313)

2016. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2017. Ford is and was at all relevant times a merchant with respect to motor vehicles.

2018. Under S.D. CODIFIED LAWS § 57A-2-318, Plaintiffs have the same standing as any direct purchaser of a vehicle from Ford.

2019. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

2020. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.  Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

2021. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

2022. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.  Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.  These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.  These affirmations and promises were part of the basis of the bargain between the parties.

441

2023. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

2024. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

2025. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

2026. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.  Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

2027. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable

time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

2028.  Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in S.D. CODIFIED LAWS § 57A-2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

2029.  As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT II
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (S.D. Codified Laws § 57A-2-314)

2030.  Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2031.  Ford is and was at all relevant times a merchant with respect to motor vehicles.

2032.  A warranty that the Vehicles were merchantable is implied by law in the instant transactions.

2033.  Under S.D. CODIFIED LAWS § 57A-2-318, Plaintiffs have the same standing as any direct purchaser of a vehicle from Ford.

2034. These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

2035. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**COUNT III**
**UNJUST ENRICHMENT**
**(Based on South Dakota Law)**

2036. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2037. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

2038. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford received such higher price as a benefit.

2039. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford knew that it had received such higher price as benefit.

444

2040. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford was able to charge a higher price for their vehicles than the vehicles' true value, and the benefit it received as a result unjustly enriches Ford unless and until such benefit is reimbursed to Plaintiff.

2041. No justification exists for Ford to keep such benefit without reimbursing it to Plaintiffs.

### COUNT IV
### VIOLATION OF THE SOUTH DAKOTA
### DECEPTIVE TRADE PRACTICES ACT
### (S.D. Codified Laws § 37-24-6)

2042. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2043. The conduct of Ford as set forth herein constitutes deceptive acts or practices, fraud, and misrepresentation, including, but not limited to, Ford's manufacture and sale of vehicles with defective transmissions which Ford failed to adequately investigate, disclose and remedy, and Ford's misrepresentations and omissions regarding the safety and reliability of its vehicles.

2044. Plaintiffs were injured as a result of Defendant's conduct. Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

445

2045. Ford's conduct proximately caused the injuries to Plaintiffs.

2046. Under S.D. CODIFIED LAWS § 37-24-31, Plaintiffs are entitled to a recovery of their actual damages suffered as a result of Ford's acts and practices.

## COUNT V
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on South Dakota Law)

2047. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2048. To the extent Ford's repair commitment is deemed not to be a warranty under South Dakota's Codified Laws, Plaintiffs plead in the alternative under common law warranty and contract law.  Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

2049. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

2050. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**TENNESSEE**
**COUNT I**
**VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT**
**(Tenn. Code Ann. § 47-18-101, *et seq*.)**

2051. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2052. Ford misrepresented the safety of the Vehicles after learning of their defects with the intent that Plaintiffs relied on such representations in their decision regarding the purchase, lease and/or use of the Vehicles.

2053. Plaintiffs did, in fact, rely on such representations in their decision regarding the purchase, lease and/or use of the Vehicles.

2054. Through these misleading and deceptive statements and false promises, Ford violated the Tennessee Consumer Protection Act.

2055. The Tennessee Consumer Protection Act applies to Ford's transactions with Plaintiffs because Ford's deceptive scheme was carried out in Tennessee and affected Plaintiffs.

2056. Ford also failed to advise the NHSTA and the public about what they knew about the Transmission Defects in the Vehicles.

2057. Plaintiffs relied on Ford's silence as to known defects in connection with their decision regarding the purchase, lease and/or use of the Vehicles.

2058. As a direct and proximate result of Ford's deceptive conduct and violation of the Tennessee Consumer Protection Act, Plaintiffs have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT II
## FRAUDULENT MISREPRESENTATION &
## FRAUDULENT CONCEALMENT
### (Based on Tennessee Law)

2059. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2060. As described above, Ford made material omissions and affirmative misrepresentations regarding the Vehicles.

2061. Ford knew these representations were false when made.

2062. The vehicles purchased or leased by Plaintiffs were, in fact, defective, unsafe and unreliable, because the vehicles were subject to sudden manifestations of the Transmission Defects.

2063. Ford had a duty to disclose that these vehicles were defective, unsafe and unreliable because Plaintiffs relied on Ford's representations that the Vehicles they were purchasing were safe and free from defects.

2064. The aforementioned concealment was material because if it had been disclosed Plaintiffs would not have bought or leased the vehicles.

2065. Plaintiffs relied on Ford's reputation – along with Ford's failure to disclose the defective transmissions and Ford's affirmative assurance that its vehicles were safe and reliable and other similar false statements – in purchasing or leasing Ford's vehicles.

2066. As a result of their reliance, Plaintiffs have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

2067. Ford's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs. Plaintiffs are therefore entitled to an award of punitive damages.

### COUNT III
### BREACH OF EXPRESS WARRANTY
### (Tenn. Code Ann. § 47-2-313)

2068. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2069. Ford is and at all relevant times was a "seller" as defined by TENN. CODE ANN. § 47-2-103.

2070. Ford expressly affirmed – through uniform statements, marketing materials, and advertisements described above – that the vehicles were of high quality, and, at a minimum, would actually work properly and safely. These affirmations became part of the basis of the bargain.

2071. Ford breached this warranty by knowingly selling to Plaintiffs vehicles with dangerous defects, and which were not of high quality.

2072. Plaintiffs have been damaged as a direct and proximate result of the breaches by Ford in that the Vehicles purchased or leased by Plaintiffs were and are worth far less than what Plaintiffs paid to purchase, which was reasonably foreseeable to Ford.

2073. Plaintiffs were unaware of these defects and could not have reasonably discovered them when they purchased or leased their vehicles from Ford.

2074. Plaintiffs are entitled to damages, including the diminished value of their vehicles and the value of the non-use of the vehicles pending successful repair, in addition to any costs associated with purchasing or leasing safer vehicles, incidental and consequential damages, and all other damages allowable under the law, including such further relief as the Court deems just and proper.

**COUNT IV**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Tenn. Code Ann. § 47-2-314)**

2075. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2076. Ford impliedly warranted that their vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

2077. As described above, there were dangerous defects in the vehicles manufactured, distributed, and/or sold by Ford, which Plaintiffs purchased or leased, including, but not limited to the Transmission Defects.

2078. These dangerous defects existed at the time the vehicles left Ford's manufacturing facilities and at the time they were sold to Plaintiffs. Furthermore, because of these dangerous defects, Plaintiffs did not receive the benefit of their bargain and the vehicles have suffered a diminution in value.

2079. These dangerous defects were the direct and proximate cause of damages to Plaintiffs.

**COUNT V**
**UNJUST ENRICHMENT**
**(Based on Tennessee Law)**

2080. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

451

2081. Plaintiffs paid Ford the value of vehicles that are non-defective, and in exchange, Ford provided Plaintiffs vehicles that are, in fact, defective.

2082. Further, Plaintiffs paid Ford the value for vehicles that would not be compromised by substantial, invasive repairs, and in return received vehicles that require such repairs.

2083. Further, Plaintiffs paid Ford for vehicles they could operate, and in exchange, Ford provided Plaintiffs vehicles that could not be normally operated because their defects posed the possibility of life-threatening injuries or death.

2084. As such, Plaintiffs conferred a windfall upon Ford, which knows of the windfall and has retained such benefits, which would be unjust for Ford to retain.

2085. As a direct and proximate result of Ford's unjust enrichment, Plaintiffs have suffered and continue to suffer various damages and are entitled to remedies, including, but not limited to, restitution of all amounts by which Ford was enriched through its misconduct.

## TEXAS
## COUNT I
## VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT
### (Tex. Bus. & Com. Code §§ 17.41, *et seq.*)

2086. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2087.  Ford's above-described acts and omissions constitute false, misleading or deceptive acts or practices under the Texas Deceptive Trade Practices–Consumer Protection Act, TEX. BUS. & COM. CODE § 17.41, *et seq.* ("Texas DTPA").

2088.  By failing to disclose and actively concealing the dangerous defective transmissions, Ford  engaged in deceptive business practices prohibited by the Texas DTPA, including (1) representing that Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) failing to disclose information concerning Vehicles with the intent to induce consumers to purchase or lease the Vehicles.

2089.  As alleged above, Ford made numerous material statements about the safety and reliability of Vehicles that were either false or misleading.  Each of these statements contributed to the deceptive context of Ford's unlawful advertising and representations as a whole.

2090.  Ford's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Vehicles.

2091. In purchasing or leasing their vehicles, Plaintiffs relied on the misrepresentations and/or omissions of Ford with respect of the safety and reliability of the vehicles. Ford's representations turned out not to be true because the vehicles can unexpectedly and dangerously manifest the Transmission Defects. Had Plaintiffs known this they would not have purchased or leased their Vehicles and/or paid as much for them.

2092. Ford also breached express and implied warranties to Plaintiffs, as set out above, and are, therefore liable to Plaintiffs for damages under §§ 17.50(a)(2) and 17.50(b) of the Texas DTPA. Ford's actions also constitute an unconscionable action or course of action under § 17.50(a)(3) of the Texas DTPA.

2093. Plaintiffs sustained damages as a result of Ford unlawful acts and are, therefore, entitled to damages and other relief provided for under § 17.50(b) of the Texas DTPA. Because Ford's conduct was committed knowingly and/or intentionally, Plaintiffs are entitled to treble damages.

2094. For those Plaintiffs who wish to rescind their purchases, they are entitled under § 17.50(b)(4) to rescission and other relief necessary to restore any money or property that was acquired from them based on violations of the Texas DTPA.

2095. Plaintiffs also seek court costs and attorneys' fees under § 17.50(d) of the Texas DTPA.

454

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Tex. Bus. & Com. Code § 2.313)

2096. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2097. Ford is and was at all relevant times a merchant with respect to motor vehicles under TEX. BUS. & COM. CODE § 2.104.

2098. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

2099. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford. Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

2100. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities as set forth above.

2101. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions. These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided

by Ford to be made by salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

2102. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

2103. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

2104. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

2105. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.  Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.  Under these circumstances, any limitations whatsoever precluding the recovery of incidental and/or consequential damages are unenforceable.

2106. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

2107. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in TEX. BUS. & COM. CODE § 2.711, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned and for such other incidental and consequential damages as allowed under TEX. BUS & COM. CODE §§ 2.711 and 2.608.

2108. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

**COUNT III**
**BREACH OF THE IMPLIED WARRANTY OF**
**MERCHANTABILITY**
**(Tex. Bus. & Com. Code § 2.314)**

2109. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2110. Ford is and was at all relevant times a merchant with respect to motor vehicles under TEX. BUS. & COM. CODE § 2.104.

2111. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to TEX. BUS. & COM. CODE § 2.314.

2112. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

2113. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**COUNT IV**
**BREACH OF CONTRACT/COMMON LAW WARRANTY**
**(BASED ON TEXAS LAW)**

2114. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2115. To the extent Ford's repair commitment is deemed not to be a warranty under the Texas Business and Commerce Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of

any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

2116. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

2117. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT V
## FRAUD BY CONCEALMENT
### (Based on Texas Law)

2118. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2119. As set forth above, Ford concealed and/or suppressed material facts concerning the safety of the subject Fusions and their transmissions.

2120. Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities.  Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those

facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

2121. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs. These omitted facts were material because they directly impact the safety of the Vehicles. Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

2122. Ford was deliberately silent and actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease their Vehicles at a higher price, which did not match the Vehicles' true value.

2123. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

2124. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were reasonable and justified. Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

2125.  As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.  For those Plaintiffs who elect to affirm the sale, these damages include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits.  For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages.

2126. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford.  Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT VI
## UNJUST ENRICHMENT
### (Based on Texas Law)

2127. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2128. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same,

Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

2129. Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values. It would be inequitable, unjust, and unconscionable for Ford to retain these wrongfully obtained profits.

2130. Plaintiffs, therefore, seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

**UTAH**
**COUNT I**
**BREACH OF EXPRESS WARRANTY**
**(Utah Code Ann. § 70A-2-313)**

2131. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2132. Ford is and was at all relevant times a merchant as defined by the Uniform Commercial Code.

2133. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

2134. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford. Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

462

2135. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

2136. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.  Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.  These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.  These affirmations and promises were part of the basis of the bargain between the parties.

2137. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

2138. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

2139. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

2140. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.  Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

2141. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

2142. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in U.C.A. § 70A-2-608 for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of their Vehicles.

2143. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT II
## BREACH OF THE IMPLIED WARRANTY OF
## MERCHANTABILITY
## (Utah Code Ann. § 70A-2-314)

2144. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2145. Ford is and was at all relevant times a merchant with respect to motor vehicles.

2146. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transactions.

2147. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.  Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

2148. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT III
## BREACH OF CONTRACT/COMMON LAW WARRANTY
## (Based on Utah Law)

2149. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2150. To the extent Ford's repair commitment is deemed not to be a warranty under the Utah Code, Plaintiffs plead in the alternative under common law warranty and contract law. Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

2151. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

2152. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COUNT IV**
**UNJUST ENRICHMENT**
**(Based on Utah Law)**

2153. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2154. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

2155. Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

2156. Plaintiffs, therefore, seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## **VERMONT**
### COUNT I
### **Breach of Express Warranty**
### **(9A V.S.A. § 2-313 and/or § 2A-210)**

2157. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2158. Plaintiffs' Vehicles constitute goods under the Uniform Commercial Code ("UCC"), 9A V.S.A. Sections 2-105(1) and 2A-103(h).

2159. Each Plaintiff's purchase or lease of their vehicle was accompanied by an express warranty as defined in 9A V.S.A. Sections 2-313 and/or 2A-210, written and otherwise offered by Ford, whereby said warranty was part of the basis of the bargain of upon which each Plaintiff relied.

2160. Plaintiffs' Vehicles were not as warranted and represented in that the vehicles have the Transmission Defects and exhibit the conditions described above, as well as defects or conditions as reflected in the various repair orders, technical

service bulletins, special service messages, recall documents and consumer complaints in Ford's possession.

2161. As a result of the Transmission Defects in Plaintiffs' Vehicles, Plaintiffs' Vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of providing safe, reliable, and efficient transportation.

2162. As a result of the Transmission Defects in Plaintiffs' Vehicles, Plaintiffs have suffered significant diminution in the value of their Vehicles.

2163. Plaintiffs have provided Ford with sufficient opportunities to repair or replace their Vehicles.

2164. Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty that accompanied their Vehicles.

2165. Ford has breached its express warranties by failing to adequately repair the Vehicles and/or to repair the Vehicles in a timely fashion, and the Vehicles remain in a defective condition.

2166. Even though the express warranty provided to Plaintiffs limited Plaintiffs' remedy to repair and/or adjust defective parts, the Vehicles' defects have rendered the limited warranty ineffective to the extent that the limited repair and/or adjustment of defective parts failed of its essential purpose, pursuant to 9A V.S.A. Section 2-719(2) and/or the above remedy is not the exclusive remedy under 9A V.S.A. Section 2-719(1)(b).

2167. The Vehicles continue to contain defects which substantially impair the use and value of the Vehicles to Plaintiffs.

2168. These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to their acceptance of the Vehicles.

2169. Ford induced Plaintiffs' acceptance of the Vehicles by agreeing, by means of the express warranty, to remedy, within a reasonable time, those defects which had not been or could not have been discovered prior to acceptance and, further, by Ford's failure to disclose the aforesaid Transmission Defects and/or Ford's active concealment of same.

2170. As a result of the transmission defects, the Plaintiffs have lost faith and confidence in the Vehicles and the Plaintiffs cannot reasonably rely upon the Vehicles for the ordinary purpose of safe, reliable and efficient transportation.

2171. As a result of Ford's breaches of express warranties, Plaintiffs have suffered the damages set forth above.

2172. To the extent that Plaintiffs' Vehicles are subject to a lease or finance contract, Ford has a duty to indemnify Plaintiffs and hold Plaintiffs harmless should Plaintiffs prevail on their claims for breach of express warranty.

2173. As a direct and proximate result of Ford's breach, Plaintiffs seek all damages they are found to be entitled, including, inter alia, a refund of the purchase or lease price paid by Plaintiffs for their respective vehicle, incidental, consequential,

and actual damages; an order requiring Ford to indemnify and hold Plaintiffs harmless for any lease or finance contract covering the Vehicles, costs, interest, and actual attorney fees; and all other relief this Court deems equitable.

## COUNT II
### Breach of Implied Warranty of Merchantability
### (9A V.S.A. § 2-314 and/or § 2A-212)

2174. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2175. Defendant is a merchant with respect to motor vehicles under the 9A V.S.A. Section 2-104(1).

2176. The Vehicles were subject to implied warranties of merchantability under 9A V.S.A. Sections 2-314 and/or Section 2A-212.

2177. The Vehicles were not fit for the ordinary purpose for which such goods are used and/or the vehicles would not pass without objection in the trade for the product description.

2178. The Transmission Defects and problems hereinbefore described rendered the Vehicles unmerchantable.

2179. Ford failed to adequately remedy the transmission defects in the Vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

2180. As a result of Ford's breaches of implied warranties, Plaintiffs have suffered damages.

2181. To the extent that Plaintiffs' Vehicles are covered by a lease or finance contract, Ford has a duty to indemnify Plaintiffs and hold Plaintiffs harmless should Plaintiffs prevail on their claims for breach of implied warranty.

2182. As a direct and proximate result of Ford's breach, Plaintiffs seek all damages they are found to be entitled, including, inter alia, a refund of the purchase or lease price paid by Plaintiffs for their respective vehicle, incidental, consequential, and actual damages; an order requiring Ford to indemnify and hold Plaintiffs harmless for any lease or finance contract covering the Vehicles, costs, interest, and actual attorney fees; and all other relief this Court deems equitable.

## COUNT III
## FRAUD BY MISREPRESENTATION AND CONCEALMENT
### (Based on Vermont Law)

2183. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2184. Ford committed fraud by selling or leasing the Vehicles to Plaintiffs without disclosing that the Vehicles and their 6F35 Transmissions were defective and susceptible to sudden and premature failure.

2185. In particular, Plaintiffs are informed, believe, and thereon allege that prior to acquiring their Vehicles, Ford was well aware and knew that the 6F35

Transmission installed on the Vehicles were defective, but Ford concealed this fact from Plaintiffs at the time of sale and thereafter.

2186. Ford knew or should have known that the 6F35 Transmission had the Transmission Defect, which presents a safety hazard and is unreasonably dangerous to consumers because it can suddenly and unexpectedly affect the driver's ability to control the vehicle's speed, acceleration, and deceleration.

2187. Plaintiffs are informed, believe and thereon allege that Ford acquired its knowledge of the Transmission Defects prior to Plaintiffs acquiring their Vehicles, through sources not available to consumers such as Plaintiffs, including but not limited to pre-production and post-production testing data, early consumer complaints about the Transmission Defects made directly to Ford and its network of dealers, aggregate warranty data compiled from Ford's network of dealers, testing conducted by Ford in response to these complaints, as well as warranty repair and part replacements data received by Ford from Ford's network of dealers, amongst other sources of internal information.

2188. Plaintiffs are informed, believe, and thereon allege that while Ford knew about the Transmission Defect, and its safety risks since 2009, if not before, Ford concealed and failed to disclose the defective nature of Plaintiffs' Vehicles and their 6F35 Transmissions to Plaintiffs at the time of sale or lease and thereafter.

2189. Had Plaintiffs known that their Vehicles suffered from the Transmission Defects, Plaintiffs would not have purchased or leased their Vehicles.

2190. Indeed, Plaintiffs allege that Ford knew that their Vehicles and their 6F35 Transmissions suffered from an inherent defect, was defective, would fail prematurely, and was not suitable for its intended use.

2191. Ford was under a duty to Plaintiffs to disclose the defective nature of their vehicles and their 6F35 Transmissions, its safety consequences and/or the associated repair costs because:

    a. Ford acquired its knowledge of the Transmission Defects and its potential consequences prior to Plaintiffs acquiring their Vehicles, though sources not available to consumers such as Plaintiffs, including but not limited to pre-production testing data, early consumer complaints about the Transmission Defects made directly to Ford and its network of dealers, aggregate warranty data compiled from Ford's network of dealers, testing conducted by Ford in response to these complaints, as well as warranty repair and part replacements data received by Ford from Ford's network of dealers, amongst other sources of internal information;

b. Ford was in a superior position from various internal sources to know (or should have known) the true state of facts about the material defects contained in vehicles equipped with 6F35 Transmission; and

c. Plaintiffs could not reasonably have been expected to learn or discover of the Vehicle's Transmission Defects and its potential consequences until well after Plaintiffs purchased their Vehicles.

2192. In failing to disclose the Transmission Defects to Plaintiffs, Ford has knowingly and intentionally concealed material facts and breached its duty not to do so.

2193. The facts concealed or not disclosed by Ford to Plaintiffs are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease the Vehicles. Had Plaintiffs known that their vehicles and their transmissions were defective at the time of sale, they would not have purchased or leased their Vehicles.

2194. Plaintiffs are reasonable consumers who do not expect their transmissions to fail and not work properly. Plaintiffs further expect and assume that Ford will not sell or lease vehicles with known material defects, including but not limited to those involving the vehicles' transmissions and will disclose any such defect to its consumers before selling such vehicles.

2195. As a result of Ford's misconduct, Plaintiffs have suffered and will continue to suffer actual damages.

2196. Ford's representations were expected and intended to induce Plaintiffs to purchase the Vehicles equipped with 6F35 Transmissions and to pay the increased price for same.

2197. Ford further withheld and continues to withhold information concerning the Transmission Defects set forth herein, and affirmatively misrepresented and continues to misrepresent the above-described symptoms as being "normal," when Ford knew and continue to know that its representations and omissions are misleading and, in fact, Ford intended its representations and omissions to mislead Plaintiffs concerning the nature and existence of the above-described Transmission Defects.

2198. Plaintiffs, reasonably relying on Ford's representations and omissions were deceived into purchasing the Vehicles at prices far in excess of the values which would have been assigned to the Vehicles had these Transmission Defects and dangers been disclosed; further, Ford's representations and omissions deceived Plaintiffs concerning the existence of the defects and Plaintiffs' rights and remedies with respect to the Transmission Defects.

2199. Had Plaintiffs known of the true nature of the Transmission Defects, Plaintiffs would not have purchased or leased the Vehicles or, alternatively, would not have paid the contract or lease price.

2200. Ford's representations and omissions as herein alleged were undertaken as an affirmative scheme designed to prevent Plaintiffs from obtaining information about the nature and existence of their claims involving their Vehicles' defective 6F35 Transmissions. In furtherance of this scheme, Ford also represented to Plaintiffs that the symptoms described above were "normal," or were somehow the fault of the Plaintiffs, or that the problems had been repaired. All of these statements were false and made with the intent to deceive and mislead Plaintiffs who relied on the statements to their detriment by failing to secure multiple repairs often required to substantiate claims and submit said claims earlier. Furthermore, Ford actively discouraged Plaintiffs from discovering the nature and existence of and thereby eliminate or restrict their ability to substantiate their claims which require documentary evidence of multiple repairs or repair attempts by: (a) charging "inspection fees" for warranty work in order to deter Plaintiffs from seeking repairs and submitting claims timely; (b) refusing to service vehicles because Plaintiffs have commenced litigation against Ford, to limit the number of repairs or repair attempts; and (c) failing to provide service records upon request by Plaintiffs, to further limit Plaintiff's ability to corroborate the existence of multiple repairs or repair attempts.

476

2201. As a direct and proximate result of Ford's fraud and concealment, Plaintiffs seek their compensatory and punitive damages in whatever amount above $75,000.00 Plaintiffs are found to be entitled, together with interest, costs, and attorney fees, plus such other and further relief as this Court deems appropriate.

## COUNT IV
## VIOLATION OF THE VERMONT CONSUMER FRAUD ACT
### (Vermont Consumer Protection Act, 9 V.S.A. § 2451 *et seq.*)

2202. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2203. The Vermont Consumer Protection Act, 9 V.S.A. § 2451 et seq. ("CPA") prohibits "unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce.

2204. Plaintiffs are each a "consumer" as defined by CPA § 2451a(a).

2205. The Vehicles are "goods" as defined by CPA § 2451a(b).

2206. Ford is a "seller" as defined by CPA § 2451a(c).

2207. The conduct of Ford, as set forth herein, constitutes unfair or deceptive acts or practices, including, inter alia, Ford's manufacture and sale of vehicles with Transmission Defects, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles, which misrepresentations and omissions possessed the tendency or capacity to mislead.

477

2208. Ford engaged in the following violative acts or practices in the conduct of commerce:

a.  Representing through its advertising, warranties, and other express representations that the Vehicles' transmissions had benefits or characteristics that they did not actually have;

b.  Representing that the vehicles' transmissions were of a particular standard or quality when they were not;

c.  Advertising the vehicles and in particular the vehicles' transmissions with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material tot he true characteristics, standards and qualities of the vehicles and transmissions;

d.  At the time of the aforesaid sales and leases, Ford knew or had reason to know that the Vehicles had Transmission Defects, as described *supra*, but Ford failed to disclose this material information to Plaintiffs;

e.  Failing to reveal material facts which tended to mislead Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

f.  Failing to adequately and properly inform Plaintiffs of their rights and remedies with respect to the transactions which are the subject of this Complaint;

g. Misrepresenting Plaintiffs' rights and/or failing to advise Plaintiffs of remedies with respect to the transactions which are the subject of this Complaint, as hereinbefore alleged;

h. Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

i. Failing to provide promised benefits, both as hereinbefore set forth and as promised or implied by operation of law;

j. Causing a probability of confusion or of misunderstanding as to Plaintiffs' legal rights, obligations, and/or remedies with respect to the subject transaction;

k. Entering into a consumer transaction in which the Plaintiffs purportedly waived a right, benefit, or immunity provided by law, without clearly stating the waiver and obtaining Plaintiffs' specific consent to the waiver.

2209. Ford's deceptive practices were specifically designed to induce Plaintiffs to purchase or lease their vehicles with the "upgraded" 6F35 transmission.

2210. The above-described conduct violated the Vermont CPA.

2211. Ford's actions and omissions evince fraud by Ford's failure to sell the Vehicles in a manner and of the nature advertised and offered by Ford, creating a presumption of intention to violate the Vermont CPA.

479

2212. Upon information and belief, the aforesaid violations were not due to a bona fide error, inasmuch as Ford failed to have any procedures in place designed to prevent the aforesaid violations and, further, engaged in the same unfair and deceptive acts or practices in connection with the sale or lease of numerous other vehicles. Further, to this day, Ford continues to engage in the unlawful practices set forth above.

2213. As a proximate result of Ford's violations as set forth above, Plaintiffs have suffered a loss within the meaning of the CPA, and are entitled to recover actual damages, as well as enhanced damages up to three times Plaintiffs' actual damages.

2214. As a proximate result of Ford's violations as set forth above, Plaintiffs seek their actual damages, treble damages, interest, costs, and reasonable attorney fees.

## VIRGINIA
## COUNT I
## VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTIONS
### (Va. Code § 59.1-196 *et seq.*)

2215. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2216. Plaintiffs are or were at all relevant times "persons" within the meaning of Virginia Consumer Protection Act ("Virginia CPA") for all purposes therein.

2217. Ford is and was at all relevant times a "person" within the meaning of the Virginia CPA for all purposes therein.

2218. Ford is and was at all relevant times a "supplier" under § 59.1-198 of the Virginia CPA.

2219. Ford participated in deceptive acts or practices that violated the Virginia CPA, as described above and below. Ford is directly liable for these violations of law, and Ford also is liable for Ford dealerships' violations because Ford dealerships act as Ford's agents in the United States for purposes of sales and marketing.

2220. Ford engaged in deceptive acts or practices prohibited by the Virginia CPA, including among others (1) representing that Vehicles have characteristics, uses, and benefits that they do not have and (2) representing that Vehicles are of a particular standard, quality, and grade when they are of another which differs materially from the representation. Each of these statements contributed to the deceptive context of Ford's unlawful advertising and representations as a whole.

2221. Ford knew or had reason to know that its representations were false. Ford knew that the Fusion transmissions were defectively designed or manufactured, would fail without warning, and were not suitable for their intended use. Ford nevertheless failed to warn Plaintiffs about these inherent dangers despite having duty to do so.

2222. Ford engaged in further deceptive acts or practices prohibited by the Virginia CPA by willfully failing to disclose or willfully concealing, suppressing or omitting material facts about Vehicles. Specifically, Ford failed to disclose and actively concealed the dangerous risk of transmission failure in Fusions equipped with 6F35 and CVT transmissions. Ford knew that the Fusion transmissions were defectively designed or manufactured, would fail without warning, and were not suitable for their intended use. Ford nevertheless failed to warn Plaintiffs about these inherent dangers despite having a duty to do so.

2223. Ford's acts or practices alleged herein are unconscionable because among other reasons, Ford knew or had reason to know they had made misleading statements of fact and opinion on which Plaintiffs were likely to rely to their detriment.

2224. Ford's deceptive and unconscionable acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Vehicles as a result of Ford's violations of the Virginia CPA.

2225. Plaintiffs suffered loss as a result of Ford's violations of the Virginia CPA detailed above. Plaintiffs currently own or lease, or within the relevant time period have owned or leased, Vehicles that are defective and inherently unsafe. The Transmission Defects and the attendant safety risks have impaired the value of the Vehicles.

482

2226. Pursuant to § 59.1-204 of the Virginia CPA, Ford is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs and treble damages.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Va. Code § 8.2-313)

2227. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2228. Ford is and was at all relevant time a "merchant" with respect to motor vehicles under Va. Code § 8.2-104.

2229. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

2230. Ford breached the express warranty to repair to correct defects in material and workmanship of any part supplied by Ford. Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

2231. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities as set forth above.

2232. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., supra. Generally, these express warranties promise heightened,

483

superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions. These warranties were made, inter alia, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

2233. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees. Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

2234. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

2235. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

2236. Also, as alleged in more detailed herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles. Plaintiffs were therefore induced to

purchase or lease the Vehicles under false and/or fraudulent pretenses. Under these circumstances, any limitations whatsoever precluding the recovery of incidental and/or consequential damages are unenforceable.

2237. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. Due to Ford's failure to provide such limited remedy within a reasonable time, placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

2238. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs asserts as an additional and/or alternative remedy, as set forth in Va. Code § 8.2-711, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned and for such other incidental and consequential damages as allowed under Va. Code §§ 8.2-711 and 8.2-608.

2239. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Va. Code § 8.2-314)

2240. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2241. Plaintiffs are or were at all relevant times "natural persons" within the meaning of Va. Code § 8.2-318.

2242. Ford is and was at all relevant times a merchant with respect to motor vehicles under Va. Code § 8.2-104.

2243. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Va. Code § 8.2-314.

2244. These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

2245. Privity is not required because the Vehicles are inherently dangerous.

2246. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## NEGLIGENCE
### (Based on Virginia Law)

2247. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2248. Plaintiffs are or were at all relevant times the owners or lessees of Ford vehicles that were manufactured, assembled, designed, distributed and otherwise placed in the stream of commerce by Ford.

486

2249. Ford had a duty to manufacture a product which would be safe for its intended and foreseeable uses and users, including the use to which it was put by Plaintiffs. Ford breached its duty to Plaintiffs because it was negligent in the design, development, manufacture, and testing of the Vehicles.

2250. Ford was negligent in its design, development, manufacture, and testing of the Vehicles because it knew, or in the exercise of reasonable care should have known, that they were prone to sudden and dangerous manifestations of the Transmission Defects.

2251. Ford negligently failed to adequately warn and instruct Plaintiffs of the defective nature of the Vehicles, of the high degree of risk attendant to using them, given that Plaintiffs would be ignorant of the said defects.

2252. Ford further breached its duties to Plaintiffs by supplying Vehicles directly and/r through a third person to be used by such foreseeable persons such as Plaintiffs when:

    a. Ford knew or had reason to know, that the Vehicles were dangerous or were likely to be dangerous for the use for which they were supplied; and

    b. Ford failed to exercise reasonable care to inform customers of the dangerous condition, or of the facts under which the Vehicles are likely to be dangerous.

2253.  As a result of Ford's negligence, Plaintiffs suffered damages.

## COUNT V
## FRAUD BY CONCEALMENT
### (Based on Virginia Law)

2254.  Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2255.  As set forth above, Ford concealed and/or suppressed material facts concerning the safety of its vehicles that in equity and good conscience should be disclosed.

2256.  Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities. Once Ford made representations to the public about safety, Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

2257. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs. These omitted facts were material because they directly impact the safety of the Vehicles. Ford possessed exclusive knowledge

of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

2258. Ford actively and knowingly concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase the Vehicles at a higher price for the vehicles, which did not match the Vehicles' true value.

2259. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

2260. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified. Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

2261. As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage. Plaintiffs reserve their right to elect either to (a) rescind their purchase or lease of the Vehicles and obtain restitution or (b) affirm their purchase or lease of the Vehicles and recover damages.

2262. Ford's conduct warrants an assessment of exemplary damages in an amount which is equal to the amount of the actual damages awarded to Plaintiffs.

## COUNT VI
## UNJUST ENRICHMENT
### (Based on Virginia Law)

489

2263. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2264. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

2265. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

2266. Ford appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

2267. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## WASHINGTON
### COUNT I
### VIOLATION OF THE CONSUMER PROTECTION ACT
### (Rev. Code Wash. Ann. §§ 19.86.010, *et seq.*)

2268. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2269. The conduct of Ford as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Ford's manufacture and sale of vehicles with defective transmissions, which Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles.

2270. Ford's actions as set forth above occurred in the conduct of trade or commerce.

2271. Ford's actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing and/or leasing Ford vehicles as a result of Ford's generalized course of deception.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business.

2272. Plaintiffs were injured as a result of Defendant's conduct.  Plaintiffs overpaid for their Vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

2273. Ford's conduct proximately caused the injuries to Plaintiffs.

2274. Ford is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

2275. Pursuant to WASH. REV. CODE. ANN. § 19.86.095, Plaintiffs will serve the Washington Attorney General with a copy of this complaint as Plaintiffs seek injunctive relief.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Rev. Code Wash. § 62A.2-313)

2276. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2277. Ford is and was at all relevant times a merchant with respect to motor vehicles.

2278. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

2279. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford. Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

2280. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

2281. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions. These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided

by Ford to be made by salespeople.  These affirmations and promises were part of the basis of the bargain between the parties.

2282. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

2283. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

2284. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

2285. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.  Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

2286. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential

damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

2287. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in REV. CODE WASH. § 62A.2-608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned.

2288. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Rev. Code Wash. § 62A.2-614)

2289.

2290. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2291. Ford is and was at all relevant times a merchant with respect to motor vehicles.

2292. A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

2293. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

2294. Privity is not required in this case because Plaintiffs are intended third-party beneficiaries of contracts between Ford and its dealers; specifically, they are the intended beneficiaries of Ford's implied warranties. The dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

2295. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## BREACH OF CONTRACT/COMMON LAW WARRANTY
## (BASED ON WASHINGTON LAW)

2296. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2297. To the extent Ford's repair commitment is deemed not to be a warranty under Washington's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law. Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of

any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

2298. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

2299. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT V
## FRAUD BY CONCEALMENT
### (Based on Washington Law)

2300. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2301. As set forth above, Ford concealed and/or suppressed material facts concerning the safety of their vehicles.

2302. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease their Vehicles at a higher price, which did not match the Vehicles' true value.

2303. Ford still has not made full and adequate disclosure and continues to defraud Plaintiffs.

496

2304. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified. Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

2305. As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage. For those Plaintiffs who elect to affirm the sale, these damages, include the difference between the actual value of that which Plaintiffs paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. For those Plaintiffs who want to rescind the purchase, then those Plaintiffs are entitled to restitution and consequential damages.

2306. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT VI
## UNJUST ENRICHMENT
### (Based on Washington Law)

497

2307. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2308. Ford had knowledge of the safety defects in its vehicles, which it failed to disclose to Plaintiffs.

2309. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price for their vehicles than the vehicles' true value and Ford obtained monies which rightfully belong to Plaintiffs.

2310. Ford appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiffs, who without knowledge of the safety defects paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

2311. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## WEST VIRGINIA
### COUNT I
### VIOLATIONS OF THE CONSUMER CREDIT AND PROTECTION ACT
### (W. Va. Code § 46A-1-101, *et seq.*)

2312. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2313. Ford is a "person" under W.Va. Code § 46A-1-102(31).

2314. Plaintiffs are "consumers," as defined by W.Va. Code §§ and 46A-1-102(12) and 46A-6-102(2), who purchased or leased one or more Vehicles.

2315. Ford participated in unfair or deceptive acts or practices that violated the Consumer Credit and Protection Act ("CCPA"), W. Va. Code § 46A-1-101, *et seq.* as described above and below. Ford is directly liable for these violations of law, and Ford also is liable for Ford dealerships' violations because Ford dealerships act as Ford's agents in the United States for purposes of sales and marketing.

2316. By failing to disclose and actively concealing the dangerous defective transmissions, Ford  engaged in deceptive business practices prohibited by the CCPA, W. Va. Code § 46A-1-101, *et seq.*, including (1) representing that Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Vehicles has been supplied in accordance with a previous representation when it has not.

2317. As alleged above, Ford made numerous material statements about the safety and reliability of Vehicles that were either false or misleading. Each of these

statements contributed to the deceptive context of Ford's unlawful advertising and representations as a whole.

2318. Ford knew that the Fusion transmissions were defectively designed or manufactured, would fail without warning, and were not suitable for their intended use. Ford nevertheless failed to warn Plaintiffs about these inherent dangers despite having a duty to do so.

2319. Ford owed Plaintiffs a duty to disclose the defective nature of Vehicles, including the dangerous risk of transmission failure and sudden manifestation of the Transmission Defects while in operation because Ford:

    a. Possessed exclusive knowledge of the Transmission Defects rendering Vehicles inherently more dangerous and unreliable than similar vehicles;

    b. Intentionally concealed the hazardous situation with Vehicles through their deceptive marketing campaign and recall program that they designed to hide the life-threatening problems from Plaintiffs; and/or

    c. Made incomplete representations about the safety and reliability of Fusions generally, and Fusion transmissions in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

2320. Ford's unfair or deceptive acts or practices were likely to deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Vehicles.

2321. Ford has also engaged in business acts or practices that are unlawful because they violate the National Traffic and Motor Vehicle Safety Act of 1996 (the "Safety Act"), codified at 49 U.S.C. § 30101, *et seq.*, and its regulations.

2322. Ford violated 49 U.S.C. § 3-112(a)(1) by manufacturing for sale, selling, offering for introduction in interstate commerce, or importing into the United States, Vehicles equipped with defective transmissions that failed to comply with applicable FMVSS.

2323. Ford violated 49 U.S.C. § 30115(a) by certifying that Vehicles equipped with defective transmissions complied with applicable FMVSS when, in the exercise of reasonable care, Ford had reason to know that the certification was false or misleading because the defective Fusion transmissions led to manifestations of the Transmission Defects and created attendant safety risks when the Vehicles were in operation.

2324. As a result of its violations of the CCPA detailed above, Ford caused ascertainable loss to Plaintiffs and, if not stopped, will continue to harm Plaintiffs. Plaintiffs currently own or lease, or within the relevant time period have owned or leased, Vehicles that are defective and inherently unsafe.

501

2325. Plaintiffs risk irreparable injury as a result of Ford's acts and omissions in violation of the CCPA, and these violations present a continuing risk to Plaintiffs as well as to the general public.

2326. Pursuant to W. VA. CODE § 46A-6-106, Plaintiffs seek monetary relief against Ford measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $200 per violation of the CCPA for each Plaintiff.

2327. Plaintiffs also seek punitive damages against Ford because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs to cruel and unjust hardship as a result. Ford intentionally and willfully misrepresented the safety and reliability of Vehicles, deceived Plaintiffs on life-or-death matters, and concealed material facts that only it knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Vehicles it repeatedly promised Plaintiffs were safe. Ford's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

2328. The recalls and repairs instituted by Ford have not been adequate. Ford Vehicles still are defective and dangerous.

2329. Plaintiffs further seek an order enjoining Ford's unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's fees under W.

VA. CODE § 46A-5-101, *et seq.*, and any other just and proper relief available under the CCPA.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (W. Va. Code § 46-2-313)

2330. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2331. Ford is and was at all relevant times a seller of motor vehicles under W. VA. CODE § 46-2-313, and is also a "merchant" as the term is used in W. VA. CODE § 46A-6-107.

2332. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

2333. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford. Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

2334. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

2335. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*. Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote

the benefits of the Fusion transmissions.  These warranties were made, *inter alia*, in advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.  These affirmations and promises were part of the basis of the bargain between the parties.

2336. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

2337. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

2338. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

2339. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.  Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.  Under

504

these circumstances, any limitations whatsoever precluding the recovery of incidental and/or consequential damages are unenforceable.

2340. Additionally, the enforcement under these circumstances of any limitations on the recovery of incidental and/or consequential damages, or indeed any limitations whatsoever on any express warranty, is unenforceable pursuant to W. VA. CODE § 46A-6-107(a)(2).

2341. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

2342. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in W. VA. CODE § 46A-6A-4, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned and for such other incidental and consequential damages as allowed under W. VA. CODE § 46A-6A-1, *et seq*.

2343. As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (W. Va. Code § 46-2-314)

2344. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2345. Ford is and was at all relevant times a seller of motor vehicles under W. VA. CODE § 46-2-314, and is also a "merchant" as the term is used in W. VA. CODE § 46A-6-107 and § 46-2-314.

2346. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to W. VA. CODE § 46-2-314.

2347. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are inherently defective in that manifestations of the Transmission Defects may occur suddenly and without warning in traffic.

2348. Plaintiffs have had sufficient direct dealings with either Ford or their agents (dealerships) to establish privity of contract between Plaintiffs and Ford. Notwithstanding this, privity is not required in this case for Plaintiffs pursuant to W. VA. CODE § 46A-6-107. Moreover, privity is not required as to any Plaintiff because Plaintiffs are intended third-party beneficiaries of contracts between Ford and its dealers; specifically, they are the intended beneficiaries of Ford's implied warranties. The dealers were not intended to be the ultimate consumers of the

506

Vehicles and have no rights under the warranty agreements provided with the Vehicles; the warranty agreements were designed for and intended to benefit the ultimate users or owners only. Finally, privity is also not required because Plaintiffs' Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

2349. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
## REVOCATION OF ACCEPTANCE/STATUTORY CLAIM
## FOR DIMINISHED VALUE
## (W. Va. Code § 46A-6A-1, *et seq.* and W. Va. Code § 46-2-608)

2350. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2351. Plaintiffs are "consumers," as defined by W.Va. Code §§ 46A-1-102(12), 46A-6-102(2) and 46A-6A-2 who purchased or leased one or more Vehicles.

2352. Ford is and was at all relevant times a "manufacturer" of motor vehicles under W. Va. Code § 46A-6A-2.

2353. The warranties described in Count III, above, are "manufacturer's express warrant[ies]" under W. Va. Code § 46A-6A-2.

2354. The Vehicles are "motor vehicles" under W. Va. Code § 46A-6A-2.

507

2355. As set forth above, the defective vehicles do not conform to all applicable express warranties.

2356. Ford was provided notice of these nonconformities by numerous complaints filed against it, including earlier litigation on substantially the same facts, and by numerous individual letters and communications sent by Plaintiffs before or within a reasonable amount of time after the allegations of vehicle defects became public.

2357. Ford has been unable or unwilling to repair the Vehicles so as to conform to the Vehicles to its warranties. Additionally, Ford has refused to replace the Vehicles with new motor vehicles which are not defective.

2358. Ford has had at least one opportunity to conform the Vehicles to the express warranties, but failed to do so.

2359. Pursuant to W. VA. CODE § 46A-6A-4, Plaintiffs seek: (a) revocation of acceptance and refund of the vehicle purchase price and all fees paid, (b) in the alternative to revocation of acceptance, damages for diminished value of the Vehicles, (c) damages in the amount of the cost to repair the vehicle so that it conforms to the warranties, (d) damages for loss of use and annoyance and inconvenience, and (e) attorney fees.

2360. As of the time of the filing of this pleading, Ford has been aware for a reasonable time of the breach of warranty claims alleged by West Virginians who

purchased or leased defective Fusions.  Nevertheless, Ford has never insisted, or even mentioned, in writing any "third party dispute resolution process" as contemplated by W. VA. CODE § 46A-6A-8.  As such, under W. VA. CODE § 46A-6A-8(b), even if any "qualified third party dispute resolution process" exists (which Plaintiffs deny), Plaintiffs have not received, and could not now receive, timely notice in writing of such a procedure, and they have no obligation to submit to such a procedure before bringing a claim pursuant to W. VA. CODE § 46A-6A-4.

**COUNT V**
**UNJUST ENRICHMENT**
**(Based on West Virginia Law)**

2361. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2362. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

2363. Ford knowingly enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values.  It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

2364. Plaintiffs, therefore, are entitled to restitution and seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

## COUNT VI
## BREACH OF CONTRACT/COMMON LAW WARRANTY/BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING
### (Based on West Virginia Law)

2365. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2366. To the extent Ford's repair commitment is deemed not to be a warranty under West Virginia's Commercial Code, Plaintiffs plead in the alternative under common law warranty and contract law.  Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

2367. Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

2368. Moreover, all contracts in West Virginia carry with them an implied duty of good faith and fair dealing.  Ford breached that duty by failing to repair or replace the Vehicles evidencing the Transmission Defects, and in other ways.

2369. As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## WISCONSIN
### COUNT I
### VIOLATIONS OF THE WISCONSIN
### DECEPTIVE TRADE PRACTICES ACT
### (Wisc. Stat. § 110.18)

2370. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2371. Ford's above-described acts and omissions constitute false, misleading or deceptive acts or practices under the Wisconsin Deceptive Trade Practices Act § 110.18 ("Wisconsin DTPA").

2372. By failing to disclose and misrepresenting the risk of the defective transmissions, Ford engaged in deceptive business practices prohibited by the Wisconsin DTPA, including (1) representing that Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving

Vehicles has been supplied in accordance with a previous representation when it has not.

2373. As alleged above, Ford made numerous material statements about the safety and reliability of Vehicles that were either false or misleading.  Each of these statements contributed to the deceptive context of Ford's unlawful advertising and representations as a whole.

2374. Ford's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Vehicles.

2375. In purchasing or leasing their vehicles, Plaintiffs relied on the misrepresentations and/or omissions of Ford with respect of the safety and reliability of the vehicles.  Ford's representations turned out not to be true because the vehicles can unexpectedly and dangerously exhibit the Transmission Defects.  Had Plaintiffs known this they would not have purchased or leased their Vehicles and/or paid as much for them.

2376. Plaintiffs sustained damages as a result of Ford's unlawful acts and are, therefore, entitled to damages and other relief provided for under § 110.18(11)(b)(2) of the Wisconsin DTPA.  Because Ford's conduct was committed knowingly and/or intentionally, Plaintiffs are entitled to treble damages.

2377. Plaintiffs also seek court costs and attorneys' fees under § 110.18(11)(b)(2) of the Wisconsin DTPA.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (Wisc. Stat. § 402.313)

2378. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2379. Ford is and was at all relevant times a merchant with respect to motor vehicles under WISC. STAT. § 402.104.

2380. In the course of selling its vehicles, Ford expressly warranted in writing that the Vehicles were covered by a Warranty.

2381. Ford breached the express warranty to repair to correct defects in materials and workmanship of any part supplied by Ford.  Ford has not repaired, and has been unable to repair, the Vehicles' materials and workmanship defects.

2382. In addition to this Warranty, Ford expressly warranted several attributes, characteristics and qualities, as set forth above.

2383. These warranties are only a sampling of the numerous warranties that Ford made relating to safety, reliability and operation, which are more fully outlined in Section IV.A., *supra*.  Generally these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the Fusion transmissions.  These warranties were made, *inter alia*, in

advertisements, in Ford's marketing materials, and in uniform statements provided by Ford to be made by salespeople.  These affirmations and promises were part of the basis of the bargain between the parties.

2384. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly made to purchasers or lessees.  Ford did not provide at the time of sale, and has not provided since then, vehicles conforming to these express warranties.

2385. Furthermore, the limited warranty of repair fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

2386. Accordingly, recovery by Plaintiffs is not limited to the limited warranty of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

2387. Also, as alleged in more detail herein, at the time that Ford warranted and sold the Vehicles, it knew they did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles.  Plaintiffs were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.  Under

these circumstances, any limitations whatsoever precluding the recovery of incidental and/or consequential damages are unenforceable.

2388. Moreover, many of the damages flowing from the Vehicles cannot be resolved through the limited remedy of repair, as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein. and due to their failure to provide such limited remedy within a reasonable time, and placing any limitation on Plaintiffs' remedies would render them insufficient to make Plaintiffs whole.

2389. Plaintiffs had sufficient direct dealings with Ford to establish privity of contract.  Notwithstanding this, privity is not required in this case because Plaintiffs are intended third-party beneficiaries of contracts between Ford and its dealers; specifically, they are the intended beneficiaries of Ford's warranties.  The dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

2390. Finally, due to Ford's breach of warranties as set forth herein, Plaintiffs assert as an additional and/or alternative remedy, as set forth in WISC. STAT. § 402.608, for a revocation of acceptance of the goods, and for a return to Plaintiffs of the purchase or lease price of all vehicles currently owned and for such other

incidental and consequential damages as allowed under Wisc. Stat. §§ 402.711 and 402.608.

2391.  As a direct and proximate result of Ford's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT III
## BREACH OF CONTRACT/COMMON LAW WARRANTY
### (Based on Wisconsin Law)

2392.  Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2393.  To the extent Ford's repair commitment is deemed not to be a warranty under the Uniform Commercial Code as adopted in Wisconsin, Plaintiffs plead in the alternative under common law warranty and contract law.  Ford limited the remedies available to Plaintiffs to just repairs needed to correct defects in materials or workmanship of any part supplied by Ford, and/or warranted the quality or nature of those services to Plaintiffs.

2394.  Ford breached this warranty or contract obligation by failing to repair or replace the Vehicles evidencing the Transmission Defects.

2395.  As a direct and proximate result of Ford's breach of contract or common law warranty, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

516

## COUNT IV
## FRAUD BY CONCEALMENT
### (Based on Wisconsin Law)

2396. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2397. As set forth above, Ford concealed and/or suppressed material facts concerning the safety of their vehicles.

2398. Ford had a duty to disclose these safety issues because they consistently marketed their vehicles as safe and proclaimed that safety is one of Ford's highest corporate priorities. Once Ford made representations to the public about safety, Ford were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

2399. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who have superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiffs. These omitted facts were material because they directly impact the safety of the Vehicles. Ford possessed exclusive knowledge of the Transmission Defects rendering Plaintiffs' Vehicles inherently more dangerous and unreliable than similar vehicles.

517

2400. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs to purchase or lease their Vehicles at a higher price, which did not match the Vehicles' true value.

2401. Ford still have not made full and adequate disclosure and continue to defraud Plaintiffs.

2402. Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' actions were justified. Ford was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

2403. As a result of the concealment and/or suppression of the facts, Plaintiffs sustained damage.

2404. Ford's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
## UNJUST ENRICHMENT
### (Based on Wisconsin Law)

2405. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2406. As a result of its wrongful and fraudulent acts and omissions, as set forth above, regarding the Transmission Defects and Ford's concealment of same, Ford charged a higher price than the Vehicles' true value, and Ford obtained monies which rightfully belong to Plaintiffs.

2407. Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

2408. Plaintiffs, therefore, seek an order establishing Ford as constructive trustee of the profits unjustly obtained, plus interest.

**WYOMING**
**COUNT I**
**BREACH OF EXPRESS WARRANTY**
**(Based on Wyoming Law)**

2409. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2410. Plaintiffs' Vehicles constitute goods under the Uniform Commercial Code ("UCC"), Sections 2-105(1) and 2A-103(h).

2411. Each Plaintiff's purchase or lease of their vehicle was accompanied by an express warranty as defined in UCC Sections 2-313 and/or 2A-210, written and

otherwise offered by Ford, whereby said warranty was part of the basis of the bargain of upon which each Plaintiff relied.

2412. Plaintiffs' Vehicles were not as warranted and represented in that the vehicles have the Transmission Defects and exhibit the conditions described above, as well as defects or conditions as reflected in the various repair orders, technical service bulletins, special service messages, recall documents and consumer complaints in Ford's possession.

2413. As a result of the Transmission Defects in Plaintiffs' Vehicles, Plaintiffs' Vehicles cannot be reasonably relied on by Plaintiffs for the ordinary purpose of providing safe, reliable, and efficient transportation.

2414. As a result of the Transmission Defects in Plaintiffs' Vehicles, Plaintiffs have suffered significant diminution in the value of their Vehicles.

2415. Plaintiffs have provided Ford with sufficient opportunities to repair or replace their Vehicles.

2416. Plaintiffs have reasonably met all obligations and pre-conditions as provided in the express warranty that accompanied their Vehicles.

2417. Ford has breached its express warranties by failing to adequately repair the Vehicles and/or to repair the Vehicles in a timely fashion, and the Vehicles remain in a defective condition.

2418. Even though the express warranty provided to Plaintiffs limited Plaintiffs' remedy to repair and/or adjust defective parts, the Vehicles' defects have rendered the limited warranty ineffective to the extent that the limited repair and/or adjustment of defective parts failed of its essential purpose, pursuant to UCC Section 2-719(2) and/or the above remedy is not the exclusive remedy under UCC Section 2-719(1)(b).

2419. The Vehicles continue to contain defects which substantially impair the use and value of the Vehicles to Plaintiffs.

2420. These defects and non-conformities could not reasonably have been discovered by Plaintiffs prior to their acceptance of the Vehicles.

2421. Ford induced Plaintiffs' acceptance of the Vehicles by agreeing, by means of the express warranty, to remedy, within a reasonable time, those defects which had not been or could not have been discovered prior to acceptance and, further, by Ford's failure to disclose the aforesaid Transmission Defects and/or Ford's active concealment of same.

2422. As a result of the transmission defects, the Plaintiffs have lost faith and confidence in the Vehicles and the Plaintiffs cannot reasonably rely upon the Vehicles for the ordinary purpose of safe, reliable and efficient transportation.

2423. As a result of Ford's breaches of express warranties, Plaintiffs have suffered the damages set forth above.

521

2424. To the extent that Plaintiffs' Vehicles are subject to a lease or finance contract, Ford has a duty to indemnify Plaintiffs and hold Plaintiffs harmless should Plaintiffs prevail on their claims for breach of express warranty.

2425. As a direct and proximate result of Ford's breach, Plaintiffs seek all damages they are found to be entitled, including, *inter alia*, a refund of the purchase or lease price paid by Plaintiffs for their respective vehicle, incidental, consequential, and actual damages; an order requiring Ford to indemnify and hold Plaintiffs harmless for any lease or finance contract covering the Vehicles, costs, interest, and actual attorney fees; and all other relief this Court deems equitable.

**WYOMING**
**SECOND CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**(Based on Wyoming Law)**

2426. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2427. Defendant is a merchant with respect to motor vehicles under the Uniform Commercial Code Section 2-104(1).

2428. The Vehicles were subject to implied warranties of merchantability under UCC Sections 2-314 and/or Section 2A-212.

2429.  The Vehicles were not fit for the ordinary purpose for which such goods are used and/or the vehicles would not pass without objection in the trade for the product description.

2430. The Transmission Defects and problems hereinbefore described rendered the Vehicles unmerchantable.

2431. Ford failed to adequately remedy the transmission defects in the Vehicles within a reasonable time, and the vehicles continue to be in unmerchantable condition at the time of filing this Complaint.

2432. As a result of Ford's breaches of implied warranties, Plaintiffs have suffered damages.

2433. To the extent that Plaintiffs' Vehicles are covered by a lease or finance contract, Ford has a duty to indemnify Plaintiffs and hold Plaintiffs harmless should Plaintiffs prevail on their claims for breach of implied warranty.

2434. As a direct and proximate result of Ford's breach, Plaintiffs seek all damages they are found to be entitled, including, *inter alia*, a refund of the purchase or lease price paid by Plaintiffs for their respective vehicle, incidental, consequential, and actual damages; an order requiring Ford to indemnify and hold Plaintiffs harmless for any lease or finance contract covering the Vehicles, costs, interest, and actual attorney fees; and all other relief this Court deems equitable.

## COUNT III

523

## FRAUD BY MISREPRESENTATION AND CONCEALMENT
### (based on Wyoming law)

2435. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2436. Ford committed fraud by selling or leasing the Vehicles to Plaintiffs without disclosing that the Vehicles and their 6F35 Transmissions were defective and susceptible to sudden and premature failure.

2437. In particular, Plaintiffs are informed, believe, and thereon allege that prior to acquiring their Vehicles, Ford was aware and knew that the 6F35 Transmission installed on the Vehicles were defective, but Ford concealed this fact from Plaintiffs at the time of sale and thereafter.

2438. Ford knew or should have known that the 6F35 Transmission had the Transmission Defect, which presents a safety hazard and is unreasonably dangerous to consumers because it can suddenly and unexpectedly affect the driver's ability to control the vehicle's speed, acceleration, and deceleration.

2439. Plaintiffs are informed, believe and thereon allege that Ford acquired its knowledge of the Transmission Defects prior to Plaintiffs acquiring their Vehicles, through sources not available to consumers such as Plaintiffs, including but not limited to pre-production and post-production testing data, early consumer complaints about the Transmission Defects made directly to Ford and its network of

dealers, aggregate warranty data compiled from Ford's network of dealers, testing conducted by Ford in response to these complaints, as well as warranty repair and part replacements data received by Ford from Ford's network of dealers, amongst other sources of internal information.

2440. Plaintiffs are informed, believe, and thereon allege that while Ford knew about the Transmission Defect, and its safety risks since 2009, if not before, Ford concealed and failed to disclose the defective nature of Plaintiffs' Vehicles and their 6F35 Transmissions to Plaintiffs at the time of sale or lease and thereafter.

2441. Had Plaintiffs known that their Vehicles suffered from the Transmission Defect, Plaintiffs would not have purchased or leased their Vehicles.

2442. Indeed, Plaintiffs allege that Ford knew that their Vehicles and their 6F35 Transmissions suffered from an inherent defect, was defective, would fail prematurely, and was not suitable for its intended use.

2443. Ford was under a duty to Plaintiffs to disclose the defective nature of their vehicles and their 6F35 Transmissions, its safety consequences and/or the associated repair costs because:

    a. Ford acquired its knowledge of the Transmission Defects and its potential consequences prior to Plaintiffs acquiring their Vehicles, though sources not available to consumers such as Plaintiffs, including but not limited to pre-production testing data, early consumer

complaints about the Transmission Defects made directly to Ford and its network of dealers, aggregate warranty data compiled from Ford's network of dealers, testing conducted by Ford in response to these complaints, as well as warranty repair and part replacements data received by Ford from Ford's network of dealers, amongst other sources of internal information;

b. Ford was in a superior position from various internal sources to know (or should have known) the true state of facts about the material defects contained in vehicles equipped with 6F35 Transmission; and

c. Plaintiffs could not reasonably have been expected to learn or discover of the Vehicle's Transmission Defects and its potential consequences until well after Plaintiffs purchased their Vehicles.

2444. In failing to disclose the Transmission Defects to Plaintiffs, Ford has knowingly and intentionally concealed material facts and breached its duty not to do so.

2445. The facts concealed or not disclosed by Ford to Plaintiffs are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease the Vehicles. Had Plaintiffs known that their vehicles and their transmissions were defective at the time of sale, they would not have purchased or leased their Vehicles.

2446. Plaintiffs are reasonable consumers who do not expect their transmissions to fail and not work properly. Plaintiffs further expect and assume that Ford will not sell or lease vehicles with known material defects, including but not limited to those involving the vehicles' transmissions and will disclose any such defect to its consumers before selling such vehicles.

2447. As a result of Ford's misconduct, Plaintiffs have suffered and will continue to suffer actual damages.

2448. Ford's representations were expected and intended to induce Plaintiffs to purchase the Vehicles equipped with 6F35 Transmissions and to pay the increased price for same.

2449. Ford further withheld and continues to withhold information concerning the Transmission Defects set forth herein, and affirmatively misrepresented and continues to misrepresent the above-described symptoms as being "normal," when Ford knew and continue to know that its representations and omissions are misleading and, in fact, Ford intended its representations and omissions to mislead Plaintiffs concerning the nature and existence of the above-described Transmission Defects.

2450. Plaintiffs, reasonably relying on Ford's representations and omissions were deceived into purchasing the Vehicles at prices far in excess of the values which would have been assigned to the Vehicles had these Transmission Defects

and dangers been disclosed; further, Ford's representations and omissions deceived Plaintiffs concerning the existence of the defects and Plaintiffs' rights and remedies with respect to the Transmission Defects.

2451. Had Plaintiffs known of the true nature of the Transmission Defects, Plaintiffs would not have purchased or leased the Vehicles or, alternatively, would not have paid the contract or lease price.

2452. Ford's representations and omissions as herein alleged were undertaken as an affirmative scheme designed to prevent Plaintiffs from obtaining information about the nature and existence of their claims involving their Vehicles' defective 6F35 Transmissions. In furtherance of this scheme, Ford also represented to Plaintiffs that the symptoms described above were "normal," or were somehow the fault of the Plaintiffs, or that the problems had been repaired. All of these statements were false and made with the intent to deceive and mislead Plaintiffs who relied on the statements to their detriment by failing to secure multiple repairs often required to substantiate claims and submit said claims earlier. Furthermore, Ford actively discouraged Plaintiffs from discovering the nature and existence of and thereby eliminate or restrict their ability to substantiate their claims which require documentary evidence of multiple repairs or repair attempts by:

a. charging "inspection fees" for warranty work in order to deter Plaintiffs from seeking repairs and submitting claims timely;

    b. refusing to service vehicles because Plaintiffs have commenced litigation against Ford, to limit the number of repairs or repair attempts; and

    c. failing to provide service records upon request by Plaintiffs, to further limit Plaintiff's ability to corroborate the existence of multiple repairs or repair attempts.

2453. As a direct and proximate result of Ford's fraud and concealment, Plaintiffs seek their compensatory and punitive damages in whatever amount above $75,000.00 Plaintiffs are found to be entitled, together with interest, costs, and attorney fees, plus such other and further relief as this Court deems appropriate.

**COUNT IV**
**WYOMING CONSUMER PROTECTION ACT**
**(Wyo. Stat. § 40-12-101, *et seq*.)**

2454. Plaintiffs incorporate by reference all facts and allegations set forth in this Complaint and its attachments.

2455. The Wyoming Consumer Protection Act, Wyo. Stat. § 40-12-101, et seq. ("the Act") prohibits "deceptive trade practice" defined under the Act "in the course of his business and in connection with a consumer transaction."

2456. The Vehicles are Merchandise under the Act.

2457. Ford is a Person under the Act.

529

2458. The Vehicles' purchase or lease and all applicable warranties constitute a Consumer Transaction under the Act.

2459. Ford's representations, directly and through its authorized dealerships, constitute Advertisement under the Act.

2460. Ford knowingly represented the Vehicles were of a standard and quality that they were not.

2461. Ford knowingly showed and sold the Vehicles to Plaintiffs knowing that they were not practicable for the purpose set forth in Ford's advertisements.

2462. Ford's actions and inactions as plead herein constitute unfair and deceptive acts and practices under the Act.

2463. Ford's conduct, acts and practices as plead herein, is unfair and deceptive under the Act, for the following reasons, *inter alia*:

    a.  Ford manufactured and sold the Vehicles with Transmission Defects,

    b.  Ford failed to adequately investigate, disclose and remedy, and its misrepresentations and omissions regarding the safety and reliability of its vehicles, which misrepresentations and omissions possessed the tendency or capacity to mislead;

    c.  representing through its advertising, warranties, and other express representations that the Vehicles' transmissions had benefits or characteristics that they did not actually have;

d.  representing that the vehicles' transmissions were of a particular standard or quality when they were not;

e.  advertising the vehicles and in particular the vehicles' transmissions with the intent not to sell them as advertised and, when so doing, concealing and suppressing facts material tot he true characteristics, standards and qualities of the vehicles and transmissions;

f.  at the time of the aforesaid sales and leases, Ford knew or had reason to know that the Vehicles had Transmission Defects, as described *supra*, but Ford failed to disclose this material information to Plaintiffs;

g.  failing to reveal material facts which tended to mislead Plaintiffs and which facts could not reasonably have been known by Plaintiffs;

h.  failing to adequately and properly inform Plaintiffs of their rights and remedies with respect to the transactions which are the subject of this Complaint;

i.  misrepresenting Plaintiffs' rights and/or failing to advise Plaintiffs of remedies with respect to the transactions which are the subject of this Complaint, as hereinbefore alleged.

2464. Ford's unfair and deceptive practices were knowingly designed to induce Plaintiffs to purchase or lease the Vehicles.

2465. The above-described conduct violated the Act.

531

2466. As a proximate result of Ford's violations as set forth above, and Plaintiffs' reliance thereon, Plaintiffs have suffered a loss within the meaning of the Act, and are entitled to recover actual damages and reasonable attorney fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Honorable Court enter the following relief:

A.    A judgment against Ford and in favor of each Plaintiff on each count;

B.    Monetary relief as available on each count by law, including direct and consequential damages, actual damages, punitive damages, statutory damages, and other monetary relief due as established at trial;

C.    Equitable relief, including but not limited to, disgorgement and restitution of Ford's wrongful profits, revenues, and benefits, to the extent and in the amount deemed appropriate by the Court;

D.    Costs, attorney fees, pre- and post-judgment interest; and

E.    Such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial in the above-entitled cause.

Respectfully submitted,

BY: /s/ *Kenneth A. Stern*
STERN LAW, PLLC
Kenneth A. Stern (P30722)
41850 W. Eleven Mile Road, Ste 121
Novi, Michigan 48375-1857
Tel.: (248) 347-7315
ken@sternlawonline.com

WELLS LAW OFFICE, INC.
Amy L. Wells (*pro hac vice*)
244 East Pearson St., #108
Chicago, Illinois 60611
Tel.: (773) 762-9104
amywells@equaljusticelaw.com

MARINO LAW PLLC
Amy L. Marino (P76998)
23971 Pheasant Run
Novi, MI 48375
Tel.: (248) 797-9944
amy@marinopllc.com

NEWSOME MELTON, PA
William C. Ourand, Jr. (FBN 092503)
201 S. Orange Ave., Suite 1500
Orlando, FL 32801
Tel: (407) 648-5977
ourand@newsomelaw.com

*Attorneys for Plaintiffs*

DATED: March 20, 2024

## PROOF OF SERVICE

The undersigned attorney certifies that, on March 20, 2024, she filed a copy of the foregoing document using the CM/ECF system, which will send notice of such filing to all attorneys of record.

/s/ *Amy L. Marino*
Amy L. Marino (P76998)
amy@marinopllc.com

533