UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERKARRAH JONES, *et al.*,

       Plaintiffs,

v.                                Case No. 24-10721

FORD MOTOR COMPANY,         Sean F. Cox
                                          United States District Court Judge

       Defendant.

_____/

**OPINION AND ORDER
GRANTING DEFENDANT'S MOTION TO SEVER**

Acting through counsel, Plaintiff Gerkarrah Jones filed this action, asserting claims

against Defendant Ford Motor Company ("Ford"). Gerkarrah Jones is the only plaintiff

identified in the caption of the original Complaint. The Complaint, however, attached

spreadsheets listing the names of just under four thousand other individuals who were not

referenced anywhere in the body of the Complaint. Gerkarrah Jones then filed a First Amended

Complaint, as of right. Like the original Complaint, it includes only the name of Gerkarrah

Jones in its caption. The First Amended Complaint took the spreadsheets, that had been attached

as exhibits to the original Complaint, and imbedded images of those spreadsheets into it. Those

spreadsheets list nearly four thousand names but the First Amended Complaint does not include

any plaintiff-specific factual allegations.

Notably, this is not a class action. This case was filed as a mass action and these nearly

four thousand individuals seek to litigate their claims against Ford *on an individual basis*. The

First Amended Complaint broadly alleges that these thousands of individuals experienced one or

1

more of a litany of problems with their vehicles, that they attribute to one or more of at least fifteen different possible defects.  These thousands of individuals owned one of two different vehicle models (Fusions and Escapes), across numerous model years, with one of several different kinds of transmissions, and purchased (or leased) those vehicles in fifty different states, over a period of more than a decade.

This matter is currently before the Court on Defendant Ford's Motion To Sever.  The motion has been fully briefed by the parties and the Court concludes that oral argument is not necessary.  *See* Local Rule 7.1.  As explained below, it appears that the only person who has properly asserted claims in this action is Plaintiff Gerkarrah Jones.  Moreover, even if the thousands of other individuals listed in the spreadsheets are construed as Plaintiffs, this Court would nevertheless exercise its discretion and grant Ford's Motion to Sever.   That is because these claims were misjoined under Fed. R. Civ. P. 20.  In addition, allowing the litany of individual claims, asserted by nearly 4,000 persons, to proceed in this single case would be impractical and unmanageable.  It would also avoid the proper payment of filing fees and would skew important administrative statistics used by the federal judiciary.

## BACKGROUND

### A.    Prior Litigation Against Ford

This Court was previously assigned *Gant v. Ford Motor Co.*, Case Number 19-12533.  In that case, more than 300 individual Plaintiffs sought to assert a variety of individual claims against Ford, relating to their Ford Fusion vehicles.  The pleadings in that case included plaintiff-specific allegations as to the individual Plaintiffs.

From the onset, Ford asserted that joinder was improper, and reserved its right to move to

sever the claims as the case progressed.

The individual Plaintiffs agreed to participate in discovery of their claims (including being deposed and having vehicle inspections) and the parties agreed to use a very skilled and experienced Discovery Facilitator. Nevertheless, the case consumed a substantial amount of judicial resources and it proceeded before the undersigned judge *for some four and a half years – despite never having completed fact or expert discovery.*

As discovery proceeded, the majority of the individual Plaintiffs voluntarily dismissed their claims, in a series of stipulated orders. The parties ultimately settled the remaining claims in a global settlement, reached during several mediation sessions, and the case was closed on March 8, 2024.

**B.     Procedural Background In This Case**

On March 20, 2024, acting through the same counsel who represented the plaintiffs in *Gant v. Ford,* Plaintiff Gerkarrah Jones filed this action against Defendant Ford and paid a filing fee of $405.00. The case was reassigned to the undersigned judge as a companion case to *Gant v. Ford.*

Gerkarrah Jones is the only plaintiff identified in the caption of the Complaint filed in this case. She is also the only plaintiff identified by Plaintiff's counsel on the docket for this case.[1] The Appendices to the Complaint, however, included "Appendix A" and "Appendix B," spreadsheets listing the names of *just under four thousand other individuals* who are not

---

[1]In this district, counsel for the plaintiff(s) are responsible for adding the names of the parties on the Court's electronic filing system. If counsel fails to add all the parties listed on the caption of the complaint, the Clerk's Office will send counsel a notice, advising that they must add the additional parties to the docket. No notice was issued here because the caption of the complaint listed only Gerkarrah Jones.

referenced anywhere in the body of the Complaint.

On April 2, 2024, this Court issued a "Jurisdictional Show Cause Order" that noted the absence of "plaintiff-specific factual allegations with respect to the nearly 4,000 individual Plaintiffs" and directed Plaintiffs to address its concerns about subject matter jurisdiction.  (ECF No. 7).

On April 12, 2024, Plaintiffs responded to the show cause order and also filed a "First Amended Complaint" ("FAC") as of right.  (ECF No. 8).  Because the FAC superceded and replaced the complaint that was the subject of this Court's show cause order, this Court vacated the show cause order.

The FAC, like the original Complaint, includes only the name of Gerkarrah Jones[2] as a plaintiff in its caption.[3]  It spans 698 pages.  The FAC (ECF No. 8) took the two spreadsheets that had been filed as exhibits to the original Complaint, and imbedded images of those spreadsheets (spanning 105 pages) into the body of the FAC.  Those spreadsheets list nearly four thousand names and have various data columns, such as columns titled "Residential State," and "Purchase Date."  Plaintiffs state this was done for "the sake of efficiency and judicial economy."  (*Id.* at PageID.1406). Thus, the FAC does not include any factual allegations in separately numbered paragraphs, as to any individual Plaintiffs.

Plaintiffs allege they experienced transmission defects with their respective vehicles,

---

[2]The Court uses her full name, as there are numerous other individuals with the last name of Jones listed in the spreadsheets imbedded into the FAC (*e.g.*, Tammy Jones, Jamoni Jones, Bobby & Leslie Jones, Tiffany Jones, etc.)

[3]Counsel did not add any additional persons as plaintiffs on the docket for this action after filing the FAC.

Ford Fusion vehicles of certain model years and Ford Escape vehicles of certain model years. This case is not a putative class action. Rather, it is a "mass action," with nearly 4,000 individual Plaintiffs.

In light of the unusual nature of this case, this Court held early status conferences with counsel.  At those conferences, Plaintiffs' counsel advised the Court that their clients wished to pursue individual claims and did not wish to proceed via a class action. This Court urged the parties to further discuss this case and how to proceed.  The parties stipulated to the appointment of Gene J. Esshaki as Discovery Facilitator, who assisted with *Gant.*  Mr. Esshaki later advised the Court that the parties were unable to agree upon any kind of case management order or plan for moving forward in this case.  On July 18, 2024, this Court issued an order wherein it directed each party to file a brief "that sets forth that party's position as to how this case should proceed," and allowed each party to respond to the opposing party's brief. (ECF No. 27).

Defendant Ford's briefs reflect that its primary position is that this Court "should not permit Plaintiffs' misjoinder and the procedural nightmare that will result from their 'mass action' monster" and that the "Court should sever the claims under Fed. R. Civ. P. 20 and/or drop all but the first Plaintiff Jones under Rule 21."  (ECF No. 29 at PageID.2755).

Plaintiffs' primary position was that "groupwide adjudication of common issues" is appropriate in this case and that discovery should be handled, in large part, via "fact sheets" provided by the individual Plaintiffs. (ECF No. 30).  Plaintiffs proposed that Defendant Ford be limited to 10 depositions during discovery.  Plaintiffs further asserted that vehicle inspections were unnecessary.  Plaintiffs proposed that the Court order the parties to engage in two global mediations to attempt to resolve all claims in this case.  Although this case is not a class action,

and Plaintiffs seek to assert 280 claims against Ford on behalf of nearly 4,000 persons on an

individual basis, counsel for Plaintiffs proposed a "Phase I" liability trial as if this were a class

action.  Plaintiffs also requested that – "should the Court not adopt" Plaintiffs' proposal and

proposed case management order – "Plaintiffs alternatively request time to file a motion for

leave to amend to assert a Rule 23(c)(4) issues class." (ECF No. 34 at PageID.3172).

　　　In light of the unique nature of this case, and the development of these issues, this Court

ordered as follows:

1)   If Plaintiffs wish to file a Second Amended Complaint, they must file a formal motion seeking leave to do so no later than September 5, 2024. Pursuant to Local Rule 15.1, Plaintiffs must attached a copy of their proposed Second Amended Complaint as an exhibit to that motion;

2)   If Plaintiffs file a motion to amend by that date, the Court will hear and determine that motion before proceeding further in this case;

3)   If Plaintiffs elect not to file a motion to amend by September 5, 2024, then the Court shall allow Defendant Ford to file a Motion to Sever, if it wishes to do so. That motion must be filed no later than September 26, 2024; and

4)   If the Court decides to hold a motion hearing, or a hearing to discuss the parties' briefs concerning their views on how the case should proceed / proposed case management orders, this Court shall issue a separate hearing notice.

　　　IT IS FURTHER ORDERED that, in light of the above and the prior stipulations of the parties, the deadline for Defendant Ford to answer or otherwise respond to Plaintiffs' First Amended Complaint, is STAYED pending further order of this Court.

　　　IT IS SO ORDERED.

(ECF No. 36).

　　　Plaintiffs elected not to file a motion seeking leave to file an amended complaint by the

September 5, 2024 deadline provided in the Court's order.  Thus, the April 12, 2024 First

Amended Complaint is the operative complaint in this case.

Defendant Ford file a Motion to Sever on September 26, 2024.  (ECF No. 38).  The motion has been fully briefed.

**C.    Standard Of Decision**

Under Rule 20(a) of the Federal Rules of Civil Procedure, permissive joinder of plaintiffs in a single civil action is appropriate where 1) "any right to relief [is asserted] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and 2), "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a).

Even when those requirements are met, however, a district court must examine whether permissive joinder would comport with principles of fairness or would result in prejudice to either side.  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000); *In re Nintendo Co., Ltd.*, 544 F. App'x 934, 939 (Fed. Cir. 2013); *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010).  A determination on the question of joinder is a matter of discretion for a district court.  *Id.*

Rule 21 of the Federal Rules of Civil Procedure governs misjoinder and nonjoinder of parties and provides that:

> Misjoinder of parties is not a ground for dismissing an action.  On motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party.

Fed. R. Civ. P. 21.  A district court has "broad discretion" in determining whether or not actions should be severed.  *Parchman v. SLM Corp.*, 896 F.3d 728, 733 (6th Cir. 2018).  When joinder is not appropriate, the district court may sever the misjoined plaintiffs, as long as no substantial

right will be prejudiced by the severance.  *Coughlin v.  Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997); *Cruz v. Bristol-Myers Squibb Co., PR, Inc*., 699 F.3d 563, 569 (1st Cir. 2012); *Patrick Collins, Inc. v. John Does 1-21*, 286 F.R.D. 319, 321 (E.D. Mich. 2012).

**D.    Operative Complaint**

The April 12, 2024 FAC is the operative complaint.  It seeks to assert claims under the law of all 50 states – on behalf of nearly 4,000 individual Plaintiffs – who purchased or leased two different models of Ford vehicles, across numerous  model years.

The vehicles at issue are: 1) Ford Fusion vehicles with model years between 2010 and 2020 (3,034 different vehicles; and 2) Ford Escape vehicles with model years between 2009 and 2021 (959 different vehicles).  (FAC at ¶¶ 1 & 5).

The FAC alleges that the vehicles at issue have transmission defects and that the vehicles were equipped with a "6F35" or various other[4]  "similar" transmissions such as "8F35" and "CVT/Hybrid" transmissions.  (FAC at 30-32).[5]

*Notably, the FAC includes no paragraphs setting forth any Plaintiff-specific factual allegations*.  Thus, among other things, there are no paragraphs setting forth the *factual allegations regarding the problems allegedly incurred by each of the thousands of individuals who seek to assert individual claims in this case*.  Rather, in the section of the FAC titled

_____

[4]In their response brief, Plaintiffs' counsel state that "All Plaintiffs purchased or leased Ford Vehicles with the same defective 6F35 transmission."  (ECF No. 40 at Page.ID.3386).  That representation conflicts with the allegations in Plaintiffs' own FAC.

[5]The FAC states that "[s]hould the Court find that sufficient commonality does not exist with respect to the 6F35, 8F35, CVT/Hybrid, and Aisin transmissions, Plaintiffs request an opportunity to dismiss any 8F35, CVT/Hybrid, and/or Aisin owners/lessees without prejudice and separately re-file their claims."  (FAC at ¶ 32 n.1).

8

"Plaintiff-Specific Allegations," the FAC inserts the spreadsheets, that were previously attached as exhibits to the original complaint, into the body of the FAC. (*See* FAC at PageID.1407-1512). Those 105 pages of spreadsheets list names of individual Plaintiffs, along with information in columns titled "Residential State," "Year," "VIN," "Purchase[6] Date," "Purchase Price," and "Type of Ownership." (*Id.*).  The FAC states that the "factual allegations contained in these charts encompass those that would be ordinarily pled in narrative fashion" – "including those sufficient to identify the Plaintiffs" and are "pled in this manner rather than narrative fashion for the sake of efficiency and judicial economy." (FAC at ¶ 196).

Instead of including any factual allegations specific to any of the individual Plaintiffs, the FAC broadly alleges that the nearly 4,000 individual Plaintiffs experienced one or more of a litany of problems with their Fusion or Escape vehicles that they attribute to one or more of at least fifteen different possible defects:

> 19.   The transmissions in Plaintiffs' Fusions and Escapes are defective in design, materials, and/or manufacture and workmanship. Ford knew of this defective condition prior to selling the subject Vehicles, and further knew that this defective condition can, did, and would continue to manifest in the following ways:
>
> a. sudden and unexpected shaking,
> b. violent jerking,
> c. bucking and kicking on acceleration (commonly referred to as to "shuddering" or "juddering"),
> d. delayed acceleration (especially from a complete stop),
> e. gears slipping,
> f. hesitation on acceleration,
> g. difficulty stopping the vehicle,
> h. lack or loss of motive power,

---

[6]The spreadsheet have "purchase date" and "purchase price" columns, even though the FAC alleges that some of the individuals Plaintiffs leased (not purchased) their respective vehicles.

I. delayed downshifts,
j. hard decelerations or 'clunks' when slowing down or accelerating at low
speeds,
k. premature wear of the internal components,
l. transmission failures in the middle of roadways creating an
unreasonably dangerous situation that increases the risk of an accident,
m. catastrophic failures necessitating replacement,
n. shift flares,
o. clunking and other objectionable noises, and/or
p. lurching, surging, or revving.

20.     The defect manifestations described above are attributable to one or more
        of the following:

a. Failing fluid seal integrity,
b. Throttle body deficiencies,
c. Failed torque converter welds,
d. Driveshaft failure,
e. Failed Transmission Control Module ("TCM") or Powertrain Control
Module ("PCM") updates to limit problems associated with transmission
design and/or manufacture,
f. Deficient software logic and architecture,
g. Deficient calibration values,
h. Deficient solenoids,
I. Deficient clutch friction materials,
j. Deficient rocker one-way clutch,
k. Deficient torque converter,
l. Automatic transmission fluid ("ATF") that is not properly suited for use
in the 6F35 transmission,
m. An undersized fuel pump,
n. The vehicle's design and architecture issues, and/or
o. The fundamental inability of the transmission's software and hardware
to work together to effectuate proper gear shifts owing to an overall design
that was not sufficiently robust,
(collectively, the "Transmission Defects").

(FAC at ¶¶ 19 & 20).

        The FAC alleges that all of the Fusion and Escape vehicles at issue in this case were

covered by "a New Vehicle Limited Warranty ('Warranty').  Ford's Warranty covers any repairs

needed to correct defects in material or workmanship of covered parts.  The basic coverage

10

period lasts 36 months or 36,000 miles, whichever comes first, and the powertrain coverage lasts 60 months or 60,000 miles, whichever comes first." (FAC at ¶ 25). There are no factual allegations, however, regarding the mileage on the vehicles owned or leased by any of the individual Plaintiffs.

FAC seeks to assert more than 280 state-law claims – asserted under the law of all 50 states – along with two claims under the Magnuson-Moss Warranty Enforcement Act and the Declaratory Judgment Act. The state-law claims include, but are not limited to: breach of contract claims, breach of express warranty claims, breach of implied warranty claims, breach of common law warranty claims, consumer fraud act claims, consumer protection act claims, deceptive trade practices act claims, false advertising law claims, fraud claims, fraud by concealment claims, fraud by misrepresentation and concealment claims, negligence claims, negligent misrepresentation claims, products liability act claims, unfair competition law claims, unjust enrichment claims, and unfair trade practices act claims.

In terms of the relief sought, the FAC states that these thousands of Plaintiffs seek various and alternative forms of relief, including:

a.      Actual damages for the money spent to purchase and lease their Vehicles.
b.      Consequential damages;
c.      Incidental damages;
d.      Statutory damages;
e.      Diminution in value of the vehicles;
f.      Revocation of acceptance;
g.      Damages incurred in revoking acceptance;
h.      Refund of the purchase and lease price paid;
I.      Indemnification of each Plaintiff and to hold each Plaintiff harmless with respect to any lease or finance contract cover each of Plaintiffs' vehicles;
j.      Punitive damages;
k.      Exemplary damages;
l.      Disgorgement and restitution of profits, revenue, and benefits; and
m.      Declaratory, equitable, and injunctive relief . . .

(FAC at ¶ 10).

## ANALYSIS

I.     **Pursuant To The Federal Rules Of Civil Procedure, Gerkarrah Jones Appears To Be The Only Plaintiff That Is Actually In This Case.**

Before addressing Defendant Ford's legal arguments concerning severance, the Court first considers who is actually a plaintiff in this case under the Federal Rules of Civil Procedure.

Plaintiff Gerkarrah Jones is not proceeding *pro se.*  She is represented by counsel. Plaintiff Gerkarrah Jones filed an original Complaint that listed only her in the caption of the Complaint and her counsel identified only her as the plaintiff on the docket for this case.  The Appendices to the original Complaint, however, included "Appendix A" and "Appendix B," spreadsheets listing the names of just under four thousand other individuals who are not referenced anywhere in either the caption of, or the body of, the original Complaint.

The FAC was then filed, as of right, on April 12, 2024.  The FAC, like the original Complaint, includes only the name of Gerkarrah Jones as a plaintiff in its caption.  Plaintiff's counsel did not add any other individuals as Plaintiffs on the docket for this case after filing the FAC.  The FAC contains a section that is titled, "Plaintiff-Specific Allegations."  (FAC at ¶ 196). But the FAC does not actually contain any plaintiff-specific factual allegations, *set forth in separate paragraphs*, *as Fed. R. Civ. P. 10(b) requires*.  Instead, the FAC merely imbedded images of the spreadsheets, that were previously attached as exhibits to the original complaint, into the body of the FAC. (*See* FAC at PageID.1407-1512).  Those 105 pages of spreadsheets list the names of nearly 4,000 individuals, along with data in various columns such as "Residential State," "Year," "Purchase State," etc.

There is no provision in the Federal Rules of Civil Procedure, or any other authority this

Court is aware of, that allows for such "pleading by spreadsheet." To the contrary, the Federal Rules of Civil Procedure expressly require that "Every pleading must have a caption with the court's name [and] a title" and "[t]he title of the complaint *must name all the parties*." Fed. R. Civ. P. 10(a) (emphasis added).[7] "This rule serves more than administrative convenience. It protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties." *Doe v. Frank*, 951 F.2d 320, 323 (11th. Cir. 1992).

Accordingly, an individual who is "not named in the caption of the complaint is not a party to the action." *Burrell v. DOCCS*, 655 F.Supp.2d 112, 125 (N.D. N.Y. 2023); *see also Myles v. United States,* 416 F.3d 551 (7th Cir. 2005); *Gonzalez v. Fidelity Exploration & Prod. Co.*, 2019 WL 13215703 at *2 (S.D. Tex. 2019) ("Court have recognized that an individual or entity not named in the caption of the complaint is not a party to the case.") (collecting cases); *Abraugh v. Altimus*, 26 F.4th 298, 303 (5th Cir. 2022); *Williams v. Bradshaw*, 459 F.3d 846, 849 (8th Cir. 2006) (The case caption is logically "entitled to considerable weight when determining who the plaintiffs to a suit are since plaintiffs draft complaints.")

Under these circumstances, it appears that Gerkarrah Jones is the only individual that is actually a plaintiff in this case.

## II.   Assuming *Arguendo* That The Thousands Of Other Individuals Had Been Properly Identified As Plaintiffs In The FAC, This Court Would Grant Ford's Motion To Sever Under The Circumstances Presented Here.

---

[7]Counsel for Plaintiffs do not appear to appreciate the importance of pleading requirements. (*See* Pls.' Resp. Br. at 5 n.1) (Calling "Ford's argument that Plaintiffs have not adequately pled sufficient detail" a "distraction" because "thousands of Plaintiffs" have provided Ford with "Plaintiff Facts Sheets" and asserting that such arguments do not belong in a motion to sever.). Moreover, as explained in the next section, the FAC's pleading deficiencies *do impact* this Motion to Sever.

Even if the thousands of other individuals listed in the spreadsheets imbedded into the FAC had been properly identified as Plaintiffs in the FAC, this Court would nevertheless exercise its discretion and grant Defendant Ford's Motion to Sever under the circumstances presented here.

### A.      The Claims Are Misjoined

Again, permissive joinder of plaintiffs in a single civil action is appropriate where 1) "any right to relief [is asserted] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and 2), "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a).

To meet the first requirement, Plaintiffs' claims must arise from "the same transaction, occurrence, or series of transactions or occurrences . . ." Fed. R. Civ. P. 20(a)(1)(A).  "By its terms, this provision requires *factual similarity in the allegations supporting Plaintiffs' claims*." *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir. 2013) (emphasis added).  Thus, "[o]n the same transaction or occurrence requirement, the Ninth Circuit has held that 'this provision requires *factual similarity in the allegations supporting [p]laintiffs's claims*."  *Corley v. Google, Inc*, 316 F.R.D. 277, 283 (N.D. Calf. 2016) (quoting *Visendi, supra*) (emphasis added).  Other courts have likewise determined that there must be a "logical relationship" between the plaintiffs' claims. *Id.*

District courts within the Sixth Circuit often use the "logical-relationship" test used in the context of Fed. R. Civ. P. 13 to determine whether the plaintiffs' claims arise out of "the same series of transactions or occurrences" for purposes of satisfying Rule 20's requirements.  *See, eg., Stojcevski v. County of Macomb*, 143 F. Supp.3d 675, 682 (E.D. Mich. 2015).  To satisfy the

14

logical-relationship test, there must be substantial overlap in the facts giving rise to Plaintiffs'

claims. *Id.* In other words, the plaintiffs' claims "must share an aggregate of operative facts."

*Stovcevksi, supra* (quoting *EMC Corp., supra*). Rule 20(a)'s requirements are not met "where

each plaintiff provides a different factual background," giving rise to their alleged "mutual"

cause of action. *Id*.

To determine whether Plaintiffs' claims arise from the same transaction or occurrence,

this Court considers the factual similarity in the allegations supporting Plaintiffs' claims in the

operative complaint. Here, however, Plaintiffs' FAC asserts a whopping 280 different claims –

purported on behalf of nearly 4,000 individual plaintiffs – yet includes no factual allegations

specific to any of them.

In other words, the FAC does not include any factual allegations that are specific to the

nearly 4,000 individual Plaintiffs who seek to assert a litany of claims against Ford in this case.

And even if the words set forth in the spreadsheets inserted into the FAC were somehow deemed

to be factual allegations (which they are not), that would still be insufficient to show the requisite

aggregate of operative facts. For example, as Ford notes, the FAC contains no factual

allegations about "[f]rom whom any individual Plaintiff purchased their vehicle, a key fact"

"with a used vehicle purchase and warranty/fraud claims." (Def.'s Br. at 5). The FAC also lacks

any factual allegations as to the mileage on any of the various vehicles owned by Plaintiffs,

another key fact as to warranty claims. The FAC asserts numerous fraud claims (claims that

must be pleaded with particularity), yet lacks any factual allegations pertaining to the

circumstances surrounding the purchase or lease of each of the Plaintiffs' respective vehicles.

Perhaps most importantly, the FAC lacks any factual allegations as to the problems each

individual Plaintiff alleges to have experienced with their respective vehicle.

Rather, the FAC broadly alleges that these thousands of individual Plaintiffs experienced one or more of a litany of problems with their vehicles that they attribute to one or more of at least fifteen different possible defects. These nearly 4,000 Plaintiffs own one of two different vehicle models (Fusions and Escapes), across numerous model years, with one of several different kinds of transmissions, and purchased (or leased) those vehicles in fifty different states, over a period of more than a decade.

Based on its review of the FAC, this Court concludes that the numerous claims of the thousands of Plaintiffs purportedly in this case are not sufficiently related to constitute the same transaction or occurrence for purposes of Rule 20(a).[8]

## B.     Fundamental Fairness, Case Manageability, And Other Considerations

Even if the requirements of Fed. R. Civ. P. 20(a) were met, under the circumstances presented here, this Court would still exercise its discretion and grant Ford's Motion to Sever. If Plaintiffs were permitted to proceed with their FAC, joinder of the litany of individual claims asserted by nearly 4,000 plaintiffs in this single case would be impractical and unmanageable. In addition, permitting this mass action to proceed would avoid the proper payment of filing fees and skew important administrative statistics used by the federal judiciary.

Ford's motion asserts that, among other things, the sheer number of individuals Plaintiffs seek to join in this action is *per se* impracticable:

---

[8]Because Plaintiffs have not met the first requirement of Rule 20(a), the Court need not consider whether Plaintiffs satisfy the second requirement (ie, that there be a common question of law or fact). Even if both requirements could be met, this Court would still exercise its discretion and sever.

Courts recognize "the impropriety of joinder is magnified in situations where there are hundreds or thousands of parties, as these situations burden, rather than facilitate, judicial economy." *Corley,* 316 F.R.D. at 284. Here, there are nearly 4,000 Plaintiffs. Joinder on such a scale in one so-called "mass action" appears unprecedented—indeed, Plaintiffs have failed to show any such precedent or support for what they filed. *See, e.g., Acevedo v. Allsup's Convenience Stores, Inc.,* 600 F.3d 516, 522 (5th Cir. 2010) ("[Plaintiff] fails to cite any cases in which a group of plaintiffs even remotely as numerous as 800 were able to join their claims." (emphasis added)). Instead, the cases Plaintiffs relied on in their CMO brief were all highly distinguishable, involving vastly fewer plaintiffs. *E.g., El-Fakih,* 2018 WL 4193675 (22 plaintiffs); *Schneider,* 2019 WL 4771567 (five plaintiffs); *Grover,* 434 F. Supp. 3d 617 (seven plaintiffs); *In re Nissan N. Am., Inc. Litig.,* No. 3:19-cv-00843, 2020 WL 13617558 (M.D. Tenn. Sept. 22, 2020) (fewer than 20 named plaintiffs in a putative class action); *Kehr,* 596 F. Supp. 2d 821 (two plaintiffs).

Moreover, Rule 23(a)(1)'s numerosity requirement provides a helpful barometer for assessing a proposed joinder, as that requirement recognizes that beyond a certain point, joinder becomes "impracticable." Fed. R. Civ. P. 23(a) ("the class is so numerous that joinder of all members is impracticable"); also, e.g., Corley, 316 F.R.D. at 290 ("Case law interpreting Federal Rule of Civil Procedure 23(a)(1), commonly known as the numerosity requirement, provides yet another indicator as to the impracticality of joinder."). Indeed, abundant case law from across the country acknowledges that even as few as 40 joined plaintiffs can render a case unmanageable and joinder impractical, as while there is no hard-and-fast rule, courts recognize that attempting to join more than 40 plaintiffs is presumptively impracticable. *E.g., Corley,* 316 F.R.D. at 290 ("As a general guideline however, a class of 40 or more members raises a presumption of impracticability of joinder." (cleaned up) (quoting 5 William B. Rubenstein, *Newberg on Class Actions* § 3:12)).

The Sixth Circuit, meanwhile, has recognized that joinder would be impracticable with as few as 35 litigants. *In re Am. Med. Sys., Inc.,* 75 F. 3d 1069, 1076 (6th Cir. 1996); *also Malam v. Adducci,* 475 F. Supp. 3d 721, 734 (E.D. Mich. 2020) (observing that "courts in the Sixth Circuit have found that the numerosity requirement is fulfilled when the number of class members exceeds forty" (internal quotation marks omitted)). Plaintiffs propose joinder at a scale nearly two orders of magnitude greater than what abundant precedent has recognized is presumptively impracticable—i.e., joinder of nearly 4,000 Plaintiffs in one action. The Court should exercise its broad discretion to sever in these circumstances.

(Def.'s Br. at 17-19).

Ford also persuasively argues that other factors and considerations warrant severance,

including geographic diversity and dispersion, that make it more difficult for the Court to hold

hearings, for the parties to conduct discovery, and for the parties to attend pretrial proceedings

held at court.[9]  That is especially so here, where the FAC purports to join individuals from all 50

states into this one case.[10]

Ford also stresses that the highly unusual pleadings in this case also show how

impracticable it is to join nearly 4,000 individual plaintiffs into this one case:

> Plaintiffs have not found a way to manage the impracticability of even
> pleading their claims in one complaint. Indeed, Plaintiffs do not even bother to
> list their individual names in the caption; if they tried, just entering each
> Plaintiff's name into the Court's ECF system would likely be a multi-day effort.
> *E.g., Corley*, 316 F.R.D. at 291 ("After Plaintiffs file the FAC . . . these 700
> different names had to be inputted into the Court's Electronic Case filing ('ECF')
> system. This input took place over two days . . . ."). But the deficiencies go far
> beyond that, as the FAC provides none of the details pertaining to Plaintiffs'
> individual claims that Ford should be entitled to at the pleadings stage . . .

(Def.'s Br. at 20).

The Court agrees that joinder of thousands of individual claims in this case would be

impractical and would render this case unmanageable – at all stages of the litigation.

The Court has already addressed the fundamental problems with the operative pleading in

---

[9]The Theodore Levin United States Courthouse does not have a courtroom, or any other
room, that would be large enough to accommodate thousands of persons for a pretrial
conference, motion hearing, or any other proceeding.

[10]In *Gant v. Ford,* for example, the parties agreed to zoom video depositions of the
plaintiffs because they were located in various states.  Counsel for plaintiffs would ship a limited
number of laptop computers to the plaintiffs being deposed, if they did not have their own
computers.  This caused delays in taking depositions.  In addition, a number of plaintiffs failed to
appear for scheduled depositions or tender their vehicles for scheduled inspections.  The parties
ultimately agreed that a plaintiff who failed to appear for their deposition/tender their vehicle for
inspection on two scheduled dates would have their claims dismissed.  (*See* ECF No. 91 in Case
No. 19-12533).

this case – the FAC.  Even if the nearly four thousand individuals listed on the spreadsheets had been properly named in the operative pleading, the sheer number of Plaintiffs and claims would render this case unmanageable.

If thousands of individuals were allowed to be joined in this action to litigate their various individual claims against Ford, Ford would want the opportunity to conduct discovery as to each individual Plaintiff. That would, quite reasonably, include deposing at least[11] all or most of the nearly four thousand individuals who seek to litigate individual claims against Ford and performing inspections of nearly four thousand vehicles.  Discovery of that magnitude would take many years, even with the most aggressive of deposition and inspection schedules.[12]

Ford would also likely seek to file several thousand pretrial motions – both motions to dismiss prior to discovery and summary judgment motions following discovery – that would raise scores of individualized factual and legal issues.  Moreover, the need for this massive discovery undertaking, and the monumental motion practice that would follow, is magnified by the nature of the FAC filed here – that contains no plaintiff-specific factual allegations and asserts some 280 different claims, under the laws of all 50 states.

Plaintiff's answer to these problems, is to ask this Court to deny Defendant Ford its right to conduct individualized discovery and to pursue individualized motion practice and trials in this case.  For example, despite seeking to individually litigate a litany of claims by nearly four thousand plaintiffs, counsel for Plaintiff proposes that this Court restrict Ford to just ten

---

[11]If a given vehicle is owned and driven jointly, for example by a married couple, more than one deposition would likely be warranted.

[12]For example, if Ford took forty depositions every month, it would take more than eight years to depose all of the persons seeking to litigate their individual claims in this case.

depositions and not allow Ford to inspect individual vehicles.  They also assert that some kind of

joint "Phase I" trial should be held, despite this not being a class action and despite these

thousands of individuals choosing to individually litigate their claims against Ford in one case.

This Court declines the invitation for it to create some kind of quasi-class-action that is not

authorized or appropriate under the Federal Rules of Civil Procedure.

At bottom, counsel for Plaintiffs want their clients to have the benefits of litigating

individual claims against Ford, but without the standard obligations and burdens associated with

doing so, such as paying a filing fee to initiate a civil action, filing a complaint that includes the

factual allegations supporting their claims, being deposed during discovery, and having their

vehicle inspected.[13]

The Court agrees with Ford that joinder of thousands of persons asserting individual

claims in this case would be impractical and would render this case unmanageable – during

discovery, during motion practice, and beyond.  The incredible burden that a case like this would

place on this Court cannot be overstated.  If this Court were to allow this case to proceed with

nearly 4,000 individuals plaintiffs, litigating a litany of claims under the law of all 50 states,

even just the pretrial phase of the case would require a tremendous amount of judicial resources

– with massive discovery (and related disputes), followed by thousands of dispositive motions

challenging the claims of the individual plaintiffs, that would need to be analyzed one at a time.

---

[13]Contrary to the arguments made by Plaintiffs' counsel, it is not harassment or over-reaching for a Defendant who is defending *a litany of individual claims* asserted against it (including fraud-based claims) to want to depose the persons who are asserting those claims.  It is likewise not unreasonable for a Defendant defending against a litany of claims centering on an individual vehicle (including product liability and breach of warranty claims) to want to inspect the vehicle alleged to be defective.

That leads to another consideration.  As other courts have recognized, that kind of burden on judicial resources "is further compounded by the fact that the increased work resulting from mass joinder requires no additional payment beyond the one-time" filing fee.  *CineTel Films, Inc. v. Does 1-1, 052*, 853 F.Supp.2d 545, 554 n.4 (D. Maryland 2012).  In other words, the numerous plaintiffs who seek to be joined do not compensate for the significant drain on judicial resources when they file a single action and pay a single filing fee.  *Id.*

The payment of a filing fee to initiate a civil action in federal court is mandated by statute.  The current filing fee is $405.00.  The filing fee serves at least two purposes.  First, it is a revenue raising measure for the federal courts.  *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 92 (E.D. N.Y. 2012) (citations omitted).  As to each filing fee paid, "$190 shall be deposited into a special fund of the Treasury to be available to offset funds appropriated for the operation and maintenance of the courts of the United States."  28 U.S.C. § 1931(a).  Second, the requirement of a filing fee serves as a gatekeeping function, albeit a modest one, against the filing of frivolous or merit less lawsuits.

Ford's motion asserts that "[b]y misjoining their claims, Plaintiffs have improperly deprived the judiciary of more than $1,300,000 in filing fees – all while proposing a massive burden on the Court's limited resources."  (Def.'s Br. at 23).

The Court agrees that this is an additional consideration that also weighs in favor of severance under the circumstances presented here.

A single filing fee of $405.00 was paid to initiate this civil action that seeks to individually litigate the claims of nearly 4,000 persons.  If allowed to individually litigate the claims of these thousands of persons, this single case would commune a massive amount of

21

judicial resources by the undersigned judge, all while depriving the Court of revenue.  It would also skew important administrative statistics used by the federal judiciary[14] – giving the impression that this is a single civil action on this Court's docket when, as a practical matter, the undersigned judge would actually be presiding over what amounts to nearly 4,000 individual cases being litigated under a single case number.

For all of these reasons, even if the requirements of Fed. R. Civ. P. 20(a) were met, under the circumstances presented here, this Court would still exercise its discretion and grant Ford's Motion to Sever

## II.    The Appropriate Remedy, Under These Circumstances

Ford's Motion to Sever asserts that the appropriate remedy here is for this Court to sever all but the first-named Plaintiff:

> Once severance is deemed appropriate, as it is here, "the court has discretion to 'sever the misjoined plaintiffs, as long as no substantial right will be prejudiced by the severance." *Stojcevski*, 143 F. Supp. 3d at 682 (quoting *Coughlin*, 130 F.3d at 1351). Thus, the court may "add or drop" parties in any manner so long as it does so "on just terms." Fed. R. Civ. P. 21. Under this standard, the court may not dismiss the complaint outright, but may dismiss all misjoined plaintiffs. *See, e.g., Grover*, 434 F. Supp. 3d at 623. One common remedy is to dismiss all but the first-named plaintiff. *E.g., Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870–71 (9th Cir. 2013).
> Here, the just remedy is to sever and drop all but the first-named Plaintiff (Jones) without prejudice to the dropped Plaintiffs' ability to re-file individual actions should they wish to do so along with the required individual filing fees. To the extent there is another appropriate remedy, Plaintiffs have steadfastly refused to suggest it, including by rejecting the Court's offer to allow them to move for leave to amend to plead a class action as Plaintiffs requested in their CMO briefing.  (ECF No. 34, PageID.3172.) Indeed, as the Ninth Circuit has

---

[14]Statistics pertaining to the number of cases in each district court are compiled and used by the Administrative Office of the United States Courts for a variety of purposes including staffing and budget decisions.  *See* 28 U.S.C. § 604(a)(2)

recognized, a court should not permit plaintiffs to use Rule 20 to "circumvent the
requirements" of Rule 23 by attempting to "transform [an individual] action into
an unwieldy pseudo-class-action not authorized by Rule 23." *Pan Am. World
Airways, Inc. v. U.S. Dist. Ct.*, 523 F.2d 1073, 1080 (9th Cir. 1975). Plaintiffs do
not want representative litigation (i.e., a class action), they want individual
litigation. Then they should be required to pursue their claims individually. Such
is the only fair, practicable, and efficient path.

(Ford's Br. at 24-25).

Significantly, in response to Ford's motion, Plaintiffs do not assert (much less establish)

that any substantial rights would be prejudiced by the requested severance.  (Pls.' Br., ECF No.

40, at PageID.3409).[15]

Instead, Plaintiffs assert that "Ford's request to dismiss all but the first named Plaintiff"

is not warranted because "better remedies exist."  (*Id.*).  Plaintiffs then assert, in a cursory

manner, that this Court could somehow sever Plaintiffs "into buckets" – and that this bucketing

"would be most proper and best informed following" Plaintiffs' proposed "Phase I liability trial."

(*Id.* at 25).

This Court concludes that Plaintiff's counsel have offered no viable or reasonable

alternative to the severance proposed by Ford.  Moreover, the requested severance is in line with

this Court's own threshold conclusion that, pursuant to the Federal Rules of Civil Procedure,

Gerkarrah Jones appears to be the only individual who is actually a plaintiff in this case given

---

[15]Counsel does not, for example, assert that the claims of individuals listed on the
spreadsheets imbedded into the FAC will be time-barred if they are dismissed without prejudice
from this case.  In fact, Plaintiffs sought dismissal without prejudice in the FAC, as to certain
individuals, should the Court conclude that sufficient commonality does not exist.  (*See* FAC at ¶
32 n.1).  Given the lack of any statute of limitations argument from Plaintiffs, and given the
nature of the FAC (including no plaintiff-specific allegations and asserting 280 different claims
under the laws of all 50 states), this Court will not independently conduct a statute-of-limitations
analysis.

the highly unusual nature of the FAC.

## CONCLUSION & ORDER

As explained above, it appears that the only plaintiff who has properly asserted claims in this action is Plaintiff Gerkarrah Jones and her claims shall proceed in this action.  The Court **ORDERS** that, no later than **November 22, 2024**, Plaintiff Gerkarrah Jones shall file a Second Amended Complaint that is limited to her claims.  Defendant Ford shall file its answer or first responsive pleading as provided under the Federal Rules of Civil Procedure.

The Court **FURTHER ORDERS** that, even if the thousands of other individuals listed in the spreadsheets imbedded into the FAC are construed as Plaintiffs, this Court nevertheless exercises its discretion and **GRANTS** Defendant Ford's Motion to Sever. The Court **RULES** that all claims of the individuals listed in the spreadsheets imbedded into the FAC (other than Gerkarrah Jones) are **DISMISSED WITHOUT PREJUDICE.**  Those individuals may re-file individual actions should they decide to do so.  To that end, the Court **ORDERS** that, no later than **November 22, 2024**, Plaintiffs' counsel shall submit a proposed order to this Court that includes the names of each of the individuals listed in the spreadsheets imbedded into the FAC (other than Gerkarrah Jones) and states that their claims in this action are dismissed without prejudice and that they may re-file individual actions should they decide to do so.

**IT IS SO ORDERED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  November 8, 2024

I hereby certify that a copy of the foregoing document was served upon counsel of record on

November 8, 2024, by electronic and/or ordinary mail.

                               <u>s/Jennifer McCoy                        </u>
                               Case Manager